# Exhibit 44

Prepared for: Karen Rutherford

## OECD Model Tax Convention (Full Version) (2017)

**MODEL CONVENTION WITH RESPECT TO TAXES ON INCOME AND ON CAPITAL**

**SUMMARY OF THE CONVENTION**

**Title and Preamble**

**Chapter I**

**SCOPE OF THE CONVENTION**

Article 1 Persons covered

Article 2 Taxes covered

**Chapter II**

**DEFINITIONS**

Article 3 General definitions

Article 4 Resident

Article 5 Permanent establishment

**Chapter III**

**TAXATION OF INCOME**

Article 6 Income from immovable property

Article 7 Business profits

Article 8 International shipping and air transport

Article 9 Associated enterprises

Article 10 Dividends

Article 11 Interest

Article 12 Royalties

Article 13 Capital gains

Article 14 [Deleted]

Article 15 Income from employment

Article 16 Directors' fees

Article 17 Entertainers and sportspersons

Article 18 Pensions

Article 19 Government service

Article 20 Students

Article 21 Other income

**Chapter IV**

**TAXATION OF CAPITAL**

Article 22 Capital

**Chapter V**

**METHODS FOR ELIMINATION OF DOUBLE TAXATION**

Article 23A Exemption method

Article 23B Credit method

**Chapter VI**

**SPECIAL PROVISIONS**

Article 24 Non-discrimination

Article 25 Mutual agreement procedure

Article 26 Exchange of information

Article 27 Assistance in the collection of taxes

Article 28 Members of diplomatic missions and consular posts

Article 29 Entitlement to benefits

Article 30 Territorial extension

**Chapter VII**

**FINAL PROVISIONS**

Article 31 Entry into force

Article 32 Termination

**TITLE OF THE CONVENTION**

**Convention between (State A) and (State B) for the elimination of double taxation with respect to taxes on income and on capital and the prevention of tax evasion and avoidance**

**PREAMBLE TO THE CONVENTION**

(State A) and (State B),

Desiring to further develop their economic relationship and to enhance their co-operation in tax matters,

Intending to conclude a Convention for the elimination of double taxation with respect to taxes on income and on capital without creating opportunities for non-taxation or reduced taxation through tax evasion or avoidance (including through treaty-shopping arrangements aimed at obtaining reliefs provided in this Convention for the indirect benefit of residents of third States),

Have agreed as follows:

**HISTORY**

**The title of the Convention:** Changed on 21 November 2017, by amending the title of the Convention and removing the footnote, by the report entitled "The 2017 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 November 2017 on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 21 November 2017, the title of the Convention read as follows:

**"Convention between (State A) and (State B) with respect to taxes on income and on capital"**

After 23 July 1992 and until 21 November 2017, the footnote to the title of the Convention read as follows:

*"1 States wishing to do so may follow the widespread practice of including in the title a reference to either the avoidance of double taxation or to both the avoidance of double taxation and the prevention of fiscal evasion."*

The footnote to the title of the Convention was added by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992.

**Preamble to the Convention:** Changed on 21 November 2017, by amending the preamble to the Convention and removing the footnote, by the report entitled "The 2017 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. After 23 July 1992 and until 21 November 2017, the preamble to the Convention and the footnote read as follows:

**"Preamble to the Convention2**

**2 The Preamble of the Convention shall be drafted in accordance with the constitutional procedure of both Contracting States."**

The footnote to the preamble to the Convention was redesignated as footnote 2 (from a "Note") when footnote 1 was added to the title of the Convention by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992.

**Chapter I**

**SCOPE OF THE CONVENTION**

**ARTICLE 1 PERSONS COVERED**

1. This Convention shall apply to persons who are residents of one or both of the Contracting States.

2. For the purposes of this Convention, income derived by or through an entity or arrangement that is treated as wholly or partly fiscally transparent under the tax law of either Contracting State shall be considered to be income of a resident of a Contracting State but only to the extent that the income is treated, for purposes of taxation by that State, as the income of a resident of that State.

3. This Convention shall not affect the taxation, by a Contracting State, of its residents except with respect to the benefits granted under paragraph 3 of Article 7, paragraph 2 of Article 9 and Articles 19, 20, 23 [A] [B], 24, 25 and 28.

**HISTORY**

**The title of Article 1:** Changed on 21 September 1995, by replacing the title "Personal Scope" with "Persons Covered", by the report entitled "The 1995 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 September 1995. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 21 September 1995, the title of Article 1 read as follows:

**"PERSONAL SCOPE"**

**Paragraph 1:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 2:** Added on 21 November 2017 by the report entitled "The 2017 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Neutralising the Effects of Hybrid Mismatch Arrangements, Action 2 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 3:** Added on 21 November 2017 by the report entitled "The 2017 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**ARTICLE 2 TAXES COVERED**

1. This Convention shall apply to taxes on income and on capital imposed on behalf of a Contracting State or of its political subdivisions or local authorities, irrespective of the manner in which they are levied.

2. There shall be regarded as taxes on income and on capital all taxes imposed on total income, on total capital, or on elements of income or of capital, including taxes on gains from the alienation of movable or immovable property, taxes on the total amounts of wages or salaries paid by enterprises, as well as taxes on capital appreciation.

3. The existing taxes to which the Convention shall apply are in particular:

*a) (in State A): ........................................*

*b) (in State B): ........................................*

4. The Convention shall apply also to any identical or substantially similar taxes that are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes. The competent authorities of the Contracting States shall notify each other of any significant changes that have been made in their taxation laws.

**HISTORY**

**Paragraph 1:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977 by substituting the words "a Contracting State" for "each Contracting State". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. This Convention shall apply to taxes on income and on capital imposed on behalf of each Contracting State or of its political subdivisions or local authorities, irrespective of the manner in which they are levied."*

**Paragraph 2:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 3:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977 by deleting the comma before "in particular" and replacing the words "In the case of (" with "(in" at the beginning of subparagraphs *a)* and *b)*. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. The existing taxes to which the Convention shall apply are, in particular:*

*a) In the case of (State A): ......................*

*b) In the case of (State B): ......................"*

**Paragraph 4:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000. In the 1977 Model Convention and until 29 April 2000, paragraph 4 read as follows:

*"4. The Convention shall apply also to any identical or substantially similar taxes which are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes. At the end of each year, the competent authorities of the Contracting States shall notify each other of changes which have been made in their respective taxation laws."*

Paragraph 4 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. The Convention shall also apply to any identical or substantially similar taxes which are subsequently imposed in addition to, or in place of, the existing taxes. At the end of each year, the competent authorities of the Contracting States shall notify to each other any changes which have been made in their respective taxation laws."*

**Chapter II**

**DEFINITIONS**

**ARTICLE 3 GENERAL DEFINITIONS**

1. For the purposes of this Convention, unless the context otherwise requires:

*a) the term "person" includes an individual, a company and any other body of persons;*

*b) the term "company" means any body corporate or any entity that is treated as a body corporate for tax purposes;*

*c) the term "enterprise" applies to the carrying on of any business;*

*d) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean respectively an enterprise carried on by a resident of a Contracting State and an enterprise carried on by a resident of the other Contracting State;*

*e) the term "international traffic" means any transport by a ship or aircraft except when the ship or aircraft is operated solely between places in a Contracting State and the enterprise that operates the ship or aircraft is not an enterprise of that State;*

*f) the term "competent authority" means:*

*(i) (in State A): ..............................*

*(ii) (in State B): ..............................*

*g) the term "national", in relation to a Contracting State, means:*

*(i) any individual possessing the nationality or citizenship of that Contracting State; and*

*(ii) any legal person, partnership or association deriving its status as such from the laws in force in that Contracting State;*

*h) the term "business" includes the performance of professional services and of other activities of an independent character.*

*i) the term "recognised pension fund" of a State means an entity or arrangement established in that State that is treated as a separate person under the taxation laws of that State and:*

*(i) that is established and operated exclusively or almost exclusively to administer or provide retirement benefits and ancillary or incidental benefits to individuals and that is regulated as such by that State or one of its political subdivisions or local authorities; or*

*(ii) that is established and operated exclusively or almost exclusively to invest funds for the benefit of entities or arrangements referred to in subdivision (i).*

2. As regards the application of the Convention at any time by a Contracting State, any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a different meaning pursuant to the provisions of Article 25, have the meaning that it has at that time under the law of that State for the purposes of the taxes to which the Convention applies, any meaning under the applicable tax laws of that State prevailing over a meaning given to the term under other laws of that State.

**HISTORY**

**Paragraph 1:** The preamble of paragraph 1 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977 by replacing the words "In this Convention" with "For the purposes of this Convention". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, the preamble of paragraph 1 read as follows:

*"1. In this Convention, unless the context otherwise requires:"*

**Subparagraph *a* ):** Corresponds to subparagraph *b)* of the 1963 Draft Convention. On 11 April 1977 subparagraph *a)* of the 1963 Draft Convention was deleted and subparagraph *b)* was redesignated as subparagraph *a)* and amended, by replacing the word "comprises" with "includes", when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Subparagraphs *a)* and *b)* of paragraph 1 read as follows:

*"a) the terms "a Contracting State" and "the other Contracting State" mean (State A) or (State B), as the context requires;.*

*b) the term "person" comprises an individual, a company and any other body of persons;"*

**Subparagraph *b* ):** Amended on 21 September 1995, by replacing the words "entity which" with "entity that", by the report entitled "The 1995 Update to the ==Model Tax Convention==",

adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, subparagraph *b)* of paragraph 1 read as follows:

*"b) the term "company" means any body corporate or any entity which is treated as a body corporate for tax purposes;"*

Subparagraph *b)* of the 1977 Model Convention corresponded to subparagraph *c)* of the 1963 Draft Convention. Subparagraph *b)* of the 1963 Draft Convention was amended and redesignated as subparagraph *a)* (see history of subparagraph *a)* above) and subparagraph *c)* of the 1963 Draft Convention was redesignated as subparagraph *b)* when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**Subparagraph *c* ):** Replaced on 29 April 2000, when it was redesignated as subparagraph *d)* (see history of subparagraph *d)* below) and a new subparagraph *c)* was added by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD ==Model Tax Convention==" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000).

**Subparagraph *d* ):** Corresponds to subparagraph *c)* as it read before 29 April 2000. On that date subparagraph *d)* of the 1977 Model Convention was redesignated as subparagraph *e)* (see history of subparagraph *e)* below) and subparagraph *c)* of the 1977 Model Convention was redesignated as subparagraph *d)* by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000.

Subparagraph *c)* of the 1977 Model Convention corresponded to subparagraph *d)* of the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963), which was redesignated as subparagraph *c)* when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**Subparagraph *e* ):** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 November 2017. After 29 April 2000 and until 21 November 2017, subparagraph *e)* read as follows:

*"e) the term "international traffic" means any transport by a ship or aircraft operated by an enterprise that has its place of effective management in a Contracting State, except when the ship or aircraft is operated solely between places in the other Contracting State;"*

Corresponds to subparagraph *d)* as it read before 29 April 2000. On that date, subparagraph *e)* was redesignated as subparagraph *f)* (see history of subparagraph *f)* below) and subparagraph *d)* was redesignated as subparagraph *e),* by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000.

Subparagraph *d)* of the 1977 Model Convention was amended on 21 September 1995, by replacing the words "enterprise which" with the words "enterprise that", by the report entitled "The 1995 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, subparagraph *d)* read as follows:

*"d) the term "international traffic" means any transport by a ship or aircraft operated by an enterprise which has its place of effective management in a Contracting State, except when the ship or aircraft is operated solely between places in the other Contracting State;"*

Subparagraph *d)* of the 1963 Draft Convention was replaced when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. At that time, subparagraph *d)* of the 1963 Draft Convention was redesignated subparagraph *c)* and a new subparagraph *d)* was added.

**Subparagraph *f* ):** Corresponds to subparagraph *e)* as it read before 29 April 2000. On that date, subparagraph *f)* was redesignated as subparagraph *g)* (see history of subparagraph *g)* below) and subparagraph *e)* was redesignated as subparagraph *f)* by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000.

Subparagraph *e)* of the 1963 Draft Convention was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, subparagraph *e)* read as follows:

*"e) the term "competent authority" means:*

*(i) (in State A):*

*(ii) (in State B):"*

**Subparagraph g ):** Amended on 28 January 2003 by adding the words ", in relation to a Contracting State" immediately before the word "means", by the report entitled "The 2002 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 28 January 2003. After 29 April 2000 and until 28 January 2003 subparagraph *g)* read as follows:

*"g) the term "national" means:*

*(i) any individual possessing the nationality of a Contracting State;*

*(ii) any legal person, partnership or association deriving its status as such from the laws in force in a Contracting State;"*

Subparagraph *g)* as it read after 29 April 2000 corresponded to subparagraph *f)* as it read in the 1977 Model Convention. Subparagraph *f)* was redesignated as subparagraph *g)* by the report entitled "The 2000 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000.

Subparagraph *f)* as it read after 23 July 1992 corresponded to paragraph 2 of Article 24 of the 1977 Model Convention. On 23 July 1992, paragraph 2 of Article 24 was amended and redesignated as subparagraph *f)* of paragraph 1 of Article 3 by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992. In the 1977 Model Convention and until 23 July 1992, paragraph 2 of Article 24 read as follows:

*"2. The term "nationals" means:*

*a) all individuals possessing the nationality of a Contracting State;*

*b) all legal persons, partnerships and associations deriving their status as such from the laws in force in a Contracting State."*

Paragraph 2 of Article 24 of the 1977 Model Convention was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting the word "laws" for "law" in subparagraph *b).* In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 of Article 24 read as follows:

*"2. The term "nationals" means:*

*a) all individuals possessing the nationality of a Contracting State;*

*b) all legal persons, partnerships and associations deriving their status as such from the law in force in a Contracting State."*

**Subparagraph h ):** Added on 29 April 2000 by the report entitled "The 2000 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD <mark>Model Tax Convention</mark>" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000).

