# Exhibit 55

# Share capital gain - acquisition cost - acquisition date - deferred delivery date

Previous instance: Order of the National Tax Tribunal of 19 November 2008, 07-03412

| | |
|---|---|
| Date of release | 13 Apr 2010 09:28 |
| Date of judgment / ruling / decision / control signal | 26 Mar 2010 09:13 |
| SKM number | SKM2010.259.BR |
| Authority | city Court |
| Case number | BS 4-256 / 2009 |
| Document type | Dom |
| Overall topics | treasure |
| Topics Topics | Shares and other securities as well as intellectual property rights |
| Keywords | Option, agreement, legal claim, issue |
| Summary | On 28 February 2003, H1 A / S relinquished shares on terms of consideration in the form of either 660,000 shares. shares in the acquiring company or the market value of 660,000 pcs. shares in the acquiring company at the time of payment. The consideration in the form of shares or money was to be paid within a period of one year, and the buyer had the right to decide both with regard to the time of payment / delivery within this term and with regard to the choice of form of consideration (shares / money). |
| | The buyer chose to pay the consideration with 660,000 pieces. shares at the end of the term after one year, and H1 A / S resold shortly after the shares in question. |
| | That was the value of the 660,000 pieces. shares at the time of the agreement on 28 February 2003 - and not the significantly higher value at the time of delivery on 28 February 2004 - which was to be used as the acquisition price in the profit and loss statement after the resale. The court placed decisive emphasis on the fact that H1 A / S bore the exchange rate risk during the forward period. |
| Reference (s) | The Capital Gains Taxation Act, section 2, subsection 1 (current) |
| Reference | Equation Guide 2010-1 SG2.5 |

## Parties

| |
|---|
| H1 A / S |
| (lawyer Jesper Bierregaard) |
| against |
| Ministry of Taxation |
| (Chamber Advocate v / lawyer Lars Apostoli) |

## Judged by the city court judges

| |
|---|
| Niels Bjerre, Linda Hangaard and Jan Tino Knudsen |

## Background to the case and the allegations of the parties

On 28 February 2003, H1 A / S sold 24 shares in a Polish company to G1 A / S. In return for this, the parties agreed that H1 A / S should have nom. DKK 660,000 shares in G1 ApS or a cash amount corresponding to the market value of the shares at the time of payment. According to the agreement, the

remuneration was to be corrected after G1 ApS's election no later than 28 February 2004.

G1 ApS has paid the consideration in the form of nom. DKK 600,000 shares in the company on 27 February 2004, and H1 A / S later in the company's income year 2004 sold nom. DKK 448,300 of these shares.

The case concerns whether it is the value of the shares on 28 February 2003 or the value of the shares on 27 February 2004 that must be used as the basis for H1 A / S 'acquisition price for the shares pursuant to section 6 (1) of the current Capital Gains Taxation Act. 2.

*H1 A / S* has filed a claim that the Ministry of Taxation must be obliged to recognize that H1 A / S 'share loss for the income year 2004 amounts to DKK 3,623,608 in accordance with the tax return, where H1 A / S has used the value of the shares per. February 27, 2004

*The Ministry of Taxation* has claimed acquittal.

**Information in the case**

On 19 November 2008, the National Tax Tribunal issued a ruling relating to several points of dispute between the parties. In this it is stated, among other things:

"...

---

**The National Tax Court's decision**
...

Income year 2004

Taxable income The

tax center has increased the income with a gain on a forward contract by DKK 3,135,000.

The National Tax Court reduces the employment by DKK 3,135,000 and increases the employment by DKK 9,242,602

...

Case information

The company H1 A / S is the parent company of a larger group, whose idea base is to deliver environmentally sound solutions based on society's requirements, expectations and development, including in relation to wind turbines, biofuels, etc. At the end of 2003, the company is owned directly and indirectly by B and C. The company has calendar annual accounts.

The Group realized an accounting loss of DKK 46,026 thousand in the income year 2002. The Group's continued operation was conditional on a number of pending cases concerning "existing turbines" being won. If the cases were not won, H1 A / S could not immediately continue operations.

Due to the financial problems, it was decided during 2002 to significantly reduce the group's activity level.

