# Exhibit 64



# Obligation to withhold interest tax on interest paid to the parent company in Sweden - beneficial owner

| | |
|---|---|
| Date of release | 27 Jan 2011 15:03 |
| Date of judgment / ruling / decision / control signal | 22 Dec 2010 14:29 |
| SKM number | SKM2011.57.LSR |
| Authority | The National Tax Court |
| Case number | 09-00640 |
| Document type | Order |
| Overall topics | treasure |
| Topics Topics | Corporate taxation |
| Keywords | Beneficial owner, withholding, interest tax, parent company |
| Summary | A company was deemed liable to withhold interest tax relating to interest paid to its parent company in Sweden, which was ultimately owned by a company in Jersey, cf. section 65 D of the Withholding Tax Act and section 2 (1) of the Corporation Tax Act. 1, letter d. |
| Reference (s) | The Withholding Tax Act § 65 D<br>The Corporation Tax Act § 2, para. 1, letter d of<br>the Corporation Tax Act § 32 |
| Reference | - |
| Editorial notes | The case has been brought before the courts |

The complaint is due to the fact that the company H1 ApS is considered liable to withhold interest tax on interest paid to the parent company in Sweden, cf. section 65 D of the Withholding Tax Act and section 2 (1) of the Corporation Tax Act. 1, letter d, as the parent company is not considered the correct income recipient of the interest.

**The decision of the National Tax Court**

The National Tax Court upholds SKAT's decision, according to which H1 ApS is considered liable to withhold tax on the interest in question.

**Case information**

The company G1 Ltd., Jersey, acquired the Danish group on 1 July 2002 with the company G2 A / S at the top of the group. The company has financial years 1 July - 30 June.

On June 25, 2003, G1 Ltd. acquired 2 Swedish drawer companies, G4 AB and G5 AB.

On 26 June 2003, G4 AB transferred the shares in G2 A / S through an "unconditional shareholder contribution". The shares in the Danish company were valued at DKK X million. Euro.

At the same time, the shares in G4 AB were transferred to G5 AB for DKK X million. Euro. The transfer was financed by loans from G1 Ltd to G5 AB.

On 27 June 2003, G4 AB acquired the shares in H1 ApS from G6 ApS for Y mio. The acquisition was financed by a loan from G6 ApS to G4 AB.

On 1 July 2003, H1 ApS finally acquired the shares in G2 A / S from G4 AB for DKK X million. Euro. The purchase was financed by a loan from G4 AB to H1 ApS.

In connection with G1 Ltd.'s acquisition of the Danish group and the subsequent restructuring, etc., 2 promissory notes were thus established on nom. X mio. Euro. One promissory note has been issued by the upper Danish holding company, H1 ApS to the lower Swedish company, G4 AB. The second promissory note has been issued by the top Swedish holding company, G5 AB to G1 Ltd. Following the identical debentures, the loans bear interest from 1 July 2003 at an interest rate equivalent to Euribor for 6 months plus 5%. The interest accrual and the payment thereof takes place per. June 30 and December 31 with December 31, 2003 as the first time. No fixed installments have been agreed. The debtor has the option of paying at any time, just as the creditor can demand that the loan be repaid at any time, however with a notice of 6 months.

About G4 AB is stated that the company's only activity is to own shares in H1 ApS. The company, which is without employees, is administered by G7, whose employees hold the positions of executive board and board of directors of the company, which also has the same address as G7.

About G5 AB is stated that the company's only activity is to own shares in G4 AB. The company, which is without employees, is administered by G7, whose employees hold the positions of executive board and board of directors of the company, which also has the same address as G7. Interest expenses for the parent company G1 Ltd. is financed by a transfer from G4 AB of interest received from H1 ApS, as the transfer takes place in the form of a group contribution. With regard to interest from 1 January - to 30 June 2004, however, no cash payment was made from H1 ApS to G4 AB, or from G5 AB to G1 Ltd., as the interest from H1 ApS is included in a debt conversion of this company's debt to G4 AB, while the interest rates from G5 AB to G1 Ltd. is part of a shareholder contribution from G1 Ltd. to G5 AB.

The companies' bookkeeping shows that G1 Ltd. has paid the Swedish companies' expenses to the auditor and to the management company G7.

According to the Swedish rules, the group contribution from G4 AB to G5 AB is deductible for G4 AB, while it is taxable for G5 AB.

The owner of G1 Ltd. could not be disclosed.

**SKAT's decision**

SKAT has increased H1 ApS 'tax payment with withholding tax on interest.

It is SKAT's opinion that there is a limited tax liability to Denmark of the interest in question pursuant to the Corporation Tax Act, section 2, subsection. 1, letter d.

SKAT thus finds that G4 AB and G5 AB are flow-through companies that cannot be considered "the beneficial owner" of the interest in relation to the Nordic double taxation agreement or the interest / royalty directive.

SKAT denies that the decision should be an expression of a change in practice.

Pursuant to section 2 (1) of the Corporation Tax Act 1, letter d, companies domiciled abroad are in principle taxable on interest received from sources in this country regarding controlled debt. This means that, as a starting point, there is limited tax liability on intra-group interest.

