# Exhibit 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. 18-cv-09840 |
| Plaintiff, | Honorable Lewis A. Kaplan |
| vs. | April 22, 2020 |
| RIVERSIDE ASSOCIATES DEFINED BENEFIT PLAN, DAVID SCHULMAN, and ACER INVESTMENT GROUP, LLC, | **AMENDED COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

---

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Riverside Associates Defined Benefit Plan ("**Riverside**"), David Schulman ("**Schulman**"), and Acer Investment Group, LLC ("**Acer**") as follows:

I.     <u>**INTRODUCTION**</u>

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme that decieved SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

---

1.   At the time of the events alleged in this Amended Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff changed its legal name to Skatteforvaltningen, effective July 1, 2018.

Case 1:18-cv-09840-LAK Document 88-7 Filed 04/25/20 Page 296 of 20

pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders that meet certain qualifications.

4.        The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed. These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.

5.        The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Riverside, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.        On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, had earned substantial dividend income on their shares, and were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

       a.    The Authorized Representatives of the claimants, such as Defendant Schulman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b. The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and Authorized Representatives; and

c. The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10. The Defendants did know or should have known that these false representations would cause SKAT to make payments to which the Defendants were not entitled.

11. SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12. As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13. As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 12,724,425.00, or at least $1,992,000 (US)[2], plus interest.

## II. JURISDICTION & VENUE

14. Pursuant to 28 U.S.C. § 1332(a)(4), this Court[3] has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

2. This amount is the result of a conversion from DKK to U.S. Dollars performed on June 1, 2018, utilizing a conversion rate of 1 U.S. Dollar to 6.3861 DKK.

3. This action was originally filed in the United States District Court for the District of Utah and transferred to this Court for pretrial proceedings pursuant to Order of the United States Judicial Panel on Multidistrict Litigation dated October 3, 2018. The jurisdictional allegations made in this Amended Complaint relate to the jurisdiction in which the original action was filed.

costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III. **PARTIES**

16. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Amended Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17. Defendant Riverside is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 5532 Lillehammer Lane, Suite 103, Park City, Utah 84098, USA. On information and belief, each participant, or member, of Defendant Riverside is a citizen of a State of the United States. At all times material to the allegations in this Amended Complaint, Defendant Riverside purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18. Defendant Schulman is a citizen of the State of New York. At all times material to the allegations in this Amended Complaint, Defendant Schulman was the sole participant in and served as the Authorized Representative for Defendant Riverside.

19. On information and belief, Defendant Acer is a Limited Liability Company incorporated in the State of Delaware and is or was registered to do business in the States of

5

Florida, New Jersey, and Utah. At times material to the allegations in this Amended Complaint, Defendant Acer listed one of its operating addresses as 5532 Lillehammer Ln, Suite 103, Park City, UT 84098, the same address listed in Defendant Riverside's fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority. In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[4] ("**the Treaty**") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation. In order to qualify for a full refund under the Treaty, the U.S. pension plans must possess tax-qualified status under section 401(a) of the Internal Revenue Code and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund. For the reasons set forth in further detail below, the

---

4.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

pension plan claimants, including Defendant Riverside, did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they claimed from SKAT.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they were qualified pension plans, had shareholdings in Danish companies, and had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.     The Fraudulent Scheme**

26.     As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.  The respective roles of each of these participants are described in further detail in paragraphs 34 through 61 below.

**1.     The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal Taxback Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.     the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     By filing a refund application requesting the full 27% refund and enclosing the statement from the IRS, the United States pension plan claimants falsely represented to SKAT that they were qualified U.S. pension plans entitled to the maximum refunds provided by the Treaty.

31.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

32.     It was SKAT's practice to pay claims that included the required supporting documentation.

33.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

34.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

35.     Each of the claimants, including Defendant Riverside, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

36.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Riverside represented that Defendant Schulman was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Riverside's claims.

37.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Riverside represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

38.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Riverside made eleven (11) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 12,724,425.00, or at least $1,992,000 (US).  These refund claims were submitted to SKAT on the following dates: March 26, 2014; April 4, 2014; April 16, 2014; May 6, 2014; May 28, 2014; March 13, 2015; March 18, 2015; and March 26, 2015.

39.     In fact, Defendant Riverside did not own the shares it represented to SKAT that it owned, and had no dividend tax withheld.

40.     In addition to falsely representing that it owned the shares that were the subject of the refund claims, Defendant Riverside falsely represented to SKAT in each refund claim that it was a qualified U.S. pension plan entitled to a full refund under the Treaty.  This representation was false because Defendant Riverside did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

41.     Far from being a qualified U.S. pension plan, Defendant Riverside cannot have satisfied the requirements in section 401(a) of the Internal Revenue Code because it did not operate for the exclusive benefit of its sponsoring entity's employees and their beneficiaries.  Rather, Defendant Riverside was operated for the benefit of entities and individuals who facilitated or participated in the fraud.  After SKAT paid the amount requested in Defendant Riverside's refund claims, Riverside subsequently directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities.

42.     In effect, Defendant Riverside became a vehicle for the fraudulent scheme whose purpose and continued existence was, at least in significant part, directly tied to the continuation of the fraudulent scheme as opposed to a legitimate business purpose.

43.     Defendant Riverside's representation that it was a qualified pension plan was also false because it was not properly funded.  The number of shares in Danish companies that Defendant Riverside claimed to have owned would have required funding from sources outside of contributions from the employees of its plan sponsor and matching contributions from the plan sponsor.  This external funding would violate the funding requirements of the Internal Revenue Code and disqualify Defendant Riverside from being a qualified pension plan.

44.     Defendant Riverside also falsely represented to SKAT that it was entitled to a full refund under the Treaty to the extent that it engaged in any activities that were debt-financed, in breach of the Treaty's prohibition on the carrying on of leveraged investment activities by a pension fund.

