# Exhibit 21

15. november 2004
Journal nr. 06/04-4330-00506

Told- og Skattestyrelsen
**Att.: Underdirektør Preben Bialas**
Østbanegade 123
2100 København Ø

*Problemer ved kontrol og inddrivelse af udbytteskat*

På møde i Told- og Skattestyrelsen den 26. oktober 2004 aftaltes, at udbytteskatteadministrationen skulle udarbejde et kortfattet katalog over de problemer, som i tidens løb ikke har fundet en løsning.

**Baggrund**
Ved fusionen i 1990 indgik udbytteskatteadministrationen i de opgaver der lå i Kildeskattehuset i Birkerød. Ved cirkulære af 9. august 1991 blev opgaven overført til ToldSkat, Ottiliavej. I forbindelsen med overførslen skete ingen ændring i opgaveporteføljen i forhold til administrationen i Kildeskattehuset.

15. marts 1996 blev ToldSkat, Centralt Bogholderi, Ottiliavej, hvorunder udbytteskatteadministrationen henhørte, overført til Told- og Skattestyrelsen. Administration af udbytteskat fortsatte uændret.

15. marts 1999 blev udbytteskatteadministrationen udskilt fra Centralt Bogholderi i Told- og Skattestyrelsen og placeret i ToldSkat, Nærum. Udlægningsskrivelsen omtaler kun de bogholderimæssige funktioner – uagtet administration af udbytteskatten var uændret.

1. februar 2004 blev udbytteskatteadministrationen flyttet til ToldSkat, Ballerup, uden at opgaveporteføljen blev ændret.

**VP-ordning**
VP-ordningen omfatter kun fysiske aktionærer, som har aktier i børsnoterede danske selskaber, og er skattepligtige til et af 12 europæiske/nordamerikanske lande. Når aktierne ligger i depot i et dansk pengeinstitut kan aktionæren få indeholdt udbytteskat reduceret til den sats, der er aftalt i den relevante dobbeltbeskatningsoverenskomst.

Kontrollen med pengeinstitutternes administration af udbytteskatteindeholdelsen bør tages alvorligt, således at VP-ordningen ikke kører efter pengeinstitutternes forgodtbefindende.
Vedlagte rapport af 20. juli 2000 fra ToldSkat København viser, at kun 37 % af depoter med reduceret indeholdelse har korrekt dokumentation.
Pengeinstitutternes administration af ordningen er ikke kontrolleret siden.

Side 1 / 5

15. november 2004
Journal nr. 06/04-4330-00506



Det vil være mest hensigtsmæssigt at kontrollen placeres i udbytteskatteadministrationen, dels fordi kontrollen kræver fortrolighed med VP-ordningen og kravene til dokumentation, dels fordi placeringen af kontrollen vil kunne udnytte den varierende belastning, som følger af selskabernes regnskabsår og af digitaliseringen.
Under henvisning til ovenstående skønnes det, at udbytteskatteadministrationen ikke vil få behov for ressourcetilførsel.

Pengeinstitutternes brug af interne numre i forbindelse med frikortmarkering på aktiedepoterne bør standses, da skattemyndighederne ikke har kendskab til hvem, der gemmer sig bag de anvendte numre. I stedet foreslås tildeling af CVR-nummer og udbytteskattefrikort til den pågældende entitet, uanset om denne er dansk eller udenlandsk.

Det foreslås derfor, at kontrollen med pengeinstitutternes overholdelse af ordningen forankres i udbytteskatteadministrationen.

**L 153 – 2003**
Ved lov nr. 153 i 2003 med tilhørende bekendtgørelse af 15. oktober 2003 bortfaldt samtlige udbytteattester.
Moderselskaber får nu udbytte uden indeholdelse af udbytteskat uden at moderselskabets revisor skal afgive erklæring.
Danske selskaber og fonde får udbytteskatten godtgjort via selvangivelsen.
Udenlandske selskaber, fonde og personer, som ikke deltager i VP-ordningen, fortsat må indsende ansøgning om refusion af udbytteskat.

