# Exhibit 22

16.3.2005



**Notat**

# Udbytteskatteadministrationen

Udbytteskatteadministrationen, ToldSkat Ballerup, varetager tastningen af selskabers udlodninger - angivelse (normalt 1 gang om året), tastning af RKO indberetninger - manuelle indberetninger om udlodning fra unoterede selskaber, refusion af for meget indeholdt udbytteskat, registrering af betaling af udbytteskat.
Desuden foretages for hvert indkomstår udbyttekontrol.

Udbytteskatteadministrationen har altid været landsdækkende.

1. Indledning

2. Lovgrundlag

3. Administration af udbytteskatten

    3.1.Udbytteangivelser – 06.016 i forbindelse med de udloddende selskabers deklarerede udbytte, herunder udbyttekontrol

    3.2.Udbytteindberetninger – 06.023 og 06.024 og indberetninger fra de depotførende institutter/VP (elektronisk) om modtagerne af udbytte og indeholdt udbytteskat

    3.3.Tilbagebetaling til ikke skattepligtige modtagere af udbytte og selskaber mv, hvor der er indeholdt for meget udbytteskat

    3.4.Andragender om tilbagebetaling af udbytteskat efter DBO til aktionærer bosat i udlandet, samt efter internationale konventioner

    3.5.Indbetalinger. Bogholderiopgaven omfatter
       • Opkrævning af indeholdt udbytteskat, jfr KSL § 65
       • Udbetalinger af udbytteskat jfr KSL § 67

4. Kontrol

5. Udbytteskattens forankring i kontorer i Styrelsen

6. Konklusion
................................................................................. Side 1 af 19



## 1. Indledning

I marts 1999 kom udbytteskatteadministration fra Styrelsen til region Nærum.

Oktober 2002 blev et til formålet udviklet system 3 S taget i brug for tastning af:

- Angivelser
- Håndtering af attester
- Af andre refusioner
- Udbyttekontrollen

For indkomståret 2002 blev der indført obligatorisk indberetningspligt om udbytte fra børsnoterede aktier i dansk depot ejet af personer. Indberetningspligt vedrørende personer og selskaber havde tidligere alene omfattet udlodning fra investeringsbeviser (indført fra og med indkomståret 1995).

Marts 2003 blev vedtaget en forenkling af udbytteadministrationen, således at der for selskaber fra 1 jan 2004 skulle indeholdes og betales en slags foreløbig nettoskat. Lovændringen medførte også en forenkling for selskaberne. Der skulle fortsat angives udbytte og udbytteskat af det udloddende selskab, men som noget nyt:

- Aktionærer, som er selskaber, foreninger mv og erhvervsdrivende fonde mv, og som er skattepligtige efter Selskabsskattelovens § 1 og Fondsbeskatningsloven kan nøjes med at få indeholdt 19,8 % i udbytteskat
- Udloddende unoterede selskaber indberetter, hvem modtagerne er
- Indberetningspligt for selskaber, som er aktionærer i børsnoterede selskaber
- Adgang til at bruge Tast Selv ved angivelse og indberetning

I forbindelse hermed traf man i Styrelsen beslutning om fra 2004 ikke mere at taste angivelser i system 3 S men i stedet i SAP. Oplysning om udbyttemodtager skulle tastes direkte i RKO.

Investeringsforeninger samt selskaber, der er underlagt selskabsskat, kan udlodde udbytte. Det er kapitalselskaber såsom aktieselskaber, anpartsselskaber og investeringsforeninger. Der opstår ofte nye selskabskonstruktioner, som ligner selskaber, men som ikke umiddelbart er i overensstemmelse med de gængse definitioner.

Som selskaber omtales foruden A/S og ApS erhvervsdrivende fonde og foreninger.

Der er 2 hovedgrupper af selskaber:

Confidential Pursuant to Protective Order     SKAT_MDL_001_00375549



- De børsnoterede selskaber (ca 170) og investeringsforeningerne (ca 800) er få, men har mange aktionærer/medlemmer. Investeringsforeningerne er typisk indskrevet i VP uanset om de er børsnoteret eller unoteret og administreres derfor af de kontoførende depotbanker gennem VP, som elektronisk overfører data til ToldSkat, hvilket også er tilfældet for de børsnoterede selskaber.

- De ikke børsnoterede selskaber er mange (potentielt ca 145.000), men har almindeligvis få aktionærer.

De ikke børsnoterede selskaber er derfor hovedopgaven i udbytteadministrationen, men også refusion af udbytteskat efter DBO til aktionærer bosat i udlandet, samt efter internationale konventioner er en stor opgave i udbytteadministrationen. Refusionerne knytter sig primært til børsnoterede aktier og investeringsforeningsbeviser.

Antal modtagne erklæringer/attester – angivelser/indberetninger

| | 2002 | 2003 | 2004 |
|---|---|---|---|
| U 2 Erklæring | 44.565 | 42.610 | 4.086 |
| U 1 a | 17.482 | 16.347 | 1.258 |
| U 1 Selskaber | 58.059 | 58.934 | 22.230 |
| U 1 Fonde | 8.333 | 8.690 | 1.563 |
| Angivelser | | | 39.338 |
| RKO indberetninger | | | 34.769*<br>93.180** |
| I alt | 128.439 | 126.581 | 103.244*<br>161.655** |
| RKO-elektronisk indberetning af udlodninger fra børsnoterede aktier og Investeringsforeningsbeviser | | | 1.167.812**<br><br>1.532.444** |
| | | | |
| | | | |
| Andragender | Ca 13.000 | Ca 13.000 | 13.223 |
| | | | |
| | | | |
| TastSelv | | | 2900 |

* Indberetningsfrist 20.1.2005, hvorfor en del først er modtaget i 2005 vedrører blanket 06.023 og 06.024.
** Antal indberettede modtagere

.........................................................................................    Side 3 af 19

Confidential Pursuant to Protective Order      SKAT_MDL_001_00375550



Personalenormeringen til udbytteadministrationen for 2005 er på 8,06 årsværk. Der er pr 1.2.2005 bort set fra FC 6 fuldtidsansatte, samt 2,75 årsværk fra det rummelige arbejdsmarked.

## 1. Lovgrundlag

Reglerne vedrørende indeholdelse af udbytteskat fremgår af Kildeskattelovens afsnit VI.

Fra og med 1. januar 2004 er der indført nye regler vedrørende udbytteskat:

Lov nr. 153 ad 15. marts 2003 (modernisering af administrationen af udbytteskatten og andre justering). Der er ændringer i Kildeskatteloven, Selskabsskatteloven, Skattekontrolloven og Dødsbobeskatningsloven.

Seneste lovbekendtgørelse (nr. 678) af Kildeskatteloven af 12. august 2002, afsnit VI

Kildeskattebekendtgørelse nr. 852 af 15. oktober 2003, kapitel 11

Seneste lovbekendtgørelse (nr. 289) af Opkrævningsloven af 28. april 2003, § 2

Seneste lovbekendtgørelse(nr. 869) af Skattekontrolloven af 12. august 2004, § 9 B og § 10 A.

## 2. Administration af udbytteskatten

### 3.1. Udbytteangivelser – 06.016 til angivelse af udloddende selskabers deklarerede udbytte, herunder udbyttekontrol

Af Kildeskatteloven § 65 fremgår:

§ 65. I forbindelse med enhver vedtagelse om udbetaling eller godskrivning af udbytte af aktier eller andele i selskaber eller foreninger m.v. omfattet af selskabsskattelovens § 1, stk. 1, nr. 1, 2, 2 e og 4, skal vedkommende selskab eller forening m.v. indeholde 28 pct. af det samlede udbytte, medmindre andet er fastsat i medfør af stk. 4 eller følger af stk. 5, 6 eller 7. Indeholdelse med 28 pct. skal endvidere foretages i den samlede udbetaling eller godskrivning i forbindelse med selskabets opkøb af egne aktier m.v., jf. ligningslovens § 16 B, stk. 1, medmindre andet følger af stk. 6. Til udbytte henregnes alt, hvad der af selskabet udloddes til aktionærer eller andelshavere, med undtagelse af friaktier og frian-

......................................................................    Side 4 af 19

Confidential Pursuant to Protective Order    SKAT_MDL_001_00375551



dele samt udlodning af likvidationsprovenu foretaget i det kalenderår, hvori sel-
skabet endeligt opløses. Bestemmelsen i § 46, stk. 3, finder tilsvarende anvendel-
se. Det indeholdte beløb benævnes »udbytteskat«.

*Stk. 2.* Udbytteskat indeholdes ikke i udbytte af selskabets egne aktier eller an-
dele. Skattemyndighederne kan forlange, at selskabet foreviser dokumentation
for størrelsen af dets beholdning af egne aktier eller andele.

