# Exhibit 24

7. november 2006

# *Problemkatalog Udbytteskatten*
## 2006

Confidential Pursuant to Protective Order

# Indholdsfortegnelse:

| Kategori | Emne nr. | Emnetekst |
|---|---|---|
| **1. Udbyttemodtagere** | 1.1 | Ændring af lovgivning: Fremrykning af tidspunktet for indberetning vedr. udbyttemodtager, skattekontrollovens § 9 A (Jette). |
| | 1.2 | Ændring af lovgivning: Skattekontrollovens" § 9 B, stk. 5 og § 4 i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven " (Jette) |
| | 1.3 | Ændring af lovgivning: Udvidelse af indberetningspligten vedr. udbyttemodtagere efter skattekontrollovens § 9 B og § 10 A ved fjernelse af undtagelsen fra indberetning i BEK til skattekontrolloven, § 7 mv. (Jette) |
| | 1.4 | Ændring af lovgivning: Refusion (tilbagebetaling) af udbytteskat (Ballerup) |
| | 1.5 | Automatisk reduceret udbyttetræk - VP ordningen (Aftale mellem VP, de kontoførende pengeinstitutter og SKAT) (Ballerup) |
| | 1.6 | Ændring af lovgivning: Nomineé, fælleseje og ejerstatus-kode i depotregistreringen  (Jette) |
| | 1.7 | Administration af frikort, herunder udstedelse af udbytte-skattefrikort til udenlandske entiteter mv. (Ballerup), |
| | 1.8 | Attestation af dansk skattepligt – opsamling af oplysninger og evt. anvendelse af dem i SKATs øvrige administration (Jette) |
| | 1.9 | Ændring af lovgivning: Forældelse af krav på tilbagebe-taling af udbytteskat (Ballerup) |
| | 1.10 | Avance/tab og udbytte ved aktielån (Jette) |
| **2. Udloddende selskab** | 2.1 | Sammensmeltning af angivelse og indberetningsblanket vedr. udbyttemodtagere (Ballerup) |
| | 2.2 | 0- stilling af godskrivning for betalt skat (Ballerup) |
| | 2.3 | Skønsmæssige ansættelser (angivelse) og pålæg af daglige bøder (Ballerup) |
| | 2.4 | Girokort til udbytteskat – maskinel læsning (Ballerup) |

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00517919

**3. Kontoførende Institut
   (depotbanken)**     3.1     Kontrol af de kontoførende pengeinstitutters-/depotban
kernes administration af kildeskattelovens regler om
indeholdelse af udbytteskat, herunder den obligatoriske
indberetning til SKAT (Jette)

                        3.2     Udbytteadministration af udbyttemodtagere med ret til 15
% træk, jf. SEL § 3.1.19. (Investeringsforeningsselskaber-
/Investeringsselskaber), herunder igen de udbyttemod-
tagere som modtager udlodning/udbytte fra disse selskaber
(Jette)

                        3.2     **N**omineé, fælleseje og ejerstatuskode i depotregistreringen
(Jette)

                        3.3     Ændring af lovgivning: Erstatningsansvar ved fejlagtig
depotmarkering mv. i det kontoførende institut (Jette)

**4. Systemer/blanketter**     4.1     3 S anvendes som dataindsamlingssystem vedr. udbytte-
modtagere (Birgit + Inger)

                        4.2     Systemtilpasning - system 3 S (Birgit)

                        4.3     Blanketter der anvendes i Udbytteadministrationen mv. og
blanketansvar (Ballerup+Inger)

**5. Afstemning i Udbytte-
administrationen**     5.1     Afstemning i udbytteskatteadministrationen mv. (Udlodder
–   udbyttekontrol) (Ballerup)

                        5.2     Afstemning i udbytteskatteadministrationen mv. (udbytte-
modtager – udbyttekontrol) (Ballerup + Jette)

**6. Organisation i SKAT**     6.1     Kompetencefordeling mellem SKAT og Kompetencecenter
Ballerup vedr. udbytteskatteadministrationen (Ballerup)

                        6.2     Grænseflader mellem Kompetencecenter Ballerup vedr.
udbytteskatteadministrationen og SKAT – Hovedcentret

                        6.3     Grænseflader mellem Kompetencecenter Ballerup vedr.
udbytteskatteadministrationen og skattecentrene, herunder
Videns - og kompetencecenter Ålborg (Ballerup)

                        6.4     Grænseflader mellem Kompetencecenter Ballerup vedr.
udbytteskatteadministrationen og Værdipapircentralen/de
kontoførende institutter (depotførerne) (Ballerup)

[PAGE  ]

| **Emnet optaget den:** 07.11.2006 | **Ajourføringsdato:** 24.11. 2006 | **Side:** 1 | **af:** 5 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

| **Kategori:** | **Emne nr.:** | **Emnetekst:** |
|---|---|---|
| Udbyttemodtagere | 1.1 | Ændring af lovgivning: Fremrykning af tidspunkt for indberetning vedr. udbyttemodtager, skattekontrollovens § 9 A (Jette). |

## 1. Problem:

I forbindelse med enhver vedtagelse eller beslutning om udbetaling eller godskrivning af udbytte fra aktier eller andele i selskaber eller foreninger m.v., skal der indeholdes udbytteskat efter § 65 i kildeskatteloven.

Indberetningerne om udbyttemodtagerne skal efter SKL § 9 A først være SKAT i hænde senest den 20. januar, eller hvis denne dag er en lørdag eller søndag, senest den følgende mandag i året efter det indkomstår udlodningen vedrører.

Fristen i SKL § 9 A er et problem idet det betyder, at oplysningen om udbyttemodtagerne først er tilgængelige for udbytteskatteadministrationen op til 10 måneder efter at udlodningen og modtagelsen af udbytte/udlodning har fundet sted. Dvs. at udbytteskatteadministrationen i dag stort set administreres i blinde, da oplysningerne om den faktiske udlodning ikke kendes på det tidspunkt, hvor administrationen foretager sin forretningsførelse. Dette gælder, fx ved tilbagesøgning af udbytteskat efter dobbeltbeskatningsoverenskomsterne og ved refusion af udbytteskat mv., ligesom en afstemning af det faktisk udloddede beløb over til det udloddende selskabs angivelse og selvangivelse ikke er muligt før på et langt senere tidspunkt.

## 2. Gældende regler:

Investeringsforeninger samt selskaber, der er underlagt selskabsskat, kan udlodde udbytte. Det er kapitalselskaber såsom aktieselskaber, anpartsselskaber og investeringsforeninger og Investeringsforenins-/selskaber. Der opstår ofte nye selskabskonstruktioner, som ligner selskaber, men som ikke umiddelbart er i overensstemmelse med de gængse definitioner.

Som selskaber omtales foruden A/S og ApS erhvervsdrivende fonde og foreninger.

Der er 2 hovedgrupper af selskaber:

De børsnoterede selskaber (ca 170) og investeringsforeningerne (ca 650 afdelinger) er få, men har mange aktionærer/medlemmer. Investeringsforeningerne og investeringsforeningsselskaberne er

| **Emnet optaget den:** 07.11.2006 | **Ajourføringsdato:** 24.11.2006 | **Side:** 2 | **af:** 5 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

[PAGE  ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.1 | Ændring af lovgivning: Fremrykning af tidspunkt for indberetning vedr. udbyttemodtager, skattekontrollovens § 9 A (Jette). |

typisk indskrevet i Værdipapircentralen uanset om de er børsnoteret eller unoteret. Dette betyder, at udlodningerne mv. administreres af de kontoførende depotbanker gennem VP, som hvor VP i overvejende grad elektronisk overfører data til SKAT, hvilket også er tilfældet for de børsnoterede selskaber. Investeringsselskaberne der omfattes af de nye regler (SEL § 3.1.19) kan både være noterede og unoterede.

- De ikke børsnoterede selskaber er mange (potentielt ca 145.000), men har almindeligvis få aktionærer. En del unoterede selskaber er også indskrevet i VP og benytter sig af VPs serviceydelser, fx administration af udlodningen, men efter SKL § 9 B er indberetningspligten om udlodning til aktionærerne fra alle unoterede aktier pålagt selskabet selv.

De ikke børsnoterede selskaber er derfor hovedopgaven i udbytteadministrationen, men også refusion af udbytteskat efter DBO til aktionærer mv. bosat i udlandet, samt efter internationale konventioner er en stor opgave i udbytteadministrationen. Refusionerne knytter sig primært til børsnoterede aktier og investeringsforeningsbeviser mv.

Det udloddende selskab/depotføreren skal senest 20. januar i året efter udlodningen indberette hvem modtager af udbyttet er (SKL/RKO), SKL §§ 9 B og 10 A, dog er udlodning til pensionsopsparer og mindretalsaktionærer mv. undtaget fra indberetning.

Der kan indberettes på elektronisk medie (børsnoterede/unoterede) og på manuelle indberetningsblanketter og via TastSelv (unoterede aktier). For personer med Pnr. anvendes blanket 06.023, og for selskaber og udlændinge m.fl. anvendes blanket 06.024. Blanketterne sendes til Udbytteskatteadministrationen i Ballerup med henblik på indtastning i 3 S. En dataindsamlingsprocedure der blev vedtaget med direktionens godkendelse i begyndelsen af 2005. Oplysninger der er indtastet i 3 S overføres efterfølgende til RKO, og indgår i SLUT mv.

For at få så mange indberetninger indsamlet til understøttelse af udbytteadministrationen, har Udbytteskatteadministrationen ved henvendelser fra de unoterede selskaber anbefalet, at det udloddende selskab frivilligt indberetter aktionæroplysningerne samtidig med angivelsen (blanket 06.016). En sådan frivillig ordning er imidlertid ikke i længden holdbar.