**Subparagraph i ):** Added on 21 November 2017 by the report entitled "The 2017 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 2:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 November 2017. After 21 September 1995 and until 21 November 2017, paragraph 2 read as follows:

*"2. As regards the application of the Convention at any time by a Contracting State, any term not defined therein shall, unless the context otherwise requires, have the meaning that it has at that time under the law of that State for the purposes of the taxes to which the Convention applies, any meaning under the applicable tax laws of that State prevailing over a meaning given to the term under other laws of that State."*

Paragraph 2 was previously amended on 21 September 1995 by the report entitled "The 1995 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 2 read as follows:

*"2. As regards the application of the Convention by a Contracting State any term not defined therein shall, unless the context otherwise requires, have the meaning which it has under the law of that State concerning the taxes to which the Convention applies."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. As regards the application of the Convention by a Contracting State any term not otherwise defined shall, unless the context otherwise requires, have the meaning which it has under the laws of that Contracting State relating to the taxes which are the subject of the Convention."*

### ARTICLE 4 RESIDENT

1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management or any other criterion of a similar nature, and also includes that State and any political subdivision or local authority thereof as well as a recognised pension fund of that State. This term, however, does not include any person who is liable to tax in that State in respect only of income from sources in that State or capital situated therein.

2. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determined as follows:

*a) he shall be deemed to be a resident only of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident only of the State with which his personal and economic relations are closer (centre of vital interests);*

*b) if the State in which he has his centre of vital interests cannot be determined, or if he has not a permanent home available to him in either State, he shall be deemed to be a resident only of the State in which he has an habitual abode;*

*c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident only of the State of which he is a national;*

*d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.*

3. Where by reason of the provisions of paragraph 1 a person other than an individual is a resident of both Contracting States, the competent authorities of the Contracting States shall endeavour to determine by mutual agreement the Contracting State of which such person shall be deemed to be a resident for the purposes of the Convention, having regard to its place of effective management, the place where it is incorporated or otherwise constituted and any other relevant factors. In the absence of such agreement, such person shall not be entitled to any relief or exemption from tax provided by this Convention except to the extent and in such manner as may be agreed upon by the competent authorities of the Contracting States.

### HISTORY

**The title of Article 4:** Changed when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, the title of Article 4 read as follows:

### "FISCAL DOMICILE"

**Paragraph 1:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. After 21 September 1995 and until 21 November 2017, paragraph 1 read as follows:

*"1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management or any other criterion of a similar nature, and also includes that State and any political subdivision or local authority thereof. This term, however, does not include any person who is liable to tax in that State in respect only of income from sources in that State or capital situated therein."*

Paragraph 1 was previously amended on 21 September 1995, by adding to the first sentence the words "and also includes that State and any political subdivision or local authority thereof" and by replacing in the second sentence the words "But this term" with "This term, however,", by the report entitled "The 1995 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 1 read as follows:

*"1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management or any other criterion of a similar nature. But this term does not include any person who is liable to tax in that State in respect only of income from sources in that State or capital situated therein."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by the addition of the second sentence. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the law of that State, is liable to taxation therein by reason of his domicile, residence, place of management or any other criterion of a similar nature."*

**Paragraph 2:** Amended on 23 October 1997, by adding the word "only" after the word "resident" in the third line of subparagraph *a)* to correct an omission that was made when similar changes were made to subparagraphs *a), b)* and *c)* as part of the 1995 update (see below), by the report entitled "The 1997 Update to the ==Model Tax Convention==", adopted by the OECD Council on 23 October 1997. After 21 September 1995 and until 23 October 1997 subparagraph *a)* of paragraph 2 read as follows:

*"a) he shall be deemed to be a resident only of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (centre of vital interests);"*

Subparagraphs *a), b),* and *c)* were previously amended on 21 September 1995, by adding the word "only" after the word "resident" (except in the third line of subparagraph *a)*), by the report entitled "The 1995 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 2 read as follows:

*"2. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determined as follows:*

*a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (centre of vital interests);*

*b) if the State in which he has his centre of vital interests cannot be determined, or if he has not a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;*

*c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a national;*

*d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then this case shall be determined in accordance with the following rules:*

*a) He shall be deemed to be a resident of the Contracting State in which he has a permanent home available to him. If he has a permanent home available to him in both Contracting States, he shall be deemed to be a resident of the Contracting State with which his personal and economic relations are closest (centre of vital interests);*

*b) If the Contracting State in which he has his centre of vital interests cannot be determined, or if he has not a permanent home available to him in either Contracting State, he shall be deemed to be a resident of the Contracting State in which he has an habitual abode;*

*c) If he has an habitual abode in both Contracting States or in neither of them, he shall be deemed to be a resident of the Contracting State of which he is a national;*

*d) If he is a national of both Contracting States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement."*

**Paragraph 3:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. After 21 September 1995 and until 21 November 2017, paragraph 3 read as follows:

*"3. Where by reason of the provisions of paragraphs 1 a person other than an individual is a resident of both Contracting States, then it shall be deemed to be a resident only of the State in which its place of effective management is situated."*

Paragraph 3 was previously amended on 21 September 1995, by adding the word "only" after the words "shall be deemed to be a resident", by the report entitled "The 1995 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 3 read as follows:

*"3. Where by reason of the provisions of paragraph 1 a person other than an individual is a resident of both Contracting States, then it shall be deemed to be a resident of the State in which its place of effective management is situated."*

Paragraph 3 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by replacing the words "the Contracting State in which" with "the State in which". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. Where by reason of the provisions of paragraph 1 a person other than an individual is a resident of both Contracting States, then it shall be deemed to be a resident of the Contraction State in which its place of effective management is situated."*

**ARTICLE 5 PERMANENT ESTABLISHMENT**

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" includes especially:

*a) a place of management;*

*b) a branch;*

*c) an office;*

*d) a factory;*

*e) a workshop, and*

*f) a mine, an oil or gas well, a quarry or any other place of extraction of natural resources.*

3. A building site or construction or installation project constitutes a permanent establishment only if it lasts more than twelve months.

4. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed not to include:

*a) the use of facilities solely for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;*

*b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display or delivery;*

*c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;*

*d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise or of collecting information, for the enterprise;*

*e) the maintenance of a fixed place of business solely for the purpose of carrying on, for the enterprise, any other activity;*

*f) the maintenance of a fixed place of business solely for any combination of activities mentioned in subparagraphs a) to e),*

provided that such activity or, in the case of subparagraph *f)*, the overall activity of the fixed place of business, is of a preparatory or auxiliary character.

4.1 Paragraph 4 shall not apply to a fixed place of business that is used or maintained by an enterprise if the same enterprise or a closely related enterprise carries on business activities at the same place or at another place in the same Contracting State and

*a) that place or other place constitutes a permanent establishment for the enterprise or the closely related enterprise under the provisions of this Article, or*

*b) the overall activity resulting from the combination of the activities carried on by the two enterprises at the same place, or by the same enterprise or closely related enterprises at the two places, is not of a preparatory or auxiliary character,*

provided that the business activities carried on by the two enterprises at the same place, or by the same enterprise or closely related enterprises at the two places, constitute complementary functions that are part of a cohesive business operation.

5. Notwithstanding the provisions of paragraphs 1 and 2 but subject to the provisions of paragraph 6, where a person is acting in a Contracting State on behalf of an enterprise and, in doing so, habitually concludes contracts, or habitually plays the principal role leading to the conclusion of contracts that are routinely concluded without material modification by the enterprise, and these contracts are

*a) in the name of the enterprise, or*

*b) for the transfer of the ownership of, or for the granting of the right to use, property owned by that enterprise or that the enterprise has the right to use, or*

*c) for the provision of services by that enterprise,*

that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 which, if exercised through a fixed place of business (other than a fixed place of business to which paragraph 4.1 would apply), would not make this fixed place of business a permanent establishment under the provisions of that paragraph.

6. Paragraph 5 shall not apply where the person acting in a Contracting State on behalf of an enterprise of the other Contracting State carries on business in the first-mentioned State as an independent agent and acts for the enterprise in the ordinary course of that business. Where, however, a person acts exclusively or almost exclusively on behalf of one or more enterprises to which it is closely related, that person shall not be considered to be an independent agent within the meaning of this paragraph with respect to any such enterprise.

7. The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.

8. For the purposes of this Article, a person or enterprise is closely related to an enterprise if, based on all the relevant facts and circumstances, one has control of the other or both are under the control of the same persons or enterprises. In any case, a person or enterprise shall be considered to be closely related to an enterprise if one possesses directly or indirectly more than 50 per cent of the beneficial interest in the other (or, in the case of a company, more than 50 per cent of the aggregate vote and value of the company's shares or of the beneficial equity interest in the company) or if another person or enterprise possesses directly or indirectly more than 50 per cent of the beneficial interest (or, in the case of a company, more than 50 per cent of the aggregate vote and value of the company's shares or of the beneficial equity interest in the company) in the person and the enterprise or in the two enterprises.

## HISTORY

**Paragraph 1:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by replacing the words "in which the business of the enterprise" with "through which the business of an enterprise". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business in which the business of the enterprise is wholly or partly carried on."*

**Paragraph 2:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting the words "includes" in the first line for "shall include". At the same time, the word "and" was added at the end of subparagraph *e)*, subparagraph *f)* was modified and subparagraph *g)* was deleted. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. The term "permanent establishment" shall include especially:*

*a) a place of management;*

*b) a branch;*

*c) an office;*

*d) a factory;*

*e) a workshop, and*

*f) a mine, quarry or other place of extraction of natural resources;*

*g) a building site or construction or assembly project which exists for more than twelve months."*

**Paragraph 3:** Replaced when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. At that time, paragraph 3 of the 1963 Draft Convention was amended and renumbered as paragraph 4 (see history of paragraph 4) and a new paragraph 3 was added.

**Paragraph 4:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Artificial Avoidance of Permanent Establishment Status, Action 7 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 4 read as follows:

*"4. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed not to include:*

*a) the use of facilities solely for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;*

*b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display or delivery;*

*c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;*

*d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise or of collecting information, for the enterprise;*

4/19/22, 4:56 PM                    Model Tax Convention on Income and on Capital 2017 (Full Version)  Article 7...

Case 1:18-md-02865-LAK   Document 801-44   Filed 05/12/22   Page 14 of 52

*e) the maintenance of a fixed place of business solely for the purpose of carrying on, for the enterprise, any other activity of a preparatory or auxiliary character;*

*f) the maintenance of a fixed place of business solely for any combination of activities mentioned in subparagraphs a) to e), provided that the overall activity of the fixed place of business resulting from this combination is of a preparatory or auxiliary character."*

Paragraph 4 of the 1977 Model Convention corresponded to paragraph 3 of the 1963 Draft Convention. Paragraph 4 of the 1963 Draft Convention was amended and renumbered as paragraph 5 (see history of paragraph 5) when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. At the same time, paragraph 3 was renumbered as paragraph 4 and amended, by modifying its preamble and subparagraph *e)* and adding subparagraph *f)*. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. The term "permanent establishment" shall not be deemed to include:*

*a) the use of facilities solely for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;*

*b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display or delivery;*

*c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;*

*d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or for collecting information, for the enterprise;*

*e) the maintenance of a fixed place of business solely for the purpose of advertising, for the supply of information, for scientific research or for similar activities which have a preparatory or auxiliary character, for the enterprise."*

**Paragraph 4.1:** Added on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention=="*, adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Artificial Avoidance of Permanent Establishment Status, Action 7 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 5:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention=="*, adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Artificial Avoidance of Permanent Establishment Status, Action 7 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 5 read as follows:

*"5. Notwithstanding the provisions of paragraphs 1 and 2, where a person — other than an agent of an independent status to whom paragraph 6 applies — is acting on behalf of an enterprise and has, and habitually exercises, in a Contracting State an authority to conclude contracts in the name of the enterprise, that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 which, if exercised through a fixed place of business, would not make this fixed place of business a permanent establishment under the provisions of that paragraph."*

Paragraph 5 of the 1977 Model Convention corresponded to paragraph 4 of the 1963 Draft Convention. Paragraph 5 of the 1963 Draft Convention was amended and renumbered as paragraph 6 (see history of paragraph 6) when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. At the same time, paragraph 4 of the 1963 Draft Convention was renumbered as paragraph 5 and amended. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. A person acting in a Contracting State on behalf of an enterprise of the other Contracting State — other than an agent of an independent status to whom paragraph 5 applies — shall be deemed to be a permanent establishment in the first-mentioned State if he has, and habitually exercises in that State, an authority to conclude contracts in the name of the enterprise, unless his activities are limited to the purchase of goods or merchandise for the enterprise."*

**Paragraph 6:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention=="*, adopted by the OECD Council on 21 November 2017, on the

basis of another report entitled "Preventing the Artificial Avoidance of Permanent Establishment Status, Action 7 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 6 read as follows:

*"6. An enterprise shall not be deemed to have a permanent establishment in a Contracting State merely because it carries on business in that State through a broker, general commission agent or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business."*

Paragraph 6 of the 1977 Model Convention corresponded to paragraph 5 of the 1963 Draft Convention. Paragraph 6 of the 1963 Draft Convention was renumbered as paragraph 7 (see history of paragraph 7) and paragraph 5 of the 1963 Draft Convention was amended and renumbered as paragraph 6 when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 5 read as follows:

*"5. An enterprise of a Contracting State shall not be deemed to have a permanent establishment in the other Contracting State merely because it carries on business in that other State through a broker, general commission agent or any other agent of an independent status, where such persons are acting in the ordinary course of their business."*

**Paragraph 7:** Corresponds to paragraph 6 of the 1963 Draft Convention as it read before 11 April 1977. On that date, paragraph 6 of the 1963 Draft Convention was renumbered as paragraph 7 when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**Paragraph 8:** Added on 21 November 2017 by the report entitled "The 2017 Update to the Model Tax Convention", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Artificial Avoidance of Permanent Establishment Status, Action 7 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

## Chapter III

### TAXATION OF INCOME

#### ARTICLE 6 INCOME FROM IMMOVABLE PROPERTY

1. Income derived by a resident of a Contracting State from immovable property (including income from agriculture or forestry) situated in the other Contracting State may be taxed in that other State.