This is the reason why H1 A / S entered into an agreement on 28 February 2003 to sell its entire shareholding of 60% of the share capital in the Polish company, H2 zoo, to G1 A / S. The remaining 40% of H2 zoo was owned by G2 ApS. G1 A / S entered into a joint agreement with H1 A / S and G2 ApS on the purchase of the shares in H2 zoo (Share Purchase Agreement)

G1 A / S is an energy company that produces electricity by utilizing wind power. The company's purchase of shares in H2 zoo, which, among other things, owns land lease agreements in Poland, was a strategic move in its efforts to enter the Eastern European market.

The Share Purchase Agreement states, among other things.

4. Take over date and management of the company.

4.1. The Take Over Date of the shares is 1 March 2003.

...

4.3. At the take over Date the Purchaser takes over full control of the Company including the full voting rights following the shares. Until the purchase price has been transferred to the Sellers cf. 6.1 the following transactions do though require unanimously consent from the Sellers:

...

Save for the exceptions mentioned and save for 4.4 the Purchaser will fully control the Company.

Furthermore, it appears that the seller has made a reservation of title in the shares sold, if the purchase price is not paid on time.

The agreement also states

6. Purchase price and payment terms

6.1. in consideration for the transfer of the Shares, the Purchaser shall pay the following:

H1 A / S

660,000 common shares of the Purchaser or a cash consideration equal hereto based on the mid market price of the Purchaser's shares on the payment date on the Copenhagen Stock Exchange. Only the Purchaser can decide the method of payment.

The payment shall be effected no later than 28. February 2004. Only the Purchaser can decide the day of payment.

H1 A / S

- 100% of the shares equal to 660,000 can be sold 12 months after the Take Over Date. No sale is allowed before.

The agreement thus states that the purchase price must be paid in the period from 28 February 2003 to 28 February 2004, and that it is the buyer (G1 A / S) who, within the period, chooses the payment date and decides whether payment is to be made in cash. or by consideration with shares in G1 A / S. Cash payment is calculated on the basis of the share price of G1 A / S shares on the payment date.

Of the agreement's clause. 6.3 further states that H1 A / S in addition to the payment in the form of 660,000 pcs. shares in G1 A / S, must have a project bonus (earnout) of 8000 euros per. completed project. The parties have calculated a capitalized value of the bonus agreement at DKK 10,600,512, corresponding to 50% of the project portfolio registered in the purchase agreement.

corresponding to 50% of the project portfolio registered in the purchase agreement.

G1 A / S chose to pay the purchase price in the form of 660,000 pieces. shares in G1 A / S. In this connection, the company's capital was increased by non-cash contributions in accordance with the decision of the Board of Directors on 27 February 2004.

Under the agreement, H1 A / S was imposed a "lock period", according to which the shares in G1 A / S could not be sold until 12 months after the acquisition date of 1 March 2003, ie not before 1 March 2004.

H1 A / S chose to sell 448,300 pieces. shares in G1 A / S in the income year 2004. The remaining part of the shares, ie. 211,700 pcs. shares, were sold in the income year 2005. The shares in 2004 were sold for a total of DKK 13,250,404 (after costs).

The shares in G1 A / S had per. 28 February 2003 a price of DKK 8.94 per. share, and per. February 27, 2004 at DKK 37.64 per. shares. In 2004, the company declared tax losses on capital transfers of DKK 3,623,608 (DKK 13,250,404 - (448,300 x DKK 37.64)).

In its annual report for 2003, the company has under the balance sheet per. 31 December 2003 included inflow of listed securities with DKK 6,032,000 value-adjusted during the year with DKK 15,682,000, or to a total value of DKK 21,714,000. The entry is stated under financial fixed assets and attached to a remark that the listed securities are included as consideration for the sale of an associated company in 2003. According to the agreement, the shares were entered in the company's custody on 1 March 2004. The amount of the DKK 15,682,000 is reversed in the calculation of the taxable income with the text:

Unrealized price gains on G1 ApS shares. This is an indirect profit from the sale of H2 zoo, as this sale price will be paid as cash or shares in G1 ApS on 31 March 2004.