As an exception to the limited tax liability in § 2, para. 1, letter d, it follows from the provision that withholding tax on interest must be waived when, under a double taxation agreement or the Interest / Royalties Directive 2003/49 / EC, there is an obligation to either waive or reduce withholding tax. When the exemption applies thus depends directly on an interpretation of the double taxation agreement and / or the interest / royalty directive.

With regard to the Nordic double taxation agreement, cf. Executive Order no. 92 of 25 June 1997, the agreement stipulates that interest arising from one Contracting State and paid to a company domiciled in another Contracting State, only may be taxed in that other State if the company is the "rightful owner" of the interest within the meaning of Article 11 (1). 1.

The term "beneficial owner" has been used in the OECD Model Convention and its comments since the revision of the Model Convention in 1977. The comments on the term "beneficial owner" have been gradually clarified, but there is no basis for this. to claim that there have been material changes in relation to what is meant by the term, which is also used by Winther-Sørensen and Bundgaard, SR-SKAT 2007, p. 398.

The comments state that a double taxation agreement does not in itself cut off / limit source state taxation, unless the "rightful owner" is domiciled in a state with which the source state has entered into an agreement. Crucial to determining the "rightful owner" is, according to the comments, whether the formal recipient of the dividend merely acts as a "conduit" for another person who actually receives the income in question.

Thus, when the actual powers of the formal beneficiary to decide how to dispose of amounts received are very narrow or non-existent, the right to invoke the double taxation agreement can be cut off. This means that an amount of interest that the underlying owner (s) has decided in advance to direct to where it is desired, without the intermediate company being given any real opportunity to influence this decision, does not have the intermediate company as "rightful owner".

In SKAT's opinion, neither G4 AB nor G5 AB can be regarded as the "rightful owner" of the interest payments arising from H1 ApS.

On the same date as H1 ApS pays interest to G4 AB, the interest payment is transferred from G4 AB to G5 AB, so that G5 AB can again make the exact same interest payment to G1 Ltd. on the same date.

The Swedish companies thus function as pure flow-through units that, on behalf of another, make further payments without making independent management decisions. In this connection, it is irrelevant that the interest amount is channeled from G4 AB on to G5 AB via the group contribution rules. Crucially, the re-channeling actually takes place, and that there is really no other possibility for G5 AB to pay the interest on the promissory note to its parent company than by the interest payments from H1 ApS being channeled further through the Swedish companies.

G4 AB was thus in fact obliged to re-channel the interest amount to G5 AB. The re-channeling took place on the same day as the interest was received without the interest having been taxed in the recipient state. The two Swedish companies have no operating activity other than ownership and financing of one group company each, just as the two Swedish companies have neither office facilities available nor employees, while the administration of the two Swedish companies is carried out by a company outside the group, G7 AB , as the payment to G7 AB has been made by G1 Ltd.

The Swedish companies are hereby deemed to have been established solely for the purpose of establishing an interest deduction for H1 ApS without triggering withholding tax.

It would therefore be incompatible with the intention and purpose of the double taxation agreement to ease withholding tax in this situation. In this connection, reference is made to point 9.4 in the comments on Article 1, which states:

" *Whichever of the two views is taken, there is agreement that states are not obligated to grant benefits under a double taxation treaty by participating in events that involve abuse of the provisions of the treaty.* "

With regard to practices that are sparse, SKAT has referred to e.g. The Indofoods case, decided by the British Court of Appeal on 2 March 2006. The issue in the case of withholding tax on interest paid by an Indonesian company to a Mauritius company was whether the withholding tax could be avoided by depositing a Dutch company between the Indonesian company and the Mauritius company. The question was whether the Dutch company would be considered the "beneficial owner" of the interest payments, so that these payments would be recognized in relation to the Dutch-Indonesian double taxation agreement. The Court of Appeal ruled that the Dutch company would not be the "beneficial owner" of the interest income under the Indonesian-Dutch agreement. The concept of "beneficial owner" should, according to the Court of Appeal, be understood from an "international fiscal meaning" which could not be deduced from the domestic law of the Contracting States. This relationship was deduced by the Court from the OECD's comments as well as Philip Baker's comment on the OECD's model agreement. The decision emphasized that there was no other practical possibility than that an amount of interest paid by the Indonesian company to the Dutch company would be immediately carried over to cover the Dutch company's obligation to pay the exact same amount of interest to the company in Mauritius. .

The representative's reference to the judgment of the Canadian Federal Court of Appeal of 26 February 2009 in the Prévost case concerning dividend tax on dividends paid by a Canadian company to a Dutch holding company owned by a Swedish and an English company is noted that the situation in this judgment differs fundamentally from the circumstances of the present case. The question was whether the Dutch company was the "beneficial owner" in relation to the dividend. This found the Canadian Federal Court of Appeal was the case. According to the available information in the judgment, it is difficult to point to transactions that can be characterized as such tax evasion, which, cf. the commentary on the Model Agreement, must be included in the assessment of whether someone other than the formal owner is to be considered the rightful owner.