45.     Based on the false representations in the refund claims described in paragraphs 38 through 44, SKAT made payments totaling DKK 12,724,425.00, or at least $1,992,000 (US), to Defendant Riverside on the following dates: April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; April 24, 2015; and April 29, 2015.

46.     On information and belief, Defendant Schulman caused Defendant Riverside's fraudulent refund claims to be submitted to SKAT.  Defendant Schulman exerted control over Defendant Riverside as the plan's sole participant, and used this control to commit the fraud on SKAT.

11

47. In addition to Defendant Riverside, at least five other claimants, in their requests to SKAT for tax refunds, also listed Defendant Acer's address of 5532 Lillehammer Lane, Suite 103, Park City, Utah 84098.

### 3. The Role of the Claimants' Authorized Representatives

48. Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

49. Defendant Schulman executed at the direction of, and on behalf of, Defendant Riverside a "Power of Attorney" dated February 25, 2014, that granted to Payment Agent Goal authority to be Defendant Riverside's "to be the attorney of [Riverside] and in [Riverside's] name and otherwise on [Riverside's] behalf and as [Riverside's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Riverside] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Riverside] or through [Goal] on behalf of [Riverside]." Defendant Schulman described himself as the "Trustee" of Defendant Riverside.

50. As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Schulman and be subject to his direction and control with respect to Defendant Riverside's claims to SKAT.

51. Defendant Schulman executed the Power of Attorney with knowledge that the plan was not properly funded, was not established for the exclusive benefit of its sponsor's employees, and was not entitled to a refund under the Treaty.

12

### 4.    The Role of the Payment Agents

52.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

53.    By means of the Power of Attorney described in paragraphs 48-49 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

54.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.  The documentation submitted with the cover letter falsely represented to SKAT that Defendant Riverside was a qualified pension plan that satisfied the criteria under the Treaty and was therefore entitled to a full 27% refund.

55.    In connection with each Claim Form, the Payment Agent:

a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

b.    signed and stamped the form, and stated it was applying on behalf of the claimant;

c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.    requested that SKAT pay the claim to its bank account.

56.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5. The Role of the Broker-Custodians

57.  Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

58.  By way of example, with respect to Defendant Riverside, one example of a "tax voucher":

     a.     is made out by ED&F Man Capital Markets Limited;

     b.     is signed by Christina MacKinnon as Head of Securities Operations;

     c.     purports to certify Defendant Riverside's ownership of 2,000,000 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

     d.     states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

59.  Defendant Riverside, which was not a qualified U.S. pension plan for purposes of the Treaty, never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

### 6. The Role of Acer

60.  On information and belief, Defendant Riverside—through a signed Power of Attorney or otherwise—granted Defendant Acer the authority to act as its representative and agent with Broker-Custodian ED & F Man Capital Markets Limited. Defendant Acer used this authority to direct ED & F Man Capital Markets Limited to take actions that caused the creation and

submission of the fraudulent "tax vouchers" described in paragraphs 57-58 above. As part of this authority, Defendant Acer determined which Danish security and the number of shares that would be listed in the "tax vouchers" that were submitted to Plaintiff SKAT. Defendant Acer also coordinated the submission of the "tax vouchers" to non-party Goal, which used those "vouchers" to obtain refunds for dividend withholding tax to which Defendant Riverside was not entitled. Defendant Acer received a portion of the dividend withholding tax refund purportedly paid by SKAT for the benefit of Defendant Riverside.

61.     Through its directors or employees, Defendant Acer took the actions described in paragraph 60 knowing that Defendant Riverside did not own the shares or receive the dividends listed in the "tax vouchers" and was not entitled to claim a refund of dividend withholding tax from Plaintiff SKAT. Defendant Acer took these actions knowing that the purpose for submitting each of the "tax vouchers" to SKAT was to induce SKAT to pay tax "refunds" to Defendant Riverside in the amounts reflected in the "tax vouchers."

**CAUSES OF ACTION**

**COUNT I**

**(Fraud – Against Defendants Riverside & Schulman)**

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29 through 31, 38 through 44, and 57 through 59 to support claims for withholding tax refund payments.

64.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

65.     In reasonable reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 12,724,425.00, or at least $1,992,000 (US), and thereby suffered damages of that amount, plus interest.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT II**</u>

**(Aiding and Abetting Fraud – Against All Defendants)**

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

69.     As alleged in paragraphs 26 through 61 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

70.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

71.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 61 above.

72.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

73.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Unjust Enrichment – Against All Defendants)

74. SKAT repeats and realleges paragraphs 1 through 73 above as if fully set forth herein.

75. This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

76. By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

77. SKAT suffered a loss because of the Defendants' unjust enrichment.

78. The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT IV

### (Money Had & Received – Against All Defendants)

79. SKAT repeats and realleges paragraphs 1 through 78 above as if fully set forth herein.

80. As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

81. It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT V

### (Negligent Misrepresentation – Against Defendants Riverside & Schulman)

82.     SKAT repeats and realleges paragraphs 1 through 81 above as if fully set forth herein.

83.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments of which they had a financial interest, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

84.     Defendants made material misstatements described in paragraphs 29 through 31, 38 through 44, and 57 through 59 above in connection with every withholding tax refund claim submitted on behalf of Defendant Riverside to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

85.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.

86.     Defendants failed to use reasonable care to determine whether the representations made to SKAT were true, and Defendants were in a better position than SKAT to know the true facts.

87.      SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of DKK 12,724,425.00, or at least $1,992,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and V, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III and IV, for unjust enrichment and money had and received, the damages sustained or the amounts by which the Defendants were unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


/s/ Marc A. Weinstein
William R. Maguire
Marc A. Weinstein
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)