Kontrollen med at indeholdelsesfri udlodning til moderselskaber ikke bliver misbrugt - nu der ikke er krav om revisorerklæring – foreslås indarbejdet i kontrolplanen for at skærpe SKAM's opmærksomhed overfor de nye regler om udbytteskat.

**Udbyttekontrol**
Udbyttekontrollen er en sammenkørsel af udbytte iflg. regnskabet og angivet udbytte. Udbyttekontrollen omfatter meget store differencer. I den senest gennemførte udbyttekontrol (for indkomståret 2001) manglede angivelse af ca. 50.000.000.000,- kr. Derudover er der konstateret en nettodifference på ca. 2.000.000.000,- kr. mellem udbytte iflg. regnskab og angivet udbytte.
Den samlede difference kendes ikke, da plus i det ene selskab modregnes i minus i det andet selskab. Det bemærkes, at diffencerne er i udbytterne, ikke i udbytteskatterne.
Udbyttekontrollen har til og med 2001 kørt som listeudskrivning fra selskabsskattesystemet.
For indkomståret 2002 er udbyttekontrollen tilrettelagt med direkte udskrivning af breve fra 3S.
Hvorledes udbyttekontrollen skal ske, efter at Told- og Skattestyrelsen har besluttet ikke at anvende fase 3 udbygningen af 3S (specielt udviklet til udbytteskatteadministrationen) foreligger ikke oplyst.

Side 2 / 5

Case 1:18-md-02865-LAK    Document 808-31    Filed 05/12/22    Page 4 of 11

15. november 2004
Journal nr. 06/04-4330-00506



Udbyttekontrolkørslerne finder normalt sted i november året efter indkomståret.

### 3S

Fra 2004 er det besluttet ikke at benytte fase 3 i 3S til andet end registrering af modtagne ansøgninger fra udlandet om refusion og VP-indberetninger vedr. udlændinge.

I 3S er indbygget en kontrol af, at der for intet selskab refunderes skat af mere udbytte, end der er angivet.
Kontrollens formål er at opdage og indkredse evt. misbrug af refusionsordningen.

Registrering i 3S ville endvidere give mulighed for maskinel kontrol af oplysningerne på udbytteangivelsen og RKO-indberetningerne, svarende til S73/S74-afstemningen.
Efter beslutningen om fra 2004 ikke at registrere udbytteangivelserne og rentekontroloplysningerne i 3S, men direkte i SAP h.h.v. rentekontrolordningen, vides ikke hvorledes svig tænkes imødegået systemmæssigt.

Det bemærkes, at regneark-ordningen (se nedenfor) med Danske Bank og S.E.B. ikke registreres i 3S, mens øvrige refusioner til udlandet fortsat registreres i 3S med beløb, navn og adresse for at forhindre dobbelt udbetaling af refusioner.
Der er ingen kontrol med, om refusion sker både over regneark og papiransøgning sendt direkte til udbytteskatteadministrationen.

### Regneark-ordning

Der er 2001 indgået aftale med Danske Bank og S.E.B. om, at bankerne påser, at ansøgninger om refusion er behørigt udfyldt. Bankerne udarbejder regneark for de godkendte refusionsansøgninger. Regnearket indeholder oplysning om aktionærens navn og det beløb, som ønskes udbetalt til aktionæren. Regnearket sendes som mail til udbytteskatteadministrationen, som på grundlag heraf anviser de ønskede beløb.
Danske Bank fremsender desuden en papirkopi af regnearket vedlagt de underliggende refusionsansøgninger, mens S.E.B. alene fremsender regneark elektronisk.
Som modydelse for pengeinstitutternes arbejde bestræber udbytteskatteadministrationen sig på at refundere de ønskede beløb inden en uge fra modtagelsen af regnearket i elektronisk form.
Regneark-ordningen skønnes at dække refusion for knapt 300.000.000,- kr./år.

### Pålæg af bøder

Efter Kildeskattelovens § 66 stk. 2, kan Skatteministeren eller den han bemyndiger dertil (udbytteskatteadministrationen) fremtvinge angivelse ved pålæg af daglige bøder. Inddrivelse af bøderne har været Politiets opgave og bøderne har været taget til indtægt for Politiet.