*Stk. 3.* [3)] Reglerne i dette afsnit finder tilsvarende anvendelse på udlodninger og
udbetalinger m.v., jf. stk. 1, foretaget af investeringsforeninger, der udsteder om-
sættelige beviser for medlemmernes indskud. Det gælder dog ikke udlodninger
fra obligationsbaserede investeringsforeninger som nævnt i aktieavancebeskat-
ningslovens § 2 d, stk. 3. Der skal indeholdes udbytteskat af tillægget efter lig-
ningsloven § 16 A, stk. 8. Bestemmelsen i stk. 7 finder i relation til investerings-
foreninger kun anvendelse for investeringsforeninger omfattet af selskabsskatte-
lovens § 1, stk. 1, nr. 5 a.

*Stk. 4.* Skatteministeren kan fastsætte regler om, at der ikke skal indeholdes
udbytteskat i udbytter, der ikke skal medregnes ved opgørelsen af modtagerens
skattepligtige indkomst. § 65 C, stk. 2, finder tilsvarende anvendelse vedrørende
indeholdelse af udbytteskat. Skatteministeren kan endvidere fastsætte regler om
offentliggørelse af en database over selskaber og foreninger m.v., som er beretti-
get til at modtage udbytte uden indeholdelse af udbytteskat.

*Stk. 5.* Der indeholdes ikke udbytteskat i udbytte, som et selskab, der er hjem-
mehørende i udlandet, modtager fra et selskab, der er hjemmehørende her i lan-
det, når det pågældende udbytte ikke er omfattet af skattepligten, jf. selskabs-
skattelovens § 2, stk. 1, litra c.

*Stk. 6.* Der skal ikke foretages indeholdelse i udbytte m.v., der er skattefrit for
modtageren i henhold til ligningslovens § 16 A, stk. 4 og 9, eller § 16 B, stk. 4.

*Stk. 7.* Af udbytte af aktier eller andele som modtages af selskaber og foreninger
m.v. og fonde m.v., der er skattepligtige efter selskabsskattelovens § 1 eller efter
fondsbeskatningsloven, kan der indeholdes 19,8 pct. udbytteskat. Skatteministe-
ren fastsætter regler om nødvendig dokumentation for, at indeholdelse med 19,8
pct. kan finde sted, herunder om offentliggørelse af en selskabsmandtalsdata-
base.

- Jfr Kildeskatteloven § 66 er selskaber m. fl. pligtige at give meddelelse
  om udlodningen. Angivelse – 06.016 og indbetaling 06.017 af den inde-
  holdte udbytteskat skal ske til ToldSkat Ballerup senest den 10. i måne-
  den efter generalforsamlingen, for store selskaber dog den sidste dag i
  måneden efter generalforsamlingen, jfr Opkrævningsloven § 2.

........................................................................    Side 5 af 19



## Proceduren vedrørende administrationen af udbytteskat

- Det udloddende selskab: Er pligtigt, jfr Kildeskattelovens bestemmelser at indsende udbytteangivelse – 06.016 til ToldSkat Ballerup eller bruge TastSelv

- SKAM: Det af selskabet selvangivne deklarerede udbytte indtastes af SKAM i System 3 S

- ToldSkat Ballerup:
  Modtagne angivelser – 06.016 indtastes i system SAP.

  Udbyttekontrol foretages normalt i november for det foregående kalenderår ved at indtastningerne i system 3S af selvangivelser foretaget af SKAM sammenkøres med indtastninger af udbytteangivelser i SAP foretaget af udbytteskatteadministrationen, skal også kunne foretages for indkomstårene efter 2002. Normalt opdages der derved beløbsmæssige fejl på mellem 30 og 50 milliarder kr.

  System 3 S har facilitet til at sammenkøre indtastningerne og håndtere mangler og differencer, men da systemet for udlodningsåret 2004 og senere ikke anvendes til angivelser, kan samkørsel ikke finde sted dèr.

  Udbyttekontrolliste 8472 udskrives, når udbytteangivelsen – 06.016 ikke er indtastet. DVS udbyttet er selvangivet, men selskabet har ikke indsendt udbytteangivelse - 06.016. Udbytteskatteadministrationen retter herefter direkte henvendelse til det udloddende selskab.

  Udbyttekontrollen for 2001 viste manglende angivelser på ca 45 milliarder.
  Udbyttekontrollen for 2002 viste manglende angivelser på ca 10 milliarder.

  Udbyttekontrolliste 8470 udskrives, hvis der forekommer difference mellem oplysninger fra udbytteangivelsen – 06.016 og de selvangivne oplysninger. Listen fremsendes til SKAM, der undersøger forholdet og herefter meddeler resultatet til udbytteskatteadministrationen.

  Udbyttekontrollen for 2001 viste en netto difference på ca 3 milliarder
  Udbyttekontrollen for 2002 viste en netto difference på ca 20 milliarder

Side 6 af 19

Confidential Pursuant to Protective Order



Efter lovændringen marts 2003 har udbytteskatteadministrationen i 2004 modtaget ca 68.000 erklæringer, attester og angivelser, mens ca 7 % (under 3.000) har anvendt TastSelv.

Modtagne indbetalinger indtastes i SAP og udlignes i det ligeledes tastede tilsvar (angivelsen) CVR eller SE nr styrer angivelse og betaling.

**Problem:**
- Ingen kontrol i SAP udover om CVR/SE nr. eksisterer.

- Ingen afstemning mellem selvangivelse og udbytteangivelse.

- Samme angivelse kan indtastes både i TastSelv og fra papir eller indsendes flere gange på papir uden at det opdages.

- Der kan bruges forskellige CVR ved angivelse, betaling og indberetning. Dette forekommer ofte indenfor investeringsforeningerne.

Ovennævnte medfører omstændelige og tidskrævende rettelser

**Løsning:**
Den trufne beslutning om at anvende SAP uden brug af system 3S i udbytteskatteadministrationen omgøres, således at den særligt udbyggede systemmodel i system 3 S anvendes igen. Alternativt er der behov for, at der indarbejdes en del kontroller i system SAP mfl., der kan sikre en så korrekt udbytteskatteadministration som muligt.

System 3 S har indbygget følgende kontroller:
- Datakvalitet – kun at anvende selskabsskatterelevante CVR og SE nr

- Ingen mulighed for dobbeltregistrering

- Udlodningsåret falder sandsynlig i forhold til regnskabsperioden

- SKAMs tastning af selvangivelsen medfører advis ved differencer over til udbytteangivelsen

- Afvikling af udbyttekontrollen er forberedt med rykkerbreve og automatisk adressering af disse

- Styreredskab således at 2. rykker i udbyttekontrollen kan udsendes direkte fra systemet

.......................................................................................... Side 7 af 19

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00375554



Hertil kommer at det er enkelt og sikkert at rette i system 3 S.

### 3.2. Udbytteindberetninger – 06.023 og 06.024 og indberetninger fra de depotførende institutter/VP (elektronisk) om modtagerne af udbytte og indeholdt udbytteskat

Det udloddende selskab/depotføreren skal senest 20. januar i året efter udlodningen indberette hvem modtager af udbyttet er (SKL/RKO).

Til manuelle indberetninger anvendes for personer med PNR  blanket 06.023, for selskaber og udlændinge m.fl. anvendes 06.024. Da der normalt kun er 1 udlodning i løbet af et indkomstår, har udbytteskatteadministrationen ved henvendelse fra selskaberne anbefalet, at det udloddende selskab indberetter aktionær oplysningerne samtidig med at det angiver udbyttet (blanket 06.016).

- Børsnoterede selskaber/investeringsforeninger mv indberetter udbytte til aktionærerne gennem VP/depotbanken (det kontoførende institut). VP indberetter elektronisk på vegne af det kontoførende institut

- Ikke børsnoterede investeringsforeninger indberetter udlodning til aktionærerne gennem VP/depotbanken (det kontoførende institut)

- Ikke børsnoterede selskaber indberetter selv udbytte til aktionærerne ved at indsende udbytteindberetning – 06.023 og 06.024 til ToldSkat Ballerup eller bruge TastSelv

Vedrørende de elektronisk indberettende selskaber, investeringsforeninger mfl. der udlodder udbytte flere gange i løbet af året, indberettes der til RKO en samlet sum for udbytte henholdsvis udbytteskat, medens der angives pr. udlodning.

For selskaber, som har regnskabsår med slut 31.3. vil modtagne udlodninger i perioden 1.1. – 31.3. først komme i RKO det efterfølgende år, hvorfor det vanskeligt kan benyttes som kontroloplysning i forbindelse med selvangivelsen. Dette er dog ikke principielt anderledes end alle andre indberettede kontroloplysninger om fx renter, gæld mv.

Manuelle indberetninger tastes af udbytteskatteadministrationen i system RKO, som først åbner for tastning fra november i indkomståret. Indberetning kan i selskabet ske på TastSelv, men er indtil nu sjældent benyttet.

**Problem:**

Confidential Pursuant to Protective Order    SKAT_MDL_001_00375555



- Indberetningerne om udbyttemodtagerne kan løbende tastes og TastSelv anvendes, men er ikke tilgængelige for udbytteskatteadministrationen før op til 10 måneder efter modtagelsen af udbytte/udlodning (ultimo januar).