**3. Forslag:**
Indberetningsfristen efter SKL § 9 A, rykkes frem for indberetningerne vedr. udlodning fra aktier og investeringsforeningsbeviser mv., til tidspunktet hvor udlodningen rent faktisk sker (både faktisk

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: 24.11.2006 | Side:  3 | af: 5 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.1 | Ændring af lovgivning: Fremrykning af tidspunkt for indberetning vedr. udbyttemodtager, skattekontrollovens § 9 A (Jette). |

[PAGE ]

Confidential Pursuant to Protective Order

og teknisk udlodning). Dvs. en løbende indberetning til SKAT. Indberetningspligten er hjemlet i SKL §§ 9 B og 10 A.

**4. Forslaget kræver:**
Forslag kræver lovændringer i "Skattekontrolloven" og i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven".

**5. Evt. konsekvenser:**

➢ *Fordele:*

✓ En fremrykning skønnes væsentligt at optimere udbytteadministrationens muligheder for at administrere udbytterefusioner og tilbagebetalinger efter regelsættet. At der kan foretages en afstemning mellem udlodning, angivelse og selvangivelse på et langt tidligere tidspunkt, hvorved SKAT kan sætte hurtigere ind overfor afvigelser mv.

✓ En fremrykning af indberetningsfristen skønnes at kunne medfører administrative lettelser for især de unoterede selskaber, idet selskaberne selv er pålagt både angivelses- og indberetningspligt til SKAT. En fremrykning kan derfor betyde, at anmeldelsen og indberetningen om udbyttemodtagerne kan slås sammen i en og samme indberetning/blanket og TastSelv billede. Se problemkatalogets emne nr. 2.1.

✓ En fremrykning vil for de depotadministrerede børsnoterede indberetninger også betyde en aktuel registrering af ejerstatuskode (skattekode for ejerskab af depotet mv.) på udlodningstidspunktet (retserhvervelsestidspunktet), og ikke som nu med en ejerstatus (skattekode) ved udgangen af indkomståret. En kode der kan være ændret efter retserhvervelsestidspunktet og som ved fejl kan bevirke fejlplacering af udlodningsbeløbet på selvangivelsen.

➢ *Ulemper:*

✓ En fremrykning vil betyde ændringer i den finansielle sektors forretningsgange, men skønnes ikke at være af væsentlig størrelse, idet oplysningerne i dag opsamles til brug for senere indberetning til SKAT ultimoåret.

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: 24.11.2006 | Side: 4 | af: 5 |
|---|---|---|---|

[ SHAPE \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.1 | Ændring af lovgivning: Fremrykning af tidspunkt for indberetning vedr. udbyttemodtager, skattekontrollovens § 9 A (Jette). |

✓ Hvis ikke udbytteadministrationen forsat skal administreres i blinde har SKAT af hensyn til tilbagebetalinger/refusioner et væsentlig behov for at kende udlodningen og udbyttemodtager på tilbagebetalingstidspunktet.

✓ Indberetningen ultimo året bevirker bl.a., at investeringsforeninger og selskaber med flere udlodninger i indkomståret indberetter total pr modtager, hvilket ikke er hensigtsmæssigt for

[PAGE ]

administrationen af udbytteskatten. Fx vil modtagende selskaber med fremadforskudt ind-komstår få restudlodningen fra selskabet mv. registreret på det forkerte indkomstår og for udbyttemodtagende selskaber med fremadforskudt regnskabsår vil indberetningen evt. først blive foretaget det efterfølgende år.

## 6. Evt. IT-omkostninger:

Fremrykningen i sig selv vil ikke medfører systemomkostninger i SKATs systemer, men fremryk-ningen foreslås for at optimere udbytteskatteadministrationen mulighed for at udføre deres opgaver og vil derfor kræve systemændringer og ændrede forretningsgange i SKAT. 3 S – systemet skal tilrettes til at fungere som dataindsamlingssystem for alle udbytteindberetninger (både noterede og unoterede), samt leverandør til RKO – systemerne UDBY og IFPA.

Efter ændringen i foråret 2006 fungerer 3 S i dag som dataindsamlingssystem for de unoterede. En udvidelse med de børsnoterede vil dog kræve en ikke uvæsentlig udvidelse af indgangstesten i 3 S, idet dataindholdet i disse transaktioner er mere fyldestgørende.

## 7. Ressourcekonsekvens:

## 8. Indstilling til styregruppen:

Gruppen indstiller til at forslaget fremmes idet det stort set er grundstenen til at forbedre udbytte-skatteadministrationen og tilbagesøgningsprocedurerne mv. Gruppen indstiller til, at der tages kontakt til Skatteministeriet og senere til den finansielle sektor – Finansrådet mfl.

| **Emnet optaget den:** 07.11.2006 | **Ajourføringsdato:** 24.11.2006 | **Side:** 5 | **af:** 5 |

[ SHAPE  \* MERGEFORMAT ]

| **Kategori:** | **Emne nr.:** | **Emnetekst:** |
| --- | --- | --- |
| Udbyttemodtagere | 1.1 | Ændring af lovgivning: Fremrykning af tidspunkt for indberetning vedr. udbyttemodtager, skattekontrollo-vens § 9 A (Jette). |

➢ *Styregruppens beslutning:*

*24. november 2006:*
Styregruppen har på sit indledende møde besluttet at arbejdsgruppen først tages fat på de emner der kræver lovændringer. Emnerne beskrives hver i sær i problemkataloget, samt i et samlet notat der kan lægges videre op i systemet. Notat og emnebeskrivelserne skal være færdig senest den 8. de-cember 2006.

## 9. Status:

[PAGE  ]

*19. oktober 2006:*
SKAT har overfor Departementet, i sine bemærkninger i et internt høringssvar til forslaget om implementering af MiFID – Direktivet (en ændret sondring mellem børsnoterede og unoterede aktier), luftet forslaget om fremrykningen af indberetningstidspunktet vedr. udbytter. Departementet ønsker dog at forslaget behandles særskilt. At emnet blev nævnt her skyldes, at MiFID – direktivet flytter sondringen mellem børsnoterede og unoterede til "optaget til handel", hvilket har den konsekvens, at kredsen af de unoterede aktier mv. bliver mindre og dermed indskrænker den kontrolmulighed der gennem anvendelsen af 3 S blev skabt for de unoterede aktier.

[PAGE  ]

Confidential Pursuant to Protective Order

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side: 1 | af: 2 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.2 | Ændring af lovgivning: skattekontrollovens" § 9 B, stk. 5 og § 4 i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven " (Jette) |

## 1. Problem:

En stor del af de unoterede selskaber kender i lighed med de børsnoterede selskaber ikke alle deres aktionærer, dvs. primært mindretalsaktionærerne. Dvs. at udbytteudbetalinger fra unoterede selskaber til udbyttemodtagere, der som følge af selskabsretlige regler er fritaget for at blive registreret i det udloddende selskab eller forening mv. ikke indberettes til SKAT.

Hjemlen findes i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven" hvor aktionæren ikke har pligt til at oplyse selskabet om sin identifikation (Personnummer eller CVR/nr./SE nr.). BEK § 4 og SKL § 9 B, stk. 5.

## 2. Gældende regler:

Se problem. Det skal dog nævnes, at fritagelsen ikke hænger sammen, idet der efter SKL § 9 B mv. ikke er fritaget for indberetning, hvilket betyder at selskabet i princippet skal indberette udlodningen uden identifikation, og at SKAT afviser pga. manglende identifikation.

## 3. Forslag:

§ 4 i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven" ændres, samt SKL 9 B, stk. 5 ændres til følgende: Hvis selskabet pga. de selskabsretlige regler ikke har kendskab til aktionæren, skal der foretages indberetning til SKAT på den person/selskab som udlodningen faktisk foretages til.

## 4. Forslaget kræver:

Lovændringer i "Skattekontrolloven" og i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven".

## 5. Evt. konsekvenser:

➢ *Fordele:*

En ændring skønnes at optimere udbytteadministrationens muligheder for at administrere udbytterefusioner og tilbagebetalinger efter regelsættet. At der kan foretages en afstemning mellem udlod-

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side: 2 | af: 2 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

[PAGE ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.2 | Ændring af lovgivning: skattekontrollovens" § 9 B, stk. 5 og § 4 i "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven " (Jette) |

ning, angivelse og selvangivelse.

Hvis ikke udbytteadministrationen forsat skal administreres med mere eller mindre i blinde, har SKAT af hensyn til tilbagebetalinger/refusioner et væsentlig behov for at kende alle udlodninger og udbyttemodtagere.

➢ *Ulemper:*

Ingen.

**6. Evt. IT-omkostninger:**
Forslaget skønnes ikke at medfører IT-udgifter

**7. Ressourcekonsekvens:**

**8. Indstilling til styregruppen:**

➢ *Styregruppens beslutning:*

**9. Status:**

Confidential Pursuant to Protective Order

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side:  1        af: 3 |
|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.3 | Ændring af lovgivning: Udvidelse af indberet-ningspligten vedr. udbyttemodtagere efter skatte-kontrollovens § 9 B og § 10 A ved fjernelse af undtagelsen fra indberetning i BEK til skattekon-trolloven, § 7 mv. (Jette) |

## 1. Problem:

**A:** Udlodninger vedr. aktier, investeringsforeningsbeviser mv. der ligger i pensionsdepot eller andre skattebegunstigede depoter indberettes ikke til SKAT, jf. "Bekendtgørelse om indberetningspligter mv. efter skattekontrolloven", § 7. Depotbankerne/VP frasorterer/styrer indberetningen gennem en opsat depotkode for det enkelte depot.