2. The term "immovable property" shall have the meaning which it has under the law of the Contracting State in which the property in question is situated. The term shall in any case include property accessory to immovable property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of immovable property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits, sources and other natural resources; ships and aircraft shall not be regarded as immovable property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting, or use in any other form of immovable property.

4. The provisions of paragraphs 1 and 3 shall also apply to the income from immovable property of an enterprise.

#### HISTORY

**Paragraph 1:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Income from immovable property may be taxed in the Contracting State in which such property is situated."*

**Paragraph 2:** Amended on 21 November 2017, by removing the reference to "boats", by the report entitled "The 2017 Update to the Model Tax Convention", adopted by the

OECD Council on 21 November 2017. In the 1977 Model Convention and until 21 November 2017, paragraph 2 read as follows:

*"2. The term "immovable property" shall have the meaning which it has under the law of the Contracting State in which the property in question is situated. The term shall in any case include property accessory to immovable property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of immovable property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits, sources and other natural resources; ships, boats and aircraft shall not be regarded as immovable property."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by changing the first sentence. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. The term "immovable property" shall be defined in accordance with the law of the Contracting State in which the property in question is situated. The term shall in any case include property accessory to immovable property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of immovable property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits, sources and other natural resources; ships, boats and aircraft shall not be regarded as immovable property."*

**Paragraph 3:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 4:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 4 read as follows:

*"4. The provisions of paragraphs 1 and 3 shall also apply to the income from immovable property of an enterprise and to income from immovable property used for the performance of independent personal services."*

Paragraph 4 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting the words "independent personal services" for "professional services". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. The provisions of paragraphs 1 and 3 shall also apply to the income from immovable property of an enterprise and to income from immovable property used for the performance of professional services."*

**ARTICLE 7 BUSINESS PROFITS**

1. Profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits that are attributable to the permanent establishment in accordance with the provisions of paragraph 2 may be taxed in that other State.

2. For the purposes of this Article and Article [23 A] [23 B], the profits that are attributable in each Contracting State to the permanent establishment referred to in paragraph 1 are the profits it might be expected to make, in particular in its dealings with other parts of the enterprise, if it were a separate and independent enterprise engaged in the same or similar activities under the same or similar conditions, taking into account the functions performed, assets used and risks assumed by the enterprise through the permanent establishment and through the other parts of the enterprise.

3. Where, in accordance with paragraph 2, a Contracting State adjusts the profits that are attributable to a permanent establishment of an enterprise of one of the Contracting States and taxes accordingly profits of the enterprise that have been charged to tax in the other State, the other State shall, to the extent necessary to eliminate double taxation on these profits, make an appropriate adjustment to the amount of the tax charged on those

profits. In determining such adjustment, the competent authorities of the Contracting States shall if necessary consult each other.

4. Where profits include items of income which are dealt with separately in other Articles of this Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

**HISTORY**

**Paragraph 1:** Amended on 22 July 2010 by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 22 July 2010, paragraph 1 read as follows:

*"1. The profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment."*

**Paragraph 2:** Replaced on 22 July 2010 when paragraph 2 was deleted and a new paragraph 2 was added by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010. In the 1977 Model Convention and until it was deleted on 22 July 2010 paragraph 2 read as follows:

*"2. Subject to the provisions of paragraph 3, where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the profits which it might be expected to make if it were a distinct and separate enterprise engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the enterprise of which it is a permanent establishment."*

Paragraph 2 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by adding the words "Subject to the provisions of paragraph 3" at the beginning of the paragraph. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. Where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the profits which it might be expected to make if it were a distinct and separate enterprise engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the enterprise of which it is a permanent establishment."*

**Paragraph 3:** Replaced on 22 July 2010 when paragraph 2 was deleted and a new paragraph 2 was added by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010. In the 1977 Model Convention and until 22 July 2010 paragraph 3 read as follows:

*"3. In determining the profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the permanent establishment, including executive and general administrative expenses so incurred, whether in the State in which the permanent establishment is situated or elsewhere."*

Paragraph 3 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting the words "In determining" for "In the determination of" at the beginning of the paragraph. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. In the determination of the profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the permanent establishment, including executive and general administrative expenses so incurred, whether in the State in which the permanent establishment is situated or elsewhere."*

**Paragraph 4:** Corresponds to paragraph 7 as it read before 22 July 2010. On that date, paragraph 4, was deleted and paragraph 7 was renumbered as paragraph 4 by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010.

Paragraph 7, as it read before 22 July 2010, was included in the 1963 Draft Convention, adopted by the OECD Council on 30 July 1963.

Paragraph 4 of the 1977 Model Convention was deleted on 22 July 2010 by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010. In the 1977 **Model Tax Convention** and until 22 July 2010, paragraph 4 read as follows:

*"4. Insofar as it has been customary in a Contracting State to determine the profits to be attributed to a permanent establishment on the basis of an apportionment of the total profits of the enterprise to its various parts, nothing in paragraph 2 shall preclude that Contracting State from determining the profits to be taxed by such an apportionment as may be customary; the method of apportionment adopted shall, however, be such that the result shall be in accordance with the principles contained in this Article."*

Paragraph 4 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting the word "contained" in the last line for "laid down". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. Insofar as it has been customary in a Contracting State to determine the profits to be attributed to a permanent establishment on the basis of an apportionment of the total profits of the enterprise to its various parts, nothing in paragraph 2 shall preclude that Contracting State from determining the profits to be taxed by such an apportionment as may be customary; the method of apportionment adopted shall, however, be such that the result shall be in accordance with the principles laid down in this Article."*

**Paragraph 5:** Deleted on 22 July 2010 by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 22 July 2010, paragraph 5 read as follows:

*"5. No profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise."*

**Paragraph 6:** Deleted on 22 July 2010 by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 22 July 2010, paragraph 6 read as follows:

*"6. For the purposes of the preceding paragraphs, the profits to be attributed to the permanent establishment shall be determined by the same method year by year unless there is good and sufficient reason to the contrary."*

**Paragraph 7:** Renumbered on 22 July 2010 as paragraph 4 (see history of paragraph 4) by the report entitled "The 2010 Update to the **Model Tax Convention**", adopted by the OECD Council on 22 July 2010.

**ARTICLE 8 INTERNATIONAL SHIPPING AND AIR TRANSPORT**

1. Profits of an enterprise of a Contracting State from the operation of ships or aircraft in international traffic shall be taxable only in that State.

2. The provisions of paragraph 1 shall also apply to profits from the participation in a pool, a joint business or an international operating agency.

**HISTORY**

**The title of Article 8:** Changed on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 21 November 2017, the title of Article 8 read as follows:

**"SHIPPING, INLAND WATERWAYS TRANSPORT AND AIR TRANSPORT"**

**Paragraph 1:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017. In the 1963 Draft Convention and until 21 November 2017, paragraph 1 read as follows:

*"1. Profits from the operation of ships or aircraft in international traffic shall be taxable only in the Contracting State in which the place of effective management of the enterprise is situated."*

Paragraph 1 was included in the 1963 Draft Convention, adopted by the OECD Council on 30 July 1963.

**Paragraph 2:** Corresponds to paragraph 4 as it read before 21 November 2017. On that date, paragraph 2 was deleted and paragraph 4 was renumbered as paragraph 2, by the report entitled "The 2017 Update to the Model Tax Convention", adopted by the OECD Council on 21 November 2017.

Paragraph 4 was included in the 1963 Draft Convention, adopted by the OECD Council on 30 July 1963.

Paragraph 2, as it read before 21 November 2017, was deleted by the report entitled "The 2017 Update to the Model Tax Convention", adopted by the OECD Council on 21 November 2017. In the 1963 Draft Convention and until 21 November 2017, paragraph 2 read as follows:

*"2. Profits from the operation of boats engaged in inland waterways transport shall be taxable only in the Contracting State in which the place of effective management of the enterprise is situated."*

Paragraph 2 was included in the 1963 Draft Convention, adopted by the OECD Council on 30 July 1963.

**Paragraph 3:** Deleted on 21 November 2017 by the report entitled "The 2017 Update to the Model Tax Convention", adopted by the OECD Council on 21 November 2017. In the 1963 Draft Convention and until 21 November 2017, paragraph 3 read as follows:

*"3. If the place of effective management of a shipping enterprise or of an inland waterways transport enterprise is aboard a ship or boat, then it shall be deemed to be situated in the Contracting State in which the home harbour of the ship or boat is situated, or, if there is no such home harbour, in the Contracting State of which the operator of the ship or boat is a resident."*

Paragraph 3 was included in the 1963 Draft Convention, adopted by the OECD Council on 30 July 1963.

**Paragraph 4:** Renumbered as paragraph 2 (see history of paragraph 2) on 21 November 2017 by the report entitled "The 2017 Update to the Model Tax Convention", adopted by the OECD Council on 21 November 2017.

**ARTICLE 9 ASSOCIATED ENTERPRISES**

1. Where

*a) an enterprise of a Contracting State participates directly or indirectly in the management, control or capital of an enterprise of the other Contracting State, or*

*b) the same persons participate directly or indirectly in the management, control or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,*

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any profits which would, but for those conditions, have accrued to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

2. Where a Contracting State includes in the profits of an enterprise of that State — and taxes accordingly — profits on which an enterprise of the other Contracting State has been charged to tax in that other State and the profits so included are profits which would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those which would have been made between independent enterprises, then that other State shall make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjustment, due regard shall be had to the other provisions of this Convention and the competent authorities of the Contracting States shall if necessary consult each other.

**HISTORY**

**Paragraph 1:** Corresponds to Article 9 of the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963). Article 9 was designated as paragraph 1 in the 1977 Model Convention, adopted by the OECD Council on 11 April 1977.

**Paragraph 2:** Added when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**ARTICLE 10 DIVIDENDS**

1. Dividends paid by a company which is a resident of a Contracting State to a resident of the other Contracting State may be taxed in that other State.

2. However, dividends paid by a company which is a resident of a Contracting State may also be taxed in that State according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed:

*a) 5 per cent of the gross amount of the dividends if the beneficial owner is a company which holds directly at least 25 per cent of the capital of the company paying the dividends throughout a 365 day period that includes the day of the payment of the dividend (for the purpose of computing that period, no account shall be taken of changes of ownership that would directly result from a corporate reorganisation, such as a merger or divisive reorganisation, of the company that holds the shares or that pays the dividend);*

*b) 15 per cent of the gross amount of the dividends in all other cases.*

The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of these limitations. This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

3. The term "dividends" as used in this Article means income from shares, "jouissance" shares or "jouissance" rights, mining shares, founders' shares or other rights, not being debt-claims, participating in profits, as well as income from other corporate rights which is subjected to the same taxation treatment as income from shares by the laws of the State of which the company making the distribution is a resident.

4. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State of which the company paying the dividends is a resident through a permanent establishment situated therein and the holding in respect of which the dividends are paid is effectively connected with such permanent establishment. In such case the provisions of Article 7 shall apply.

5. Where a company which is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company, except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid is effectively connected with a permanent establishment situated in that other State, nor subject the company's undistributed profits to a tax on the company's undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State.

**HISTORY**

**Paragraph 1:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 2:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. After 15 July 2014 and until 21 November 2017, paragraph 2 read as follows:

*"2. However, dividends paid by a company which is a resident of a Contracting State may also be taxed in that State according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed:*

*a) 5 per cent of the gross amount of the dividends if the beneficial owner is a company (other than a partnership) which holds directly at least 25 per cent of the capital of the company paying the dividends;*

*b) 15 per cent of the gross amount of the dividends in all other cases.*

*The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of these limitations. This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid."*

Paragraph 2 was previously amended on 15 July 2014 by the report entitled "The 2014 Update to the **Model Tax Convention**", adopted by the OECD Council on 15 July 2014. After 21 September 1995 and until 15 July 2014, paragraph 2 read as follows:

*"2. However, such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident and according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed:*

*a) 5 per cent of the gross amount of the dividends if the beneficial owner is a company (other than a partnership) which holds directly at least 25 per cent of the capital of the company paying the dividends;*

*b) 15 per cent of the gross amount of the dividends in all other cases.*

*The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of these limitations. This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid."*

Paragraph 2 was previously amended on 21 September 1995, by replacing the words "if the recipient is the beneficial owner of the dividends" with "if the beneficial owner of the dividends is a resident of the other Contracting State,", by the report entitled "The 1995 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 2 read as follows:

*"2. However, such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident and according to the laws of that State, but if the recipient is the beneficial owner of the dividends the tax so charged shall not exceed:*

*a) 5 per cent of the gross amount of the dividends if the beneficial owner is a company (other than a partnership) which holds directly at least 25 per cent of the capital of the company paying the dividends;*

*b) 15 per cent of the gross amount of the dividends in all other cases.*

*The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of these limitations. This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. However, such dividends may be taxed in the Contracting State of which the company paying the dividends is a resident, and according to the law of that State, but the tax so charged shall not exceed:*

*a) 5 per cent of the gross amount of the dividends if the recipient is a company (excluding partnership) which holds directly at least 25 per cent of the capital of the company paying the dividends;*

*b) in all other cases, 15 per cent of the gross amount of the dividends.*

*The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this limitation. This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid."*

**Paragraph 3:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting the words "which is subjected to the same taxation treatment as income from shares by the laws of the State" for "assimilated to income from shares by the taxation law of the State". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. The term "dividends" as used in this Article means income from shares, "jouissance" shares or "jouissance" rights, mining shares, founders' shares or other rights, not being debt-claims,*

*participating in profits, as well as income from other corporate rights assimilated to income from shares by the taxation law of the State of which the company making the distribution is a resident."*

**Paragraph 4:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD ==Model Tax Convention==" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 4 read as follows:

*"4. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the holding in respect of which the dividends are paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 or Article 14, as the case may be, shall apply."*

Paragraph 4 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. The provisions of paragraphs 1 and 2 shall not apply if the recipient of the dividends, being a resident of a Contracting State, has in the other Contracting State, of which the company paying the dividends is a resident, a permanent establishment with which the holding by virtue of which the dividends are paid is effectively connected. In such a case, the provisions of Article 7 shall apply."*

**Paragraph 5:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD ==Model Tax Convention==" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 5 read as follows:

*"5. Where a company which is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company, except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid is effectively connected with a permanent establishment or a fixed base situated in that other State, nor subject the company's undistributed profits to a tax on the company's undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State."*

Paragraph 5 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 5 read as follows:

*"5. Where a company which is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company to persons who are not residents of that other State, or subject the company's undistributed profits to a tax on undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State."*

### ARTICLE 11 INTEREST

1. Interest arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

2. However, interest arising in a Contracting State may also be taxed in that State according to the laws of that State, but if the beneficial owner of the interest is a resident of the other Contracting State, the tax so charged shall not exceed 10 per cent of the gross amount of the interest. The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this limitation.