In its annual report for 2003, G1 A / S referred to the acquisition of H2 zoo as follows

In the management report during international activities, Poland

G1 ApS therefore entered into an agreement on 01.03.03 for the purchase of the Polish company H2 zoo, which was established in 1997 and since the beginning has been working on the development of wind turbine projects in the northern part of Poland. The purchase price for the company was agreed at 1,050,000. shares in G1 ApS. In addition, a royalty of EUR 8,000 / MW is paid on the realization of the projects that were entered in the company's books at the time of the acquisition.

In the management's report under Accounting report, debt

Equity per On 31 December 2003, TDKK amounted to 56,006 against TDKK 44,513 at the same time in 2002. The change in equity appears, among other things, as a result of .... The full effect of the purchase of H2 zoo has also been incorporated, although the payment for this purchase, the issue of 1,010,000 new shares, has only taken place per. 01.03.04.

Under the Group's equity

The second capital increase was made as a partial payment for the company's purchase of the Polish company H2 zoo. The capital increase was made at a price of 8.94 and was finally completed on 1 March 2004, when the shares were delivered to the seller.

The Tax Center's decision

The tax center has increased the company's income for 2003 with a gain on a forward contract of DKK 15,807,000 and for 2004 of DKK 3,135,000, as the tax center has found that a forward contract has been established by the agreement on 28 February 2003.

The gain is calculated as the difference between the market value on 27 February 2004 and the market value on 28 February 2003, or a total of DKK 18,942,000 (DKK 24,842,400 - DKK 5,900,400), which is taxed according to the stock principle due to taxation. in income in the year 2003 with DKK 15,807,000 and in 2004 with DKK 3,135,000.

The Tax Center has not found that the increase in value of the G1 A / S shares from the conclusion of the agreement on 28 February 2003 to the receipt of the shares on 27 February 2004 is to be regarded as part of the sale price for the H2 zoo shares.

It is noted that the value of the traded company, H2 zoo, has not changed during this period. The decisions that exist regarding adjustment of the acquisition price / current benefits relate to all matters where adjustment takes place on the basis of circumstances that have occurred in the trading company, as opposed to the situation in this case where the price change takes place in the company that buys the shares. G1 A / S owns several other companies / activities that may have contributed to

that buys the shares. G1 A / S owns several other companies / activities that may have contributed to the price change. G1 A / S has not paid more for H2 zoo, so that the acquisition price is also unchanged in the company's accounts.

According to the agreement on 28 February 2003, the shares in H2 zoo must be considered for tax purposes on this day for the market value of 660,000 shares. G1 A / S shares on the payment date (or a cash consideration corresponding to this value) By the agreement, the founder's forward contract is covered by section 29 of the Capital Gains Act, as G1 A / S is obliged to transfer shares in the company / cash to H1 A / S no later than 28 February 2004 for a price corresponding to the value of the H2 zoo shares at the time of the agreement on 28 February 2003. Normally, services are not exchanged until the expiry date of a forward contract, but in this situation H1 A / S has already paid its share at the time of the agreement on 28 February 2003 in the form of shares in H2 zoo

The representative's allegations that a claim has been created by the agreement state that this is not the case, as there are several possibilities for fulfillment of the payment obligation.

The tax center is thus of the opinion that with the agreement on 28 February 2003, a forward contract was entered into covered by section 29 of the Capital Gains Act. H1 A / S entered into an agreement to receive shares in G1 A / S at a fixed price in the future, or February 27, 2004 to receive 660,000 pieces. G1 A / S shares for the price on 28 February 2003.

...

The company's claim and arguments

The company's representative has filed a principal claim that the company's income in 2003 be reduced with the employee increase of DKK 15,807,000 and in 2004 with the employee increase of DKK 3,135,000. Furthermore, a subsidiary claim has been filed that no extraordinary can take place. employment of the company's income for 2003, as the conditions for this are not met. The profit in 2004 can, if it is found that there is a financial contract, be calculated at DKK 3,125,000.

In support of the principal claim, it is stated that already because the shares in H2 zoo must be considered transferred to G1 A / S on 1 March 2003, no forward contract can have been entered into.