To the representative's pleas in relation to the concept of "right income recipient", including that G4 AB as creditor is "right income recipient" of the interest, and that already for this reason there is no basis for considering interest income covered by the limited tax liability under the Corporation Tax Act. 2 pcs. 1, letter d, states that it is not necessary to establish a withholding tax obligation under this provision, that it is established that the Swedish company is not a "correct income recipient" in relation to the interest. It is sufficient to establish that the company is not the "rightful owner" of the interest amount. In this connection, it is undisputed that the interest derives from H1 ApS and thus from "sources in this country", and that the interest is paid to a company domiciled abroad.

However, should it be considered necessary to identify exactly which company is the limited taxable company, it can be assumed in the decision that the company G4 AB must be considered a "correct income recipient" judged only according to the general, unwritten principles of internal Danish law ( and thus the limited taxable company).

To the representative's reference to art. 26, para. 1 of the Nordic double taxation agreement states that this article may not lead to Denmark being obliged to refrain from imposing it in section 2 (1) of the Corporation Tax Act. 1, letter d provided withholding tax on interest in a situation such as the present. Among other things, referred to that it would otherwise be meaningless when in Art. 11, para. 1, is set as a condition for the cut-off of Denmark's right to tax interest as a source state that the recipient of the interest is the "rightful owner".

Regarding the Interest / Royalties Directive 2003/49 / EC, it is stated that payments of interest or royalties arising in a Member State are to be exempt from any form of tax in the source State, whether levied by withholding or tax assessment. However, this is provided that the "rightful owner" of the interest and royalties in question is a company in another Member State or a permanent establishment situated in another Member State and belonging to a company in one Member State. Of Article 1, para. Paragraph 4 states that a company in a Member State is only considered to be the "rightful owner" of interest or royalties if it receives these payments for its own use and not as an intermediary, including as an agent, mandate or authorized signature of another person.

The company has in relation to the abuse provision in the interest / royalty directive art. 5 pieces. 1, stated that it is a condition that there is an internal Danish legal basis for declaring abuse, and that this condition is not met.

In that regard, it should be noted that it is not necessary to refer to Article 5 (1). 1, because the interest / royalty directive, according to its clear wording, only leads to the withholding of withholding tax only if the recipient is the "rightful owner" of the interest or royalty amount. Since the Corporation Tax Act § 2, para. Article 5 (1) (c) (presumably meant d) stipulates that the limited tax liability must only be waived if the directive leads to SKAT having to waive or reduce the taxation, it is unnecessary to bring Article 5, para. 1, applies when it is established - as in the case here - that the company (ies) domiciled in the EU is not the rightful owner (s).

Furthermore, it is noted that it follows from art. 5 pieces. 1, that the Directive does not preclude the application of national or contractual provisions to combat fraud or abuse.

Since the Corporation Tax Act § 2, para. 1, letter c (presumably meant d), stipulates that the limited tax liability must only be waived if the directive and / or a DBO leads to SKAT waiving or reducing taxation, this provision in itself contains a clear use of the right to to maintain the limited tax liability in order to counteract abuse. It is in line with the general concept of abuse of EU law that EU rights can not be invoked in respect of purely artificial arrangements, the main purpose of which is to obtain an unintended tax advantage. In addition, Article 11 of the Nordic double taxation agreement is precisely a provision stipulated in the collective agreement which, with the proviso on "rightful owner", combats fraud or abuse. According to the wording of Article 5 (1), the Directive excludes 1, just not,

Cf. above, SKAT is of the opinion that G4 AB and G5 AB are not the "rightful owners" of the interest payments, as these companies are only flow-through companies that do not receive the interest payments for their own use. The interest is channeled to G1 Ltd., which is domiciled in Jersey. Jersey is not covered by the Interest / Royalties Directive, which is why

it is not to be regarded as a "company in another Member State", cf. Art. 1 piece. 1.

The fact that the interest calculated from 1 January 2004 to 28 June 2004 (of which interest tax has been calculated from 2 April 2004) has not been paid in cash, but is included in the outstanding debt that is written down by a debt conversion to share capital in H1 ApS on 28 June 2004, has no significance for the case, as the interest is also paid in this situation for tax purposes, even if this has not been done in cash.

As an exception to the limited tax liability, the tax liability also lapses if the receiving company proves that it would not be covered by section 32 of the Corporation Tax Act if it had been controlled by a company domiciled in this country, etc., and that it does not pay the interest on to another foreign company, etc., which would meet the conditions in section 32. In order to be covered by section 32, e.g. that the company's total foreign income tax is less than 3/4 of the Danish tax.

The company has stated that G4 AB would not be covered by section 32, as both the income tax in Sweden and the Danish tax to be compared with can be calculated at DKK 0. Due to the fact that there is no taxable income in the company at all, the total foreign tax will not be less than 3/4 of the Danish tax. Furthermore, it is stated that G4 AB does not "pay the interest on to another foreign company", as the repayment to the parent company, G5 AB, takes place in the form of group contributions, and thus not in the form of an interest payment.