Side 3 / 5

Confidential Pursuant to Protective Order        SKAT_MDL_001_00375533

15. november 2004
Journal nr. 06/04-4330-00506



Politiet i Hvidovre har imidlertid afvist at indfordre bøderne under henvisning til, at ToldSkat kunne inddrive dem, da vi efter fusionen har fået egne fogeder. Da det ikke har været muligt at finde hjemlen til at pålægge Politiet arbejdet, har det ikke været muligt at indfordre bøderne.

**0-stilling**
Told- og Skattestyrelsen har ved flere lejligheder gennem de senere år tilkendegivet, at der ikke skulle være problemer med, at eneejere af konkursramte selskaber nægtes godskrivning af betalt udbytteskat, når udbytteskatten ikke er betalt af selskabet. Udbytteskatteadministrationen har sendt flere eksempler på denne situation til Told- og Skattestyrelsen, Opkrævningskontoret.
Udbytteskatteadministrationen har imidlertid endnu ikke fået grønt lys til at anmode kommunerne om at slette selvangivet udbytteskat, når ejeren af det konkursramte selskab har oplyst, at vedkommende har modtaget udbytte, hvori der er indeholdt - men ikke betalt - udbytteskat.

Noget tilsvarende gør sig gældende, når et selskab likvideres, uden at udbytteskatten bliver betalt.

**Erfaringsudveksling**
Udbytteskatteadministrationen har gjort Told- og Skattestyrelsen opmærksom på nogle uanseelige selskaber, som udlodder meget store beløb til moderselskaber i udlandet (opfyldningsselskaber), hvilket har givet anledning til undersøgelser i Told- og Skattestyrelsen.

Told- og Skattestyrelsens opmærksomhed er henledt på, at refusion af udbytteskat til en konkret bank i Frankrig er vokset eksplosivt, og at der kunne være tale om aktieudlån, idet entiteter, som er skattepligtige til Frankrig, får al indeholdt udbytteskat refunderet.
Det bemærkes, at udbytteskatteadministrationen for nylig har afvist at refundere udbytteskat til en fransk bank, som havde lånt aktierne af en engelsk bank (ca. 9.000.000,- kr.).

Det er givet, at udveksling af oplysninger til SKAM/Told- og Skattestyrelsen vil kunne give anledning til kontrolsager.

**Sammenfatning**
De problemer udbytteskatteadministrationen oplever, kan skyldes at grænsedragningen fremstår uklar, selvom udbytteskatteadministrationen føler, at opgaveporteføljen er veldefineret, al den stund den ikke er ændret siden Kildeskattedirektoratet.

Udbytteskatteadministrationen står til rådighed i forbindelse med lovgivning, bekendtgørelser, cirkulærer og andre overordnede retningsliner med det mål at skabe en mere rationel administration både med hensyn til retssikkerhed, ressourcebesparelse og rimelighed/ansvarlighed overfor publikum og samarbejdspartnere.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00375534



Henvendelse vedrørende indholdet i dette brev bedes rettet til FC Lisbeth Rømer, tlf. nr. 74854.

Med venlig hilsen

**Bilag**
*Københavnerundersø-*
*gelsen af 20. juli 2000*

Lisbeth Rømer          /Erik Jungersen

**ToldSkat Nordsjælland-Bornholm**
**Region Ballerup  Lautrupvang 1 A  2750 Ballerup**
Telefon 7237 2000   Fax 7237 2023   www.toldskat.dk   ballerup@toldskat.dk

Ekspeditionstid:   Mandag-onsdag 9.00-15.00   Torsdag 9.00-16.00   Fredag 9.00-14.00

Side 5 / 5

Customs and Treasury
**Attn: Deputy Director Preben Bialas** East Railway Street 123
2100 Copenhagen 0

*Problems in the control and recovery of profit tax*

At the meeting of the Customs and Tax Agency on 26. It was agreed in October 2004 that the dividend tax administration should draw up a summary catalog of the problems that have not been resolved over time.

**Background**

The 1990 merger involved the dividend tax administration in the tasks of the Source Tax House in Birkerød. The circular of 9 August 1991 transferred the task to Customs Tax, Ottiliavej. In the context of the transfer, no change occurred in the task portfolio in relation to the administration of the Source Tax House.