- Fejlliste fra RKO udsendes tidligst i januar året efter udlodning er vedtaget

- Informationerne har betydning for tilbagebetaling og refusion.

- Utilstrækkelig validitetskontrol

- Investeringsforeninger med flere udlodninger i indkomståret indberetter total pr modtager. Modtagende selskaber med fremadforskudt indkomstår vil få martsudlodninger registreret på det forkerte indkomstår

- Kredsen af indberettere efter SKL § 9 B er hverken fyldestgørende eller i overensstemmelse med den finansielle sektors og selskabernes forretningsgange.

- Udlodninger til aktier, investeringsforeningsbeviser mv. i pensionsdepot eller andre skattebegunstigede depoter skal ikke indberettes. Depotbankerne/VP styrer indberetningen gennem skattekoder. Angivelsen kan derfor ikke holdes op mod indberetningen for VP-administrerede selskaber/investeringsforeninger

- Udbyttemodtagende selskaber med fremadforskudt regnskabsår – indberettes først det efterfølgende år

**Løsning:**
Brug af system 3 S

- Den tidligere anvendte attestdel i system 3 S matcher indberetningerne.
  Der skal derfor formentlig kun mindre ændringer til, før system 3 S kan bruges også til indberetninger af aktionæroplysninger, som i system 3 S løbende kan modtages, anvendes og behandles, således at RKO efterfølgende kan modtage (registrere) valide informationer. Der er i system 3 S adgang til indberettede data straks efter indberetning.
- Der er etableret spor fra system 3 S til RKO, hvorfra oplysningerne overføres til printselvangivelsen, idet man i system 3 S kan fremfinde oplysninger både på udbytteudlodders og udbyttemodtagers identifikation
  - Faciliteterne i system 3 S medfører at fejllister ikke udskrives, idet alle kontroller til brug for udbytteadministrationen er rykket frem til indberetningstidspunktet
  - Der bør være mulighed for at overføre historik til Kontrolkontoret idet fejl og ændringer ofte er udgangspunkt for indberetningskontrollen mv.

Confidential Pursuant to Protective Order   SKAT_MDL_001_00375556



**Brug af RKO**

- RKO skal tilpasses til løbende at kunne modtage, anvende og behandle (registrere) indberetninger. Der skal være adgang til de indberettede data - evt. i et særligt univers - og der skal løbende genereres fejllister. Senere skal der ske overførsel til R75 og R 75 S som i dag. Der bør etableres revisionsspor.

**Fremrykket frist for indberetning**

- Af hensyn til tilbagebetalinger/refusioner er der behov for at kende udbyttemodtager på tilbagebetalingstidspunktet.

- En fremrykning af indberetningsfristen, fremtidig indberetning af de skattebegunstigede depoter, samt en justering af indberetningspligtens omfang og kredsen af indberetningspligtige, vil imidlertid kræve lovændring i skattekontrolloven.

**Som en sidegevinst ved disse lovændringer kan nævnes:**

- De elektroniske indberetninger om udbytte vil være klassificeret med en aktuel ejerstatuskode (skattekode) på udlodningstidspunktet (retserhvervelsestidspunktet) og ikke som nu med en ejerstatus (skattekode) pr ultimo indkomståret, idet denne kan være ændret efter retserhvervelsestidspunktet

- For de unoterede selskaber vil en fremrykning kunne medføre en forenkling af de administrative byrder for udlodder, idet angivelse og indberetning sker samtidigt og derfor vil kunne foretages på samme blanket.

**3.3. Tilbagebetaling til ikke skattepligtige modtagere af udbytte og selskaber mv, hvor der er indeholdt for meget udbytteskat**

Uagtet muligheden for kun at indeholde 19,8 % i udbytteskat for modtagende selskaber sker der fejl. Det udloddende selskab kender ikke altid udbyttemodtagers forhold, som kan berettige til en anden eller ingen indeholdelse af udbytteskat. Ikke skattepligtige entiteter, som kan dokumentere skattefrihed, får den indeholdte udbytteskat udbetalt. Administrationen af denne refusionsordning sker i udbytteskatteadministrationen.

Også andre forhold kan medføre ændret eller ingen udbytteskat, såsom moder/datterselskabs forhold, frikort eller at aktieejer ikke på udlodningstidspunktet var skattepligtig eller kun delvis skattepligtig til Danmark. Også fonde og investeringsforeninger er som regel skattefri. Det afhænger af den selskabsretlige

Confidential Pursuant to Protective Order  SKAT_MDL_001_00375557



konstruktion (lovkode) og selskabets formål. Dette sker i udbytteskatteadmini-strationen.

Såfremt et selskab i en periode ikke skal betale selskabsskat, kan det efter ansøg-ning få den indeholdte udbytteskat udbetalt.
Dette sker i det område, hvori selskabet har hjemsted.

### 3.4. Andragender om refusion (tilbagebetaling) af udbytteskat efter DBO til aktionærer bosat i udlandet, samt efter internationale konventioner

Aktier, som ejes af udlændinge, som på udlodningstidspunktet er begrænset skat-tepligtige til Danmark, det gælder både personer og selskaber, beskattes som udgangspunkt med 28 %. Aktionæren kan med et andragende tilbagesøge diffe-rencen mellem den indeholdte udbytteskat på 28 % og den udbytteskatteprocent, der skal betales efter DBO med aktionærens skattepligtsland.

Anmodningen fremsendes til udbytteskatteadministrationen på en særlig blanket, som udover at være udfyldt, skal være attesteret af det udloddende sel-skab/pengeinstitut, samt påtegnet af en kompetent skattemyndighed i ansøgerens hjemland.

Udbytteskatteadministrationen foretager udbetaling direkte til ansøgeren eller til et af vedkommende anført pengeinstitut.

Forretningsgang:
- Udbetaling foretages af udbytteskatteadministrationen
- Udbetalingslister fra system 3 S behandles i udbytteskatteadministratio-nen
- De modtagne andragender indtastes i system 3 S under det udloddende selskab (CVR) og under den modtagende aktionærs navn og adresse
- ToldSkat har en aftale med Danske Bank, Nordea og SEB om at der kan indsendes andragender med et regneark vedlagt som grundlag for refusi-onen. I så fald udbetales regnearkets sum til pengeinstituttet til fordeling.

### Problem:
- Udbytteskatteadministrationen kontrollerer normalt ikke forinden udbeta-lingen foretages, at angivelse 06.016 er modtaget eller at udbytteskatten er betalt. I nogle situationer modtages andragender om refusion før angi-velsen er modtaget. Da der er 1 måneds frist for refusionsudbetalingen før renter påløber, kan der skulle udbetales før angivelses og betalingsfri-sten udløber

- Da indberetninger i RKO, som tidligere beskrevet, først er tilgængelige på et langt senere tidspunkt, er der ikke adgang til oplysninger om mod-

Confidential Pursuant to Protective Order

SKAT_MDL_001_00375558



tagere, hvorfor der ingen mulighed er for at kontrollere om ansøger af re-
fusionen er modtager af udbyttet

- System SAP har ingen kontrol af refusionsbeløb overfor angivelse og be-
  taling

**Løsning:**
- En lovændring kan sikre, at der ikke kan refunderes før 1 måned efter fri-
  sten for angivelse og indberetning er udløbet

- En lovændring som beskrevet under pkt. 3.2 kan gøre fristen for angivel-
  se, betaling og indberetning identisk således at fejlagtige refusioner mv.
  vil kunne reduceres

- System 3 S er indrettet til at styre, at der i alt ikke refunderes mere end
  der er angivet

**VP ordningen**
De aktier mv., som er indskrevet i VP, behandles på en mere effektiv måde. Per-
soner, som ejer sådanne aktier, og som er skattepligtige til enten Norge, Sverige,
Tyskland, Holland, Belgien, USA, Canada, Irland, Luxemburg, Schweitz, Græ-
kenland og Storbritanien kan få indeholdt den efter DBO relevante skatteprocent
i udbytteudlodningen, således at refusion kan undgås. Dette administreres gen-
nem en særlig administrativ ordning der er indgået mellem de danske depotban-
ker, VP og ToldSkat (i daglig tale VP-ordningen). Ordningen kræver, at de uden-
landske aktionærer/medlemmer har deres værdipapirer deponeret hos en dansk
depotfører. Den reducerede indeholdelse kan både omfatte børsnoterede og uno-
terede værdipapirer.

Oplysningerne om disse udenlandske aktionærer går elektronisk fra depotføre-
ren/VP i 3S.

Forslag: VP ordningen udvides til at omfatte aktionærer med skattepligt til Færø-
erne og Grønland, samt at kredsen af aktionærer udvides til også at omfatte sel-
skaber i de lande, som er omfattet af ordningen.