Den manglende indberetning betyder, at selskabernes angivelse og selvangivelse ikke kan holdes op mod indberetningen om den faktiske udlodning til udbyttemodtagerne. Dvs. en total afstemning ikke er mulig.

**B:** De indberetningspligtige indberetter af hensyn til selvangivelsen mv. ikke udlodninger, hvortil der knytter sig et af SKAT udstedt frikort eller en revisorerklæring.

## 2. Gældende regler:

I dag indberettes der ikke udbytteoplysninger såfremt der er udstedt frikort, revisorerklæring eller såfremt der er tale om udlodning til aktier mv. under en pensionsopsparingsordning (depotkoderne FRI, REV og KAP). Indberetning om udlodning i pensionsdepoter er undtaget fra indberetning.

Indberetningen vedr. frikort (depotkode FRI og KAP) mv. ses dog ikke i dag undtaget fra indberet-ningspligten efter skattekontrollovens regler. Undtagelsen kan imidlertid være administrativt af hensyn til den personlige selvangivelse idet systemerne UDBY og IFPA ikke i dag kan modtage indberetning om depotkoden og derved kan adskille de udlodninger, hvori der ikke er tilbageholdt udbytteskat af denne type.

## 3. Forslag:

Indberetningspligten om udbyttemodtagere fra både unoterede og børsnoterede selskaber udvides til at omfatte alle udbyttemodtagere og depottyper/udbyttetræk, for frie midler, pensionsmidler, visse andre skattebegunstigede ordninger fx børneopsparing, frikort og revisorerklæring.

Indberetningspligten foreslås imidlertid begrænset til kun at gælde for danske aktier mv.

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side:  2        af: 3 |
|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

[PAGE ]

Confidential Pursuant to Protective Order

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.3 | Ændring af lovgivning: Udvidelse af indberetningspligten vedr. udbyttemodtagere efter skattekontrollovens § 9 B og § 10 A ved fjernelse af undtagelsen fra indberetning i BEK til skattekontrolloven, § 7 mv. (Jette) |

I indberetningen vil beholdning og udlodning skulle markeres fra indberetterens side, således at de kan kendes i SKATs systemer. Gennemføres pkt. 3.1.1 og 3.1.4 vil en markering betyde, at SKAT kan anvende de indberettede oplysninger i udbytteskatteadministrationen og fravælge at sende oplysningerne videre til RKO. Det betyder, at disse systemer ikke systemmæssigt skal tilrettes.

Et alternativt forslag er, at Udbytteskatteadministrationen i Ballerup har mulighed for at genetablere de i forbindelse med moderniseringen brudte administrative forretningsgange, hvor der var faste aftaler med VP om leverancen af udbytteoplysninger vedr. depotindehaverne med markering KAP, FRI og REV.

**4. Forslaget kræver:**
Lovændringer i skattekontrolloven, idet § 7 i Bekendtgørelse om indberetningspligter mv. efter SKL vedr. friholdelse af udbytteoplysninger fra aktier mv. investeret for pensionsmidler skal fjernes, når der investeres i danske aktier mv.

Ligeledes skal indberetningen fra selskaberne og de kontoførende institutter/depotføreren udvides med indberetningen af depotkoden. Koden der anvendes i forbindelse med indeholdelsen af udbytteskatten. Kodeværdierne er (Blank, FOR, FRI, KAP, REV,SEL).

Hvis ændringen skal have den tilsigtede effekt, skal emnet kædes sammen med emnerne 1.1 (Ændring af lovgivning: Fremrykning af tidspunktet for indberetning vedr. udbyttemodtager, skattekontrollovens § 9 A) og emne 4.1 (System 3 S anvendes som dataindsamlingssystem vedr. udbytteskat)

**5. Evt. konsekvenser:**

➢ *Fordele:*
En udvidelse/ændring skønnes at optimere udbytteadministrationens muligheder for at administrere udbytterefusioner og tilbagebetalinger efter regelsættet. At der kan foretages en total afstemning mellem udlodning, angivelse og selvangivelse.

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side: | 3 | af: | 3 |
|---|---|---|---|---|---|

[ SHAPE \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Udbyttemodtagere | 1.3 | Ændring af lovgivning: Udvidelse af indberetningspligten vedr. udbyttemodtagere efter skattekontrollovens § 9 B og § 10 A ved fjernelse af undtagelsen fra indberetning i BEK til skattekontrolloven, § 7 mv. (Jette) |

[PAGE ]

➢ *Ulemper:*

Forslaget kræver ændringer i den finansielle sektors forretningsgange, idet forslaget indebærer, at der skal foretages væsentligt flere indberetninger end i dag.

Vedr. den del af pensionsdepotordningen mv. der for de kontoførende institutter administreres gennem VP skønnes udvidelsen at være mindre krævende, medens den del af pensionsdepotordningen der administreres af det kontoførende institut (depotføreren) selv, vil være mere omfattende. Indberetningsbyrden kan dog begrænses til kun at omfatte danske aktier mv..

## 6. Evt. IT-omkostninger:

En udvidelse af indberetningen vil kræve systemændringer og ændrede forretningsgange i SKATs systemer. Systemændringerne kan dog begrænses til 3 S såfremt emne 4.1 gennemføres (systemet skal kunne anvendes som dataindsamlingssystem for alle udbytteindberetninger samt leverandør til RKO – systemerne UDBY og IFPA). Hvis emne 4.1 ikke gennemføres, vil forslaget endvidere kræve systemændringer i UDBY og IFPA systemet.

## 7. Ressourcekonsekvens:

## 8. Indstilling til styregruppen:

Gruppen indstiller til, at der tages kontakt til Skatteministeriet og senere til den finansielle sektor – Finansrådet mfl.

➢ *Styregruppens beslutning:*

## 9. Status:

[PAGE  ]

Confidential Pursuant to Protective Order

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side: 1 | af: 3 |
|---|---|---|---|

[ SHAPE \* MERGEFORMAT ]

| Kategori:<br>Udbyttemodtagere | Emne nr.:<br>1.6 | Emnetekst:<br>Ændring af lovgivning: Nomineé, fællesseje og ejerstatuskode i depotregistreringen  (Jette) |
|---|---|---|

## 1. Problem:

Ved nomineé forstås et depot, hvor de deponerede aktier ejes af andre end den registrerede depot-indehaver (administrator, udenlandsk eller dansk bank, fællesdepot to eller flere depotejere, medar-bejderdepoter mfl.). Nomineé - registreringen anvendes primært for at opnå administrative lettelser og spare depotgebyrer.

Både nomineé og Internettet vurderes som en truslen mod skatteprovenuet, og det må formodes at problemet er stigende i takt med den elektroniske udvikling, der gør det let og hurtigt at handle og oprette konto/depot i udlandet via Internettet.

De udenlandske fondshandlere kan "mødes" direkte med kunderne og uden at de nationale skattemyndigheder får kendskab til dispositionerne og aktørerne. (køber/sælger). Typisk vil handel og depotføring gennem udenlandske fondshandlere være nomineé registreret på en VP- konto i den danske Værdipapircentral.

Internettet:
- Har gjort det mere svært at kontrollere handlen med værdipapirer mv.
- Har gjort handel med værdipapirer mere tilgængelig for "almindelige mennesker"
- Har gjort det nemt at have bank- og depotkonti over hele verden – som kan administreres hjemme fra stuen

Se også emne nr. 3.2.

## 2. Gældende regler:

Ved selve nomineé registreringen overtrædes ingen lovregler, idet denne form for registrering er fuldt lovlig i Danmark. Der er imidlertid andre lovkrav, der skal overholdes.

Fx kravet om, at visse danske selskaber har pligt til at indberette aktionæroplysninger til Erhvervs- og Selskabsstyrelsen og Fondsbørsen.

Åbenheden om ejerforhold i anpartsselskaber og aktieselskaber er med den nuværende regulering dog ret begrænset i Danmark, da kun børsnoterede selskaber har pligten til den løbende indberet-ning, når aktionæren ejer 5 % eller mere af kapitalen eller stemmerne i selskabet.

| Emnet optaget den: 07.11.2006 | Ajourføringsdato: | Side: 2 | af: 3 |
|---|---|---|---|

[ SHAPE \* MERGEFORMAT ]

[PAGE ]

Confidential Pursuant to Protective Order                                                   SKAT_MDL_001_00517931

| Kategori: | Emne nr.: | Emnetekst: |
|-----------|-----------|------------|
| Udbyttemodtagere | 1.6 | Ændring af lovgivning: Nomineé, fællesejе og ejerstatuskode i depotregistreringen (Jette) |

De unoterede aktieselskaber fører en aktiebog over alle aktierne, der alene er åben for selskabets ledelse og for offentlige myndigheder på selskabets kontor. Derudover fører selskaberne en særlig fortegnelse over de aktionærer der ejer 5 % eller mere af kapitalen. Sidstnævnte er offentlig tilgængelig ved henvendelse til selskaberne. Tilsvarende fører anpartsselskaberne en anpartshaverfortegnelse, som dog kun er offentlig tilgængelig i de tilfælde, hvor anpartskapitalen er over 500.000 kr., eller hvor alle anparter ejes af samme person.

Det er fuldt legalt at handle og depotfører værdipapirer nomineé gennem både danske og udenlandske pengeinstitutter/fondshandlere, herunder at oprette offshore selskaber, blot aktiviteterne selvangives.

Truslen ved disse transaktioner er, at parterne ofte glemmer at selvangive i hjemlandet (manglende skattebetaling af afkast og gevinster mv.), og at denne handels- og registreringsform er ugennemskuelig for skattemyndighederne, idet de obligatoriske indberetninger ikke strækker sig længere ud end til den, der har foretaget handlen eller oprettet depotet "nomineé". Denne ugennemsigtighed kan sammen med de Danske regler for aktielån (se emne 1.10 Avance/tab og udbytte ved aktielån) være et oplagt værktøj, der bl.a. kan benyttes til fx at kanaliserer et udbytte til et land, hvor Danmark har lavere eller ingen ret til udbytteskat efter dobbeltbeskatningsaftalen.