3. The term "interest" as used in this Article means income from debt-claims of every kind, whether or not secured by mortgage and whether or not carrying a right to participate in

the debtor's profits, and in particular, income from government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures. Penalty charges for late payment shall not be regarded as interest for the purpose of this Article.

4. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State in which the interest arises through a permanent establishment situated therein and the debt-claim in respect of which the interest is paid is effectively connected with such permanent establishment. In such case the provisions of Article 7 shall apply.

5. Interest shall be deemed to arise in a Contracting State when the payer is a resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment, then such interest shall be deemed to arise in the State in which the permanent establishment is situated.

6. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

**HISTORY**

**Paragraph 1:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 2:** Amended on 15 July 2014 by the report entitled "The 2014 Update to the Model Tax Convention", adopted by the OECD Council on 15 July 2014. After 21 September 1995 and until 15 July 2014, paragraph 2 read as follows:

*"2. However, such interest may also be taxed in the Contracting State in which it arises and according to the laws of that State, but if the beneficial owner of the interest is a resident of the other Contracting State, the tax so charged shall not exceed 10 per cent of the gross amount of the interest. The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this limitation."*

Paragraph 2 was previously amended on 21 September 1995, by replacing the words "if the recipient is the beneficial owner of the interest" with "if the beneficial owner of the interest is a resident of the other Contracting State,", by the report entitled "The 1995 Update to the Model Tax Convention", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 2 read as follows:

*"2. However, such interest may also be taxed in the Contracting State in which it arises and according to the laws of that State, but if the recipient is the beneficial owner of the interest the tax so charged shall not exceed 10 per cent of the gross amount of the interest. The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this limitation."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. However, such interest may be taxed in the Contracting State in which it arises, and according to the law of that State, but the tax so charged shall not exceed 10 per cent of the amount of the interest. The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this limitation."*

**Paragraph 3:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. The term "interest" as used in this Article means income from Government securities, bonds or debentures, whether or not secured by mortgage and whether or not carrying a right to*

*participate in profits, and debt-claims of every kind as well as all other income assimilated to income from money lent by the taxation law of the State in which the income arises."*

**Paragraph 4:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 4 read as follows:

*"4. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State in which the interest arises, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the debt-claim in respect of which the interest is paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 or Article 14, as the case may be, shall apply."*

Paragraph 4 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. The provisions of paragraphs 1 and 2 shall not apply if the recipient of the interest, being a resident of a Contracting State, has in the other Contracting State in which the interest arises a permanent establishment with which the debt-claim from which the interest arises is effectively connected. In such a case, the provisions of Article 7 shall apply."*

**Paragraph 5:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). After 21 September 1995 and until 29 April 2000, paragraph 5 read as follows:

*"5. Interest shall be deemed to arise in a Contracting State when the payer is a resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment or fixed base, then such interest shall be deemed to arise in the State in which the permanent establishment or fixed base is situated."*

Paragraph 5 was previously amended on 21 September 1995, by deleting the words "that State itself, a political subdivision, a local authority or", by the report entitled "The 1995 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 5 read as follows:

*"5. Interest shall be deemed to arise in a Contracting State when the payer is that State itself, a political subdivision, a local authority or a resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment or fixed base, then such interest shall be deemed to arise in the State in which the permanent establishment or fixed base is situated."*

Paragraph 5 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, by substituting "permanent establishment or fixed base" for "permanent establishment" in the three different places where these words appeared. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 5 read as follows:

*"5. Interest shall be deemed to arise in a Contracting State when the payer is that State itself, a political subdivision, a local authority or a resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment, then such interest shall be deemed to arise in the State in which the permanent establishment is situated."*

**Paragraph 6:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 6 read as follows:

*"6. Where, owing to a special relationship between the payer and the recipient or between both of them and some other person, the amount of the interest paid, having regard to the debt claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the recipient in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In that case, the excess part of the payments shall remain taxable according to the law of each Contracting State, due regard being had to the other provisions of this Convention."*

**ARTICLE 12 ROYALTIES**

1. Royalties arising in a Contracting State and beneficially owned by a resident of the other Contracting State shall be taxable only in that State.

2. The term "royalties" as used in this Article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic or scientific work including cinematograph films, any patent, trade mark, design or model, plan, secret formula or process, or for information concerning industrial, commercial or scientific experience.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State in which the royalties arise through a permanent establishment situated therein and the right or property in respect of which the royalties are paid is effectively connected with such permanent establishment. In such case the provisions of Article 7 shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

**HISTORY**

**Paragraph 1:** Amended on 23 October 1997 by the report entitled "The 1997 Update to the ==Model Tax Convention==", adopted by the OECD Council on 23 October 1997. In the 1977 Model Convention and until 23 October 1997, paragraph 1 read as follows:

*"1. Royalties arising in a Contracting State and paid to a resident of the other Contracting State shall be taxable only in that other State if such resident is the beneficial owner of the royalties."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Royalties arising in a Contracting State and paid to a resident of the other Contracting State shall be taxable only in that other State."*

**Paragraph 2:** Amended on 23 July 1992, by deleting the words "or for the use of, or the right to use, industrial, commercial or scientific equipment", by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992, on the basis of paragraph 23 of the report entitled "The Taxation of Income Derived from the Leasing of Industrial, Commercial or Scientific Equipment" (adopted by the OECD Council on 13 September 1983). In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 23 July 1992, paragraph 2 read as follows:

*"2. The term "royalties" as used in this Article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic or scientific work including cinematograph films, any patent, trade mark, design or model, plan, secret formula or process, or for the use of, or the right to use, industrial, commercial, or scientific equipment, or for information concerning industrial, commercial or scientific experience."*

**Paragraph 3:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the <mark>Model Tax Convention</mark>", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD <mark>Model Tax Convention</mark>" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 3 read as follows:

*"3. The provisions of paragraph 1 shall not apply if the beneficial owner of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State in which the royalties arise, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the royalties are paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 or Article 14, as the case may be, shall apply."*

Paragraph 3 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. The provisions of paragraph 1 shall not apply if the recipient of the royalties, being a resident of a Contracting State, has in the other Contracting State in which the royalties arise a permanent establishment with which the right or property giving rise to the royalties is effectively connected. In such a case, the provisions of Article 7 shall apply."*

**Paragraph 4:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 4 read as follows:

*"4. Where, owing to a special relationship between the payer and the recipient or between both of them and some other person, the amount of the royalties paid, having regard to the use, right or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the recipient in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In that case, the excess part of the payments shall remain taxable according to the law of each Contracting State, due regard being had to the other provisions of this Convention."*

### ARTICLE 13 CAPITAL GAINS

1. Gains derived by a resident of a Contracting State from the alienation of immovable property referred to in Article 6 and situated in the other Contracting State may be taxed in that other State.

2. Gains from the alienation of movable property forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State, including such gains from the alienation of such a permanent establishment (alone or with the whole enterprise), may be taxed in that other State.

3. Gains that an enterprise of a Contracting State that operates ships or aircraft in international traffic derives from the alienation of such ships or aircraft, or of movable property pertaining to the operation of such ships or aircraft, shall be taxable only in that State.

4. Gains derived by a resident of a Contracting State from the alienation of shares or comparable interests, such as interests in a partnership or trust, may be taxed in the other Contracting State if, at any time during the 365 days preceding the alienation, these shares or comparable interests derived more than 50 per cent of their value directly or indirectly from immovable property, as defined in Article 6, situated in that other State.

5. Gains from the alienation of any property, other than that referred to in paragraphs 1, 2, 3 and 4, shall be taxable only in the Contracting State of which the alienator is a resident.

### HISTORY

**Paragraph 1:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Gains from the alienation of immovable property, as defined in paragraph 2 of Article 6, may be taxed in the Contracting State in which such property is situated."*

**Paragraph 2:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 2 read as follows:

*"2. Gains from the alienation of movable property forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State or of movable property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, including such gains from the alienation of such a permanent establishment (alone or with the whole enterprise) or of such fixed base, may be taxed in that other State."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977 by replacing the word "professional" with "independent personal" and by deleting the last sentence (the principle of which was been taken up in paragraph 3). In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. Gains from the alienation of movable property forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State or of movable property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing professional services, including such gains from the alienation of such a permanent establishment (alone or together with the whole enterprise) or of such a fixed base, may be taxed in the other State. However, gains from the alienation of movable property of the kind referred to in paragraph 3 of Article 22 shall be taxable only in the Contracting State in which such movable property is taxable according to the said Article."*

**Paragraph 3:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017. In the 1977 Model Convention and until 21 November 2017, paragraph 3 read as follows:

*"3. Gains from the alienation of ships or aircraft operated in international traffic, boats engaged in inland waterways transport or movable property pertaining to the operation of such ships, aircraft or boats, shall be taxable only in the Contracting State in which the place of effective management of the enterprise is situated."*

Paragraph 3 was added when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977; it corresponds generally to the last sentence of paragraph 2 of the 1963 Draft Convention.

**Paragraph 4:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 - Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. After 28 January 2003 and until 21 November 2017, paragraph 4 read as follows:

*"4. Gains derived by a resident of a Contracting State from the alienation of shares deriving more than 50 per cent of their value directly or indirectly from immovable property situated in the other Contracting State may be taxed in that other State."*

Paragraph 4 was replaced on 28 January 2003 when paragraph 4 was amended and renumbered as paragraph 5 (see history of paragraph 5) and a new paragraph 4 was added by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**Paragraph 5:** Corresponds to paragraph 4 of the 1977 Model Convention as it read before 28 January 2003. On that date, paragraph 4 was amended and renumbered as paragraph 5 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003. In the 1977 Model Convention and until 28 January 2003, paragraph 4 read as follows:

*"4. Gains from the alienation of any property other than that referred to in paragraphs 1, 2 and 3, shall be taxable only in the Contracting State of which the alienator is a resident."*

Paragraph 4 corresponded to paragraph 3 of the 1963 Draft Convention. Paragraph 3 was amended and renumbered as paragraph 4 when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. Gains from the alienation of any property other than those mentioned in paragraphs 1 and 2, shall be taxable only in the Contracting State of which the alienator is a resident."*

**[ARTICLE 14 - INDEPENDENT PERSONAL SERVICES]**

**[DELETED]**

**HISTORY**

Article 14 was deleted by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Model Convention and until 29 April 2000, Article 14 read as follows:

*"INDEPENDENT PERSONAL SERVICES*

*1. Income derived by a resident of a Contracting State in respect of professional services or other activities of an independent character shall be taxable only in that State unless he has a fixed base regularly available to him in the other Contracting State for the purpose of performing his activities. If he has such a fixed base, the income may be taxed in the other State but only so much of it as is attributable to that fixed base.*

*2. The term "professional services" includes especially independent scientific, literary, artistic, educational or teaching activities as well as the independent activities of physicians, lawyers, engineers, architects, dentists and accountants.*

**Paragraph 1**

Before it was deleted on 29 April 2000, paragraph 1 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Income derived by a resident of a Contracting State in respect of professional services or other independent activities of a similar character shall be taxable only in that State unless he has a fixed base regularly available to him in the other Contracting State for the purpose of performing his activities. If he has such a fixed base, the income may be taxed in the other Contracting State but only so much of it as is attributable to that fixed base."*

**Paragraph 2**

Before it was deleted on 29 April 2000, paragraph 2 was unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963."

**ARTICLE 15 INCOME FROM EMPLOYMENT**

1. Subject to the provisions of Articles 16, 18 and 19, salaries, wages and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if:

*a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in any twelve month period commencing or ending in the fiscal year concerned, and*

*b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State, and*

*c) the remuneration is not borne by a permanent establishment which the employer has in the other State.*

3. Notwithstanding the preceding provisions of this Article, remuneration derived by a resident of a Contracting State in respect of an employment, as a member of the regular complement of a ship or aircraft, that is exercised aboard a ship or aircraft operated in international traffic, other than aboard a ship or aircraft operated solely within the other Contracting State, shall be taxable only in the first-mentioned State.