To the tax centre's remarks that H1 A / S on 28 February 2003 is considered to have entered into an agreement to purchase shares in G1 A / S at a fixed price in the future, it is stated that H1 A / S from after the agreement to be the seller to be the buyer. The parties' intention with the agreement is that H1 A / S will sell shares in H2 zoo, and that G1 A / S will buy these. Nowhere in the agreement does it appear that it is the intention of the agreement that H1 A / S shall acquire shares in G1 A / S. The view is supported by the fact that H1 A / S has no influence on whether the company receives shares or cash in connection with the consideration. When concluding the agreement, it was taken into account that G1 A / S is listed on the stock exchange, and that as a result it would be easy to divest the shares subsequently, so that the liquidity of H1 A / S could be improved.

Furthermore, it is stated that this is an agreement between independent parties. There is therefore no basis for overriding this. In addition, the wording of the agreement is clear and unambiguous and must therefore be taken into account, including in determining the tax consequences for the parties.

In support of his views, the Representative referred to decisions referred to in SKM2006.233.LSR , LSRM1977.117LSR, SKM2003.78.LR and SKM2003.457.LR . Furthermore, reference is made to the Equation Guide 2007-4, section SG6.1 . and SG2.4. 
...

In a supplementary post on the possible application of the Capital Gains Taxation Act, reference is initially made to section 1 (1) of the current Capital Gains Taxation Act. 2, 2nd sentence, according to which gains and losses on the disposal of a subscription right to shares and on the disposal of share rights are taxed in accordance with the law.

Next, reference is made to the preparatory work for the current Capital Gains Tax Act, L78 2005, which states that share rights are rights to fund shares, ie. shares that are allotted to the company's shareholders in proportion to their shareholdings. As the company is not a shareholder in G1 A / S,

the company cannot be granted share rights. In the representative's opinion, given that the company does not have a legal claim to be remunerated with shares in G1 A / S, there is no basis for stating that the company has purchased a share in G1 A / S, as the remuneration, cf. the wording of the agreement, is not covered by the Danish Capital Gains Tax Act's definition of share rights.

Furthermore, it appears from the preparatory work that a subscription right to shares is a right to subscribe for shares. A subscription right may be purchased or granted and allotted subscription rights may be granted on the basis of a parent share or on another basis. In the representative's opinion, it is thus a condition that the company is entitled to be able to subscribe for shares at a pre-determined

is thus a condition that the company is entitled to be able to subscribe for shares at a pre-determined price. The company thus has no right to subscribe for shares, just as it has neither bought nor been granted a subscription right, as the remuneration, cf. the wording of the agreement, is not covered by the Danish Capital Gains Tax Act's definition of subscription rights.

A further supplementary submission to the complaint states that the shares in H2 zoo are considered to have been sold on credit on 28 February 2003, that the shares in G1 A / S are deemed to have been acquired on 27 February 2004 and that the disposal price for the shares in H2 zoo thereafter can be calculated at the price of the shares in G1 A / S per. this date, a total of DKK 24,842,000.

The accounting treatment of the capital increase in G1 A / S is in this context irrelevant.

*The National Tax Court's remarks and reasoning*

Gains and losses on forward contracts and agreements on purchase rights and sales rights must, as a starting point, be included in the calculation of the taxable income, cf. section 29 (1) of the Capital Gains Act. According to the preparatory work for the provision (L 194 1996/97), financial contracts covered by the rule are characterized by the fact that a pre-determined price must be fixed and the right must be exercised on or within a certain date. Regarding the requirement for a pre-agreed price, it appears that the price can typically be calculated accurately and already at the conclusion of the agreement.

Gains on shares must be included in the calculation of taxable income when the shares have been owned by companies for less than 3 years, cf. the current Capital Gains Taxation Act, section 2, sub-section. 1.

With the agreement on 28 February 2003, the company's shares in H2 zoo will be transferred to G1 A / S for consideration in shares in G1 A / S for delivery no later than 28 February 2004. With the agreement, G1 A / S is granted the right to instead of delivering shares to pay the market value of the shares on the payment date. Following the capital increase, G1 A / S will deliver shares to the company on 27 February 2004.

In its annual report for 2003, G1 A / S has included the capital increase under equity. The capital increase has been made at the price per. February 28, 2003, or at a price of 8.94.