In SKAT's view, it is crucial that the company that immediately receives the interest payment has channeled the amount on to another foreign company with a right of deduction, and not whether this recalculation takes place in the form of interest payment. Otherwise, the condition would be easy to circumvent, as only a single interest payment in the series could then be replaced by another form of payment, for example group contributions in the present situation. SKAT has referred to the comments on L-119 of 17 December 2003, to § 10, no. 1, which states that *"This exception (except) applies (...) if the company channels the payment on to another foreign company that is not controlled by a Danish company, if the other foreign company is domiciled in a country with low taxation and more than 1/3 of its income consists of CFC income. "*

To the representative's remarks that SKAT's decision constitutes discrimination in violation of the EU law prohibition of restrictions, Art. 43 on the right to free establishment, is i.a. stated that the withholding tax on interest when paid to a non-resident company does not constitute a restriction on freedom of movement, simply because there is no tax discrimination in comparable situations.

To the remarks that the decision is a change of a fixed administrative practice, etc., according to which it is the owner of the claim who is taxed on interest income, it is stated that there is no administrative practice that the decision in the present case changes. Not a single decision has been made, according to which, in cases reminiscent of the present case, it has been established that withholding tax may not be withheld pursuant to section 2 (1) of the Corporation Tax Act. 1 (d) and the reality is that the complainant's allegation of the existence of a "fixed administrative practice" is completely unfounded.

To the remarks that how could one have intended to avoid a tax which did not exist and which had not even been proposed, it is stated that withholding tax on interest was reintroduced by Act No. 221 of 31 March 2004 with the adoption of L119, which was formally submitted on 17 December 2003. The bill had already been sent for external consultation shortly after the summer holidays of 2003. A significant background for the bill was, cf. the comments, the adoption of the Council Directive of 1 June 2003 (interest Directive 2003/49 / EC), which necessitated a change in the rules on limited liability for royalties so that they complied with the Directive. According to Art. 7, para. 1, this was to take place before 1 January 2004.

The promissory note between the Danish company and G4 AB was established on 1 July 2003 and thus 1 month after the adoption of the Interest / Royalties Directive. At the time of taking out the loan relationship, the company thus knew that a bill was under way. In SKAT's view, the coincidence in time is striking, and SKAT therefore does not agree that it can be assumed that the establishment of the two Swedish companies in the group over the Danish company was not related to the possibility that Danish would be introduced. withholding tax on interest.

It is stated in the comments that SKAT's decision must be regarded as invalid or ineffective as a result of the decision being entitled "Decision on change of tax assessment", etc., as the decision can no longer be regarded as a decision on withholding tax. is the basis for considering the decision as invalid or ineffective in relation to the withholding duty. Neither the title nor anything else, with the clear content of the decision, can have given rise to doubt that an obligation

to withhold interest tax has been established. Regarding the lack of reference in the decision to section 69 of the Withholding Tax Act, it is stated that the provision had not been invoked against SKAT, and that there was therefore no basis for referring to it.

SKAT is hereby united in the view that there is a limited tax liability to Denmark of the interest in question pursuant to the Corporation Tax Act, section 2, subsection. 1, letter d.

**The company's claim and arguments**

The company's representative has filed a claim that the company's withholding obligation regarding interest to the parent company be abolished. Furthermore, a claim has been made that SKAT's decision is invalid.

In support of the claim for the abolition of the withholding obligation, reference is made to the fact that G4 AB, as the creditor, is the "rightful recipient of income" of the interest.

Of the Corporation Tax Act § 2, para. 1, letter d, 1st sentence, it follows that only the foreign company which, according to the principles of internal Danish tax law on the correct income recipient, is the recipient of the interest, may be subject to limited tax liability. This applies regardless of how the concept of "rightful owner" in the double taxation agreements and the Interest / Royalties Directive is to be interpreted. When in the Corporation Tax Act § 2, paragraph. 1, letter d, 3rd sentence, the exemptions from the limited tax liability are stated, eg that the taxation of interest must be waived or reduced in accordance with the Interest-Royalties Directive, or that the taxation of interest must be reduced in accordance with a double taxation agreement, these exceptions only apply,

It is the opinion of the representative that G1 Ltd. according to settled case law can not be considered to be the "rightful recipient of income" of the interest. It is thus a basic principle in tax law that no one other than the creditor's owner, G4 AB, is accepted as a "correct income recipient" of the interest without special legal authority. The claim on H1 ApS is thus valid and legally valid under civil law.

SKAT has accordingly stated that the decision can be used as a basis for the Swedish company G4 AB to be regarded as a "correct income recipient".

The representative already finds that G1 Ltd. can not be considered subject to limited tax liability to Denmark.

In relation to the Nordic double taxation agreement, it is stated that it follows from the wording of the nature of the Nordic agreement. 11 in conjunction with the OECD's comments and international tax practice that Denmark is barred from taxing the interest income received by G4 AB. As a clear starting point, it is the recipient of the interest who, according to the nature of the agreement. 11 shall be deemed to be the "rightful owner".

According to the representative, the OECD's model agreement (2003) to a greater extent than the Nordic agreement gives the source country access to tax interest income.

In the revision of the Model Agreement in 2003, the OECD's comments on Art. 11 on the "rightful owner" concept extended. New compared to previous versions was the remark that the term "beneficial owner" is not used in a narrow technical sense, but must be seen in the context of and in the light of the agreement's intention and purpose, including avoiding double taxation and preventing tax evasion and avoidance.