On 15 March 1996, Customs Tax, Central Accounting, Ottiliavej, under which the dividend tax administration belonged, was transferred to the Customs and Tax Office. The administration of dividend tax continued unabated.

On 15 March 1999, the dividend tax administration was separated from the Central Accounting Office in the Customs and Tax Office and placed in the Customs Tax, Juvenile. The attachment letter only mentions the accounting functions, regardless of the administration of the dividend tax, without any change.

On 1 February 2004, the dividend tax administration was transferred to Customs Tax, Ballerup, without changing the task portfolio.

**VP scheme**

The VP scheme only covers physical shareholders holding shares in Danish listed companies and is liable to tax to one of 12 European/North American countries. Where the shares are held in custody in a Danish financial institution, the shareholder may have withholding tax reduced to the rate agreed in the relevant Double Tax Convention.

The monitoring of the management of the tax withholding by financial institutions should be taken seriously so that the VP regime does not operate as the banking industry sees fit.
The annexed report of 20 July 2000 by CustomsTax Copenhagen shows that only 37 % of reduced-holding storage has correct documentation. The administration of the scheme by banking institutions has not been checked since.

Page 1 / 5

Confidential Pursuant to Protective Order

SKAT_MDL_001_00375531

It would be most appropriate to place the control in the dividend tax administration, both because the control requires confidentiality of the VP regime and the requirements of documentation, and because the location of the control could benefit from the varying burden resulting from the companies' financial years and from the digitization.
In view of the above, it is considered that the dividend tax administration will not need resource allocation.

The use of internal numbers by banks in the context of the card marking on the equity deposits should be stopped as the tax authorities have no knowledge of who is hiding behind the numbers used. Instead, it is proposed to assign the VAT number and tax credit card to the entity in question, regardless of whether it is Danish or foreign.

It is therefore proposed that the monitoring of the compliance of banks with the scheme be embedded in the dividend tax administration.

**L 153-2003**
By Act No. 153 in 2003 and related Order of 15. October 2003 all dividend certificates were abolished.
Parent companies are now reaping dividends without withholding tax without the parent company's statutory auditor being required to make a statement.
Danish companies and foundations are compensated for the dividend tax by means of the tax return. Foreign companies, foundations and persons not participating in the VP scheme may continue to apply for the refund of dividend tax.

The monitoring of non-containing distribution to parent companies is not abused - now there is no requirement for an auditor's report - is proposed to be included in the control plan in order to raise SK.AM's awareness of the new dividend tax rules.

**Performance Checking**
The yield check is a combination of results. the financial statements and the profit and loss. Dividend control includes very large differences. The most recent dividend checks carried out (for the 2001 income year) failed to indicate approximately € 50 000 000 000 - € In addition, a net difference of approximately €2,000,000,000 has been observed. between yields according to. accounting and specified returns.
The total difference is not known as the plus in one company is counted in minus in the other company. It is noted that the differentials are in dividends, not in dividend taxes.
Dividend control has run up to 200 liters as a list printing from the corporate tax system.
For the 2002 income year, profit control is organized by directly printing letters from 3S.
How the dividend control is to be carried out after the Customs and Treasury has decided not to apply the stage 3 extension of 3S (specifically developed for the dividend tax administration) has not been provided.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00375532

15 November 2004
Journal No 06/04-4330-00506



Dividend checks shall normally take place in November of the year following the year of income.

**3S**
From 2004 it has been decided not to use stage 3 of 3S other than the recording of applications received from abroad for reimbursement and VP reports for. foreigners.

In 3S, a check is built in to ensure that no company retains tax on more dividends than is indicated.
The purpose of the checks shall be to identify and identify any misuse of the reimbursement system.

Moreover, registration in 3S would allow for the automatic verification of the information contained in the profit declaration and the RKO reports, corresponding to the S73/S74 vote.
Following the 2004 decision not to register the profit returns and the interest rate control data in 3S but directly in SAP h.h. the interest rate control system is not known how fraud is likely to be systematically addressed.