**3.5. Indbetalinger.**

Bogholderiopgaven er integreret i udbytteskatteadministrationen og omfatter

- opkrævning af indeholdt udbytteskat, jfr KSL § 65.
  Indbetalinger konteres i SAP

...................................................................................    Side 12 af 19



I 2004 var der udbytteskatteindbetalinger på i alt 7.192.270.938 kr.

Selskaber rykkes for manglende betaling, når der kun er angivet, og rykkes for manglende angivelse, når der kun er betalt.

Såfremt udsendelse af rykkerbrev ikke medfører betaling oversendes beløbet til inddrivelse i hjemregionen.

Fortsat manglende angivelse påregnes indfordret gennem udbyttekontrollen. Udbytteskatteadministrationen har mødt modstand hos politiet i forbindelse med inddrivelse af bøder, hvorfor der ikke anvendes bøder til at fremprovokere manglende angivelse.

Der er ikke umiddelbart mulighed for 0-stilling af udlodninger, hvor udbytteskatten ikke er betalt og selskabet (APS) er gået konkurs

- Udbetalinger af udbytteskat, jfr KSL § 67
Der udbetales for meget indeholdt udbytteskat til indenlandske aktionærer, som ikke skal betale 28 % og til udenlandske aktionærer, i lande Danmark har DBO med.

Der udbetales årligt ca 565 mill. på andragender, regneark og tilbagebetalinger

**Problem:**
- Betalinger over giro benytter ikke OCR linien, hvorfor alle giroindbetalinger og konto til konto overførsler skal tastes i system SAP. TastSelv angivere oplyses således at betaling kan gå direkte i SAP.

- Ingen mulighed for at inddrive bøder til fremprovokering af angivelse

- Ingen mulighed for 0-stilling

- Ingen hjemmel til fastsættelse af skønsmæssige ansættelser

**Løsning:**
- Indbetalinger overføres elektronisk til SAP

- Der skaffes hjemmel til inddrivelse af bøder ved manglende angivelse

- Der skaffes hjemmel til 0-stilling af udbytteskat efter samme regler som for A-skat

- Der skaffes hjemmel til fastsættelse af skønsmæssige tilsvar

Side 13 af 19

Confidential Pursuant to Protective Order



## 4. Kontrol

Fra udlodningsåret 2004 er der kun i begrænset omfang foretaget kontrol i forbindelse med den almindelige udbytteskatteadministration, idet fraværet af system 3 S har fjernet et antal maskinelle kontroller, således at der ikke har været nogen validitetskontroller eller samkøringskontroller. Også på andre kontrolområder er der fravalg af kontroller.

Dette gælder på følgende områder:
- **Maskinelle kontroller**
  - ➢ Kontrol af udlodders CVR/SE nr.
  - ➢ Kun muligt at taste 1 angivelse
  - ➢ Kontrol af indberetter ved visning af navn på skærmen
  - ➢ Samkøring af angivelse og tilbagebetalinger/refusioner, automatisk advis til SKAM ved konstaterede forskelle ved tastning af selvangivelse overfor udbytteangivelse
  - ➢ Alle maskinelle kontroller mangler pt med store administrative vanskeligheder til følge

- **Indberetningskontrol**
  - ➢ Hos indberetteren skal grundlaget og korrektheden af alle RKO indberetninger kontrolleres, om der er foretaget udlodning til den indberettede mv.
  - ➢ Kontrol af den særlige VP- ordning hos depotførende

- **Udgående kontrol**
  - ➢ Kontrol af udlodders forhold, relation bogholderi, regnskab og angivelse

Kontrollen med udbytte har ikke været et område, som har været højt prioriteret, men er nu medtaget som et særligt emne i kontrolplan 2005. Kontrollen kunne med fordel indarbejdes som en obligatorisk del af den årlige kontrol.

Udbyttekontrollen mellem udbytteangivelsen og selvangivelsen forudsættes opretholdt.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00375561



## 5.  Udbytteskats forankring i kontorer i Styrelsen mv.

En arbejdsgruppe bestående af repræsentanter for forskellige kontorer i Styrelsen og deltagere fra udbytteskatteadministrationen har i 2005 afholdt 4 møder for at udarbejde en procesbeskrivelse.

Problemstillingerne har imidlertid vist sig at være mere komplekse end først antaget, hvorfor arbejdsgruppen har koncentreret sig om at formulere problemerne således, at ansvaret for regler og systemer kan henføres til ét eller flere kontorer i Styrelsen.
Som led i afdækningen har gruppen udarbejdet vedlagte beskrivelse. Derpå har man for den enkelte aktivitet beskrevet, hvor den er forankret i Styrelsen og præciseret hvilke delaktiviteter, der henhører under den pågældende aktivitet, og dermed under det/de anførte kontoer.
Det fremgår af ansvarsdiagrammet, at der mindst er 11 kontorer involveret i den miniverden, som udbytteskatteadministrationen er.
Der er desuden flere aktiviteter, der ikke er enighed om, hvor skal ansvarsplaceres.

Ansvaret for, at processen er som beskrevet, er ikke placeret, da kompleksiteten i den samlede proces først er blevet afdækket gennem arbejdsgruppens arbejde.

## 6.  Konklusion

Som en konsekvens af at udbyttekontrollen for 2001 viste  mangler og differencer mellem de udbytteangivne og de selvangivne beløb på minimum 50 milliarder og for 2002 på minimum 30 milliarder samt at udbytteskatteadministrationen stort set refunderer udbytteskat efter DBO uden mulighed for kontrol af ander, end at skattepligten er attesteret, er det påkrævet, at der snarest træffes beslutninger og med virkning fra 2006 implementeres forbedringer af udbytteskatteadministrationens administrationsværktøjer.

**De i notatet nævnte problemer**:

3.1.  Angivelse
- SAP har ingen kontrol af CVR eller SE udover, at det eksisterer
- SAP har ingen sikkerhed mod dobbeltangivelse, sker i vidt omfang
- SAP sikrer ikke at der ved angivelse og betaling bruges samme CVR eller SE nr.
- Ovennævnte giver mange rettelser og usikker registrering.

3.2.  Indberetning
- Informationerne har betydning for tilbagebetaling og refusion.

......................................................................    Side 15 af  19

---

Confidential Pursuant to Protective Order    SKAT_MDL_001_00375562



- Indberetningerne om udbyttemodtagerne kan løbende tastes og TastSelv anvendes, men er ikke tilgængelige for udbytteskatteadministrationen før op til 10 måneder efter modtagelsen af udbytte/udlodning (ultimo januar).
  - Fejlliste fra RKO udsendes tidligst i januar året efter udlodning er vedtaget
  - Informationerne har betydning for tilbagebetaling og refusion.
  - Utilstrækkelig validitetskontrol
  - Sumindberetning ved flere udlodninger i indkomståret indberetter total pr modtager, hvilket betyder, at modtagende selskaber med fremadforskudt indkomstår vil få martsudlodninger registreret på det forkerte indkomstår
  - Kredsen af indberettere efter SKL § 9 B er hverken fyldestgørende eller i overensstemmelse med den finansielle sektors og selskabernes forretningsgange.
  - Udlodninger til aktier, investeringsforeningsbeviser mv. i pensionsdepot eller andre skattebegunstigede depoter skal ikke indberettes. Depotbankerne/VP styrer indberetningen gennem skattekoder. Angivelsen kan derfor ikke holdes op mod indberetningen for VP-administrerede selskaber/investeringsforeninger
- Udbyttemodtagende selskaber med fremadforskudt regnskabsår – indberettes først det efterfølgende år

3.3. og 3.4. Tilbagebetaling – indland og andragender om refusion - udlandet
  - Ansøgninger om tilbagebetaling/refusion kan modtages og skulle udbetales (frist 1 måned) inden frist for angivelse er udløbet
  - RKO er på tilbagebetalingstidspunktet ikke tilgængelig, hvorfor kontrol af om ansøger er udbyttemodtager ikke er mulig
  - SAP har ingen kontrol af refusion overfor angivelse og betaling

3.5. Indbetalinger
  - Betalinger over giro benytter ikke OCR linien, hvorfor alle giroindbetalinger og konto til konto overførsler skal tastes i system SAP. TastSelv angivere oplyses således at betaling kan gå direkte i SAP.
  - Ingen klar hjemmel til at inddrive bøder til fremprovokering af angivelse
  - Ingen mulighed for 0-stilling ved konkurs eller likvidation
  - Ingen hjemmel til fastsættelse af skønsmæssige ansættelser

4.0 Kontrol
  - Manglende maskinelle kontroller
  - Manglende fokus på indberetningskontrollen
  - Manglende fokus på udbytteskat ved udgående kontrol

5.0 Udbytteskattens forankring i kontorer i Styrelsen - minimum 11 kontorer
  - Der er flere aktiviteter, der ikke er enighed kontorerne imellem, hvor skal ansvarsplaceres, fx:

.................................................................................    Side 16 af 19



- o Fastsættelse af løbende tilsvar
- o Fastsættelse af dagbøder
- o Fastsættelse af bagatelgrænser
- o Aftale med VP/Finansrådet om entiteter
- o Aftale med VP/Finansrådet om depotførende pengeinstitutter (den særlige VP-ordning)
- o Rettelsesprocedure på grundlag af selvangivelse, årsopgørelse, R75 og servicebrev.