**3. Forslag:**

Politikerne skal gøres opmærksom på, at der reelt er et problem der er en trussel for skattesystemet.

Etableringen af fx ejerregistre vil være et godt værktøj, der kan medvirke til at mindske truslerne mod skatteprovenuet. Et sådant ejerregister er endnu ikke etableret i Danmark, hvorimod flere af de nordiske lande har etableret et sådant register (Norge), eller overvejer at etablere et sådant register (Finland).

I lighed med det netop vedtagne EU-rentedirektiv, må der på hele registrerings- og aktieområdet arbejdes på mere samordning landene imellem således at der etableres flere automatiske udvekslingsaftaler mv. og bedre dobbeltbeskatningsaftaler. Der bør lægges pres på OECD og EU for at etablere flere fælles løsninger. Dette løser ikke problemet, men kan minimere det.

| **Emnet optaget den:** 07.11.2006 | **Ajourføringsdato:** | **Side:** 3 | **af: 3** |
|---|---|---|---|

[ SHAPE \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|-----------|-----------|------------|
| Udbyttemodtagere | 1.6 | Ændring af lovgivning: Nomineé, fællesejе og ejerstatuskode i depotregistreringen (Jette) |

[PAGE ]

**4. Forslaget kræver:**

Formentlig lovændringer mv.

**5. Evt. konsekvenser:**

➢ *Fordele:*

Skrappere krav til fx aktieejerskabet mv. skønnes at optimere udbytteadministrationens muligheder for at administrere udbytterefusioner og tilbagebetalinger efter regelsættet og dobbeltbeskatnings-aftalerne, og til den retmæssige ejer.

➢ *Ulemper:*

**6. Evt. IT-omkostninger:**

**7. Ressourcekonsekvens:**

**8. Indstilling til styregruppen:**

➢ *Styregruppens beslutning:*

**9. Status:**

[PAGE  ]

Confidential Pursuant to Protective Order

| Emnet optaget den: 07 11 2006 | Ajourføringsdato: | Side:  1      af: 3 |
|---|---|---|

[ SHAPE \* MERGEFORMAT ]

| Kategori:<br>Kontoførende Institut<br>(depotbanken) | Emne nr.:<br>3.2 | Emnetekst:<br>Nomineé, fælleseje og ejerstatuskode i<br>depotregistreringen  (Jette) |
|---|---|---|

## 1. Problem:

Denne handels- og registreringsform er ugennemskuelig for skattemyndighederne, idet de obligato-
riske indberetninger ikke strækker sig længere ud end til den, der har foretaget handlen eller oprettet
depotet "nomineé". Denne ugennemsigtighed kan sammen med de Danske regler for aktielån (se
emne 1.10 Avance/tab og udbytte ved aktielån) være et oplagt værktøj, der bl.a. kan benyttes til fx
at kanaliserer et udbytte til et land, hvor Danmark har lavere eller ingen ret til udbytteskat efter
dobbeltbeskatningsaftalen. Se emne 1.6 der beskriver nomineé som en generelt trussel for det
danske skattesystem.

## 2. Gældende regler:

**Beskrivelse af forretningsgang: Refusion efter DBO til aktionærer bosat i udlandet, samt efter
internationale konventioner**

Aktier, som ejes af udlændinge, som på udlodningstidspunktet er begrænset skattepligtige til Dan-
mark, det gælder både personer og selskaber, beskattes som udgangspunkt med 28 %. Aktionæren
kan med ud andragende tilbagesøge differencen mellem den indeholdte udbytteskat på 28 % og den
udbytteskatteprocent, der skal betales efter DBO med aktionærens skattepligtsland.

Anmodningen fremsendes til udbytteskatteadministrationen på en særlig blanket, som udover at væ-
re udfyldt, skal være attesteret af det udloddende selskab/pengeinstitut, samt påtegnet af en kompe-
tent skattemyndighed i ansøgerens hjemland.

Udbytteskatteadministrationen foretager udbetaling direkte til ansøgeren eller til et af
vedkommende anført pengeinstitut.

Forretningsgang:

- Udbetaling foretages af udbytteskatteadministrationen
- Udbetalingslister fra system 3 S behandles i udbytteskatteadministrationen
- De modtagne andragender indtastes i system 3 S under det udloddende selskab (CVR) og
  under den modtagende aktionærs navn og adresse

| Emnet optaget den: 07 11 2006 | Ajourføringsdato: | Side:  2      af: 3 |
|---|---|---|

[ SHAPE \* MERGEFORMAT ]

[PAGE ]

| Kategori:<br>Kontoførende Institut<br>(depotbanken) | Emne nr.:<br>3.2 | Emnetekst:<br>Nomineé, fælleseje og ejerstatuskode i<br>depotregistreringen (Jette) |
| --- | --- | --- |

- SKAT har en aftale med Danske Bank, Nordea og SEB om at der kan indsendes andragender med et regneark vedlagt som grundlag for refusion. I så fald udbetales regnearkets sum til pengeinstituttet til fordeling.

## 3. Forslag:

**A)** Konkret vedrørende udbytteskatten bør der etableres skrappere dokumentationskrav til aktieejerskabet ved tilbagesøgning/refusion af dansk udbytteskat, såfremt der er nomineé registreret, herunder fælle depoter således at udbytteskatteadministrationen kan være sikker på ejerskabet til den faktiske udlodning.

Det kan nævnes at Udbytteskatteadministrationen i 2006 har konstateret den største enkeltstående nomineé udbetaling på kr. 574 mio. En tilbagesøgning der klart viser, at der er et behov for at stramme kravene til ejerskabsregistreringen af danske aktier eller dokumentationskravene ved tilbagesøgning mv.

**B:** Forslag til at ejerstatuskode 1 (En fysisk eller juridisk person, som hverken har bopæl eller hjemsted her i landet eller flere end to personer, som alle er udlændinge) opsplittes i indberetningssysterne vedr. udbytteskat og investeringsforeningspapirer, således at det i forbindelse med tilbagesøgningen af udbytteskatten klart fremgår, om der er tale om en person/selskab eller flere personer/selskaber og nomineé.

## 4. Forslaget kræver:

Lovændring

## 5. Evt. konsekvenser:

➢ *Fordele:*

➢ *Ulemper:*

## 6. Evt. IT-omkostninger:

| Emnet optaget den: 07 11 2006 | Ajourføringsdato: | Side: 3    af: 3 |
| --- | --- | --- |

[ SHAPE \* MERGEFORMAT ]

| Kategori:<br>Kontoførende Institut<br>(depotbanken) | Emne nr.:<br>3.2 | Emnetekst:<br>Nomineé, fælleseje og ejerstatuskode i<br>depotregistreringen (Jette) |
| --- | --- | --- |

## 7. Ressourcekonsekvens:

Confidential Pursuant to Protective Order

**8. Indstilling til styregruppen:**

Gruppen indstiller til, at der tages kontakt til Skatteministeriet og senere til den finansielle sektor – Finansrådet mfl.

➢ *Styregruppens beslutning:*

**9. Status:**

[PAGE  ]

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00517936

| Emnet optaget den: 07 11 2006 | Ajourføringsdato: | | Side:   1     af: 3 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Kontoførende Institut (depotbanken) | 3.3 | Ændring af lovgivning: Erstatningsansvar ved fejlagtig depotmarkering mv. i det kontoførende institut (Jette) |

## 1. Problem:

Efter "Bekendtgørelse om opkrævning af indkomstskat samt kommunal og amtskommunal ejen-domsværdiskat for personer m.v. (kildeskattebekendtgørelsen).BEK. nr. 993 af 19/10/2005 (Gæl-dende), afsnit VII, Kapitel 9 om Udbytteskat og royaltyskat, § 29, kan selskaber og foreninger m.v., der udlodder udbytte, undlade at indeholde udbytteskat, når betingelserne som angivet i nr. 1-6, henholdsvis stk. 2-5, er opfyldt. Se nedenfor.

Problemet er, at forvaltningsinstitutter alene efter stk. 5 alene hæfter for eventuelle tab for stats-kassen ved forkert opkrævning af udbytteskat, som skyldes en fejlagtig mærkning vedrørende de skattebegunstigede pensionsopsparinger/børneopsparinger og båndlagt kapital som nævnt i § 29, stk. 1, nr. 3 og 4, men ikke ved forkert mærkning af depotet i øvrigt. Fx om fx 15 %, 18,48, frikort eller reduceret træk efter en dobbeltbeskatningsaftale mv.

## 2. Gældende regler:

§ 29:

1) Der forevises frikort, jf. stk. 2 og 3.