**HISTORY**

**The title of Article 15:** Amended by the report entitled "The 2000 Update to the ==Model Tax Convention=="", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD ==Model Tax Convention=="" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 29 April 2000, the title of Article 15 read as follows:

**"DEPENDENT PERSONAL SERVICES"**

**Paragraph 1:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 2:** Amended on 29 April 2000, by deleting the words "or a fixed base" in subparagraph c), by the report entitled "The 2000 Update to the ==Model Tax Convention=="", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD ==Model Tax Convention=="" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). After 23 July 1992 and until 29 April 2000, paragraph 2 read as follows:

*"2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if:*

*a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in any twelve month period commencing or ending in the fiscal year concerned, and*

*b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State, and*

*c) the remuneration is not borne by a permanent establishment or a fixed base which the employer has in the other State."*

Paragraph 2 was previously amended on 23 July 1992, by adding the words "in any twelve month period commencing or ending" to subparagraph *a)*, by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992, on the basis of paragraph 80 of the report entitled "Taxation Issues Relating to the International Hiring-out of Labour" (adopted by the OECD Council on 24 August 1984). In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 23 July 1992, paragraph 2 read as follows:

*"2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if:*

*a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in the fiscal year concerned, and.*

*b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State, and*

*c) the remuneration is not borne by a permanent establishment or a fixed base which the employer has in the other State."*

**Paragraph 3:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention=="", adopted by the OECD Council on 21 November 2017. In the 1977 Model Convention and until 21 November 2017, paragraph 3 read as follows:

*"3. Notwithstanding the preceding provisions of this Article, remuneration derived in respect of an employment exercised aboard a ship or aircraft operated in international traffic, or aboard a boat engaged in inland waterways transport, may be taxed in the Contracting State in which the place of effective management of the enterprise is situated."*

Paragraph 3 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. Notwithstanding the preceding provisions of this Article, remuneration in respect of an employment exercised aboard a ship or aircraft in international traffic, or aboard a boat engaged in inland waterways transport, may be taxed in the Contracting State in which the place of effective management of the enterprise is situated."*

**ARTICLE 16 DIRECTORS' FEES**

Directors' fees and other similar payments derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company which is a resident of the other Contracting State may be taxed in that other State.

**HISTORY**

Article 16 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977 by adding the word "other" immediately before "similar payments". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 16 read as follows:

*"Directors' fees and similar payments derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company which is a resident of the other Contracting State may be taxed in that other State."*

**ARTICLE 17 ENTERTAINERS AND SPORTSPERSONS**

1. Notwithstanding the provisions of Article 15, income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio or television artiste, or a musician, or as a sportsperson, from that resident's personal activities as such exercised in the other Contracting State, may be taxed in that other State.

2. Where income in respect of personal activities exercised by an entertainer or a sportsperson acting as such accrues not to the entertainer or sportsperson but to another person, that income may, notwithstanding the provisions of Article 15, be taxed in the Contracting State in which the activities of the entertainer or sportsperson are exercised.

**HISTORY**

**The title of Article 17:** Amended on 15 July 2014 by the report entitled "The 2014 Update to the Model Tax Convention", adopted by the OECD Council on 15 July 2014. After 23 July 1992 and until 15 July 2014, the title of Article 17 read as follows:

**"ARTISTES AND SPORTSMEN"**

The title of Article 17 was previously amended on 23 July 1992 by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992, on the basis of paragraph 5 of the report entitled "The Taxation of Income Derived from Entertainment, Artistic and Sporting Activities" (adopted by the OECD Council on 27 March 1987). In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until 23 July 1992, the title of Article 17 read as follows:

**"ARTISTES AND ATHLETES"**

**Paragraph 1:** Amended on 15 July 2014 by the report entitled "The 2014 Update to the Model Tax Convention", adopted by the OECD Council on 15 July 2014. After 29 April 2000 and until 15 July 2014, paragraph 1 read as follows:

*"1. Notwithstanding the provisions of Articles 7 and 15, income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio or television artiste, or a musician, or as a sportsman, from his personal activities as such exercised in the other Contracting State, may be taxed in that other State."*

Paragraph 1 was previously amended on 29 April 2000, by replacing the cross-reference to "Article 14" with a cross-reference to "Article 7", by the report entitled "The 2000 Update to the Model Tax Convention", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD Model Tax Convention" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). After 23 July 1992 and until 29 April 2000, paragraph 1 read as follows:

*"1. Notwithstanding the provisions of Articles 14 and 15, income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio or television artiste, or a musician, or as a sportsman, from his personal activities as such exercised in the other Contracting State, may be taxed in that other State."*

Paragraph 1 was previously amended on 23 July 1992, by replacing the words "an athlete" with "a sportsman", by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992, on the basis of paragraph 5 of the report entitled "The Taxation of Income Derived from Entertainment, Artistic and Sporting Activities" (adopted by the OECD Council on 27 March 1987). In the 1977 Model Convention and until 23 July 1992, paragraph 1 read as follows:

*"1. Notwithstanding the provisions of Articles 14 and 15, income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio or television artiste, or a musician, or as an athlete, from his personal activities as such exercised in the other Contracting State, may be taxed in that other State."*

Paragraph 1 was included in the 1963 Draft Convention as Article 17. In the 1977 Model Convention, adopted by the OECD Council on 11 April 1977, Article 17 was designated as paragraph 1 and amended. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 17 read as follows:

*"Notwithstanding the provisions of Articles 14 and 15, income derived by public entertainers, such as theatre, motion picture, radio or television artistes, and musicians, and by athletes, from their personal activities as such may be taxed in the Contracting State in which these activities are exercised."*

**Paragraph 2:** Amended on 15 July 2014 by the report entitled "The 2014 Update to the Model Tax Convention", adopted by the OECD Council on 15 July 2014. After 29 April 2000 and until 15 July 2014, paragraph 2 read as follows:

*"2. Where income in respect of personal activities exercised by an entertainer or a sportsman in his capacity as such accrues not to the entertainer or sportsman himself but to another person, that income may, notwithstanding the provisions of Articles 7 and 15, be taxed in the Contracting State in which the activities of the entertainer or sportsman are exercised."*

Paragraph 2 was previously amended on 29 April 2000, by deleting the reference to Article 14, by the report entitled "The 2000 Update to the Model Tax Convention", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD Model Tax Convention" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). After 23 July 1992 and until 29 April 2000, paragraph 2 read as follows:

*"2. Where income in respect of personal activities exercised by an entertainer or a sportsman in his capacity as such accrues not to the entertainer or sportsman himself but to another person, that income may, notwithstanding the provisions of Articles 7, 14 and 15, be taxed in the Contracting State in which the activities of the entertainer or sportsman are exercised."*

Paragraph 2 was previously amended on 23 July 1992, by replacing the two references to "athlete" with "sportsman", by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992, on the basis of paragraph 5 of the report entitled "The Taxation of Income Derived from Entertainment, Artistic and Sporting Activities" (adopted by the OECD Council on 27 March 1987). In the 1977 Model Convention and until 23 July 1992, paragraph 2 read as follows:

*"2. Where income in respect of personal activities exercised by an entertainer or a athlete in his capacity as such accrues not to the entertainer or athlete himself but to another person, that income may, notwithstanding the provisions of Articles 7, 14 and 15, be taxed in the Contracting State in which the activities of the entertainer or sportsman are exercised."*

Paragraph 2 was added when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**ARTICLE 18 PENSIONS**

Subject to the provisions of paragraph 2 of Article 19, pensions and other similar remuneration paid to a resident of a Contracting State in consideration of past employment shall be taxable only in that State.

**HISTORY**

Article 18 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977 by replacing the words "paragraph 1 of Article 19" with "paragraph 2 of Article 19". In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 18 read as follows:

*"Subject to the provisions of paragraph 1 of Article 19, pensions and other similar remuneration paid to a resident of a Contracting State in consideration of past employment shall be taxable only in that State."*

### ARTICLE 19 GOVERNMENT SERVICE

1.

*a) Salaries, wages and other similar remuneration paid by a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.*

*b) However, such salaries, wages and other similar remuneration shall be taxable only in the other Contracting State if the services are rendered in that State and the individual is a resident of that State who:*

*(i) is a national of that State; or*

*(ii) did not become a resident of that State solely for the purpose of rendering the services.*

2.

*a) Notwithstanding the provisions of paragraph 1, pensions and other similar remuneration paid by, or out of funds created by, a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.*

*b) However, such pensions and other similar remuneration shall be taxable only in the other Contracting State if the individual is a resident of, and a national of, that State.*

3. The provisions of Articles 15, 16, 17, and 18 shall apply to salaries, wages, pensions, and other similar remuneration in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof.

### HISTORY

**The title of Article 19:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, the title of Article 19 read as follows:

### "GOVERNMENTAL FUNCTIONS"

**Paragraph 1:** Amended on 15 July 2005, by deleting the words "other than a pension" in subparagraph *a)*, by the report entitled "The 2005 Update to the ==Model Tax Convention==", adopted by the OECD Council on 15 July 2005. After 31 March 1994 and until 15 July 2005, paragraph 1 read as follows:

*"1. a) Salaries, wages and other similar remuneration, other than a pension, paid by a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.*

*b) However, such salaries, wages and other similar remuneration shall be taxable only in the other Contracting State if the services are rendered in that State and the individual is a resident of that State who:*

*(i) is a national of that State; or*

*(ii) did not become a resident of that State solely for the purpose of rendering the services."*

Paragraph 1 was previously amended on 31 March 1994 by the report entitled "1994 Update to the ==Model Tax Convention==", adopted by the OECD Council on 31 March 1994. In the 1977 Model Convention and until 31 March 1994, paragraph 1 read as follows:

*"1. a) Remuneration, other than a pension, paid by a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.*

*b) However, such remuneration shall be taxable only in the other Contracting State if the services are rendered in that State and the individual is a resident of that State who:*

*(i) is a national of that State; or*

*(ii) did not become a resident of that State solely for the purpose of rendering the services."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Remuneration, including pensions, paid by, or out of funds created by, a Contracting State or a political subdivision or a local authority thereof to any individual in respect of services rendered to that State or subdivision or local authority thereof in the discharge of functions of a governmental nature may be taxed in that State."*

**Paragraph 2:** Amended on 15 July 2005 by the report entitled "The 2005 Update to the ==Model Tax Convention==", adopted by the OECD Council on 15 July 2005. In the 1977 Model Convention and until 15 July 2005, paragraph 2 read as follows:

*"2. a) Any pension paid by, or out of funds created by, a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.*

*b) However, such pension shall be taxable only in the other Contracting State if the individual is a resident of, and a national of, that State."*

Paragraph 2 of the 1963 Draft Convention was replaced when the 1977 Model Convention, was adopted by the OECD Council on 11 April 1977. At that time, paragraph 2 of the 1963 Draft Convention was amended and renumbered as paragraph 3 (see history of paragraph 3) and new paragraph 2 was added when the 1977 Model Convention was adopted.

**Paragraph 3:** Amended on 15 July 2005 by the report entitled "The 2005 Update to the ==Model Tax Convention==", adopted by the OECD Council on 15 July 2005. After 21 September 1995 and until 15 July 2005, paragraph 3 read as follows:

*"3. The provisions of Articles 15, 16, 17, and 18 shall apply to salaries, wages and other similar remuneration, and to pensions, in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof."*

Paragraph 3 was previously amended on 21 September 1995, by adding a reference to Article 17, by the report entitled "The 1995 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 September 1995. After 31 March 1994 and until 21 September 1995, paragraph 3 read as follows:

*"3. The provisions of Articles 15, 16, and 18 shall apply to salaries, wages and other similar remuneration, and to pensions, in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof."*

Paragraph 3 was previously amended on 31 March 1994 by the report entitled "1994 Update to the ==Model Tax Convention==", adopted by the OECD Council on 31 March 1994. In the 1977 Model Convention and until 31 March 1994, paragraph 3 read as follows:

*"3. The provisions of Articles 15, 16 and 18 shall apply to remuneration and pensions in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof."*

Paragraph 3 of the 1977 Model Convention corresponded to paragraph 2 of the 1963 Draft Convention. Paragraph 2 of the 1963 Draft Convention was renumbered as paragraph 3 and amended, by substituting "remuneration and pensions" for "remuneration or pensions" and by substituting "a business" for "any trade or business", when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. The provisions of Articles 15, 16 and 18 shall apply to remuneration or pensions in respect of services rendered in connection with a trade or business carried on by one of the Contracting States or a political subdivision or a local authority thereof."*

**ARTICLE 20 STUDENTS**

Payments which a student or business apprentice who is or was immediately before visiting a Contracting State a resident of the other Contracting State and who is present in the first-mentioned State solely for the purpose of his education or training receives for the purpose of his maintenance, education or training shall not be taxed in that State, provided that such payments arise from sources outside that State.

**HISTORY**

Article 20 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 20 read as follows:

*"Payments which a student or business apprentice who is or was formerly a resident of a Contracting State and who is present in the other Contracting State solely for the purpose of his education or training receives for the purpose of his maintenance, education or training shall not be taxed in that other State, provided that such payments are made to him from sources outside that other State."*

**ARTICLE 21 OTHER INCOME**

1. Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State.

2. The provisions of paragraph 1 shall not apply to income, other than income from immovable property as defined in paragraph 2 of Article 6, if the recipient of such income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein and the right or property in respect of which the income is paid is effectively connected with such permanent establishment. In such case the provisions of Article 7 shall apply.

**HISTORY**

**The title of Article 21:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, the title of Article 21 read as follows:

**"INCOME NOT EXPRESSLY MENTIONED"**

**Paragraph 1:** Corresponds to Article 21 of the 1963 Draft Convention. Article 21 of the 1963 Draft Convention was designated as paragraph 1 and amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 21 read as follows:

*"Items of income of a resident of a Contracting State which are not expressly mentioned in the foregoing Articles of this Convention shall be taxable only in that State."*

**Paragraph 2:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 2 read as follows:

*"2. The provisions of paragraph 1 shall not apply to income, other than income from immovable property as defined in paragraph 2 of Article 6, if the recipient of such income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the income is paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 or Article 14, as the case may be, shall apply."*

Paragraph 2 was added when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**Chapter IV**

**TAXATION OF CAPITAL**

**ARTICLE 22 CAPITAL**

1. Capital represented by immovable property referred to in Article 6, owned by a resident of a Contracting State and situated in the other Contracting State, may be taxed in that other State.

2. Capital represented by movable property forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State may be taxed in that other State.

3. Capital of an enterprise of a Contracting State that operates ships or aircraft in international traffic represented by such ships or aircraft, and by movable property pertaining to the operation of such ships or aircraft, shall be taxable only in that State.