The company's consideration on 28 February 2003 in the form of the right to acquire shares in G1 A / S for delivery no later than 28 February 2004, alternatively according to G1 A / S 'provision cash payment corresponding to the market value of the shares, can not be considered a financial contract according to section 29 of the Capital Gains Act, as this is not a right that must be exercised within a certain date at a pre-determined price.

The shares are instead considered, regardless of the deferred delivery date, for the acquisition at the time of the binding agreement on the acquisition on 28 February 2003, and at the price that the shares had at that time corresponding to DKK 5,900,400 (660,000 shares x 8 DKK 94) The share acquisition is thus considered to be covered by the Capital Gains Tax Act, cf. the current Capital Gains Taxation Act, section 1, subsection. 2.

As the shares at the sale of part of them in 2004 have been owned for less than 3 years, the profit, which can be calculated at DKK 9,242,602 (DKK 13,250,404 - 448,300 shares x DKK 8.94), taxable, cf. the current Capital Gains Taxation Act, section 2, subsection 1.

Neither the fact that the shares have been acquired with a deferred delivery date, nor the fact that according to G1 A / S 'provision instead of delivery of shares can be paid in cash corresponding to the value of the shares, can thus lead to a different result.

The tax assessment for the income year 2003 is then reduced by DKK 15,807,000, while the employment for the income year 2004 is reduced by DKK 3,135,000 and increased by DKK 9,242,602

... "

As mentioned in the National Tax Court's ruling, the Board of Directors of G1 A / S decided on 27 February 2004 to increase the company's capital. In a report from the board meeting on this, it is stated, among other things, the following:

"...
Only item on the agenda was the adoption of capital increase.

By the Share Transfer Agreement of 28 February 2003, G1 A / S acquired 100% of the shares in H2

zoo. The sellers were H1 A / S and G2 ApS, who owned 60% and 40% of the shares in the Polish company, respectively.

The price for 100% of the shares in the Polish company was set at 1,050,000 shares. shares in G1 A / S. Payment must be made in 2 installments in accordance with the Share Transfer Agreement. First installment of 40,000 pcs. shares have been delivered to G2 ApS on 1 November 2003. At the same time, one of G1 ApS's shareholders deposited 57,500 shares on behalf of G1 ApS. shares in favor of G2 ApS with a view to fulfilling the obligation to pr. on 1 November 2003 to deliver a total of 97,500 pieces. shares to G2 ApS. The 57,000 pcs. shares are returned to the shareholder in connection with the new issue of the remaining 1,010,000 shares. shares that are the subject of this capital increase. Thus, per. March 1, 2004 350,000 pieces are delivered. shares to G2 ApS and 660,000 pcs. shares to H1 A / S.

The Board of Directors approved a partial utilization of the authorization granted in accordance with Article 4 a of the Articles of Association to increase the company's share capital by non-cash contributions. The share capital is increased by a nominal amount of DKK 5,050,000.00 shares (1,010,000 shares of DKK 5) at a price of 178.80 (share price 8.94) (corresponding to a value of DKK 9,029,400), and at the same time the submitted draft report was approved in accordance with the Danish Companies Act, section 29, subsection. 2 and draft drawing list.

A further valuation report was submitted in accordance with section 6a of the Danish Companies Act and a statement from the Board of Directors in accordance with section 33 of the Danish Companies Act, cf. section 6 (1). 3.

... "

The valuation report referred to in accordance with section 6a of the Danish Companies Act was prepared on 26 February 2004 by the state-authorized public accountant SK. The assessment report states, among other things, the following

"...

Description and valuation of the invested assets

The deposit covers 100% of the shares in H2 zoo, a company registered in Poland that owns rights to a number of wind turbine projects. The shares are owned by H1 A / S with 60% and G2 ApS with 40%.

The fixed remuneration

The value of the shares transferred by the capital increase amounts to a total of DKK 19,970,699, which is paid in cash with DKK 10,583,699 in the form of an earn-out agreement and with shares in G1 A / S to a value of DKK 9,387,000. The part of the deposit that is repaid with shares amounts to 1,010,000. shares of DKK 5 at a price of 8.94 corresponding to a value of DKK 9,029,400 and with a share price of DKK 4,019,400, and with 40,000 shares. shares of DKK 5 corresponding to a value of DKK 357,600.