The comments elaborate on the statement of the intention and purpose of the agreement that, firstly, it would not be in accordance with the intention and purpose of the agreement if the source country were to provide relief by payment to an agent or intermediary ("agent or nominee"), as this is not taxed in its country of domicile, which is why double taxation does not occur. Secondly, conduit companies are mentioned.

In relation to the term "conduit companies", reference is made in the comments to the report prepared by the Committee on Fiscal Affairs on "Double Taxation Conventions and the Use of Conduit Companies". In order to override a company as the "beneficial owner", it is then required that the interest-receiving company has very narrow powers which, in relation to the income in question, make it a "nullity" or administrator acting on on behalf of other parties. This is not the case for G4 AB in the present case.

This includes referred to judgments of the Dutch Supreme Court and the Canadian Federal Court of Appeal. Among other things. is referred to the most recent judgment of the Canadian Federal Court of Appeal, delivered on 26 February 2009 (Prévost judgment) (see above). The Canadian tax authorities had argued that the Dutch parent company was not the "rightful owner" of the dividend, so the Canadian withholding tax should not be reduced to 5%, but instead to 15%

(Sweden) and 10% (UK), respectively. % (Sweden) and 10% whereas the Swedish rules were both simple and stable. The Federal Court of Appeal rejected the tax authority's argumentation i.a. on the grounds that neither the OECD's comments nor elsewhere could support the tax authority's interpretation. Furthermore, the Authority's interpretation would lead to a myriad of possibilities, which would destroy the relative security sought by the double taxation treaties. The Federal Court of Appeal further stated that the interpretation of the Canadian tax authorities was an expression of a derogatory view of holding companies that were not supported in either domestic or international law.

If art. 11 of the Nordic Convention does not apply, it also follows from Art. 26, that Denmark must refrain from taxing income as follows:

" *Income derived by a resident of a Contracting State or property owned by such person may not be taxed in another Contracting State unless taxation is expressly permitted under this Convention.* "

In case of doubt as to whether Denmark pursuant to Art. 11 and art. 26 is barred from taxing G4 AB's interest income, must in accordance with the nature of the agreement. 3 pieces. 2 the term "rightful owner" in the agreement is interpreted in accordance with "rightful income recipient" according to internal Danish tax law.

Art of the Nordic Convention 3 pieces. 2, which corresponds to art. 3 pieces. 2, in the OECD's model agreement, has the following wording:

" *In the application of this Convention by a Contracting State, any term not defined therein shall at all times, unless the context otherwise requires, be given the meaning which it has at this time under the laws of that State concerning the taxes to which the Convention applies. use, and the meaning of the term in the tax laws of that State shall take precedence over the meaning given to it in the other laws of that State.* "

Reference is made to the judgments of the Supreme Court **SKM2003.62.HR** (TfS 2003.222 H) on temporary employment, cf. the withholding tax act, section 2, subsection 1, letter c, in relation to i.a. the Danish-American DBO, and TfS 1994.184H on the professor rule in the Danish-American DBO, as well as the Eastern High Court's judgment reproduced in **SKM2005.461.ØLR** on the qualification of a payment from a unit in France which does not constitute an independent tax subject in Denmark, cf. the Danish-French DBO. Furthermore, reference is made to administrative practice and ministerial statements in which this has been expressed **SKM2003.62.HR** , **SKM2003.544.LSR** and TfS1998.306SKM. In particular, it is pointed out that in the first ministerial reply of 2006 (in connection with the consideration of Bill L 116) the Minister of Taxation did not distinguish between the term "rightful owner" and the term "rightful recipient of income", but in fact equates who is "rightful income recipient ", and who is the" rightful owner ", cf. the Minister of Taxation's reply to the Folketing's tax committee, Folketingsåret 2005-2006, Bill 116, appendix 9, cf. accordingly also the Minister of Taxation's reply of 6 November 2006 to the Folketing's Tax Committee on 20 questions about dividends.

In relation to the Interest / Royalties Directive, it is stated that according to Art. 1 is a condition that the company in another Member State that receives interest is the "rightful owner". It is crucial that the payments are for the sole use of the receiving company and not as an intermediary, including as an agent, mandate or authorized signature of another person. In the situation here, no companies other than G4 AB have been entitled to the interest income. The fact that G5 AB as a shareholder in G4 AB has had a natural shareholder interest in G4 AB receiving interest, etc., cannot be equated with G5 AB being the real recipient of the interest. The same applies to G1 Ltd.

According to Art. 5 pieces. 1. the Directive does not preclude the application of national or contractual provisions to combat fraud or abuse. Furthermore, pursuant to Art. 5 pieces. 2, revoke benefits under the Directive or refuse to apply the Directive in the case of transactions which have tax evasion, avoidance or abuse as the main motive or one of the main.

In the representative's opinion, there is neither any express Danish legal authority nor any general legal principles that could lead to G4 AB not being the recipient of the interest. According to internal Danish tax law, G4 AB is the owner of the claim on H1 ApS and the "correct income recipient" of the interest therefrom.