It is noted that the spreadsheet scheme (see below) with Danske Bank and S.E.B. is not recorded in 3S, while other repayments to the rest of the world are still recorded in 3S with amounts, name and address in order to prevent the double payment of refunds.
There is no check whether the refund is made on both spreadsheets and paper applications sent directly to the dividend tax administration.

**Spreadsheet Scheme**
The 2001 agreements have been concluded with Danske Bank and S.E.B. of the banks ensuring that applications for reimbursement are duly completed. The banks shall draw up spreadsheets for the approved refund applications. The spreadsheet shall contain the name of the shareholder and the amount requested to be paid to the shareholder. The spreadsheet is sent by e-mail to the dividend tax administration, which on this basis indicates the amounts requested.
Danske Bank shall also submit a hard copy of the spreadsheet accompanied by the underlying reimbursement claims, while S.E.B. transmit only spreadsheets electronically.
In return for the work of banks, the dividend tax administration shall endeavor to reimburse the amounts requested within one week of receipt of the spreadsheet in electronic form.
The spreadsheet scheme is estimated to cover reimbursement for barely € 300,000,000 - € 1000.

**Imposition of fines**
According to Section 66 of the Source Tax Act. 2, the Minister of Finance or the person authorized to do so (the Dividend Tax Administration) may impose a daily penalty. Recovery of the fines has been the task of the police and the fines have been taken to the police's account.

Page 3 / 5

Confidential Pursuant to Protective Order

SKAT_MDL_001_00375533



However, the police in White have refused to impose the fines on the grounds that Customs Tax could recover them, since after the merger we have had their own bailiffs. Since it has not been possible to find the home to impose the work on the police, it has not been possible to impose the fines.

**0 position**
The Customs and Tax Board has stated on several occasions in recent years that there should be no problem with the refusal to approve paid dividend tax to sole owners of bankrupt companies when the dividend tax has not been paid by the company. The Dividend Tax Administration has sent several examples of this situation to the Customs and Tax Office, the Charges Office. However, the Dividend Tax Administration has not yet been given the green light to ask the municipalities to abolish the tax on dividends, as the owner of the bankrupt company has indicated that he has received dividends containing - but not paid - dividend tax.

The same applies when a company is liquidated without the dividend tax being paid.

**Exchange of experience**
The Dividend Tax Administration has drawn the attention of the Customs and Tax Board to some reputable companies which are distributing very large amounts to parent companies abroad (filling companies), which have led to investigations in the Customs and Tax Board.

The attention of the Tax and Tax Office is drawn to the fact that the refund of dividend tax to a specific bank in France has expanded rapidly and that it could be a form of equity lending, since entities which are liable to tax to France are refunded all of the dividend tax.
It should be noted that the Dividend Tax Administration has recently refused to refund dividend tax to a French bank which had borrowed the shares of an English bank ( ca. € 9 000 000 - € 500).

It has been said that the exchange of information to the School/Customs and Tax Office could give rise to control cases.

**Summary**
The difficulties experienced by the dividend tax administration may be due to the fact that the threshold is unclear, although the dividend tax administration feels that the task portfolio is well defined, as it has not changed since the Source Tax Directorate.

The Dividend Tax Administration is available in connection with legislation, regulations, circulars and other broad guidelines with the aim of providing a more rational administration in terms of legal certainty, resource saving and fairness/accountability to the public and to the partners.

15 November 2004
Journal No 06;04-4330-00506



Please address the content of this letter to FC Lisbeth Rømer, Tel. No 74854.

Yours sincerely,

**Annex** *Copenhagen study/sen of 20 July 2000*

Lisbeth Rømer                    /Erik Jungersen

**TaxNorthsoulland-Bornholm**
**Region Ballerup** Lautrupvang 1 A 2750 **Ballerup**
Telephone 7237 2000 Fax 7237 2023 www.toldskat.dk ballerup@toldskat.dk

Dispatch time: Monday - Wednesday 9.00 - 15.00 Thursday 9.00 - 16.00 Friday 9.00 - 14.00

Page 5 / 5

Confidential Pursuant to Protective Order

SKAT_MDL_001_00375535