**De i notatet nævnte forslag til løsning af problemerne:**

3.1. Angivelser
Proceduren er tilrettelagt i system 3 S, således der sikres
- Datakvalitet – kun at anvende selskabsskatterelevante CVR og SE nr
- Ingen mulighed for dobbeltregistrering
- SKAMs tastning af regnskabsoplysninger og differencer i den forbindelse over til angivelsen kan løbende overvåges
- Afvikling af udbyttekontrollen er forberedet med rykkerbreve og automatisk adressering af disse
- Styreredskab således at 2. rykker i udbyttekontrollen kan udsendes direkte fra systemet

3.2. Indberetning
Brug af system 3 S
- Den tidligere anvendte attestdel i system 3 S matcher indberetningerne.
- Der skal derfor formentlig kun mindre ændringer til, før system 3 S kan bruges også til indberetninger af aktionæroplysninger, som i system 3 S løbende kan modtages, anvendes og behandles, således at RKO efterfølgende kan modtage (registrere) valide informationer. Der er i system 3 S adgang til indberettede data straks efter indberetning.
- Der er etableret spor fra system 3 S til RKO, hvorfra oplysningerne overføres til printselvangivelsen, idet man i system 3 S kan fremfinde oplysninger både på udbytteudlodders og udbyttemodtagers identifikation
- Faciliteterne i system 3 S medfører at ikke udskrives ?, idet alle kontroller til brug for udbytteadministrationen er rykket frem til indberetningstidspunktet
- Der bør være mulighed for at overføre historik til Kontrolkontoret idet fejl og ændringer ofte er udgangspunkt for indberetningskontrollen mv.

Brug af RKO
- RKO skal tilpasses til løbende at kunne modtage, anvende og behandle (registrere) indberetninger. Der skal være adgang til de indberettede data - evt. i et særligt univers - og der skal løbende genereres fejllister. Senere

Side 17 af 19

    SKAT_MDL_001_00375564



skal der ske overførsel til R75 og R 75 S som i dag. Der bør etableres re-
visionsspor.

Fremrykket frist for indberetning
- Af hensyn til tilbagebetalinger/refusioner er der behov for at kende ud-
  byttemodtager på tilbagebetalingstidspunktet.
- En fremrykning af indberetningsfristen, fremtdig indberetning af de skat-
  tebegunstigede depoter, samt en justering af indberetningspligtens om-
  fang og kredsen af indberetningspligtige, vil imidlertid kræve lovændring
  i skattekontrolloven.

Som en sidegevinst ved disse lovændringer kan nævnes:
- De elektroniske indberetninger om udbytte vil være klassificeret med en
  aktuel ejerstatuskode (skattekode) på udlodningstidspunktet (retserhver-
  velsestidspunktet) og ikke som nu med en ejerstatus (skattekode) pr ulti-
  mo indkomståret, idet denne kan være ændret efter retserhvervelsestids-
  punktet
- For de unoterede selskaber vil en fremrykning kunne medføre en forenk-
  ling af de administrative byrder for udlodder, idet angivelse og indberet-
  ning sker samtidigt og derfor vil kunne foretages på samme blanket.

3.3. og 3.4. Tilbagesøgning og refusion.
- System 3 S kan styre at der ikke tilbagebetales/refunderes mere end der
  er angivet.
- En lovændring kan sikre, at der ikke kan refunderes før 1 måned efter fri-
  sten for angivelse og indberetning er udløbet
- En lovændring som beskrevet under pkt. 3.2 kan gøre fristen for angivel-
  se, betaling og indberetning identisk således at fejlagtige refusioner mv.
  vil kunne reduceres
- System 3 S er indrettet til at styre, at der i alt ikke refunderes mere end
  der er angivet

3.5. Indbetaling
- Der etableres elektronisk overførsel af alle indbetalinger
- Der skabes hjemmel til inddrivelse af bøder ved manglende angivelse
- Der skabes hjemmel til 0-stilling af udbytteskat efter samme regler som
  for A-Skat
- Der skaffes hjemmel til fastsættelse af skønsmæssige tilsvar.

4.   Kontrol
- Maskinelle kontroller genindføres
- Udbyttekontrollen mellem udbytteangivelsen og selvangivelsen mv. for-
  udsættes opretholdt.

..............................................................................................    Side 18 af 19

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00375565



- Kontrollen kunne med fordel indarbejdes som en obligatorisk del af den årlige indberetningskontrol og udgående kontrol.

5.0  Udbytteskattens forankring i kontorer i Styrelsen
- De uplacerede områder beskrives nærmere med henblik på en indstilling af opgaveplacering.


Lisbeth Rømer                                        Jette Zester
Udbytteskatteadministrationen                       Kontrolkontoret

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_00375566

16.3.2005

■CJWT

Note

## Dividend tax administration

The dividend tax administration, ToldSkat Ballerup, handles the entry of companies' distributions - declaration (usually 1 time per year), entry of RKO reports - manual reports on distribution from unlisted companies, reimbursement of over-contained dividend tax, registration of payment of dividend tax.
In addition, for each income year, dividend checks are carried out.

The dividend tax administration has always been nationwide.

1. Introduction

2. Legal basis

3. Administration of the dividend tax
   3.1. Dividend declarations - 06,016 in connection with declared dividends of the distributing companies, including dividend control


   3.2. Dividend reports- 06.023 and 06.024 and reports from the custodian institutions/VP (electronic) on the recipients of dividends and withholding dividend tax

   3.3. Repayment to non-taxable recipients of dividends and companies, etc., where too much dividend tax is included

   3.4. Petitions for repayment of dividend tax under DBO to shareholders resident abroad, as well as under international conventions

   3.5.1        payments. The bookkeeping task includes
   • Collection of withholding tax, cf. KSL § 65
   • Dividend tax payments under KSL § 67


   Control

   Dividend tax anchorage in offices of the Danish
   Agency
6. Conclusion
_____..........._____
,............ Page 1 of 19

16.3.2005

## 1. Introduction

In March 1999, dividend tax administration came from the Danish Agency to region Nærum.

On 15 October 2002, a system 3 S was developed for the purpose of keying:

- Entries
- Handling certificates
- Of other refunds
- Dividend control

For the income year 2002, mandatory reporting was introduced on dividends from listed shares in Danish depot owned by persons. Reporting obligations for persons and companies had previously only included distribution from investment certificates (introduced from the 1995 income year onwards).

March 2003, a simplification of the dividend management was adopted so that from 1 January 2004 a kind of provisional net tax would be included and paid for companies. The change in the law also led to simplification for companies. Dividends and dividend tax on the distributing company were to continue to be declared, but as something new:

- Shareholders who are companies, associations, etc. and social foundations, etc., and who are liable to tax under Section 1 of the Danish Companies Act and the Danish Fund Taxation Act can only be subject to 19.8% dividend tax
- Distributing unlisted companies report who the beneficiaries are
- Reporting obligation for companies that are shareholders of listed companies
- Access to use Key Even when entering and reporting

In connection with this, the Danish Agency decided from 2004 to no longer enter entries in system 3 S but instead in SAP. Information about the dividend recipient was to be entered directly into RKO.

Mutual funds and companies subject to corporation tax may distribute dividends. These are capital companies such as public limited companies, private limited companies and mutual funds. New company structures often emerge which are similar to companies but which do not immediately comply with the usual definitions.

In addition to A/S and ApS, companies are mentioned as social foundations and associations.

There are 2 main groups of companies:

SKSK00405057- 33
SKAT_MDL_001_00375517_T

16.3.2005

.......................................................................... Page 2 of 19

Confidential Pursuant to Protective Order

16.3.2005

- The listed companies (about 170) and the mutual funds (about 800) are few, but have many shareholders/members. The mutual funds are typically enrolled in VP regardless of whether they are listed on the stock exchange or unlisted and are therefore managed by the account-holding custodian banks through VP, who electronically transfer data to Customs Tax, which is also the case for the listed companies.

- The unlisted companies are many (potentially about 145,000) but generally have few shareholders.

The non-listed companies are therefore the main task of the dividend management, but also the reimbursement of dividend tax after DB O to shareholders resident abroad, as well as according to international conventions is a major task in the dividend management. The reimbursements are primarily linked to listed shares and mutual fund certificates.

| Number of erections | declarations/ declarations | | |
|---|---|---|---|
| | 2002 | 2003 | 2004 |
| U 2 Declaration | 44.565 | 42.610 | 4.086 |
| U 1 a | 17.482 | 16.347 | 1.258 |
| U 1 Companies | 58.059 | 58.934 | 22.230 |
| U 1 Foundations | 8.333 | 8.690 | 1.563 |
| Entries | | | 39.338 |
| RKO alerts | | | 34.769*<br>93.180** |
| Total | 128.439 | 126.581 | 103.244*<br>161.655** |
| RKO electronic r-eporting of distributions from listed shares and Investment fund certificates | | | 1.167.812**<br><br>1.532.444** |
| | | | |
| Applications | About 13,000 | About 13,000 | 13.223 |
| | | | |
| KeyS elv | | | 2900 |

* Reporting deadline 20.1.2005, which is why some have not been received until 2005 relate to forms 06.023 and 06.024.
** Number of reported recipients

. ....................................................................................................................    Page 3 of 19

The personal standard for the dividend management for 2005 is 8.06 full-time equivalents. As of 1.2.2005, fc has 6 full-time employees and 2.75 full-time employees from the inclusive labour

Confidential Pursuant to Protective Order

16.3.2005

market.