2) Udbyttemodtager er udlodders moderselskab m.v. under de betingelser, der er anført i selskabsskattelovens § 2, stk. 1, litra c, eller § 13, stk. 1, nr. 2, fondsbeskatningslovens § 10, stk. 1, jf. stk. 4, eller kildeskattelovens § 2, stk. 1, nr. 6, jf. selskabsskattelovens § 2, litra c, 5. og 6. pkt. Det er endvidere en betingelse, at udbytteudlodder ikke er omfattet af selskabsskattelovens § 3, stk. 1, nr. 19.
3) Udbyttet modtages af konti for rateopsparing og opsparing i pensionsøjemed, der er omfattet af §§ 11 A, 12 og 13 i pensionsbeskatningsloven, samt børneopsparingskonti og selvpensioneringskonti, omfattet af § 51 i pensionsbeskatningsloven, og som er mærket indeholdelsesfri, jf. stk. 5.
4) Udbyttet modtages af båndlagte kapitaler, såfremt det er bestemt, at kapitalens afkast skal oplægges indtil et fastsat tidspunkt, og afkastet endvidere ikke er indkomstskattepligtigt for nogen, og som er mærket indeholdelsesfri, jf. stk. 5.

| Emnet optaget den: 07 11 2006 | Ajourføringsdato: | | Side:   2     af: 3 |
|---|---|---|---|

[ SHAPE  \* MERGEFORMAT ]

[PAGE ]

Confidential Pursuant to Protective Order          SKAT_MDL_001_00517937

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Kontoførende Institut (depotbanken) | 3.3 | Ændring af lovgivning: Erstatningsansvar ved fejlagtig depotmarkering mv. i det kontoførende institut (Jette) |

5) Udbyttet modtages af pengeinstitutter og livsforsikringsselskaber i det omfang udbyttet i medfør af selskabsskattelovens § 13 B ikke medregnes ved opgørelsen af den skattepligtige indkomst, jf. stk. 6.

6) Der afleveres meddelt dispensation efter ligningslovens § 16 A, stk. 2, § 16 A, stk. 3, eller efter § 16 B, stk. 2.

*Stk. 2.* Frikort udstedes til:

1) Foreninger, kooperationer, stiftelser, legater og selvejende institutioner, der er omfattet af selskabsskattelovens § 1, stk. 1, nr. 6, samt institutioner m.v., der i medfør af selskabsskattelovens § 3, stk. 1, er undtaget fra skattepligt, bortset fra alle typer af selskaber, der er omfattet af selskabsskattelovens § 3, stk. 1, nr. 19 .

2) Fremmede stater og skatteimmune internationale organisationer og medlemmer af kongehuset, der som sådanne er fritagne for dansk indkomstskattepligt.

*Stk. 3.* Frikort udstedes af told- og skatteforvaltningen og gælder indtil videre dog højst 10 år. Frikortet skal tilbageleveres til udstederen, hvis aktionærens forhold ændres.

*Stk. 4.* Det er en forudsætning for fritagelse i henhold til stk. 1, nr. 2, at moderselskaber, som har opfyldt betingelserne i selskabsskattelovens § 2, stk. 1, litra c, henholdsvis § 13, stk. 1, nr. 2, bortset fra ejertidsbetingelsen, har afgivet skriftlig erklæring til det udloddende selskab om at indestå for betaling af eventuel udbytteskat, hvis denne betingelse efterfølgende ikke opfyldes.

*Stk. 5.* Forvaltningsinstitutter, der fører konti som nævnt i stk. 1, nr. 3 og 4, er ansvarlige for, at de nævnte konti er mærket som indeholdelsesfri og hæfter for eventuelle tab for statskassen ved forkert opkrævning af udbytteskat, som skyldes en fejlagtig mærkning.

*Stk. 6.* Det er en forudsætning for fritagelse i henhold til stk. 1, nr. 5, at den på det pågældende pengeinstituts eller livsforsikringsselskabs generalforsamling valgte revisor over for det udloddende selskab eller den, der på dettes vegne formidler udbytteudbetalingen, afgiver skriftlig erklæring om, at udbytte i medfør af selskabsskattelovens § 13 B ikke medregnes ved opgørelsen af den skattepligtige indkomst.

**3. Forslag:**

Der skabes hjemmel til hæftelse ved forkert mærkning af depotet og dermed forkert udbyttetræk som påfører statskassen et tab.

| Emnet optaget den: 07 11 2006 | Ajourføringsdato: | Side: | 3 | af: 3 |
|---|---|---|---|---|

[ SHAPE \* MERGEFORMAT ]

| Kategori: | Emne nr.: | Emnetekst: |
|---|---|---|
| Kontoførende Institut (depotbanken) | 3.3 | Ændring af lovgivning: Erstatningsansvar ved fejlagtig depotmarkering mv. i det kontoførende institut (Jette) |

[PAGE ]

Confidential Pursuant to Protective Order

**4. Forslaget kræver:**
Lovændring.

**5. Evt. konsekvenser:**

➢ *Fordele:*
Det vil højne kvaliteten af depotmarkeringerne og forvaltningsinstitutter/depotbankernes administration og sikre statens provenu.

➢ *Ulemper:*

**6. Evt. IT-omkostninger:**

**7. Ressourcekonsekvens:**

**8. Indstilling til styregruppen:**

Gruppen indstiller til, at der tages kontakt til Skatteministeriet og senere til den finansielle sektor – Finansrådet mfl.

➢ *Styregruppens beslutning:*

**9. Status:**

[PAGE  ]

Confidential Pursuant to Protective Order

November 7, 2006

# *Problem Catalogue*
# *Dividend Tax*
## 2006

Confidential Pursuant to Protective Order

# Table of Contents:

| Category | Subj. no. | Subject text |
|---|---|---|
| **1. Dividend recipients** | 1.1 | Amendment to legislation: Advancement of time for reporting regarding dividend recipients, § 9 A of the Tax Control Act (Jette). |
| | 1.2 | Amendment to legislation: § 9 B, para. 5 of the "Tax Control Act" and § 4 of the "Executive Order on reporting obligations, etc., according to the Tax Control Act" (Jette) |
| | 1.3 | Amendment to legislation: Extension of the reporting obligation regarding recipients of dividends pursuant to §9 B and §10 A of the Tax Control Act by removing the exemption from reporting in the Executive Order to the Tax Control Act, §7, etc. (Jette) |
| | 1.4 | Amendment to legislation: Refund (repayment) of dividend tax (Ballerup) |
| | 1.5 | Automatically reduced dividend deduction - VP scheme (Agreement between VP, the custodial financial institution and SKAT) (Ballerup) |
| | 1.6 | Amendment to legislation: Nominee, joint ownership and ownership status code in the custodian registration (Jette) |
| | 1.7 | Administration of exemptions, including issuance of dividend tax exemption to foreign entities, etc. (Ballerup), |
| | 1.8 | Certification of Danish tax liability - collection of information and its potential use in SKAT's administration elsewhere (Jette) |
| | 1.9 | Amendment to legislation: Limitation on claims for refund of dividend tax (Ballerup) |
| | 1.10 | Profit/loss and dividends with stock lending (Jette) |
| **2. Distributing company** | 2.1 | Merging of declaration and reporting form regarding dividend recipients (Ballerup) |
| | 2.2 | 0 position of credit for tax paid tax (Ballerup) |
| | 2.3 | Estimations (declarations) and imposition of daily penalties (Ballerup) |

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

|   | 2.4 | Payment orders for dividend tax - machine reading (Ballerup) |
|---|-----|---|
| **3. Account holding institution (The custodian bank)** | 3.1 | Control of the account-holding financial institutions/custodian banks' administration of the rules of the Withholding Tax Act on withholding of dividend tax, including the obligatory reporting to SKAT (Jette) |
|   | 3.2 | Dividend administration of dividend recipients entitled to a 15% deduction, cf. Corporation Tax Act § 3.1.19. (Investment Fund Companies/Investment Companies), including hereunder the dividend recipients who receive distribution/dividends from these companies (Jette) |
|   | 3.2 | Nominee, joint ownership and ownership status code in the custody registration (Jette) |
|   | 3.3 | Amendment to legislation: Liability for incorrect custodian designation etc., by the account-holding institution. (Jette) |
| **4. Systems/forms** | 4.1 | 3 S is used as a data collection system regarding dividend recipients (Birgit + Inger) |
|   | 4.2 | System adaptation - system 3 S (Birgit) |
|   | 4.3 | Forms used in the Dividend Administration, etc., and form responsibility (Ballerup+Inger) |
| **5. Reconciliation in the Dividend Administration** | **5.1** | Reconciliation in the dividend tax administration, etc. (Distributor – dividend control) (Ballerup) |
|   | 5.2 | Reconciliation in the dividend tax administration, etc. (dividend recipient – dividend control) (Ballerup + Jette) |
| **6. Organization in SKAT** | 6.1 | Division of responsibilities between SKAT and Business Center Ballerup regarding. dividend tax administration (Ballerup) |
|   | 6.2 | Interfaces between Business Center Ballerup regarding the dividend tax administration and SKAT – Main Center |
|   | 6.3 | Interfaces between Business Center Ballerup regarding the dividend tax administration and the tax centers, including Knowledge and Business Center Ålborg (Ballerup) |

3

6.4      Interfaces between Business Center Ballerup regarding the dividend tax administration and the Central Securities Depository/the account-holding institutions (custodians) (Ballerup)

4

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: 11.24. 2006 | Page: 1    of: 5 |
|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Dividend recipients | 1.1 | Amendment to legislation: Advancement of time for reporting regarding dividend recipients, § 9 A of the Tax Control Act (Jette). |

## 1. Problem:

In connection with any decision or resolution on the distribution or crediting of dividends from shares or interests in companies or funds, etc., dividend tax must be withheld under § 65 of the Withholding Tax Act.

According to Tax Control Act § 9 A, the reports on the dividend recipients must initially be received by SKAT no later than January 20, or if this day is a Saturday or Sunday, no later than the following Monday in the year following the income year the distribution concerns.

The deadline in SKL § 9 A is a problem since it means that the information on dividend recipients is only available to the dividend tax administration up to ten months after the distribution and receipt of dividends/distribution has taken place. That means that today the dividend tax administration today is to a large extent administered blindly, as the information on the actual distribution is not known at the time the administration conducts its business operations. This is the case, for example, with recovery of dividend tax under the double taxation agreements and with dividend tax refunds, etc., just as a reconciliation of the actual distributed amount with the distributing company's declaration and tax return is not possible until a much later point in time.