4. All other elements of capital of a resident of a Contracting State shall be taxable only in that State.

## HISTORY

**Paragraph 1:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Capital represented by immovable property, as defined in paragraph 2 of Article 6, may be taxed in the Contracting State in which such property is situated."*

**Paragraph 2:** Amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of the Annex of another report entitled "Issues related to Article 14 of the OECD **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 27 January 2000). In the 1977 Convention and until 29 April 2000, paragraph 2 read as follows:

*"2. Capital represented by movable property forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State or by movable property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, may be taxed in that other State."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. Capital represented by movable property forming part of the business property of a permanent establishment of an enterprise, or by movable property pertaining to a fixed base used for the performance of professional services, may be taxed in the Contracting State in which the permanent establishment or fixed base is situated."*

**Paragraph 3:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017. In the 1977 Model Convention and until 21 November 2017, paragraph 3 read as follows:

*"3. Capital represented by ships and aircraft operated in international traffic and by boats engaged in inland waterways transport, and by movable property pertaining to the operation of such ships, aircraft and boats, shall be taxable only in the Contracting State in which the place of effective management of the enterprise is situated."*

Paragraph 3 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. Ships and aircraft operated in international traffic and boats engaged in inland waterways transport, and movable property pertaining to the operation of such ships, aircraft and boats, shall be taxable only in the Contracting State in which the place of effective management of the enterprise is situated."*

**Paragraph 4:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

## Chapter V

## METHODS FOR ELIMINATION OF DOUBLE TAXATION

### ARTICLE 23A EXEMPTION METHOD

1. Where a resident of a Contracting State derives income or owns capital which may be taxed in the other Contracting State in accordance with the provisions of this Convention (except to the extent that these provisions allow taxation by that other State solely because the income is also income derived by a resident of that State or because the capital is also capital owned by a resident of that State), the first-mentioned State shall, subject to the provisions of paragraphs 2 and 3, exempt such income or capital from tax.

2. Where a resident of a Contracting State derives items of income which may be taxed in the other Contracting State in accordance with the provisions of Articles 10 and 11 (except to the extent that these provisions allow taxation by that other State solely because the income is also income derived by a resident of that State), the first-mentioned State shall allow as a deduction from the tax on the income of that resident an amount equal to the tax paid in that other State. Such deduction shall not, however, exceed that part of the tax, as computed before the deduction is given, which is attributable to such items of income derived from that other State.

3. Where in accordance with any provision of the Convention income derived or capital owned by a resident of a Contracting State is exempt from tax in that State, such State may nevertheless, in calculating the amount of tax on the remaining income or capital of such resident, take into account the exempted income or capital.

4. The provisions of paragraph 1 shall not apply to income derived or capital owned by a resident of a Contracting State where the other Contracting State applies the provisions of this Convention to exempt such income or capital from tax or applies the provisions of paragraph 2 of Article 10 or 11 to such income.

### HISTORY

**Paragraph 1:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 1 read as follows:

*"1. Where a resident of a Contracting State derives income or owns capital which, in accordance with the provisions of this Convention, may be taxed in the other Contracting State, the first-mentioned State shall, subject to the provisions of paragraphs 2 and 3, exempt such income or capital from tax."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Where a resident of a Contracting State derives income or owns capital which, in accordance with the provisions of this Convention, may be taxed in the other Contracting State, the first-mentioned State shall, subject to the provisions of paragraph 2, exempt such income or capital from tax but may, in calculating tax on the remaining income or capital of that person, apply the rate of tax which would have been applicable if the exempted income or capital had not been so exempted."*

**Paragraph 2:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 2 read as follows:

*"2. Where a resident of a Contracting State derives items of income which, in accordance with the provisions of Articles 10 and 11, may be taxed in the other Contracting State, the first-mentioned State shall allow as a deduction from the tax on the income of that resident an amount equal to the tax paid in that other State. Such deduction shall not, however, exceed that part of the tax, as computed before the deduction is given, which is attributable to such items of income derived from that other State."*

Paragraph 2 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. Where a resident of a Contracting State derives income which, in accordance with the provisions of Articles 10 and 11, may be taxed in the other Contracting State, the first-mentioned State shall allow as a deduction from the tax on the income of that person an amount equal to the tax paid in that other Contracting State. Such deduction shall not, however, exceed that part of the tax, as computed before the deduction is given, which is appropriate to the income derived from that other Contracting State."*

**Paragraph 3:** Added when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**Paragraph 4:** Added on 29 April 2000 by the report entitled "The 2000 Update to the ==Model Tax Convention==", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000, on the basis of paragraph 113 of another report entitled "The Application of the OECD ==Model Tax Convention== to Partnerships" (adopted by the OECD Committee on Fiscal Affairs on 20 January 1999).

### ARTICLE 23B CREDIT METHOD

1. Where a resident of a Contracting State derives income or owns capital which may be taxed in the other Contracting State in accordance with the provisions of this Convention (except to the extent that these provisions allow taxation by that other State solely because the income is also income derived by a resident of that State or because the capital is also capital owned by a resident of that State), the first-mentioned State shall allow:

*a) as a deduction from the tax on the income of that resident, an amount equal to the income tax paid in that other State;*

*b) as a deduction from the tax on the capital of that resident, an amount equal to the capital tax paid in that other State.*

Such deduction in either case shall not, however, exceed that part of the income tax or capital tax, as computed before the deduction is given, which is attributable, as the case may be, to the income or the capital which may be taxed in that other State.

2. Where in accordance with any provision of the Convention income derived or capital owned by a resident of a Contracting State is exempt from tax in that State, such State may nevertheless, in calculating the amount of tax on the remaining income or capital of such resident, take into account the exempted income or capital.

### HISTORY

**Paragraph 1:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention==", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 1 read as follows:

*"1. Where a resident of a Contracting State derives income or owns capital which, in accordance with the provisions of this Convention, may be taxed in the other Contracting State, the first-mentioned State shall allow:*

*a) as a deduction from the tax on the income of that resident, an amount equal to the income tax paid in that other State;*

*b) as a deduction from the tax on the capital of that resident, an amount equal to the capital tax paid in that other State.*

*Such deduction in either case shall not, however, exceed that part of the income tax or capital tax, as computed before the deduction is given, which is attributable, as the case may be, to the income or the capital which may be taxed in that other State."*

Paragraph 1 as it read after 11 April 1977 corresponded to paragraphs 1 and 2 of the 1963 Draft Convention. These paragraphs were merged and amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft

Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraphs 1 and 2 read as follows:

*"1. Where a resident of a Contracting State derives income or owns capital which, in accordance with the provisions of this Convention, may be taxed in the other Contracting State, the first-mentioned State shall allow:*

*a) as a deduction from the tax on the income of that person, an amount equal to the income tax paid in that other Contracting State;*

*b) as a deduction from the tax on the capital of that person, an amount equal to the capital tax paid in that other Contracting State.*

*2. The deduction in either case shall not, however, exceed that part of the income tax or capital tax, respectively, as computed before the deduction is given, which is appropriate, as the case may be, to the income or the capital which may be taxed in the other Contracting State."*

**Paragraph 2:** Replaced paragraph 2 of the 1963 Draft Convention when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. At that time, paragraph 2 of the 1963 Draft Convention was merged with paragraph 1 (see history of paragraph 1) and a new paragraph 2 was added.

**Chapter VI**

**SPECIAL PROVISIONS**

**ARTICLE 24 NON-DISCRIMINATION**

1. Nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith, which is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances, in particular with respect to residence, are or may be subjected. This provision shall, notwithstanding the provisions of Article 1, also apply to persons who are not residents of one or both of the Contracting States.

2. Stateless persons who are residents of a Contracting State shall not be subjected in either Contracting State to any taxation or any requirement connected therewith, which is other or more burdensome than the taxation and connected requirements to which nationals of the State concerned in the same circumstances, in particular with respect to residence, are or may be subjected.

3. The taxation on a permanent establishment which an enterprise of a Contracting State has in the other Contracting State shall not be less favourably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities. This provision shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents.

4. Except where the provisions of paragraph 1 of Article 9, paragraph 6 of Article 11, or paragraph 4 of Article 12, apply, interest, royalties and other disbursements paid by an enterprise of a Contracting State to a resident of the other Contracting State shall, for the purpose of determining the taxable profits of such enterprise, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State. Similarly, any debts of an enterprise of a Contracting State to a resident of the other Contracting State shall, for the purpose of determining the taxable capital of such enterprise, be deductible under the same conditions as if they had been contracted to a resident of the first-mentioned State.

5. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

6. The provisions of this Article shall, notwithstanding the provisions of Article 2, apply to taxes of every kind and description.

**HISTORY**

**Paragraph 1:** Amended on 23 July 1992, by adding the words "in particular with respect to residence" in the first sentence, by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992. In the 1977 Model Convention and until 23 July 1992, paragraph 1 read as follows:

*"1. Nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith, which is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances are or may be subjected. This provision shall, notwithstanding the provisions of Article 1, also apply to persons who are not residents of one or both of the Contracting States."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, notably by adding the second sentence. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. The nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances are or may be subjected."*

**Paragraph 2:** Amended on 23 October 1997, by adding the words "in particular with respect to residence" after the words "in the same circumstances", by the report entitled "The 1997 Update to the ==Model Tax Convention==", adopted by the OECD Council on 23 October 1997. After 23 July 1992 and until 23 October 1997, paragraph 2 read as follows:

*"2. Stateless persons who are residents of a Contracting State shall not be subjected in either Contracting State to any taxation or any requirement connected therewith, which is other or more burdensome than the taxation and connected requirements to which nationals of the State concerned in the same circumstances, in particular with respect to residence, are or may be subjected."*

Paragraph 2 as it read after 23 July 1992 corresponded to paragraph 3 of the 1977 Model Convention. On 23 July 1992, paragraph 2 of the 1977 Model Convention was amended and redesignated as subparagraph 1 f) of Article 3 (see history of paragraph 1 of Article 3) and paragraph 3 was renumbered as paragraph 2, by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992. In the 1977 Model Convention and until 23 July 1992, paragraph 3 read as follows:

*"3. The term "nationals" means:*

*a) all individuals possessing the nationality of a Contracting State;*

*b) all legal persons, partnerships and associations deriving their status as such from the laws in force in a Contracting State."*

Paragraph 3 of the 1963 Draft Convention was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 3 read as follows:

*"3. Stateless persons shall not be subjected in a Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which nationals of that State in the same circumstances are or may be subjected."*

**Paragraph 3:** Corresponds to paragraph 4 of the 1977 Model Convention as it read before 23 July 1992. On that date, paragraph 3 was renumbered as paragraph 2 (see history of paragraph 2) and paragraph 4 of the 1977 Model Convention was renumbered as paragraph 3, by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992.

Paragraph 4 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention, the second sentence was presented as a second paragraph within paragraph 4 of the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963). This was corrected when the 1977 Model Convention was adopted.

**Paragraph 4:** Corresponds to paragraph 5 of the 1977 Model Convention as it read before 23 July 1992. On that date, paragraph 4 was renumbered as paragraph 3 (see history of paragraph 3) and paragraph 5 of the 1977 Model Convention was renumbered as

paragraph 4, by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992.

Paragraph 5 of the 1977 Model Convention was added when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977.

**Paragraph 5:** Corresponds to paragraph 6 of the 1977 Model Convention as it read before 23 July 1992. On that date, paragraph 5 was renumbered as paragraph 4 (see history of paragraph 4) and paragraph 6 of the 1977 Model Convention was renumbered as paragraph 5 by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992.

Paragraph 6 of the 1977 Model Convention corresponded to paragraph 5 of the 1963 Draft Convention. Paragraph 5 of the 1963 Draft Convention was renumbered as paragraph 6 and amended when the 1977 Model Convention, was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 5 read as follows:

*"5. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of that first-mentioned State are or may be subjected."*

**Paragraph 6:** Corresponds to paragraph 7 of the 1977 Model Convention as it read before 23 July 1992. On that date, paragraph 6 was renumbered as paragraph 5 (see history of paragraph 5) and paragraph 7 of the 1977 Model Convention was renumbered as paragraph 6 by the report entitled "The Revision of the Model Convention", adopted by the OECD Council on 23 July 1992.

Paragraph 7 of the 1977 Model Convention corresponded to paragraph 6 of the 1963 Draft Convention. Paragraph 6 of the 1963 Draft Convention was amended and renumbered as paragraph 7 when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 6 read as follows:

*"6. In this Article the term "taxation" means taxes of every kind and description."*

**ARTICLE 25 MUTUAL AGREEMENT PROCEDURE**

1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of either Contracting State. The case must be presented within three years from the first notification of the action resulting in taxation not in accordance with the provisions of the Convention.

2. The competent authority shall endeavour, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not in accordance with the Convention. Any agreement reached shall be implemented notwithstanding any time limits in the domestic law of the Contracting States.

3. The competent authorities of the Contracting States shall endeavour to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention. They may also consult together for the elimination of double taxation in cases not provided for in the Convention.

4. The competent authorities of the Contracting States may communicate with each other directly, including through a joint commission consisting of themselves or their representatives, for the purpose of reaching an agreement in the sense of the preceding paragraphs.

5. Where,

*a) under paragraph 1, a person has presented a case to the competent authority of a Contracting State on the basis that the actions of one or both of the Contracting States have resulted for that person in taxation not in accordance with the provisions of this Convention, and*

*b) the competent authorities are unable to reach an agreement to resolve that case pursuant to paragraph 2 within two years from the date when all the information required by the competent authorities in order to address the case has been provided to both competent authorities,*

any unresolved issues arising from the case shall be submitted to arbitration if the person so requests in writing. These unresolved issues shall not, however, be submitted to arbitration if a decision on these issues has already been rendered by a court or administrative tribunal of either State. Unless a person directly affected by the case does not accept the mutual agreement that implements the arbitration decision, that decision shall be binding on both Contracting States and shall be implemented notwithstanding any time limits in the domestic laws of these States. The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this paragraph.