Declaration

It is our opinion that the employee value of the deposited net assets at least corresponds to the agreed consideration, including the nominal value of the shares to be issued, plus premium.

... "

The capital increase was registered with the Danish Commerce and Companies Agency on 1 March 2004, and a statement from the Agency concerning G1 A / S states: "Capital increase: DKK 5,050,000.00 ... price 178.80."

**The views of the parties**

*The plaintiff* has in particular stated in support of its claim that in the applicant's statement of profit / loss on the sale of the shares in G1 A / S in relation to the acquisition price, the price which the shares had at the time of issue in February 2004 must be used. the tax court generally recognized the principle of acquisition of law and is also in line with practice. G1 A / S could thus, in accordance with the agreement entered into of 28 February 2003, choose to pay for the plaintiff's shares either with own shares or with a cash amount. The plaintiff had not acquired ownership of the shares in G1 A / S before the company in 2004 decided to make an increase in the company's share capital by a non-cash contribution and thereafter per. March 1, 2004 to fulfill the agreement with the plaintiff by delivering

660,000 pieces. Own shares. It was not until that time that the applicant acquired ownership of the G1 A / S shares. The shares in question are a gender benefit and did not come into existence before the share extension in G1 A / S. The plaintiff's profit from the sale of the shares in G1 A / S in 2004 must therefore be calculated on the basis of an acquisition price of DKK 37.64 per share. share, and the plaintiff's loss for the income year 2004 can then, in accordance with the tax return, be calculated at DKK 3,623,608.

*Defendant* has in support of its claim for dismissal stated in particular that it follows from the principle of acquisition of rights that the time of the agreement and not the time of delivery is decisive for the calculation of the acquisition price for the shares in question in G1 A / S. By the agreement of 28 February 2003, which is also referred to as a share transfer agreement, the applicant acquired a right to 660,000 shares. equities. The fact that, according to the agreement, G1 A / S could choose to pay an amount of money corresponding to the share value at the time of payment does not change the fact that the plaintiff acquired the right to the shares in question in February 2003. shares or an amount of money corresponding to the value of the shares at the time of delivery. There is no relevant transfer agreement in the case other than the agreement was entered into between the parties on 28 February 2003, and in the minutes of the board meeting on 27 February 2004 presented at G1 A / S, it can also be stated that the company operated at a share price of 8.94. It finally follows from the transfer agreement of 28 February 2003 pkt. 6.2, compared with pkt. 4.1 that the "lock in" clause must be calculated from 1 March 2003, which also indicates that the applicant had acquired a right to the shares from that date.

**The Court's reasoning and decision**

It is agreed between the parties that it is the time of acquisition of rights that is decisive for the calculation of the acquisition price for the shares in question in G1 A / S.

By the agreement of 28 February 2003, a binding agreement was entered into that the consideration to H1 A / S for the shares sold was 660,000 shares in G1 A / S or alternatively the market value thereof at the time of payment, which according to the agreement was to take place no later than 28 February 2004.

As the consideration in the binding agreement of 28 February 2003 was thus, regardless of the choice of means of payment, tied to the share value of the shares at the time when H1 A / S within the agreed period chose to pay the consideration in accordance with the agreement entered into, and therefore was H1 A / S, which had the price risk during the period, the shares must be considered acquired at the time of the agreement on 28 February 2003. The acquisition price must then be calculated at the price of the shares on this day, and the Ministry of Taxation's claim for acquittal is therefore upheld.

As a result of the outcome of the case, H1 A / S must pay legal costs to the Ministry of Taxation. Taking into account the value of the case, as well as the nature and scope of the case, including that the main hearing had a duration of half a court day, the costs of the case are set at DKK 60,000 with the addition of VAT. The amount is to cover the Ministry of Taxation's expenses for legal assistance during the case.

**T hi is known for right**

The defendant, the Ministry of Taxation, is dismissed.

The plaintiff, H1 A / S, must pay DKK 75,000 in legal costs to the Ministry of Taxation within 14 days.