The basic requirement of internal authority is therefore not met. Furthermore, there is no tax evasion, avoidance or abuse as one of the main motives. On the contrary, already because at the time of the establishment of the above-mentioned loans there was no Danish withholding tax on interest, it was impossible to evade Danish tax.

SKAT's argument that the group structure was only established to avoid Danish withholding tax states that at the time when the loan from G4 AB to H1 Aps was established, there was no Danish withholding tax on interest, and no proposals were made. . Therefore, at that time there was no Danish tax to avoid.

The argument that the Swedish companies had no real right of disposal states that each company in a group constitutes both an independent legal entity and an independent tax subject. In this connection, it is not decisive how many employees there are, how many premises are available, etc. G4 AB's right of disposal is supported by the fact that in 2004 the company accepted a debt conversion at H1 ApS.

In support of the claim for the abolition of the withholding obligation, reference is also made to the fact that the last sentence of the Corporation Tax Act, section 2, subsection 1, letter d, as the provision in the relevant income years 2004 and 2005 was formulated, it follows that a possible tax liability pursuant to section 2, subsection 1, letter d, in any case lapses.

Thus, the tax liability lapses if 1) the receiving company, G4 AB, would not be covered by section 32 of the Corporation Tax Act if it had been controlled or under the significant influence of a company domiciled in this country, etc., cf. section 32, subsection. 6, and 2) the receiving company G4 AB, does not pay the interest on to another foreign company, etc., which would meet the conditions in § 32.

Regarding point 1), the representative's opinion is that the condition under section 32, no. 1 that the company's total foreign income tax is less than 3/4 of the Danish tax has not been met. G4 AB would then not be covered by the provision.

In connection with the calculation of G4 AB's Danish comparative income, the current section of the general income statement rules of Danish law must be taken as a starting point. According to Danish rules, interest income is taxable, while as a starting point there is no deduction for group contributions. However, the special exception of the current section 32 was that - when deductions for group contributions were made in accordance with foreign rules - deductions for group contributions were also to be calculated in the calculation of the Danish comparative income.

As deductions have been granted in Sweden for group contributions - this was precisely the reason why the company did not have to pay tax to Sweden in 2004 and 2005 - this group contribution must also be deducted in the calculation of the Danish comparative income.

On this basis, the taxable Danish income, calculated in accordance with section 32 in both income years 2004 and 2005, can be calculated at 0. The total foreign (Swedish) income tax on G4 AB's income is as a result not less than ¾ of the comparable income tax, and with reference to section 32, it can therefore be concluded that the first condition in the Corporation Tax Act, section 2, subsection 1, letter d, last sentence, is met.

The receiving company, G4 AB, would thus not be covered by section 32 of the Corporation Tax Act if it had been controlled or under the significant influence of a company domiciled in this country, etc., cf. section 32.

When asked whether G4 AB, if it had been controlled by a Danish company, all other things being equal, would have had a deduction for group contributions, it is pointed out that when deductions were granted for group contributions in Sweden, group contributions must also be deducted in the calculation of the Danish comparative income.

In a supplementary post, further reference is made to the Swedish Income Tax Act (Chapter 35, Section 2 a § IL), which reads as follows:

" *For the purposes of the provisions of this Chapter, a foreign company domiciled in a state within the European Economic Area (EEA) and corresponding to a Swedish company specified in these regulations shall be treated as such a company, if the recipient of the group contribution is liable to tax in Sweden for The same applies to the recipient if he is a Swedish company that is to be considered domiciled in a foreign state within the EEA according to a tax agreement and is liable to tax in Sweden for the business to which the group contribution relates.* "

Furthermore, reference is made to the judgment in RÅ 1993 ref. 91. It follows that it was possible for a Swedish parent company to make group contributions to a similar Swedish subsidiary, even though the intermediate subsidiary was a US company.

The second condition in the current last sentence of the Corporation Tax Act, section 2, subsection 1, letter d, cf. point 2) above, was that the receiving company, G4 AB, *"does not pay the interest on to another foreign company, etc., which would meet the conditions in § 32".*

G4 AB did not pay interest to its parent company G5 AB. G4 AB paid group contributions, which neither in Swedish tax law nor in Danish tax law can be qualified as payment of interest.

The representative does not agree with SKAT that the decisive factor is that the company that immediately receives the interest payment has channeled the amount on to another foreign company with a right to deduct, and not whether this further channel has taken place in the form of interest payment. He also does not agree that the draft legislation (L119 of 17 December 2003 to § 10, no. 1) supports such an interpretation. Thus, it appears that the legislator, in accordance with the wording of the law, has intended that the exemption only refers to a situation where the receiving company (here G4 AB) pays interest on to another company, cf. the following:

"However, this exception does not apply if the company channels the payment on to another foreign company that is not controlled by a Danish company, if the other foreign company is domiciled in a country with low taxation and more than 1/3 of its income consists of CFC income. In that case , the company that receives the interest from this country will probably be taxed on the interest, but at the same time it will receive a deduction for the interest that it itself pays on to the other foreign company in the low-tax country. " (underlined by the representative).