# 1. Legal basis

The rules on withholding dividend tax are set out in Title VI of the Withholding Tax Act.

As of 1 May 2004, the commission will be On 1 January 2004, new rules on dividend tax have been introduced:

Law No 104/200 153 at 15. The commission also took the necessary measures to improve the efficiency of the system. There are amendments to the Withholding Tax Act, the Danish Companies Act, the Danish Tax Control Act and the DeathBone Tax Act.

Latest Decree-Law (No. 678) by the Withholding Tax Act of 12 December 1978. August 2002, Title VI

Order of source No 101 of 19 December 1979 on the taxation of the products M by 382R2809 (OJ No C 198, 29.7.1 October 2003, Chapter 11

Latest Decree-Law (No. 289) by the Collection Act of 28 July 1989. April 2003, § 2

Last Decree-Law (No 1049/2004) 869) by the Tax Control Act of 12 December 1989. § 9B and § 10A.

# 2. Administration of the dividend tax

3.1. Dividend declarations - 06,016 to indicate declared dividends of distributing companies, including dividend control

Section 65 of the Withholding Tax Act states:

§ 65.1  any decision to pay or credit dividends on shares or shares in companies or associations, etc. covered by Section 1(1) of the Danish Corporation Tax Act. 1, No. 1, 2, 2 e and 4, the company or association concerned, etc. contain 28 per cent. the total yield, unless otherwise provided in accordance with paragraph 1. 4 or consequences of paragraphs 1 and 2. 5, 6, or 7. Containment by 28 per cent in addition, the total payment or credit in connection with the company's acquisition of its own shares, etc., as referred to in Article 11(1) of Regulation (EC) No 1782/2003, shall be made in accordance with the procedure laid down in Article 18 of Regulation (EC) No 1 Section 16B(1) of the Danish Tax Assessment Act 1, without prejudice to paragraph 1. 6. Dividends include anything distributed by the company to shareholders or shareholders, with the exception of free shares and freeholdings.

......... .................................................................................................................... Page   4 of 19



16.3.2005

parts and distribution of liquidation proceeds made during the calendar year in which the company is finally dissolved. The provision in Paragraph 46(1) of the Directive is not to be used for the purpose of determining whether or not the Paragraph 3 shall apply mutatis mutandis. The amount contained is referred to as 'dividend tax'.

*Paragraph. 2.* Dividend tax is not included in dividends on the company's own shares or shares. The tax authorities may require the company to provide evidence of the size of its holding of its own shares or shares.

*Paragraph. 3.* [3)] The rules laid down in this Title shall apply mutatis mutandis to distributions and payments, etc., in accordance with Article 18(1) of Regulation (EC) No 1257/1999. Paragraph. I would also like to thank the Commissioner for his work. However, this does not apply to distributions from bond-based mutual funds as mentioned in Section 2d(2) of the Danish Share Margin Tax Act. 3. Dividend tax must be deducted from the surcharge under Section 16A(1) of the Danish Tax Assessment Act. 8. The provisions of paragraph 1 shall apply. 7 applies only to unit trusts covered by Section 1(1) of the Danish Corporation Tax Act in relation to unit trusts. 1, No. 5 a.

*Paragraph. 4.* The Minister for Taxation may lay down rules that no dividend tax shall be included in dividends not to be included in the calculation of the beneficiary's taxable income. Paragraph 65c(1) Paragraph 2 shall apply mutatis mutandis to the deduction of dividend tax. The Minister for Taxation may also lay down rules for the publication of a database of companies and associations, etc., which are entitled to receive dividends without deduction of dividend tax.

*Paragraph. 5.* Dividend tax shall not be included in dividends received by a company established abroad from a company established in that country where the dividends in question are not subject to the tax liability referred to in Article 11(1) of Regulation (EC) No 1782/2003. Section 2(2) of the Danish Companies Act. I would also like to point out that, in accordance with Article 10(1)

*Paragraph. 6.* There must be no deduction in dividends etc. that are tax-free for the recipient in accordance with Section 16A(1) of the Danish Tax Assessment Act. Paragraphs 4 and 9, or Paragraph 16b(1) of the Directive, are not to be used. 4.

*Paragraph. 7.* Dividends on shares received by companies and associations, etc. funds etc. that are liable to tax under Section 1 of the Danish Companies Act or under the Danish Fund Taxation Act, 19.8 per cent may be contained. dividend tax. The Minister for Taxation lays down rules on necessary evidence that the deduction is 19.8 per cent. may take place, including the publication of a company spokesman's database.

• See The Withholding Tax Act § 66 are companies etc. Fl. obligation to notify the distribution. Declaration - 06.016 and payment 06.017 of the withholding tax on dividends must be made to Customs Tax Ballerup by 10 June 2017 at the latest. in the month following the general meeting, for large companies, however, on the last day of the month following the general meeting, cf. Section 2 of the Danish Collection Act.

.................................................................................................................    Page  5 of 19



Confidential Pursuant to Protective Order

16.3.2005

The procedure for administering dividend tax

- The distributing company: Is obliged, cf. the provisions of the Danish Withholding Tax Act to submit dividend declaration - 06016 to Customs Tax Ballerup or use TastS elv

- Really: The declared dividends declared by the company are entered by SKAM in System 3 S

- Customs Tax Ballerup:
  Entries received - 06016 is entered in system SAP.

  Dividend checks are usually carried out in November for the previous calendar year by linking the entries in system 3 S of tax returns made by SKAM with entries of dividend declarations in SAP made by the dividend tax administration, which must also be possible for the income years after 2002. Normally, errors of between DKK 30 billion and DKK 50 billion are detected.

  System 3 S has the facility to interconnect entries and handle defects and differences, but since the system for the 2004 distribution year and later is not used for declarations, carpooling cannot take place there.

  Yield checklist 8472 is printed when the dividend declaration - 06.016 is not entered. The DVS dividend is self-reported, but the company has not submitted dividend returns - 06016. The dividend tax administration then directs the distributing company.

  The yield control for 2001 showed a lack of indications of approximately EUR 45 billion. The yield control for 2002 showed a lack of indications of around EUR 10 billion.

  Yield checklist 8470 is printed if there is a difference between the information from the dividend declaration - 06.016 and the self-declared information. The list is forwarded to SKAM, which examines the situation and then communicates the result to the dividend tax administration.

  Dividend control for 2001 showed a net difference of approximately 3 billion
  Dividend control for 2002 showed a net difference of approximately EUR 20 billion

.................................................................... Page 6 of 19

  Following the change in the law in March 2003, the dividend tax administration received approximately 68,000 declarations, certificates and declarations in 2004, while approximately 7 % (less than 3,000) have used TastSelv.

  Received deposits are entered in SAP and settled in the similarly typed answer (the entry) CVR or SE No.

Problem:
- No control in SAP other than cvr/se no. Exist.

- No reconciliation between tax return and dividend return.

- The same entry can be entered both in Key Self and from paper or submitted several times on paper without it being detected.

- Different CVR can be used when entering, paying, and reporting. This often occurs

16.3.2005
within mutual funds.

The above results in cumbersome and time-consuming corrections

Solution:
The decision taken to use SAP without the use of system 3S in the dividend tax administration is reversed so that the specially developed system model in system 3 S is reapplyed. Alternatively, there is a need for a number of controls to be incorporated into system SAP etc. to ensure the most correct dividend tax administration possible.

System 3 S has built in the following controls:
- Data quality - to apply only corporation tax-relevant CVR and SE No 10

- No double registration option

- The distribution year is likely to fall in relation to the accounting period

- SKAM's entry in the tax return leads to advice on differences over to the dividend return

- Settlement of the dividend control is prepared with reminder letters and automatic addressing of these

- Control tool so that 2. reminders in the dividend control can be broadcast directly from the system

..................................................................... Page 7 of 19

In addition, it is simple and safe to fix in system 3 S.


3.2.Dividend reports - 06.023 and 06.024 and reports from the custodian institutions/VP (electronic) on the recipients of dividends and withholding dividend tax

The distributing company/custodian shall, by 20 June 2006 at the latest, submit to the Commission a decision on the application of this Directive. The commission will report on 1 January of the year following the distribution to the recipient of the dividends (SKL/RKO).