## 2. Applicable rules:

Investment funds as well as corporations that are subject to corporate tax can distribute dividends. These are capital companies such as public companies, limited liability companies and investment funds and investment funds/companies. New company structures often emerge that are similar to companies but that do not necessarily conform with current definitions.

Additional companies are public company and limited liability company commercial funds and associations.

There are two main groups of companies:

The listed companies (around 170) and the investment funds (around 650 funds) are few, but have many shareholders/members. The investment funds and investment fund companies

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: 11.24.2006 | Page: 2 | of: 5 |
|---|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Dividend recipients | 1.1 | Amendment to legislation: Advancement of time for reporting regarding dividend recipients, § 9 A of the Tax Control Act (Jette). |

are typically registered in the Danish Central Securities Depository, regardless of whether they are listed or unlisted. This means that the distributions, etc., are administered by the account-holding custodian banks through VP, like where VP largely transfers data electronically to SKAT, which is also the case for the listed companies. The investment companies covered by the new rules (Corporation Tax Act § 3.1.19) can be both listed and unlisted.

- The non-listed companies are many (potentially around 145,000), but generally have few shareholders. A number of unlisted companies are also registered with VP and make use of VP's service benefits such as administration of the distribution, but under SKL § 9 B, the reporting obligation for shareholder distributions from all unlisted shares is placed upon the company itself.

The non-listed companies are therefore the main task in the dividend administration, but also the refund of dividend tax under the double taxation agreement to shareholders, etc., residing abroad, and are a major task in the dividend administration under international conventions as well. The refunds are primarily connected to listed shares and investment fund certificates, etc.

The distributing company/custodian must report who the recipient of the dividend is no later than January 20 in the year following the distribution (SKL/RKO), SKL sections 9 B and 10 A, but distributions to pension savings and minority shareholders, etc., are excluded from reporting.

Reporting can be done on electronic media (listed/unlisted) and on manual reporting forms and via TastSelv (unlisted shares). For individuals with a PI no. form 06.023 is used, and for companies and foreigners, etc., form 06.024 is used. The forms are sent to the Dividend Tax Administration in Ballerup for the purpose of entry into 3 S, a data collection procedure that was adopted with board approval in early 2005. Information entered into 3 S is subsequently transferred to RKO and is included in SLUT, etc.

In order to get so many reports collected to support the dividend administration, at the request of the unlisted companies, the Dividend Tax Administration has recommended that the distributing company voluntarily report the shareholder information at the same time as the declaration (form 06.016). However, such a voluntary scheme is not sustainable in the long term.

## 3. Proposal:
The reporting deadline under SKL § 9 A, is moved forward before the reports regarding distribution from shares and investment fund certificates, etc., to the point in time when the distribution actually

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: 11.24.2006 | Page:  3    of: 5 |
|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category:<br>Dividend recipients | Subj. no.:<br>1.1 | Subject text:<br>Amendment to legislation: Advancement of time for reporting regarding dividend recipients, § 9 A of the Tax Control Act (Jette). |
|---|---|---|

takes place (both actual and technical distribution). That means ongoing reporting to SKAT. The reporting obligation is based on SKL sections 9 B and 10 A.

**4. The proposal requires:**
Proposal requires modification to the "Tax Control Act" and the "Executive Order on reporting obligations, etc., according to the Tax Control Act ".

**5. Possible consequences:**

➢ *Advantages:*

✓ An advancement is deemed to significantly optimize the dividend administration's opportunities to administer dividend refunds and repayments under the set of rules. Reconciliation can be performed between distribution, declaration and tax return at a much earlier point in time, allowing SKAT to take quicker action against deviations, etc.

✓ An advancement on the reporting deadline is deemed to be able to lead to administrative simplifications, especially for the unlisted companies, as the companies themselves have both a declaration and reporting obligation to SKAT. An advancement can therefore mean that the notification and reporting of dividend recipients can be merged into one and the same report/form and TastSelv image. See subject no. 2.1 of the Problem Catalog.

✓ An advancement will also mean for the custodian-managed listed reports a current registration of ownership status code (tax code for ownership of the custody account, etc.) at the time of distribution (time of acquisition), and not as now with an ownership status (tax code) at the end of the income year. A code that may have been changed after the time of acquisition of the right and which in the event of an error may result in incorrect placement of the distribution amount on the tax return.

➢ *Disadvantages:*

✓ ☐ An advancement will mean changes in the financial sector's business procedures, but is not deemed to be of a significant size, as the information is currently collected for use in later reporting to SKAT at the end of the year.

7

| Subject recorded on: 11.07.2006 | Updated on: 11.24.2006 | Page: 4 | of: 5 |
|---|---|---|---|

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Dividend recipients | 1.1 | Amendment to legislation: Advancement of time for reporting regarding dividend recipients, § 9 A of the Tax Control Act (Jette). |

✓ If the dividend administration is not to continue being administered blindly, for reasons of repayments/refunds, SKAT has a significant need to know the distribution and dividend recipient at the time of repayment.

✓ The reporting at the end of the year means, among other things, that investment funds and companies with several distributions in the income year report total per recipient, which is not appropriate for the administration of the dividend tax. For example, receiving companies with a forward shifted income year will have the remaining distribution from the company, etc., registered in the wrong income year and for dividend-receiving companies with a forward shifted financial year, the reporting may not be until the following year.

## 6. Possible IT expenditures:

The advancement itself will not cause system costs in SKAT's systems, but the advancement is proposed to optimize the dividend tax administration's ability to carry out their tasks and will therefore require system changes and changed business procedures in SKAT. The 3 S system must be adapted to function as a data collection system for all dividend reports (both listed and unlisted), and as supplier to the RKO systems UDBY and IFPA.

Following the change in the spring of 2006, 3 S now functions as a data collection system for the unlisted companies. An expansion with the listed ones, will however require a not insignificant expansion of the input test in 3 S, as the data content of these transactions is more comprehensive.

## 7. Resource implications:

## 8. Proposal to the management group:

The group recommends that the proposal be put forward, as it is largely seen as the cornerstone for improving the dividend tax administration and the recovery procedures, etc. The group recommends that contact be made with the Ministry of Taxation and then with the financial sector - the Danish Bankers Association and others.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: 11.24.2006 | Page: 5 | of: 5 |
|---|---|---|---|

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Dividend recipients | 1.1 | Amendment to legislation: Advancement of time for reporting regarding dividend recipients, § 9 A of the Tax Control Act (Jette). |

➢ *The management group's decision:*

<u>November 24, 2006:</u>
The management group decided at its initial meeting that the working group will first address the subjects that require changes in the law. The subjects are each described in particular in the problem catalog, as well as in a summary memorandum that can be further added to the system. The memorandum and subject descriptions must be completed no later than December 8, 2006.

## 9. Status:

<u>October 19, 2006:</u>
In its comments in an internal consultation in response to the proposal for implementation of the MiFID Directive (a changed distinction between listed and unlisted shares), SKAT has raised to the Ministry the proposal for the advancement of the dividend reporting date.
However, the Ministry would like the proposal to be treated separately. That the subject was mentioned here is because the MiFID directive moves the distinction between listed and unlisted to "admitted to trading", which has the consequence that the circle of the unlisted shares, etc., becomes smaller and thereby reduces the opportunity for control that was created through the application of 3 S for the unlisted shares.

Confidential Pursuant to Protective Order



| Subject recorded on: 11.07.2006 | Updated on: | Page: 1 | of: 2 |
|---|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category:<br>Dividend recipients | Subj. no.:<br>1.2 | Subject text:<br>Amendment to legislation: § 9 B, para. 5 of the "Tax Control Act" and § 4 of the "Executive Order on reporting obligations, etc., according to the Tax Control Act" (Jette) |
|---|---|---|

## 1. Problem:

A large portion of the unlisted companies, like the listed companies, do not know all their shareholders, that is primarily minority shareholders. That means that dividend payments from unlisted companies to dividend recipients, who, as a result of corporate law rules, are exempt from being registered in the distributing company or fund, etc., are not reported to SKAT.

The legal basis can be found in the "Executive Order on reporting obligations, etc., according to the Tax Control Act", where the shareholder has no duty to inform the company of his identification (Personal identity number or CVR/no./SE no.). Executive Order § 4 and Tax Control Act § 9 B, para. 5.

## 2. Applicable rules:

See problem. It must be mentioned, however, that the exemption is not consistent, since under SKL § 9 B, etc., it is not exempt from reporting, which means that the company in principle must report the distribution without identification, and that SKAT rejects due to lack of identification.

## 3. Proposal:

§ 4 of the "Executive Order on reporting obligations, etc., according to the Tax Control Act" is amended, and Tax Control Act 9 B, para. 5 is also amended to the following: If the company does not have knowledge of the shareholder due to the corporate law rules, a report must be made to SKAT on the person/company to whom the distribution is actually made.

## 4. The proposal requires:

Modification of the "Tax Control Act" and the "Executive Order on reporting obligations, etc., according to the Tax Control Act".

## 5. Possible consequences:

➢ *Advantages:*
A modification is deemed to optimize the dividend administration's opportunities to administer dividend refunds and repayments according to the set of rules. Reconciliation can be conducted

10

Confidential Pursuant to Protective Order

| Subject recorded on: 11.07.2006 | Updated on: | Page: 2    of: 2 |
| --- | --- | --- |

# Problem Catalogue
# The Dividend Tax Administration

| Category:<br>Dividend recipients | Subj. no.:<br>1.2 | Subject text:<br>Amendment to legislation: § 9 B, para. 5 of the "Tax Control Act" and § 4 of the "Executive Order on reporting obligations, etc., according to the Tax Control Act" (Jette) |
| --- | --- | --- |

between distributions, declarations, and tax returns.

If the dividend administration is not to continue being administered more or less blindly, for reasons of repayments/refunds, SKAT has a significant need to know of all distributions and dividend recipients.