## HISTORY

**Paragraph 1:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention=="", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Making Dispute Resolution Mechanisms More Effective, Action 14 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015. In the 1977 Model Convention and until 21 November 2017, paragraph 1 read as follows:

*"1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the Contracting State of which he is a resident or, if his case comes under paragraph 1 of Article 24, to that of the Contracting State of which he is a national. The case must be presented within three years from the first notification of the action resulting in taxation not in accordance with the provisions of the Convention."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, notably by adding the second sentence. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. Where a resident of a Contracting State considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the national laws of those States, present his case to the competent authority of the Contracting State of which he is a resident."*

**Paragraph 2:** Amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977, notably by adding the second sentence. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. The competent authority shall endeavour, if the objection appears to it to be justified and if it is not itself able to arrive at an appropriate solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation not in accordance with the Convention."*

**Paragraph 3:** Unchanged since the adoption of the 1963 Draft Convention by the OECD Council on 30 July 1963.

**Paragraph 4:** Amended on 21 September 1995 by the report entitled "The 1995 Update to the ==Model Tax Convention=="", adopted by the OECD Council on 21 September 1995. In the 1963 Model Convention (adopted by the OECD Council on 30 July 1963) and until 21 September 1995, paragraph 4 read as follows:

*"4. The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs. When it seems advisable in order to reach agreement to have an oral exchange of opinions, such exchange may take place through a Commission consisting of representatives of the competent authorities of the Contracting States."*

**Paragraph 5:** Amended on 21 November 2017 by the report entitled "The 2017 Update to the ==Model Tax Convention=="", adopted by the OECD Council on 21 November 2017. After 17 July 2008 and until 21 November 2017, paragraph 5 read as follows:

"5. Where,

*a) under paragraph 1, a person has presented a case to the competent authority of a Contracting State on the basis that the actions of one or both of the Contracting States have resulted for that person in taxation not in accordance with the provisions of this Convention, and*

*b) the competent authorities are unable to reach an agreement to resolve that case pursuant to paragraph 2 within two years from the presentation of the case to the competent authority of the other Contracting State,*

any unresolved issues arising from the case shall be submitted to arbitration if the person so requests. These unresolved issues shall not, however, be submitted to arbitration if a decision on these issues has already been rendered by a court or administrative tribunal of either State. Unless a person directly affected by the case does not accept the mutual agreement that implements the arbitration decision, that decision shall be binding on both Contracting States and shall be implemented notwithstanding any time limits in the domestic laws of these States. The competent authorities of the Contracting States shall by mutual agreement settle the mode of application of this paragraph.1

---

1 In some States, national law, policy or administrative considerations may not allow or justify the type of dispute resolution envisaged under this paragraph. In addition, some States may only wish to include this paragraph in treaties with certain States. For these reasons, the paragraph should only be included in the Convention where each State concludes that it would be appropriate to do so based on the factors described in paragraph 65 of the Commentary on the paragraph. As mentioned in paragraph 74 of that Commentary, however, other States may be able to agree to remove from the paragraph the condition that issues may not be submitted to arbitration if a decision on these issues has already been rendered by one of their courts or administrative tribunals."

---

Paragraph 5 was added on 17 July 2008 by the report entitled "The 2008 Update to the Model Tax Convention", adopted by the OECD Council on 17 July 2008.

### ARTICLE 26 EXCHANGE OF INFORMATION

1. The competent authorities of the Contracting States shall exchange such information as is foreseeably relevant for carrying out the provisions of this Convention or to the administration or enforcement of the domestic laws concerning taxes of every kind and description imposed on behalf of the Contracting States, or of their political subdivisions or local authorities, insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Articles 1 and 2.

2. Any information received under paragraph 1 by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) concerned with the assessment or collection of, the enforcement or prosecution in respect of, the determination of appeals in relation to the taxes referred to in paragraph 1, or the oversight of the above. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions. Notwithstanding the foregoing, information received by a Contracting State may be used for other purposes when such information may be used for such other purposes under the laws of both States and the competent authority of the supplying State authorises such use.

3. In no case shall the provisions of paragraphs 1 and 2 be construed so as to impose on a Contracting State the obligation:

*a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;*

*b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;*

*c) to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process, or information the disclosure of which would be contrary to public policy (ordre public).*

4. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall use its information gathering measures to obtain the

requested information, even though that other State may not need such information for its own tax purposes. The obligation contained in the preceding sentence is subject to the limitations of paragraph 3 but in no case shall such limitations be construed to permit a Contracting State to decline to supply information solely because it has no domestic interest in such information.

5. In no case shall the provisions of paragraph 3 be construed to permit a Contracting State to decline to supply information solely because the information is held by a bank, other financial institution, nominee or person acting in an agency or a fiduciary capacity or because it relates to ownership interests in a person.

## HISTORY

**Paragraph 1:** Corresponds to the first two sentences of paragraph 1 as they read before 15 July 2005. The first two sentences of Paragraph 1 were amended and the third and subsequent sentences were incorporated into paragraph 2 (see history of paragraph 2) by the report entitled "The 2005 Update to the **Model Tax Convention**", adopted by the OECD Council on 15 July 2005, on the basis of another report entitled "Changes to Articles 25 and 26 of the **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 1 June 2004). After 29 April 2000 and until 15 July 2005, paragraph 1 read as follows:

*"1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws concerning taxes of every kind and description imposed on behalf of the Contracting States, or of their political subdivisions or local authorities, insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Articles 1 and 2. Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) concerned with the assessment or collection of, the enforcement or prosecution in respect of, or the determination of appeals in relation to the taxes referred to in the first sentence. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions."*

Paragraph 1 was previously amended on 29 April 2000 by the report entitled "The 2000 Update to the **Model Tax Convention**", adopted by the OECD Committee on Fiscal Affairs on 29 April 2000. After 21 September 1995 and until 29 April 2000, paragraph 1 read as follows:

*"1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Article 1. Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) concerned with the assessment or collection of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions."*

Paragraph 1 was previously amended on 21 September 1995, by replacing the words "involved in" with "concerned with", by the report entitled "The 1995 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 September 1995. In the 1977 Model Convention and until 21 September 1995, paragraph 1 read as follows:

*"1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Article 1. Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment or collection of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions."*

Paragraph 1 was previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 1 read as follows:

*"1. The competent authorities of the Contracting States shall exchange such information as is necessary for the carrying out of this Convention and of the domestic laws of the Contracting States concerning taxes covered by this Convention insofar as the taxation thereunder is in accordance with this Convention. Any information so exchanged shall be treated as secret and shall not be disclosed to any persons or authorities other than those concerned with the assessment or collection of the taxes which are the subject of the Convention."*

**Paragraph 2:** Amended on 15 July 2014, by adding the last sentence, by the report entitled "The 2014 Update to the ==Model Tax Convention==", adopted by the OECD Council on 15 July 2014, on the basis of the report "Draft Amendments to Article 26 of the OECD ==Model Tax Convention== and its Commentary", adopted by the OECD Council on 17 July 2012 and applicable from that date. After 15 July 2005 and until 15 July 2014, paragraph 2 read as follows:

*"2. Any information received under paragraph 1 by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) concerned with the assessment or collection of, the enforcement or prosecution in respect of, the determination of appeals in relation to the taxes referred to in paragraph 1, or the oversight of the above. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions."*

Paragraph 2 as it read after 15 July 2005 corresponded to the third and subsequent sentences of paragraph 1 as they read before 15 July 2005. Those sentences were amended and incorporated into a new paragraph 2 by the report entitled "The 2005 Update to the ==Model Tax Convention==", adopted by the OECD Council on 15 July 2005, on the basis of another report entitled "Changes to Articles 25 and 26 of the ==Model Tax Convention==" (adopted by the OECD Committee on Fiscal Affairs on 1 June 2004) (see history of paragraph 1). At the same time, paragraph 2 was renumbered as paragraph 3 (see history of paragraph 3) and amended to include a cross-reference to paragraph 2.

**Paragraph 3:** Corresponds to paragraph 2 as it read before 15 July 2005. On that date, paragraph 2 was renumbered as paragraph 3 and amended, by adding a cross-reference to paragraph 2, by the report entitled "The 2005 Update to the ==Model Tax Convention==", adopted by the OECD Council on 15 July 2005, on the basis of another report entitled "Changes to Articles 25 and 26 of the ==Model Tax Convention==" (adopted by the OECD Committee on Fiscal Affairs on 1 June 2004). In the 1977 Model Convention and until 15 July 2005, paragraph 2 read as follows:

*"2. In no case shall the provisions of paragraphs 1 and be construed so as to impose on a Contracting State the obligation:*

*a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;*

*b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;*

*c) to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process, or information, the disclosure of which would be contrary to public policy (ordre public)."*

Paragraph 2 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 read as follows:

*"2. In no case shall the provisions of paragraph 1 be construed so as to impose on one of the Contracting States the obligation:*

*a) to carry out administrative measures at variance with the laws or the administrative practice of that or of the other Contracting State;*

*b) to supply particulars which are not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;*

*c)* to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process, or information, the disclosure of which would be contrary to public policy (ordre public)."

**Paragraph 4:** Added on 15 July 2005 by the report entitled "The 2005 Update to the **Model Tax Convention**", adopted by the OECD Council on 15 July 2005, on the basis of another report entitled "Changes to Articles 25 and 26 of the **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 1 June 2004).

**Paragraph 5:** Added on 15 July 2005 by the report entitled "The 2005 Update to the **Model Tax Convention**", adopted by the OECD Council on 15 July 2005, on the basis of another report entitled "Changes to Articles 25 and 26 of the **Model Tax Convention**" (adopted by the OECD Committee on Fiscal Affairs on 1 June 2004).

### ARTICLE 27 ASSISTANCE IN THE COLLECTION OF TAXES

In some countries, national law, policy or administrative considerations may not allow or justify the type of assistance envisaged under this Article or may require that this type of assistance be restricted, e.g. to countries that have similar tax systems or tax administrations or as to the taxes covered. For that reason, the Article should only be included in the Convention where each State concludes that, based on the factors described in paragraph 1 of the Commentary on the Article, they can agree to provide assistance in the collection of taxes levied by the other State.

1. The Contracting States shall lend assistance to each other in the collection of revenue claims. This assistance is not restricted by Articles 1 and 2. The competent authorities of the Contracting States may by mutual agreement settle the mode of application of this Article.

2. The term "revenue claim" as used in this Article means an amount owed in respect of taxes of every kind and description imposed on behalf of the Contracting States, or of their political subdivisions or local authorities, insofar as the taxation thereunder is not contrary to this Convention or any other instrument to which the Contracting States are parties, as well as interest, administrative penalties and costs of collection or conservancy related to such amount.

3. When a revenue claim of a Contracting State is enforceable under the laws of that State and is owed by a person who, at that time, cannot, under the laws of that State, prevent its collection, that revenue claim shall, at the request of the competent authority of that State, be accepted for purposes of collection by the competent authority of the other Contracting State. That revenue claim shall be collected by that other State in accordance with the provisions of its laws applicable to the enforcement and collection of its own taxes as if the revenue claim were a revenue claim of that other State.

4. When a revenue claim of a Contracting State is a claim in respect of which that State may, under its law, take measures of conservancy with a view to ensure its collection, that revenue claim shall, at the request of the competent authority of that State, be accepted for purposes of taking measures of conservancy by the competent authority of the other Contracting State. That other State shall take measures of conservancy in respect of that revenue claim in accordance with the provisions of its laws as if the revenue claim were a revenue claim of that other State even if, at the time when such measures are applied, the revenue claim is not enforceable in the first-mentioned State or is owed by a person who has a right to prevent its collection.

5. Notwithstanding the provisions of paragraphs 3 and 4, a revenue claim accepted by a Contracting State for purposes of paragraph 3 or 4 shall not, in that State, be subject to the time limits or accorded any priority applicable to a revenue claim under the laws of that State by reason of its nature as such. In addition, a revenue claim accepted by a Contracting State for the purposes of paragraph 3 or 4 shall not, in that State, have any priority applicable to that revenue claim under the laws of the other Contracting State.

6. Proceedings with respect to the existence, validity or the amount of a revenue claim of a Contracting State shall not be brought before the courts or administrative bodies of the other Contracting State.

7. Where, at any time after a request has been made by a Contracting State under paragraph 3 or 4 and before the other Contracting State has collected and remitted the relevant revenue claim to the first-mentioned State, the relevant revenue claim ceases to be

*a) in the case of a request under paragraph 3, a revenue claim of the first-mentioned State that is enforceable under the laws of that State and is owed by a person who, at that time, cannot, under the laws of that State, prevent its collection, or*

*b) in the case of a request under paragraph 4, a revenue claim of the first-mentioned State in respect of which that State may, under its laws, take measures of conservancy with a view to ensure its collection*

the competent authority of the first-mentioned State shall promptly notify the competent authority of the other State of that fact and, at the option of the other State, the first-mentioned State shall either suspend or withdraw its request.

8. In no case shall the provisions of this Article be construed so as to impose on a Contracting State the obligation:

*a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;*

*b) to carry out measures which would be contrary to public policy (ordre public);*

*c) to provide assistance if the other Contracting State has not pursued all reasonable measures of collection or conservancy, as the case may be, available under its laws or administrative practice;*

*d) to provide assistance in those cases where the administrative burden for that State is clearly disproportionate to the benefit to be derived by the other Contracting State.*

## HISTORY

**The title of Article 27:** Replaced on 28 January 2003 when the previous Article 27 (Members of Diplomatic Missions and Consular Posts) was renumbered as Article 28 (see history of Article 28) and a new Article 27 (Assistance in the Collection of Taxes) was added by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**Paragraph 1:** Replaced on 28 January 2003 when paragraph 1 was renumbered as paragraph 1 of Article 28 (see history of paragraph 1 of Article 28) and a new paragraph 1 was added by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003 (see history of Article 28).

**Paragraph 2:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

**Paragraph 3:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

**Paragraph 4:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

**Paragraph 5:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

**Paragraph 6:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

**Paragraph 7:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

**Paragraph 8:** Added on 28 January 2003 by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2002.

## ARTICLE 28 MEMBERS OF DIPLOMATIC MISSIONS AND CONSULAR POSTS

Nothing in this Convention shall affect the fiscal privileges of members of diplomatic missions or consular posts under the general rules of international law or under the provisions of special agreements.