The representative has subsequently noted that G4 AB has not paid or transferred amounts to G5 AB until the period 28 June 2004. Furthermore, the actual transfers made by G4 AB in 2005 have not taken place with the right to deduct, as these have been depreciated on the debt of 14 million. EUR, which arose at G4 AB to G5 AB on 30 June 2004, ie the year before.

Although decisive emphasis is placed on whether payment has been made from G4 AB to G5 AB with a right to deduct, regardless of whether no interest has been paid, it thus follows from the facts of the case, 1) that in the income year 2004 (from 2. April 2004 to 30 June 2004) no payment was made from G4 AB to G5 AB, and 2) that in the income year 2005 (from 1 July 2004 to 30 June 2005) amounts were probably transferred from G4 AB to G5 AB, but that this has not been done with the right to deduct, but for the payment of debt. According to SKAT's case presentation, interest from 1 January 2004 to 28 June 2004 was included in the outstanding debt, which is written down by a debt conversion to H1 ApS on 28 June 2004.

In support of the principal claim, it is also stated that SKAT's decision is an expression of a change in a fixed administrative practice, according to which a creditor is taxed on interest income. This practice also covers situations where a group company has a claim on another group company. Even if such a change in administrative practice may be possible within the applicable tax legislation, a change in administrative practice can in any case only be implemented if it is implemented in general, including with Danish group companies, and with appropriate notice. This has not happened.

Furthermore, SKAT's decision is an expression of discrimination in violation of the EU law prohibition on restrictions, which is expressed in the nature of the EC Treaty. 43, as G4 AB is treated worse than a comparable Danish parent company that has made loans to its Danish subsidiary due to a requirement to collect withholding tax of 30% from its Danish subsidiary for interest paid to G4 AB. According to established practice, interest income from receivables that a Danish parent company has on its subsidiary is always taxed at the parent company (= the creditor). SKAT's decision leads to a Danish withholding tax of 30% of the interest being imposed on H1 ApS 'payment of interest to G4 AB. According to SKAT, H1 ApS is also liable for payment of the tax. If H1 ApS had instead had a Danish parent company, no Danish withholding tax would have been imposed. This discrimination is contrary to the nature of the EC Treaty. 43.

In support of the claim for invalidity, it has been argued that SKAT has made a decision to change the tax assessment for H1 ApS. A decision on the obligation to withhold withholding tax (interest tax) does not constitute a change in the tax assessment of the company that was allegedly to have withholding tax. SKAT's decision can therefore not be considered to be a decision on withholding tax (interest tax) and must in relation to this be considered ineffective or invalid. Subsequent submissions also refer to the fact that SKAT in its decision has not referred to section 69 of the Withholding Tax Act, just as the decision does not state a reason why the company should be liable.

In a letter dated 15 November 2010, the representative set out his pleas in detail.

**The National Tax Court's remarks and reasoning**

The Swedish company G5 AB, which is owned by the holding company G1 Ltd., Jersey, has financed the purchase of the Swedish company G4 AB from the holding company by a loan of DKK X million. euros from the holding company. The Danish company H1 ApS, which is owned by the parent company G4 AB, has financed the purchase of the Danish company G2 A / S from the parent company by a loan of DKK X million. euros from the parent company. The promissory notes created in connection with the acquisitions, on 26 June 2003 and 1 July 2003, both bear interest from 1 July 2003,

have identical terms on interest payments, installments, etc. Both of the Swedish companies had no employees and did not have office facilities, just as they two directors were employees of a management company unrelated to the group and were otherwise paid by G1 Ltd., had negative taxable income in both 2004 and 2005.

According to the current Corporation Tax Act, section 2, subsection 1, letter d, companies etc. domiciled abroad are in principle limited taxpayers of interest from sources in this country concerning debts to foreign legal persons as mentioned in section 3 B of the Tax Control Act (controlled debt). The tax liability does not include interest if the taxation of interest is to be waived or reduced under Directive 2003/49 / EC on a common system of taxation applicable to interest and royalties paid between associates in different Member States, or under a double taxation agreement with the State receiving company, etc. is domiciled. Furthermore, interest is not covered if the receiving company can prove that it would not have been covered by section 32 of the Danish Corporation Tax Act if the control condition had been met,

According to the Nordic Double Taxation Convention (Executive Order no. 92 of 25/6 1997) Article 11, interest arising from a Contracting State and paid to a person resident in another Contracting State may be taxed in that other State only if that person: is the "beneficial owner" of the interest ("beneficial owner"). Under Article 26 of the Convention, income received by a resident of a Contracting State or property owned by such a person may not be taxed in another Contracting State unless taxation is expressly permitted under this Convention.