For manual reports, for persons with PNR form 06.023, for companies and foreigners, etc. 06.024. As there is normally only one distribution during an income year, the dividend tax administration has recommended, on request from the companies, that the distributing company report the information to the shareholder at the same time as it declares the dividends (Form 06.016).

- Listed companies/mutual funds, etc., report dividends to shareholders through the VP/custodian (the account-holding institution). VP reports electronically on behalf of the account-holding institution

- Unlisted mutual funds report distributions to shareholders through vp/custodian (account-holding institution)

- Unlisted companies report dividends themselves to shareholders by submitting dividend reporting - 06,023 and 06,024 to CustomsSkat Ballerup or using TastSelv

In the case of electronic reporting companies, mutual funds, etc. dividends are distributed several

16.3.2005

times during the year, a total amount of dividend tax or dividend tax shall be reported to RKO, while a total amount of dividend tax or dividend tax shall be reported per dividend tax. Distribution.

For companies with a financial year of more than 31.3. distributions will be received in the period 1.1. - 31.3. RKO only the following year, which is why it is difficult to use it as control information in connection with the tax return. However, this is not in principle different from all other reported control information on e.g. interest, debt, etc.

Manual reports are typed by the dividend tax administration in system RKO, which does not open for entry until November of the income year. Reporting can be done in the company on TastSelv, but until now is rarely used.

Problem:

.................................................................... Page 8 of 19

•   The reports of dividend receipts can be continuously typed and TastSelv used, but are not available to the dividend tax administration until up to 10 months after receipt of dividends/distributions (end of January).

•   Error list from RKO is issued no earlier than January of the year after distribution is adopted

•   The information has an impact on refunds and refunds.

•   Insufficient validity check

•   Mutual funds with multiple distributions in the income year report total per beneficiary. Receiving companies with forward income years will have March distributions recorded in the wrong income year

•   The circle of reporters under SKL § 9 B is neither adequate nor consistent with the business of the financial sector and the companies.

•   Distributions for shares, mutual fund certificates, etc. pension depot or other qualifying deposits are not to be reported. Custodian/VP manages reporting through tax codes. Therefore, the indication cannot be compared to the reporting for VP managed companies/investment performances

•   Dividend-receiving companies with forward-looking financial years - not reported until the following year

Solution:
Using System 3 S

The previously used certificate part in system 3 S matches the reports.
Therefore, it is likely that only minor changes will be made before system 3 S can also be used for reports of shareholder information, which in system 3 S can be continuously received, used and processed so that RKO can subsequently receive (record) valid information. System 3 S has access to reported data immediately after reporting.
Traces have been established from system 3 S to RKO from which the information is transferred to the print self-declaration, since system 3 S can obtain information on both the identification of

16.3.2005
dividend distributions and the recipient of the dividends.
- The facilities in system 3 S mean that fault lists are not printed, as all controls for the benefit administration have been moved forward to the time of reporting
- It should be possible to transfer history to the Control Office as errors and changes are often the starting point for reporting checks, etc.
- …• ........................................................................................................ Page   9 of 19

Using RKO
- RKO must be adapted to receive, use and process (record) reports on an ongoing basis. The data transmitted shall be accessible, if necessary, to the following: in a particular universe - and error lists must be generated on an ongoing basis. Later, there will be a transfer to R75 and R 75 S as of today. Audit trails should be established.

Advancing deadline for reporting
- For the sake of repayments/refunds, there is a need to know the dividend recipient at the time of repayment.

- However, an advance of the reporting deadline, future reporting of the qualifying depots, as well as an adjustment of the scope of the reporting obligation and the circle of reporting obligations, will require a change in the law in the Tax Control Act.

As a side benefit of these legislative changes include:
- The electronic dividend reports will be classified with a current ownership status code (tax code) at the time of distribution (time of filing) and not, as now, with an ownership status (tax code) at the end of the income year, which may have changed according to the legal acquisition time item

- For the unlisted companies, an advance could lead to a simplification of the administrative burden on distributions, since declarations and reporting could be made simultaneously and could therefore be made on the same form.


3.3. Repayment to non-taxable recipients of dividends and companies, etc., where too much dividend tax is included

Notwithstanding the possibility of withholding only 19,8 % in dividend tax for receiving companies, errors occur. The distributing company does not always know the circumstances of the dividend recipient, which may justify another or no deduction of dividend tax. Non-taxable entities which can prove tax exemption will receive the withholding tax. The administration of this reimbursement scheme is carried out in the dividend tax administration.

Other factors may also result in a change or no dividend tax, such as the relationship of the company/subsidiary, the free pass or the fact that the share owner was not liable to tax or only partially liable to tax to Denmark at the time of distribution. Funds and mutual funds are also usually tax-free. It depends on company law

.................................................................................. Page 10 of 19 construction (legal code) and the purpose of the company. This is done in the dividend tax administration.

If, for a period of time, a company does not have to pay corporation tax, it may, on application, receive the dividend tax collected.
This is done in the area in which the company has its registered office.

16.3.2005

3.4.Petitions for reimbursement (repayment) of dividend tax under DBO to shareholders resident abroad, as well as under international conventions

Shares owned by foreigners who at the time of distribution are subject to limited tax liability to Denmark, both persons and companies, are generally taxed at 28 %. With a petition, the shareholder may recover the difference between the dividend tax of 28 % retained and the dividend tax rate payable under the DBO with the shareholder's tax liability country.

The application shall be forwarded to the dividend tax administration on a special form which, in addition to being completed, must be certified by the distributing company/financial institution and endorsed by a competent tax authority in the applicant's home Member State.

The dividend tax administration shall make payments directly to the applicant or to a financial institution specified by him or her.

Business:
- Payment is made by the dividend tax administration
- Payment lists from system 3 S are processed in the dividend tax administration
- The petitions received are entered in system 3 S under the distributing company (CVR) and under the name and address of the receiving shareholder
- Customs Tax has an agreement with Danske Bank, Nordea and SEB that petitions can be submitted with a spreadsheet attached as the basis for the refund. In this case, the sum of the spreadsheet is paid to the financial institution for distribution.

Problem:
- The dividend tax administration does not normally check before payment is made that declaration 06.016 has been received or that the dividend tax has been paid. In some situations, refund petitions are received before the declaration is received. As there is a 1 month deadline for the reimbursement payment before interest accrues, payment may have to be made before the declaration and payment deadline expires

- As reports in RKO, as previously described, are only available at a much later stage, information on mod

............................................................................................................... Page  11 of 19



therefore there is no possibility of checking whether the claimee of the refund is the recipient of the dividends

- System SAP has no control over refund amounts over declaration and payment

Solution:
- A change in the law can ensure that a refund cannot be made until 1 month after the deadline for declaration and reporting has expired

- A change in the law, as described in paragraph 10, is not a change in the law. 3.2 may make the time limit for declaration, payment and reporting identical in such a way that erroneous

Confidential Pursuant to Protective Order

16.3.2005

reimbursements, etc. could be reduced

- System 3 S is designed to control that a total of no more refunds are made than is indicated

VP scheme
The shares etc. enrolled in VP are treated in a more efficient way. Persons who own such shares and who are liable to tax to either Norway, Sweden, Germany, the Netherlands, Belgium, the United States, Canada, Ireland, Luxembourg, Switzerland, Greece and the United Kingdom may include the tax rate relevant to the dividend distribution according to the DBO in order to avoid reimbursement. This is administered through a special administrative arrangement concluded between the Danish custodian banks, VP and Customs Tax (colloquially the VP scheme). The scheme requires foreign shareholders/members to have their securities deposited with a Danish custodian. The reduced containment may include both listed and unlisted securities.

The information about these foreign shareholders goes electronically from the custodian/VP of 3S.

Proposal: The VP scheme is extended to shareholders with tax liability to the Faroe Islands and Greenland, as well as to extend the circle of shareholders to companies in the countries covered by the scheme.

3.5.  Deposits.

The accounting task is integrated into the dividend tax administration and includes

- collection of withholding tax pursuant to Paragraph 65 of the KSL.
Deposits are posted in SAP

..................................................................... Page 12 of 19



In 2004, there were dividend tax payments totalling DKK 7,192,270,938.

Companies are moved for non-payment when only specified and moved for non-declaration when only paid.

If sending a reminder does not result in payment, the amount is sent for recovery in the region of origin.

Continued non-declaration is expected to be demanded through the dividend control. The dividend tax administration has faced opposition from the police over the recovery of fines, which is why no fines are used to provoke non-disclosure.

There is no immediate possibility of a 0-position of distributions where the dividend tax has not been paid and the company (APS) has gone bankrupt

16.3.2005
- Dividend tax payments under KSL § 67

Too much withholding dividend tax is paid to domestic shareholders, who do not have to pay 28% and to foreign shareholders, in countries Denmark has DBO included.

Approximately EUR 565 million is paid annually. on petitions, spreadsheets and refunds

Problem:
- Giro payments do not use the OCR line, which is why all giro deposits and account-to-account transfers must be entered into system SAP. KeySelv indicates so that payment can go directly into SAP.