➢ *Disadvantages:*

None.

## 6. Possible IT expenditures:
The proposal is not estimated to incur IT costs.

## 7. Resource implications:

## 8. Proposal to the management group:

➢ *The management group's decision:*

## 9. Status:

11

Confidential Pursuant to Protective Order

| Subject recorded on: 11.07.2006 | Updated on: | Page: 1 | of: 3 |
|---|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Dividend recipients | 1.3 | Amendment to legislation: Extension of the reporting obligation regarding recipients of dividends pursuant to §9 B and §10 A of the Tax Control Act by removing the exemption from reporting in the Executive Order to the Tax Control Act, §7, etc. (Jette) |

## 1. Problem:

**A:** Distributions for shares, investment fund certificates, etc., which are in pension accounts or other tax-favored custodian accounts are not reported to SKAT, cf., "Executive Order on reporting obligations, etc., according to the Tax Control Act," § 7. The custodian banks /VP sort/manage the report by setting up custodian codes for each individual custodian.

The lack of reporting means that the companies' declarations and tax returns cannot be directly compared to the dividend recipients' reporting of the actual share distribution. I.e., a complete reconciliation is not possible.

**B:** The entities that are required to report do so for the purpose of the tax return, etc., not to support a SKAT exemption or an auditor's statement.

## 2. Applicable rules:

Currently, there is no reporting of dividend information if an exemption or auditor's statement has been issued or if there is a distribution of shares, etc., under a pension savings scheme (custodian codes FRI, REV and KAP). Pension account distributions are exempt from reporting.

The reporting for exemptions (custodian code FREE and KAP) etc., however, is currently not treated as excluded from the reporting obligation according to the rules of the Tax Control Act. However, the exclusion may be administrative for the purpose of the personal tax return, as the systems UDBY and IFPA are currently unable to receive notification of the custodian code and thus able to separate the distributions where there has been no withholding of this type of dividend tax.

## 3. Proposal:

The dividend recipient reporting obligation for both unlisted and listed companies should be expanded to include all dividend recipients and custodian types/dividend deductions, free assets, pension funds, certain other tax-favored schemes such as child savings, exemptions and auditors' declarations.

However, the proposal is that the reporting obligation solely apply to Danish shares, etc.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: | | Page: 2 of: 3 |
| --- | --- | --- | --- |

| Category: | Subj. no.: | Subject text: |
| --- | --- | --- |
| Dividend recipients | 1.3 | Amendment to legislation: Extension of the reporting obligation regarding recipients of dividends pursuant to §9 B and §10 A of the Tax Control Act by removing the exemption from reporting in the Executive Order to the Tax Control Act, §7, etc. (Jette) |

In the reporting, inventory and distribution will have to be designated by the reporter, so that they can be identified in SKAT's systems. If subject nos. 3.1.1 and 3.1.4 are implemented, the designation will mean that SKAT can use the reported information in the dividend tax administration and opt out from forwarding the information to RKO. This means that these systems do not need to be systemically adjusted.

An alternative proposal is that the Dividend Tax Administration in Ballerup is given the opportunity to re-establish the administrative business processes that were broken up in connection with modernization, where there were fixed agreements with VP regarding the delivery of dividend information for custodians designated as KAP, FRI and REV.

**4. The proposal requires:**
Amendments to the Tax Control Act, as § 7 of the Executive Order on reporting obligations, etc., contains an exemption from the dividend reporting obligations in the Tax Control Act for shares etc., purchased using pension funds when investing in Danish shares, etc.

Likewise, the reporting from the companies and the account-holding institutions/custodians must be enhanced by reporting of the custodian code. The code used in connection with the withholding of the dividend tax. The code values are (Blank, FOR, FREE, CAP, REV, SEL).

If the change is to have the intended effect, the subject must be linked to subject 1.1 (Amendment to legislation: Earlier reporting regarding the dividend recipient, § 9 A of the Tax Control Act) and subject 4.1 (System 3 S used as a data collection system regarding dividend tax).

**5. Possible consequences:**
➢ *Advantages:*
It is estimated that the expansion/change will optimize the opportunity of the dividend administration to process dividend refunds and repayments according to the set of rules. This will enable a total reconciliation between distribution, declaration and tax return.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: | Page: 3 of: 3 |
| --- | --- | --- |

| Category: | Subj. no.: | Subject text: |
| --- | --- | --- |
| Dividend recipents | 1.3 | Amendment to legislation: Extension of the reporting obligation regarding recipients of dividends pursuant to §9 B and §10 A of the Tax Control Act by removing the exemption from reporting in the Executive Order to the Tax Control Act, §7, etc. (Jette) |

> *Disadvantages:*

The proposal requires changes in the business procedures of the financial sector, as the proposal would require significantly more reporting than today.

Regarding the part of the pension account scheme, etc., which VP administers for the account-holding institutions, the expansion is estimated to be less challenging, while the part of the pension account scheme administered by the account-holding institution itself (the custodian) will be more comprehensive. However, the reporting burden can be limited to only Danish shares, etc.

## 6. Possible IT expenditures:

An expansion of the reporting will require system changes and changed business procedures in SKAT's systems. However, the system changes can be limited to 3 S if subject 4.1 is implemented (the system must be able to be used as a data collection system for all dividend reports and a supplier to the RKO systems UDBY and IFPA). If subject 4.1 is not implemented, the proposal will also require system changes in the UDBY and IFPA systems.

## 7. Resource implications:

## 8. Proposal to the management group:

The group recommends that contact be made with the Ministry of Taxation and subsequently with the financial sector – the Fiscal Council, etc.

> *The management group's decision:*

## 9. Status:

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: | | Page: 1    of: 3 |
|---|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Dividend recipient | 1.6 | Amendment to legislation: Nominee, joint ownership and ownership status code in the custodian registration  (Jette) |

## 1. Problem:

Nominee is understood to means a custody account where the deposited shares are owned by someone other than the registered account holder (administrator, foreign or Danish bank, joint custody account of two or more custody account owners, employee custody accounts, etc.). The nominee registration is used primarily to obtain administrative relief and save custodian fees.

Both nominees and the Internet are considered a threat to tax revenue, and it must be assumed that the problem is increasing in line with electronic development, which makes it easy and quick to trade and set up an account/custodian account abroad via the Internet.

The foreign securities dealers can "meet" directly with the customers and without the national tax authorities becoming aware of the dispositions and the players. (buyer/seller). Typically, foreign securities dealers will trade and use custodian accounts of nominees registered through a VP account at the Danish Central Securities Depository.

The Internet:
- Has made it more difficult to verify trading in securities, etc.
- Has made trading in securities more accessible to "ordinary people"
- Has made it easy to have bank and custodian accounts all over the world - which can be managed at home from the living room.

See also subject number 3.2.

## 2. Applicable rules:

By the nominee registration itself, no legal rules are violated, as this type of registration is fully legal in Denmark. However, there are other legal requirements that must be observed.

For example, the requirement that certain Danish companies have a duty to report shareholder information to the Danish Commerce and Companies Agency and the Stock Exchange.

However, with the current regulation, openness about ownership in private limited companies and public limited companies is quite limited in Denmark, as only listed companies have a duty to report on an ongoing basis when the shareholder owns 5% or more of the capital or votes in the company.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: | | Page: 2    of: 3 |
|---|---|---|---|

| Category: Dividend recipient | Subj. no.: 1.6 | Subject text: Amendment to legislation: Nominee, joint ownership and ownership status code in the custodian registration  (Jette) |
|---|---|---|

The non-listed companies keep a share register of all the shares that are only open to company management and to public authorities at the company's office. In addition, the companies keep a special list of the shareholders who own 5% or more of the capital. The latter is publicly available by contacting the companies. Similarly, the private limited liability companies maintain a list of shareholders, which, however, is only publicly available in cases where the share capital is more than DKK 500,000, or where all shares are owned by the same person.

It is completely legal to trade and deposit securities nominated through both Danish and foreign banks/stockbrokers, including setting up offshore companies, as long as the activities are declared.

The problem with these transactions is that the parties often forget to file tax returns in the home country (unpaid taxes on returns and gains, etc.), and that this form of trading and registration is non-transparent to the tax authorities, as the mandatory reports do not reach beyond the person who made the transaction or set up the depot account "nominee". This non-transparency, together with the Danish rules for share loans (see subject 1.10 profit/loss and dividends on share loans) can be an obvious tool that, among other things, can be used, for example, to channel a dividend to a country where Denmark has lower or no right to dividend tax under the double taxation agreement.

## 3. Proposal:

Politicians need to be made aware that there actually is a problem that is a threat to the tax system.

The establishment of e.g., ownership registers will be a good tool that can help reduce the threats to tax revenue. Such an ownership register has not yet been established in Denmark, whereas several of the Nordic countries have established such a register (Norway), or are considering establishing such a register (Finland).

According to the recently adopted EU interest rate directive, more coordination between countries must be developed for the entire registration and securities area so that more automatic exchange agreements, etc., are established as well as better double taxation agreements. Pressure should be placed on the OECD and the EU to establish more common solutions. This does not solve the problem, but can minimize it.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 11.07.2006 | Updated on: | Page: 3    of: 3 |
|---|---|---|

| Category:<br>Dividend recipient | Subj. no.:<br>1.6 | Subject text:<br>Amendment to legislation: Nominee, joint ownership and ownership status code in the custodian registration  (Jette) |
|---|---|---|

## 4. The proposal requires:

Likely changes in the law, etc.

## 5. Possible consequences:

➤ *Advantages:*

Stricter requirements for e.g., share ownership, etc., is predicted to optimize the dividend administration's method in administering dividend refunds and repayments in accordance with the rules and double taxation agreements, as well as to the rightful owner.