## HISTORY

Article 28 corresponds to Article 27 as it read before 28 January 2003. The previous Article 28 (Territorial Extension) was renumbered as Article 29 (see history of Article 30) and Article 27 was renumbered as Article 28 as a consequence of the addition of a new Article

27 (Assistance in the Collection of Taxes) by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

Article 27 and its title were amended on 31 March 1994 by the report entitled "1994 Update to the **Model Tax Convention**", adopted by the OECD Council on 31 March 1994. In the 1977 Model Convention and until 31 March 1994, Article 27 and its title read as follows:

*"DIPLOMATIC AGENTS AND CONSULAR OFFICERS*

*Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreements."*

Article 27 and its title were previously amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 27 and its title read as follows:

**"DIPLOMATIC AND CONSULAR OFFICIALS**

*Nothing in this Convention shall affect the fiscal privileges of diplomatic or consular officials under the general rules of international law or under the provisions of special agreements."*

**ARTICLE 29 ENTITLEMENT TO BENEFITS**

The drafting of this Article will depend on how the Contracting States decide to implement their common intention, reflected in the preamble of the Convention and incorporated in the minimum standard agreed to as part of the OECD/G20 Base Erosion and Profit Shifting Project, to eliminate double taxation without creating opportunities for non-taxation or reduced taxation through tax evasion or avoidance, including through treaty-shopping arrangements. This may be done either through the adoption of paragraph 9 only, through the adoption of the detailed version of paragraphs 1 to 7 that is described in the Commentary on Article 29 together with the implementation of an anti-conduit mechanism as described in paragraph 187 of that Commentary, or through the adoption of paragraph 9 together with any variation of paragraphs 1 to 7 described in the Commentary on Article 29.

1. [Provision that, subject to paragraphs 3 to 5, restricts treaty benefits to a resident of a Contracting State who is a "qualified person" as defined in paragraph 2].

2. [Definition of situations where a resident is a qualified person, which covers

— an individual;

— a Contracting State, its political subdivisions and their agencies and instrumentalities;

— certain publicly-traded companies and entities;

— certain affiliates of publicly-listed companies and entities;

— certain non-profit organisations and recognised pension funds;

— other entities that meet certain ownership and base erosion requirements;

— certain collective investment vehicles].

3. [Provision that provides treaty benefits to certain income derived by a person that is not a qualified person if the person is engaged in the active conduct of a business in its State of residence and the income emanates from, or is incidental to, that business].

4. [Provision that provides treaty benefits to a person that is not a qualified person if at least more than an agreed proportion of that entity is owned by certain persons entitled to equivalent benefits].

5. [Provision that provides treaty benefits to a person that qualifies as a "headquarters company"].

6. [Provision that allows the competent authority of a Contracting State to grant certain treaty benefits to a person where benefits would otherwise be denied under paragraph 1].

7. [Definitions applicable for the purposes of paragraphs 1 to 7].

8.

*a) Where*

*(i) an enterprise of a Contracting State derives income from the other Contracting State and the first-mentioned State treats such income as attributable to a permanent establishment of the enterprise situated in a third jurisdiction, and*

*(ii) the profits attributable to that permanent establishment are exempt from tax in the first-mentioned State,*

*the benefits of this Convention shall not apply to any item of income on which the tax in the third jurisdiction is less than the lower of [rate to be determined bilaterally] of the amount of that item of income and 60 per cent of the tax that would be imposed in the first-mentioned State on that item of income if that permanent establishment were situated in the first-mentioned State. In such a case any income to which the provisions of this paragraph apply shall remain taxable according to the domestic law of the other State, notwithstanding any other provisions of the Convention.*

*b) The preceding provisions of this paragraph shall not apply if the income derived from the other State emanates from, or is incidental to, the active conduct of a business carried on through the permanent establishment (other than the business of making, managing or simply holding investments for the enterprise's own account, unless these activities are banking, insurance or securities activities carried on by a bank, insurance enterprise or registered securities dealer, respectively).*

*c) If benefits under this Convention are denied pursuant to the preceding provisions of this paragraph with respect to an item of income derived by a resident of a Contracting State, the competent authority of the other Contracting State may, nevertheless, grant these benefits with respect to that item of income if, in response to a request by such resident, such competent authority determines that granting such benefits is justified in light of the reasons such resident did not satisfy the requirements of this paragraph (such as the existence of losses). The competent authority of the Contracting State to which a request has been made under the preceding sentence shall consult with the competent authority of the other Contracting State before either granting or denying the request.*

9. Notwithstanding the other provisions of this Convention, a benefit under this Convention shall not be granted in respect of an item of income or capital if it is reasonable to conclude, having regard to all relevant facts and circumstances, that obtaining that benefit was one of the principal purposes of any arrangement or transaction that resulted directly or indirectly in that benefit, unless it is established that granting that benefit in these circumstances would be in accordance with the object and purpose of the relevant provisions of this Convention.

**HISTORY**

**The title of Article 29:** Replaced on 21 November 2017 when the previous Article 29 (Territorial Extension) was renumbered as Article 30 (see history of Article 30) and a new Article 29 (Entitlement to Benefits) was added, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 1:** Replaced on 21 November 2017 when paragraph 1 was renumbered as paragraph 1 of Article 30 (see history of paragraph 1 of Article 30) and a new paragraph 1 was added, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 2:** Replaced on 21 November 2017 when paragraph 2 was renumbered as paragraph 2 of Article 30 (see history of paragraph 2 of Article 30) and a new paragraph 2 was added, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 3:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 4:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 5:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 6:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 7:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 8:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, as a result of follow-up work on another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**Paragraph 9:** Added on 21 November 2017 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017, on the basis of another report entitled "Preventing the Granting of Treaty Benefits in Inappropriate Circumstances, Action 6 — Final Report", endorsed by the G20 at the 2015 G20 Antalya Summit on 15-16 November 2015.

**ARTICLE 30 TERRITORIAL EXTENSION**

The words between brackets are of relevance when, by special provision, a part of the territory of a Contracting State is excluded from the application of the Convention.

1. This Convention may be extended, either in its entirety or with any necessary modifications [to any part of the territory of (State A) or of (State B) which is specifically excluded from the application of the Convention or], to any State or territory for whose international relations (State A) or (State B) is responsible, which imposes taxes substantially similar in character to those to which the Convention applies. Any such extension shall take effect from such date and subject to such modifications and conditions, including conditions as to termination, as may be specified and agreed between the Contracting States in notes to be exchanged through diplomatic channels or in any other manner in accordance with their constitutional procedures.

2. Unless otherwise agreed by both Contracting States, the termination of the Convention by one of them under Article 32 shall also terminate, in the manner provided for in that Article, the application of the Convention [to any part of the territory of (State A) or of (State B) or] to any State or territory to which it has been extended under this Article.

**HISTORY**

Article 30 corresponds to Article 29 as it read before 21 November 2017. On that date, Article 29 was renumbered as Article 30 as a consequence of the addition of a new Article 29 (Entitlement to Benefits) and the renumbering of the following Articles by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017.

Article 29 as it read after 28 January 2003 corresponded to Article 28 as it read before that date. On 28 January 2003, the Article 29 (Entry into Force) was renumbered as Article 30 (see history of Article 31) and Article 28 was renumbered as Article 29 as a consequence of the addition of a new Article 27 (Assistance in the Collection of Taxes) and the renumbering of the following Articles, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**Paragraph 1:** Corresponds to paragraph 1 of Article 29 as it read before 21 November 2017. On that date, Article 30 was renumbered as Article 31 (see history of paragraph 1 of Article 31) and paragraph 1 of Article 29 was renumbered as paragraph 1 of Article 30, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017.

Paragraph 1 of Article 29 as it read after 28 January 2003 corresponded to paragraph 1 of Article 28 of the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963). On 28 January 2003, paragraph 1 of Article 29 was renumbered as paragraph 1 of Article 30 (see history of paragraph 2 of Article 31) and paragraph 1 of Article 28 was renumbered as paragraph 1 of Article 29, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**Paragraph 2:** Corresponds to paragraph 2 of Article 29 as it read before 21 November 2017. On that date, paragraph 2 of Article 29 was renumbered as paragraph 2 of Article 30 by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017. After 28 January 2003 and until 21 November 2017, paragraph 2 read as follows:

*"2. Unless otherwise agreed by both Contracting States, the termination of the Convention by one of them under Article 31 shall also terminate, in the manner provided for in that Article, the application of the Convention [to any part of the territory of (State A) or of (State B) or] to any State or territory to which it has been extended under this Article."*

Paragraph 2 as it read after 28 January 2003 corresponded to paragraph 2 of Article 28 as it read before that date. On 28 January 2003, paragraph 2 of Article 29 was renumbered as paragraph 2 of Article 30 (see history of paragraph 2 of Article 31) and paragraph 2 of Article 28 was renumbered as paragraph 2 of Article 29, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

Paragraph 2 of Article 28 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, paragraph 2 of Article 28 read as follows:

*"2. Unless otherwise agreed by both Contracting States, the denunciation of the Convention by one of them under Article 30 shall terminate, in the manner provided for in that Article, the application of the Convention [to any part of the territory of (State A) or of (State B) or] to any State or territory to which it has been extended under this Article."*

**Chapter VII**

**FINAL PROVISIONS**

**ARTICLE 31 ENTRY INTO FORCE**

1. This Convention shall be ratified and the instruments of ratification shall be exchanged at ................... as soon as possible.

2. The Convention shall enter into force upon the exchange of instruments of ratification and its provisions shall have effect:

*a) (in State A):* .....................................

*b) (in State B):* .....................................

**HISTORY**

Article 31 corresponds to Article 30 as it read before 21 November 2017. On that date, Article 30 was renumbered as Article 31 as a consequence of the addition of a new Article 29 (Entitlement to Benefits) and the renumbering of the following Articles by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017.

Article 30 as it read after 28 January 2003 corresponded to Article 29 as it read before that date. On 28 January 2003, Article 29 was renumbered as Article 30 and Article 30 (Termination) was renumbered as Article 31 (see history of Article 32) as a consequence of the addition of a new Article 27 (Assistance in the Collection of Taxes) and the renumbering of the following Articles, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**Paragraph 1:** Corresponds to paragraph 1 of Article 30 as it read before 21 November 2017. On that date, paragraph 1 of Article 31 was renumbered as paragraph 1 of Article 32 (see history of paragraph 1 of Article 32) and paragraph 1 of Article 30 was renumbered as paragraph 1 of Article 31, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017.

Paragraph 1 of Article 30 as it read after 28 January 2003 corresponded to paragraph 1 of Article 29 of the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963). On 28 January 2003, paragraph 1 of Article 30 was renumbered as paragraph 1 of Article 31 (see history of paragraph 1 of Article 32) and paragraph 1 of Article 29 was renumbered as paragraph 1 of Article 30, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**Paragraph 2:** Corresponds to paragraph 2 of Article 30 as it read before 21 November 2017. On that date, paragraph 2 of Article 31 was renumbered as paragraph 2 of Article 32 (see history of paragraph 2 of Article 32) and paragraph 2 of Article 30 was renumbered as paragraph 2 of Article 31, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017.

Paragraph 2 of Article 30 as it read after 28 January 2003 corresponded to paragraph 2 of Article 29 of the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963). On 28 January 2003, paragraph 2 of Article 30 was renumbered as paragraph 2 of Article 31 (see history of paragraph 2 of Article 32) and paragraph 2 of Article 29 was renumbered as paragraph 2 of Article 30, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

**ARTICLE 32 TERMINATION**

This Convention shall remain in force until terminated by a Contracting State. Either Contracting State may terminate the Convention, through diplomatic channels, by giving notice of termination at least six months before the end of any calendar year after the year ....... In such event, the Convention shall cease to have effect:

*a) (in State A): ..........................................*

*b) (in State B): ..........................................*

**TERMINAL CLAUSE1**

**1 The terminal clause concerning the signing shall be drafted in accordance with the constitutional procedure of both Contracting States.**

**HISTORY**

Article 32 corresponds to Article 31 as it read before 21 November 2017. On that date, Article 31 was renumbered as Article 32 as a consequence of the addition of a new Article 29 (Entitlement to Benefits) and the renumbering of the following Articles, by the report entitled "The 2017 Update to the **Model Tax Convention**", adopted by the OECD Council on 21 November 2017.

Article 31 as it read after 28 January 2003 corresponded to Article 30 as it read before that date. On 28 January 2003, Article 30 was renumbered as Article 31 as a consequence of the addition of a new Article 27 (Assistance in the Collection of Taxes) and the renumbering of the following Articles, by the report entitled "The 2002 Update to the **Model Tax Convention**", adopted by the OECD Council on 28 January 2003.

Article 30 was amended when the 1977 Model Convention was adopted by the OECD Council on 11 April 1977. In the 1963 Draft Convention (adopted by the OECD Council on 30 July 1963) and until the adoption of the 1977 Model Convention, Article 30 read as follows:

*"This Convention shall remain in force until denounced by one of the Contracting States. Either Contracting State may denounce the Convention, through diplomatic channels, by giving notice*

*of termination at least six months before the end of any calendar year after the year ...... In such
event, the Convention shall cease to have effect:*

*a) in (State A): ..................*

*b) in (State B): ..................”*

OECD **Model Tax Convention** (Full Version) © OECD 2017

This work is exclusively and solely owned by OECD. OECD does not warrant, and shall not
be liable for, the accuracy and completeness of this work, and documentation related to it.

**Bloomberg Tax**

Bloomberg Industry Group

About Us

Contact Us

Site

Advisors

Professional Learning

Help

Live Chat & Help

What's New

Video Tutorials

24/7 Bloomberg Tax Help Desk

833.697.9559

help@bloombergtax.com

Terms of Service    Privacy Policy    Copyright    Accessibility    © 2022 The Bureau of National Affairs, Inc. All Rights Reserved.    ISSN 2473-0092