In relation to the concept of "beneficial owner", in 2003 the comments on the model agreement, Article 11, point 8, the following are mentioned:

" *The requirement of beneficial ownership was introduced in paragraph 2 of Article 11 to clarify the meaning of the words" paid to a resident "as they are used in paragraph 1 of the Article. It makes plain that the State of source is not obliged to give up taxing rights over interest income merely because that income was immediately received by a resident of a State with which the State of source had concluded a convention. The term "beneficial owner" is not used in a narrow technical sense; rather, it should be understood in its context and in light of the object and purposes of the Convention, including avoiding double taxation and the prevention of fiscal evasion and avoidance.* "

Furthermore, point 8.1 mentions the following:

" *Relief or exemption in respect of an item of income is granted by the State of source to a resident of the other Contracting State to avoid in whole or in part the double taxation that would otherwise arise from the concurrent taxation of that income by the State of residence.Where an item of income is received by a resident of a Contracting State acting in the capacity of agent or nominee it would be inconsistent with the object and purpose of the Convention for the State of source to grant relief or exemption merely on account of the status of the immediate recipient of the income as a resident of the other Contracting State. The immediate recipient of the income in this situation qualifies as a resident but no potential double taxation arises as a consequence of that status since the recipient is not treated as the owner of the income for tax purposes in the State of residence. It would be equally inconsistent with the object and purpose of the Convention for the State of source to grant relief or exemption where a resident of a Contracting State, otherwise than through an agency or nominee relationship,For these reasons, the report from the Committee on Fiscal Affairs entitled "Double Taxation Conventions and the Use of Conduit Companies" concludes that a conduit company can not normally be regarded as the beneficial owner if, though the formal owner, it has, as a practical matter, very narrow powers which render it, in relation to the income concerned, a mere fiduciary or administrator acting on account of the interested parties.* "

The term "beneficial owner" is not known from Danish law, but is known from i.a. common law legal traditions. Thus, it is not possible to simply equate the content of this concept with the term "correct income recipient" used in Danish law. When interpreting the term "beneficial owner", a harmonized interpretation of the term must be taken into account, cf. the comments in relation to this. In addition to the legal ownership, the assessment must also include other assessments, eg in relation to economic ownership, etc.

According to the Interest / Royalties Directive (Directive 2003/49 / EC), according to Article 1, a condition for the abolition of withholding tax on interest, etc., is that the company in another Member State that receives interest, etc., is the "beneficial owner" ("beneficial"). owner "). The payments must be for your own use. This only applies if the paying company and the received company are associated as mentioned in the Directive (25% ownership).

In the present case, G4 AB can not be regarded as a "beneficial owner" either in relation to the double taxation agreement or in relation to the directive.

In the decision, emphasis has been placed on the construction actually arranged between the related parties, according to which G4 AB transfers the interest income received from H1 ApS to G5 AB via the Swedish rules on group contributions, and from G5 AB further as interest expenses less G1 Ltd., with the effect that the interest payments due by H1 ApS accrue to G1 Ltd. via the Swedish companies.

It is noted that at the time of the construction of the structure, the Council Directive of 1 June 2003 (the Interest / Royalties Directive) was adopted, and after its adoption, it was to be expected that interest tax would be introduced in this country.

As the group contribution will be deductible for the contributing company, while there will be tax liability for the receiving company, there will be no taxable net income from the total transactions for taxation in the Swedish companies, which must thus be regarded as flow-through companies without real powers / opportunities for to decide on the disposition of the transfers received. The fact that the transfers between the Swedish companies take place in the form of group contributions and not as interest is irrelevant in this connection.

It is also noted that with the establishment of the Swedish companies - which in addition to shareholding is without commercial activity - and at the same time the creation of identical loans between G1 Ltd. and G5 AB and between G4 AB and H1 ApS, and the identical debt conversion / shareholder subsidy made in the income year 2004 is intended to avoid any form of taxation of the interest on the loan taken out by H1 ApS, without the interest deduction right being affected.

The fact that the interest from 1 January to 28 June 2004 was not paid in cash, as the interest is part of a debt conversion in the Danish company, and that in 2005 funds may have been transferred from G4 AB to G5 AB as installments on debt without in these circumstances may not lead to another decision.

G4 AB therefore rejects the benefits of the collective agreement and / or the directive on the abolition of the Danish withholding tax. Neither the nature of the agreement. 3 or art. 26 may lead to a different result, just as Art. 5 does not preclude this.

Thereafter, and since it is not considered proven that the conditions for lapse of the tax liability pursuant to the Corporation Tax Act § 2, paragraph. 1, letter d, last sentence is present, as it, cf. the Swedish Income Tax Act 35 chapter 2 a etc. § IL, can not be considered proven that the Swedish company, if it had been controlled or under significant influence of a company domiciled in this country, would have had a deduction for group contributions, and with the remark that for the reasons given by SKAT can not be considered discrimination in violation of the EU law prohibition of restriction, cf. Art. 43, just as it has not been documented that there is an aggravating change in practice as stated, there will be limited tax liability on interest paid from H1 ApS to G4 AB, cf. section 2, subsection 1, letter d.

The fact that SKAT has used the term "taxable income" in the decision cannot lead to the decision being invalid. With the content of SKAT's decision (and affidavit), the company must thus have realized that the decision (and the affidavit) concerned withholding tax on interest, cf. the Corporation Tax Act, section 2, subsection. 1, letter d. Nor can the fact that no reference is made in SKAT's decision to section 69 of the Withholding Tax Act lead to the decision being invalid.

SKAT's decision is hereby confirmed.