- No possibility of recovering fines for invoking declaration

- No option for 0 position

- No legal basis for the determination of discretionary appointments

Solution:
- Deposits are transferred electronically to SAP

- A legal basis is provided for the recovery of fines for failure to state

- O-position of dividend tax is provided in accordance with the same rules as for withholding tax

- Provision is made for the establishment of discretionary answers



## 4. Control

From the 2004 distribution year, checks have been carried out only to a limited extent in the general dividend tax administration, since the absence of system 3 S has removed a number of machine checks, so that there have been no validity or interconnection checks. In other control areas too, there is a deselection of controls.

This applies in the following areas:
- Mechanical controls
  > Verification of distributions' CVR/SE No.

  > Only possible to type 1 entry

  > Checking the reporter when displaying name on screen

  > Interconnection of declarations and refunds/refunds, automatic advice to SKAM in

16.3.2005
the event of established differences when entering tax returns against dividend returns

> All machine controls are currently lacking, resulting in major administrative difficulties

• Reporting control
> At the reporter's office, the basis and correctness of all RKO reports must be checked whether distributions have been made to the reported, etc.

> Control of the special VP scheme at custodian

• Outbound checking
> Verification of the distributions' situation, relation to accounting, accounting and declaration

The control of yields has not been a priority area, but has now been included as a specific topic in the 2005 control plan. Controls could usefully be incorporated as a mandatory part of the annual control.

The dividend control between the dividend return and the tax return is assumed to be maintained.

.................................................................... Page 14 of 19

## 5. Dividend tax anchorage in offices of the Danish Agency, etc.

In 2005, a working group consisting of representatives of various offices in the Danish Agency and participants from the dividend tax administration held 4 meetings to prepare a process description.

However, the problems have proved to be more complex than first thought, which is why the working group has concentrated on formulating the problems in such a way that responsibility for rules and systems can be attributed to one or more offices in the Agency.
As part of the cover, the group has prepared the attached description. Then, for each activity, it has been described where it is anchored in the Agency and clarified which sub-activities fall under the activity in question, and thus under the account(s) listed.
The responsibility diagram shows that there are at least 11 offices involved in the mini-world of the dividend tax administration.
In addition, there are several activities that do not agree on where to place responsibility.

The responsibility for the fact that the process is as described is not located, as the complexity of the overall process has only been uncovered through the work of the working group.

## 6. Conclusion

As a consequence of the fact that the dividend control for 2001 showed shortcomings and differences between the dividends declared and the self-declared amounts of at least 50 billion and for 2002 of at least 30 billion, and that the dividend tax administration largely reimburses dividend tax according to DBO without the possibility of control of ducks, than certification of the tax liability, it is necessary to take decisions as soon as possible and, with effect from 2006, to implement improvements to the administrative tools of the dividend tax administration.

The problems mentioned in the note:

163.2005

## 3.1. Indication

- SAP has no control of CVR or SE other than that it exists
- SAP has no security against dual declaration, is done to a large extent
- SAP does not ensure that the same CVR or SE No.
- The above provides many fixes and unsafe registration.

## 3.2. Reporting

- The information has an impact on repayment and reimbursement.

........................................................................ Page 15 of 19

Confidential Pursuant to Protective Order

16.3.2005

- The reports of dividend receipts can be continuously typed and TastSelv used, but are not available to the dividend tax administration until up to 10 months after receipt of dividends/distributions (end of January).
  - Error list from RKO is issued no earlier than January of the year after distribution is adopted
  - The information has an impact on refunds and refunds.
  - Insufficient validity check
  - Sum reporting for multiple distributions in the income year reports total per beneficiary, which means that receiving companies with forward income years will have March distributions recorded in the wrong income year
  - The circle of reporters under SKL § 9 B is neither adequate nor consistent with the business of the financial sector and the companies.
  - Distributions for shares, mutual fund certificates, etc. pension depot or other qualifying deposits are not to be reported. Depotban-keme/VP manages the reporting through tax codes. Therefore, the declaration cannot be compared to the report for VP managed companies/mutual funds
- Dividend-receiving companies with forward-looking financial years - not reported until the following year

3.3. and 3.4. Repayment - Land and petitions for reimbursement - Abroad
  - Applications for repayment/reimbursement may be received and had to be paid (deadline of 1 month) before the deadline for declaration has expired
  - RKO is not available at the time of repayment, so verification of whether the applicant is a dividend recipient is not possible
  - SAP has no control over declaration and payment refunds

3.5.   Deposits
  - Giro payments do not use the OCR line, which is why all giro deposits and account-to-account transfers must be entered into system SAP. KeySelv indicates so that payment can go directly into SAP.
  - No clear legal basis for recovering fines for provoking disclosure
  - No possibility of an O-position in bankruptcy or liquidation
  - No legal basis for the determination of discretionary appointments

4.0 Control
  - Lack of machine controls
  - Lack of focus on reporting control
  - Lack of focus on dividend tax on outbound checks

5.0 Dividend tax anchorage in offices of the Danish Agency - minimum 11 offices
  - There are several activities that do not agree between the offices, where to be placed in charge, e.g.:
    - o Determination of current responses
    - o Fixing of daily fines
    - o Setting trifle limits
    - o Agreement with the VP/Financial Council on entities
    - o Agreement with the VP/Financial Council on custodial financial institutions (special

Confidential Pursuant to Protective Order

16.3.2005

VP scheme)
  o Correction procedure based on tax return, annual statement, R75 and service letter.

The proposals for solving the problems mentioned in the note are as:

## 3.1.  Entries

The procedure is organised in system 3 S to ensure
- Data quality - to apply only corporation tax-relevant CVR and SE No 10
- No double registration option
- SKAM's keying of financial information and related differences to the declaration can be monitored on an ongoing basis
- Settlement of the dividend control is prepared with reminder letters and automatic addressing of these
- Control tool so that 2. reminders in the dividend control can be broadcast directly from the system

## 3.2.  Reporting

Using System 3 S
- The previously used certificate part in system 3 S matches the reports.
- Therefore, it is likely that only minor changes will be made before system 3 S can also be used for reports of shareholder information, which in system 3 S can be continuously - received, used and processed so that RKO can subsequently receive (record) valid information. System 3 S has access to reported data immediately after reporting.
- Traces have been established from system 3 S to RKO from which the information is transferred to the print self-declaration, since system 3 S can obtain information on both the identification of dividend distributions and the recipient of the dividends.
- The facilities in system 3 S result in non-printing ?, as all controls for the benefit management have been brought forward to the time of reporting
- It should be possible to transfer history to the Control Office as errors and changes are often the starting point for reporting checks, etc.

Using RKO
- RKO must be adapted to receive, use and process (record) reports on an ongoing basis. The data transmitted shall be accessible, if necessary, to the following: in a particular universe - and error lists must be generated on an ongoing basis. Later



transfer to R75 and R 75 S as of today. Audit trails should be established.

Forward ffist for reporting
- For the sake of repayments/refunds, there is a need to know the dividend recipient at the time of repayment.
- However, an advance of the reporting deadline, the successful reporting of the tax-advantaged deposits, as well as an adjustment of the scope of the reporting obligation and the circle of reporting obligations, will require a change in the law in the Tax Control Act.

Page 19 of 19

16.3.2005

As a side benefit of these legislative changes include:

- The electronic dividend reports will be classified with a current ownership status code (tax code) at the time of distribution (time of filing) and not, as now, with an ownership status (tax code) at the end of the income year, which may have changed according to the legal acquisition time item
- For the unlisted companies, an advance could lead to a simplification of the administrative burden on distributions, since declarations and reporting could be made simultaneously and could therefore be made on the same form.

## 3.3.  and 3.4. Recovery and refund.

- System 3 S can control that no refunds are made/refunded more than is specified.
- A change in the law can ensure that a refund cannot be made until 1 month after the deadline for declaration and reporting has expired
- A change in the law, as described in paragraph 10, is not a change in the law. 3.2 may make the time limit for declaration, payment and reporting identical in such a way that erroneous reimbursements, etc. could be reduced
- System 3 S is designed to control that a total of no more refunds are made than is indicated

## 3.5.  Deposit

- Electronic transfer of all deposits is established
- Legal basis is provided for the recovery of fines for non-declaration
- O-position of dividend tax is created according to the same rules as for withholding tax
- Discretionary responses are provided.

## 4. Control

- Machine controls are reintroduced
- The dividend control between the dividend declaration and the tax return, etc. assumed to be maintained.

Confidential Pursuant to Protective Order

16.3.2005
- The controls could usefully be incorporated as a mandatory part of the annual reporting and outbound checks.

## 5.0 Dividend tax anchorage in offices of the Danish Agency
- The unplaced areas are described in more detail with a view to setting the task placement.


Lisbeth Rømer                                    Jette Zester
Dividend tax administration                       Control Office

Confidential Pursuant to Protective Order

SKSK00405057- 50
SKAT_MDL_001_00375517_T