➤ *Disadvantages:*

## 6.  Possible IT-expenditures:

## 7. Resource implications:

## 8. Proposal to the management group:

➤ *Decision of the management group:*

## 9. Status:

Confidential Pursuant to Protective Order
SKAT_MDL_001_00517918_T

Confidential Pursuant to Protective Order    SKAT_MDL_001_00517918_T

| Subject recorded on: 07 11 2006 | Updated on: | Page: 1 of: 3 |
|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Account holding institution (custodian bank) | 3.2 | Nominee, joint ownership and ownership status code in the custodian registration (Jette) |

## 1. Problem:

This form of trade and registration is non-transparent to the tax authorities, as the mandatory reports do not extend beyond the person who has made the transaction or set up the depository "nominee". This non-transparency, together with the Danish rules for share loans (see subject 1.10 Profit/loss and dividends on share loans) can be an obvious tool that, among other things, can be used, for example, to channel a dividend to a country where Denmark has lower or no right to dividend tax under the double taxation agreement. See subject 1.6, which describes the nominee as a general threat to the Danish tax system.

## 2. Applicable rules:

**Description of business process: Refund according to double taxation agreement to shareholders residing abroad, as well as according to international conventions**

Shares owned by foreign shareholders who, at the time of distribution, are subject to limited tax liability in Denmark, i.e., both individuals and companies, are generally taxed at 28%. By submitting a request, the shareholder can recover the difference between the withheld dividend tax of 28% and the dividend tax rate to be paid under the double taxation agreement with the shareholder's taxable country.

The request is sent to the dividend tax administration on a special form, which in addition to being completed, must be certified by the distributing company/financial institution, and endorsed by a competent tax authority in the applicant's home country.

The dividend tax administration makes payments directly to the applicant or to a financial institution listed by the person in question.

Business process:

- Payment is made by the dividend tax administration
- Disbursement lists from the 3 S system are processed in the dividend tax administration
- The received requests are entered in the 3 S system under the distributing company (CVR) and under the name and address of the receiving shareholder.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 07 11 2006 | Updated on: | Page:  2     of: 3 |
|---|---|---|

# Problem Catalogue
# The Dividend Tax Administration

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Account holding institution (custodian bank) | 3.2 | Nominee, joint ownership and ownership status code in the custodian registration  (Jette) |

- SKAT has an agreement with Danske Bank, Nordea and SEB that requests can be submitted with an attached spreadsheet as a basis for the refund. In that case, the sum of the spreadsheet is paid to the bank for distribution.

**3. Proposal:**

**A)** Specifically concerning dividend tax, stricter documentation requirements should be established for the shareholding in the event of reimbursement/refund of Danish dividend tax (if a nominee has been registered, including joint custodian accounts), so that the dividend tax administration can be sure of the ownership of the actual distribution.

It should be noted that the Dividend Tax Administration in 2006 identified the largest single payment of DKK 574 million to a nominee. This reimbursement clearly shows that there is a need to tighten the requirements for the registration of ownership of Danish shares or the documentation requirements for reimbursement, etc.

**B:** Proposal for ownership status code 1 (A natural or legal person who neither resides nor domiciles in this country or more than two persons, all of whom are foreign shareholders) is divided into reporting systems concerning dividend tax and investment fund securities, so that in connection with the reimbursement of the dividend tax it is clear whether it concerns a person/company or several persons/companies and nominees.

**4. The proposal requires:**

Legislative amendment

**5. Possible consequences:**

➢ *Advantages:*

➢ *Disadvantages:*

**6. Possible IT expenditures:**

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 07 11 2006 | Updated on: | Page: 3    of: 3 |
| --- | --- | --- |

|  |  |  |
| --- | --- | --- |

| Category: | Subj. no.: | Subject text: |
| --- | --- | --- |
| Account holding institution (custodian bank) | 3.2 | Nominee, joint ownership and ownership status code in the custodian registration  (Jette) |

**7. Resource implications:**

**8. Proposal to the management group:**

The group recommends that contact be made with the Ministry of Taxation and subsequently with the financial sector – the Fiscal Council, etc.

➢ *The management group's decision:*

**9. Status:**

21

Confidential Pursuant to Protective Order

| Subject recorded on: 07 11 2006 | Updated on: | | Page:  1    of: 3 |
|---|---|---|---|

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Account holding institution  (custodian bank) | 3.3 | Amendment to legislation: Liability for incorrect custodian designation etc., by the account-holding institution. (Jette) |

## 1. Problem:

According to the "Executive Order on the collection of income tax as well as municipal and county property value tax for persons, etc." (Withholding Tax Executive Order), Tax Control Act No. 993 of 10/19/2005 (in effect), section VII, Chapter 9 on dividend tax and royalty tax, § 29, companies and funds, etc., that distribute dividends may refrain from withholding tax when the conditions stated in nos. 1- 6, respectively para. 2-5, are met. See below.

The problem is that according to para. 5, custodial institutions are only liable to the treasury for losses resulting from incorrect collection of dividend taxes, which is caused by incorrect designation of tax-favored pension savings/child savings and restricted capital as mentioned in § 29, §§ 1, nos. 3 and 4, but not by incorrect designation of the custodian account in general. For example regarding 15%, 18.48, exemption or reduced deduction according to a double taxation agreement, etc.

## 2. Applicable rules:

§ 29:

1) Exemptions are shown, cf., §§ 2 and 3.

 2) The parent company of the distributor is the dividend recipient, etc., under the requirements specified in the Corporation Tax Act, § 2, para 1(c), or § 13, para. 1, no. 2, the Fund Taxation Act, §10, para 1, cf., 4, or the Withholding Tax Act § 2, para. 1, no. 6, cf., Corporation Tax Act § 2 (c), no. 5 and 6. It is also a requirement that dividend distributions are not covered by the Corporation Tax Act, § 3, para 1, no. 19.

 3) The dividend is received by an installment/pension fund savings account covered by §§ 11 A, 12 and 13 of the Pension Taxation Act, as well as child savings accounts and self-pension accounts, covered by § 51 of the Pension Taxation Act, and is designated as exempt from withholding, cf., 5.

 4) The dividend is received from trustee services, if it is determined that the return on capital shall be set up for a specified time, and the return is also not subject to income tax for anyone, and is designated exempt from withholding tax, cf. 5.

22

| Subject recorded on: 07 11 2006 | Updated on: | | Page:  2     of: 3 |
|---|---|---|---|

| Category: | Subj. no.: | Subject text: |
|---|---|---|
| Account holding institution (custodian bank) | 3.3 | Amendment to legislation: Liability for incorrect custodian designation etc., by the account-holding institution. (Jette) |

5) Financial institutions and life insurance companies receive the dividend to the extent that the dividend is not included in the calculation of the taxable income pursuant to § 13 B of the Corporation Tax Act, cf., 6.

6) A derogation is submitted in accordance with the Tax Assessment Act, § 16 A, para. 2, § 16 A, para. 3, or in accordance with § 16 B, para. 2.

*Para. 2.* Exemption is issued to:

1) Associations, cooperatives, foundations, scholarships and self-governing institutions that are covered by the Corporation Tax Act, § 1, para. 1, no. 6, as well as institutions etc., which pursuant to the Corporation Tax Act § 3, para. 1, are exempt from tax liability, except for all types of companies that are covered by the Corporation Tax Act § 3, para. 1, no. 19.

2) Foreign states and tax-exempt international organizations and members of the royal family, who as such are exempt from Danish income tax liability.

*Para. 3.* Exemptions are issued by the customs and tax administration and are valid until further notice up until a maximum of 10 years. The exemptions must be returned to the issuer if the shareholder's circumstances change.

*Para. 4.* It is a prerequisite for exemption under para. 1, no. 2, that parent companies that have fulfilled the requirements of the Corporation Tax Act § 2, para. 1 (c), and § 13, para. 1, no. 2, respectively, and are exempt from the ownership condition, submit a written declaration to the distributing company to guarantee the payment of any dividend tax, if this requirement is not subsequently met.

*Para. 5.* Administrative institutions that maintain accounts as mentioned in para. 1, nos. 3 and 4, are responsible for the said accounts designated as exempt from withholding tax and are liable for any losses to the treasury in the event of incorrect collection of dividend tax, which is due to incorrect designation.

*Para. 6.* It is a prerequisite for exemption under para. 1, no. 5, that the auditor elected at the general meeting of the financial institution or life insurance company for the applicable distributing company or the applicable person who arranges the dividend payment on its behalf, submits a written declaration that dividends are not included in the statement of the taxable income pursuant to § 13 B of the Corporation Tax Act.

**3. Proposal:**

A legal basis is created for liability in the event of incorrect designation of the custodian account and thus incorrect dividend deductions, which result in a loss for the treasury.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T

| Subject recorded on: 07 11 2006 | Updated on: | Page: 3 of: 3 |
| --- | --- | --- |

| Category: | Subj. no.: | Subject text: |
| --- | --- | --- |
| Account holding institution (custodian bank) | 3.3 | Amendment to legislation: Liability for incorrect custodian designation etc., by the account-holding institution. (Jette) |

### 4. The proposal requires:
Legislative amendment.

### 5. Possible consequences:

➢ *Advantages:*
This will increase the quality of the custodial designations and the administration of the administrative institutions/custodian banks and safeguard the state's revenue.

➢ *Disadvantages:*

### 6. Possible IT expenditures:

### 7. Resource implications:

### 8. Proposal to the management group:

The group recommends that contact be made with the Ministry of Taxation and subsequently with the financial sector – the Fiscal Council, etc.

➢ *The management group's decision:*

### 9. Status:

24

Confidential Pursuant to Protective Order

SKAT_MDL_001_00517918_T