# Exhibit 47, Part 3 of 5

Det fremgår af Amended Defence af 5. september 2019, at ED&F Man har udarbejdet 420 Tax Vouchers til deres kunder, hvoraf 89 Tax Vouchers var ukorrekte, således at Pensionsplanen fik udbetalt udbytterefusion med 8.613.000 kr. på baggrund af ukorrekte Tax Vouchers.

Kammeradvokaten har på vegne af Skattestyrelsen anført, at ED&F Man har erhvervet 800.000 stk. Chr. Hansen Holding-aktier for 0 kr., hvilket efter Kammeradvokatens opfattelse sandsynligvis er udtryk for, at ED&F Man har lånt aktierne, således at der ikke kunne tilbagesøges indeholdt udbytteskat for disse aktier.

Skatteankestyrelsen har anmodet repræsentanten om yderligere oplysninger og dokumentation til brug for sagen, herunder regnskaber for Pensionsplanen for 2012 – 2015, bankkontoudtog for Pensionsplanen for 2012 – 2015 og kontoudtog for Pensionsplanen fra konto hos ED&F Man for 2014 – 2015.

Repræsentanten har den 11. juni 2019 bl.a. fremlagt Account Equity vedrørende køb af aktier samt udskrift fra bankernes fælles SWIFT-system (SWIFT = Society for Worldwide Interbank Financial Telecommunication).

Endvidere er fremlagt Cash Equity Confirmation fra Volcafe samt e-mails til og fra ED&F Man om køb og salg af aktier.

Endelig er fremlagt Account Transactions (General Ledger) vedrørende køb og salg af aktier samt Account Equity om beholdning af aktier, futures og swaps.

**SKATs afgørelse**
SKAT har tilbagekaldt tidligere afgørelser om refusion af udbytteskatter på i alt 21.060.000 kr. til Pensionsplanen, idet Pensionsplanen ikke har været berettiget til at modtage udbytteskatten.

SKAT har anført:

> "Advokatfirmaet Lundgrens har på AMERICAN's vegne anført, at AMERICAN har været retmæssig ejer af de omhandlende aktier, og at tilbagesøgningen af den indeholdte kildeskat har været retmæssig.
>
> Det anføres i indsigelsen, at AMERICAN har købt de aktier, der ligger til grund for de modtagne udbytter og for tilbagesøgningen af indeholdt kildeskat.
>
> Det anføres videre, at der er fremlagt sædvanlig skriftlig bekræftelse på købet fra AMERICAN's broker, ligesom det anføres, at SKAT har modtaget dokumentation i form af kontoudskrifter fra ED&F Man Capital Markets Limited, hvoraf det fremgår, at der er betalt for købet af de omhandlede aktier. Derudover fremgår det af en "Dividend Credit Advice", at AMERICAN har modtaget udbyttet, og at der er indeholdt udbytteskat heraf.
>
> Advokatfirmaet Lundgrens anfører endelig, at den fremsendte dokumentation er i overensstemmelse med, hvad SKAT efter fast praksis i mange år har accepteret som værende tilstrækkelig.
>
> Advokatfirmaet Lundgrens bemærker i indsigelsen, at SKAT i sit forslag har fundet, at AMERICAN ikke har haft tilstrækkelig kapitalgrundlag til at kunne foretage de pågældende aktiekøb. Hertil anfører Advokatfirmaet Lundgrens, at SKAT ikke synes at have forholdt sig hverken generelt eller konkret til

spørgsmålet om finansiering af aktiehandel, herunder AMERICAN's konkrete mulighed for at opnå ekstern finansiering af aktiekøbene. Det oplyses dog ikke i indsigelsen, om AMERICAN har opnået finansiering til køb af aktier uden anvendelse af egenkapital.

SKAT har i forbindelse med en tidligere kontrol af en anmodning fra AMERICAN om refusion af udbytteskat modtaget nye oplysninger fra IRS om AMERICAN's formueforhold. SKAT har på baggrund af de nye oplysninger udført kontrol af AMERICAN's tidligere refunderede udbytteskatter.

AMERICAN's formue viser, at AMERICAN ikke har kunnet eje aktier i et sådan omfang som oplyst, hvorfor SKAT ikke finder, at Dividend Credit Advice (Tax Voucher) er tilstrækkelig dokumentation for, at pensionskassen har ejet aktierne og modtaget aktieudbyttet.

SKAT har i forbindelse med den tidligere kontrol af AMERICAN's anmodning om refusion af udbytteskat modtaget udvalgte dele af materiale fra brokervirksomheden ED&F Man Capital Markets Ltd. Udskrifterne er mangelfulde, idet der mangler sider, ligesom en stor del af teksten på de sider, som SKAT modtog, var gjort ulæselige med overstregninger. Ifølge Advokatfirmaet Lundgrens indsigelse fremgår det af materialet, at AMERICAN har købt aktierne og modtaget aktieudbytterne. Der er dog ikke i indsigelsen redegjort for, hvordan dette fremgår af materialet. Det modtagne materiale er ufyldestgørende og mangelfuldt. Det dokumenterer ikke AMERICAN's ejerskab af de pågældende aktier eller AMERICAN's modtagelse af aktieudbytte.

Advokatfirmaet Lundgrens har ikke bestridt, at AMERICAN ikke har haft et tilstrækkeligt kapitalgrundlag til at kunne foretage de pågældende investeringer. De har alene henvist til, at SKAT ikke har forholdt sig til AMERICAN's mulighed for at opnå ekstern finansiering af de omhandlede handler. Advokatfirmaet Lundgrens har hverken oplyst eller dokumenteret, at AMERICAN har opnået ekstern finansiering til køb af aktierne.

Advokatfirmaet Lundgrens har ikke med sin indsigelse fremlagt dokumentation for:
- At AMERICAN har købt aktierne.
- At AMERICAN har modtaget udbytte af aktierne.
- At der er indeholdt udbytteskat af aktieudbytterne.

Tilsvarende har Advokatfirmaet Lundgrens ikke fremlagt dokumentation for, at AMERICAN har haft den fornødne kapital til rådighed, til at foretage de meget betydelige investeringer i danske aktier, der ligger til grund for de omhandlede anmodninger om refusion af udbytteskat.

AMERICAN har derfor ikke dokumenteret, at AMERICAN opfyldte betingelserne for at få refunderet indeholdte udbytteskatter af de pågældende aktier.

Det er derfor fortsat SKATs vurdering, at AMERICAN ikke ejer eller har ejet de aktier, som fremgår af anmodningerne om refusion, og at udbytterne vedrørende aktierne, som fremgår af anmodningerne, ikke er tilgået AMERICAN.

SKAT træffer derfor afgørelse i overensstemmelse med det tidligere fremsendte forslag.

Kammeradvokaten vil på vegne af SKAT rejse krav om tilbagebetaling og erstatning over for AMERICAN."

### Pensionsplanens opfattelse
Pensionsplanens repræsentant har nedlagt påstand om, at SKATs afgørelse af 4. maj 2018 ændres, således at SKATs tidligere afgørelser om refusion af udbytteskatter til Pensionsplanens på i alt 21.060.000 kr. stadfæstes.

Pensionsplanen blev stiftet den 29. oktober 2002 og er en amerikansk pensionsplan, der efter interne amerikanske regler er fritaget for skattepligt og som efter dobbeltbeskatningsoverenskomsten mellem Danmark og USA er undtaget for betaling af kildeskat på udbytteudlodninger fra Danmark.

Pensionsplanen har i perioden fra 2015 til 2015 foretaget investeringer i danske aktier og har i den forbindelse modtaget udbytter af disse aktier. I forbindelse med udbetalingen af disse udbytter er der blevet indeholdt kildeskat på udbyttebetalingen. Pensionsplanen har efterfølgende løbende søgt disse indeholdte udbytteskatter udbetalt, hvilket SKAT har godkendt.

Nærværende sag omhandler det forhold, at SKAT i den påklagede afgørelse nu har tilbagekaldt disse tidligere afgørelser, hvorved SKAT anerkendte Pensionsplanens ret til at få udbetalt indeholdte udbytteskatter.

Repræsentanten har yderligere anført:

> "1. Baggrunden for investeringerne
>
> American Investment Group Of New York L.P. Pension Plan (American) blev stiftet den 29. oktober 2002. American har siden stiftelsen foretaget en lang række investeringer i både amerikanske og udenlandske (ikke-amerikanske) værdipapirer, finansielle produkter og kontrakter m.m.
>
> I 2014 – 12 år efter stiftelsen - begyndte klager at orientere sig imod investeringer i danske aktier. Efter at have undersøgt de markedsmæssige betingelser for aktieinvesteringer i danske aktier valgte klager at tilføje de omhandlede investeringer til den portefølje af investeringer, som klager i forvejen foretog i regi af brokerselskabet ED&F Man Capital Markets Limited.
>
> ED&F Man Capital Markets Limited, der er en del af ED&F Man Group, er et stort og velrenommeret globalt finansielt broker-selskab, autoriseret og reguleret af Financial Conduct Authority ("FCA") (194926). Selskabet har kontoradresse på 3 London Bridge Street, London, SE1 9SG og er registreret i England med et svarende til dansk CVR.nr. 1292851.
>
> ED&F Man Group blev etableret i 1783 og beskæftiger i dag omkring 6.000 ansatte i 60 lande.
>
> I forbindelse med samarbejdet mellem klager og ED&F Man Capital Markets Limited blev der indgået en række ramme-aftaler, som dannede grundlag for samarbejdet og de investeringer, klager valgte at foretage i de efterfølgende år.
>
> Klager har ikke - og har aldrig haft - nogen sammenfaldende interesser med ED&F Man Capital Market Ltd.
>
> For at få en bedre forståelse af ED&F Man Capital Markets Ltd. almindelige serviceydelser kan henvises til selskabets hjemmeside, hvor der blandt andet anføres følgende:
>
> "We provide fixed income, equity and commodity exchange-traded funds and source liquidity for listed and OTC block trades. We help customers from banks to hedge and real money funds with algorithmic trading strategies and voice, electronic, chat, and FIX staged access."
>
> "We provide equity crossing in pan-European, Asian, US and Canadian equities. With a client base across Europe, North America and Asia-Pacific, we can quickly execute over-the-counter or on-exchange trades. We also offer execution and clearing of ICE and Eurex single stock futures and options."

"We provide clearing and settlement for equities and fixed-income securities. We offer global services for on-exchange securities deals and settlement, and custodian services for on-exchange and over- the-counter transactions. We can provide a full list of markets covered on request."

"We provide specialized securities lending and financing services to hedge funds and proprietary trading firms."

Som det fremgår af ovenstående, tilbyder ED&F Man Capital Markets Ltd. sine kunder en bred vifte af forskellige investeringsmuligheder i alle former for værdipapirer mm.

2. De foretagne investeringer

Som nævnt ovenfor, blev klager stiftet den 29. oktober 2002 og har siden da foretaget finansielle investeringer, herunder hos ED&F Man Capital Market Limited.

I 2014 blev klager anbefalet at investere i danske aktier – blandt andet som en følge af, at klager som amerikansk pensions plan har ret til 100% refusion af dansk indeholdt kildeskat på udbytter.

På den baggrund foretog klager i 2014 og 2015 samlet 11 handler i danske børsnoterede aktier, som alle gav udbytte, hvor der blev indeholdt sædvanlig kildeskat på udbyttet, og hvor den indeholdte udbytteskat efterfølgende blev tilbagesøgt af klager.

**********

Som nævnt har klager igennem mange år foretaget investeringer i værdipapirer i en række forskellige lande. For ikke at skulle sætte sig ind i tilbagesøgningsproceduren i hvert enkelt land, har klager gennem flere år anvendt forskellige professionelle serviceudbydere til at stå for den praktiske tilbagesøgning af indeholdt kildeskat efter de regler, der gælder for investeringer i det pågældende land.

Efter at klager i 2014 begyndte at investere gennem ED&F Man Capital Markets Limited, blev klager introduceret for Goal TaxBack, som ED&F Man Capital Markets Ltd. havde et samarbejde med. Goal TaxBack udbyder den service at tilbagesøge indeholdt udbytteskat for udenlandske investorer.

Som følge af disse forhold udstedte klager fuldmagt til Goal TaxBack med henblik på at Goal TaxBack kunne tilbagesøge den indeholdte kildeskat. Som **bilag 2** fremlægges den fuldmagt, der blev udstedt til brug herfor.

I forbindelse med tilbagesøgningen af indeholdt kildeskat indsendte Goal TaxBack, på vegne af klager, en anmodning om refusion af den indeholdte udbytteskat.

Som **bilag 3** fremlægges en af Goal TaxBack udfyldt tilbagesøgningsblanket (Form 06.003 (ENG)), af hvilken fremgår samtlige de informationer, som SKAT – dengang som nu – efterspørger for at kunne træffe beslutning om refusion af den indeholdte udbytteskat. Anmodningen fra Goal TaxBack indeholdt således følgende dokumenter:

- En udbytteerklæring (Tax Voucher), der dokumenterer dels udbytteudlodningen, dels den indeholdte udbytteskat.
- En såkaldt "Hjemstedserklæring", der skal dokumentere, at den person (fysisk eller juridisk) der tilbagesøger udbytteskatten, er skattemæssigt hjemmehørende i det land, med hvem Danmark har indgået en dobbeltbeskatningsoverenskomst, der giver hjemmel til at tilbagesøge indeholdte kildeskatter på udbytter.

Denne "hjemstedserklæring" ("Form 6166") udstedt af det amerikanske Finansministerium, fremlægges som **bilag 4**. Det fremgår heraf, at klager er en pensionsplan, der er skattemæssigt hjemmehørende i USA og som er undtaget fra amerikansk skattepligt. Udover at dokumentere, at klager er skattemæssigt hjemmehørende i USA, dokumenterer erklæringen ligeledes, at klager er en amerikansk pensions plan, hvorfor klager efter artikel 10 (3) i den dansk-amerikanske dobbeltbeskatningsoverenskomst er berettiget til at få refunderet hele den indeholdte udbytteskat.

Det skal understreges, at denne Form 6166 er en standardform, som det amerikanske finansministerium anvender som dokumentation for tilbagesøgning af indeholdt udbytteskat i henhold til alle dobbeltbeskatningsoverenskomster, som USA har indgået. Der er således ikke tale om en blanket der er udarbejdet særligt til klager, eller særligt til tilbagesøgning af udbytteskat fra danske aktier.

På baggrund af disse dokumenter tilbagesøgte Goal TaxBack den kildeskat, der var blevet indeholdt på den udlodning, der var sket på de aktier, klager ejede på udlodningstidspunktet.

Efter SKAT's gennemgang af ovenstående materiale traf SKAT beslutning om at udbetale den indeholdte kildeskat, idet klager iht. dobbeltbeskatningsoverenskomsten mellem USA og Danmark var berettiget til at få udbetalt 100 % af den indeholdte kildeskat.

**********

**ANBRINGENDER**

Til støtte for den nedlagte påstand gøres det overordnet gældende, at klager har været retmæssig ejer (beneficial owner) af de omhandlede aktier på tidspunktet for vedtagelsen af udbytteudlodningerne.

Efter danske regler er det ejeren af aktierne kl. 23:59:59 på dagen for generalforsamlingens vedtagelse af udbytteudlodningen, der anses for at være den retmæssige ejer af det udloddede udbytte, og dermed også den der er berettiget til at tilbagesøge den indeholdte danske udbytteskat på aktierne.

Klager er en lovformeligt stiftet og registreret pension plan i medfør af dobbeltbeskatningsoverenskomsten mellem USA og Danmark. Der foreligger dokumentation for, at klager er skattemæssigt hjemmehørende USA men er undtaget fra amerikansk skattepligt, jf. bilag 4.

Klager har modtaget dokumentation fra ED&F Man Capital Market Limited på at have ejet og været i besiddelse af de omhandlede aktier på tidspunktet for vedtagelsen af udbytteudlodning fra det udloddende selskab.

Klager har yderligere modtaget dokumentation for at have modtaget selve udbytteudlodningen eksklusiv indeholdt kildeskat. Således har klager også modtaget dokumentation for, at der på den pågældende udbytteudlodning faktisk har været indeholdt dansk kildeskat.

Klager opfylder således betingelserne for at få refunderet den indeholdte kildeskat, jf. dobbeltbeskatningsoverenskomsten mellem USA og Danmark artikel 10.

Klager har således været berettiget til at modtage refusion af den indeholdte kildeskat på udbytteudlodningerne, og det er derfor med urette, at SKAT ved den påklagede afgørelse tilbagekaldt sin tidligere begunstigende forvaltningsakt.

**********

SKAT har i kendelsen p. 2 oplyst, at det er SKAT's opfattelse, at refusionerne til klager skulle være formodet svindel, og det fremgår ligeledes, at SKAT har anmeldt denne – og tilsyneladende andre –

sager til SØIK som følge af en mistanke om, at klager ikke skulle have ejet de aktier, som ligger til grund for tilbagesøgningerne, og som følge af en mistanke om, at klager ikke skulle have modtaget selve udbytteudlodningen fra det udloddende selskab.

Helt grundlæggende synes disse påstande ganske løsrevet fra sagens faktiske omstændigheder.

Yderligere er disse påstande i strid med den dokumentation, som klager har modtaget fra ED&F Man Capital Market Limited, og klager kan derfor ikke genkende det billede, SKAT tegner ved denne beskrivelse.

Klager har foretaget sædvanlige investeringer i danske aktier. Samtlige disse investeringer – herunder ejerskabet og modtagelsen af udbytteudlodningerne - har udmøntet sig i helt sædvanlige registreringer og posteringer på klagers konto i et internationalt stort anerkendt investeringsfirma, der er underlagt kontrol af de britiske finansmyndigheder.

Den dokumentation, der er fremlagt med tilbagesøgningsblanketten er og var helt sædvanlig og også fuldt tilstrækkelig dokumentation for både ejerskab og pengestrømme. Den omhandlede dokumentation svarer ganske til den dokumentation, SKAT fortsat anbefaler man vedlægger sin anmodning om refusion af indeholdte kildeskatter, og dokumentationen svarer ganske til den dokumentation, SKAT har krævet gennem mange års faste praksis.

Klager har på intet tidspunkt haft grundlag for at betvivle validiteten af den dokumentation, klager har modtaget fra ED&F Man Capital Market Ltd., og klager har fortsat intet belæg for at betvivle, at de posteringer og registreringer, der fremgår af materialet fra ED&F Man Capital Market Ltd. ikke skulle være korrekte."

### Skatteankestyrelsens kontorindstilling
Skatteankestyrelsen har den 4. oktober 2019 udsendt kontorindstilling i sagen, hvor SKATs afgørelse er indstillet stadfæstet.

### Skattestyrelsens sammenfattende bemærkninger af 18. oktober 2019

> "...
> Pensionsplanen har ikke dokumenteret, at den ejede de aktier, som har dannet grundlag for refusion af indeholdt udbytteskat. Skattestyrelsen er således enig i Skatteankestyrelsens kontorindstilling af 4. oktober 2019.
>
> Det er ødelæggende for pensionsplanens påstand under sagen, at pensionsplanens custodian ED&F Man nu i en retssag anlagt af Skatteforvaltningen mod ED&F Man i England har indrømmet at have udstedt et stort antal forkerte Tax Vouchers. De nu erkendt forkerte Tax Vouchers har dannet grundlag for uberettigede refusioner på ca. 184 mio. kr., jf. afsnit 4.1. Det er et kæmpebeløb, som ED&F Man har bidraget til, at statskassen har mistet.
>
> Det forholder sig til og med på den måde, at ED&F Man _også_ i klagerens egen sag har indrømmet at have udstedt dybt fejlagtige Tax Vouchers. Klageren har uberettiget fået refunderet 21.060.000 kr. ED&F Mans indrømmelse omfatter et beløb i klagerens egen sag på 8.613.000 kr.
>
> Til og med er forholdet det, at Skattestyrelsen har dokumenteret, at ED&F Man også for så vidt angår de Tax Vouchers, som ED&F Man ikke på nuværende tidspunkt har erkendt er forkerte, har konstrueret forkert dokumentation til brug for attestation for ejerskab til aktier, jf. afsnit 5.
>
> En meget stor del af pensionsplanens argumentation er støttet op på ED&F Mans troværdighed. Nu er det bevisfast også med ED&F Mans egen indrømmelse i den engelske retssag mod dem, at der

ikke er nogen som helst troværdighed knyttet til ED&F Mans udsagn. Det forholder sig faktisk helt omvendt, nemlig at man ikke kan stole på udsagn fra ED&F Man.

Det tog godt nok lang tid for ED&F Man at komme med denne indrømmelse i den engelske retssag anlagt af Skatteforvaltningen mod ED&F Man. Det blev tidligere bestridt på det kraftigste af ED&F Man, at der var noget som helst i vejen med deres Tax Vouchers. De skiftende forklaringer mindsker i sig selv ED&F Mans troværdighed.

Helt nøgtern kan man vel kun konkludere, at Landsskatteretten er nødt til at betragte enhver form for bevisførelse, der læner sig op på ED&F Mans troværdighed med den allerstørste skepsis. Og pensionsplanens sag læner sig først og fremmest op af, at ED&F Man er troværdige, hvilket de altså ikke er – i virkeligheden forholder det sig stik modsat.

Pensionsplanen kan ikke dokumentere, at den har betalt for aktier. Den kan heller ikke dokumentere, at den har modtaget nettoudbyttet fra de aktieposter, som den påstår at have ejet, eller at den har modtaget udbytterefusion, jf. også Skatteankestyrelsens kontorindstilling, s. 2, 4. afsnit. Til gengæld ligger det fast, at den ikke havde penge til at købe de påståede aktier.

Som det fremgår af Skatteankestyrelsens kontorindstilling, s. 2, 4. afsnit, har pensionsplanen ikke dokumenteret, at pensionsplanens custodian, ED&F Man, har handlet aktier på pensionsplanens vegne, eller at aktietransaktionerne m.v. har passeret pensionsplanens økonomi. Skatteankestyrelsens kontorindstilling er meget solidt funderet i sagens omstændigheder.

I sig selv er det utroværdigt, at pensionsplanen uden nævneværdige aktiver køber så ekstremt store aktieposter som påstået. Det indtryk forstærkes betydeligt, når pensionsplanen ikke fremlægger dokumentation for pengestrømme til/fra pensionsplanens egne (bank)konti, jf. også Skatteankestyrelsens kontorindstilling, s. 2, 4. afsnit. Det er konsekvent, at ingen af pensionsplanerne repræsenteret af Lundgrens fremlægger kontoudtog, endsige giver en forklaring på, *hvorfor* de ikke fremlægger egne bankkontoudtog.

Mere uddybende bemærker Skattestyrelsen følgende:

Indhold

| | | | |
|---|---|---|---|
| 1. | INDLEDNING | | 4 |
| 2. | SAGERNE I HOVEDTRÆK | | 5 |
| | 2.1 | Sagskompleks med svindel for 12,7 mia. kr. | 5 |
| | 2.2 | Den konkrete sag: American Investment Group of New York, L.P. Pension Plan | 6 |
| | 2.3 | Pensionsplaner repræsenteret af Lundgrens i sagskompleksets 1. bølge | 7 |
| | 2.4 | Pensionsplanen ejede ikke aktier og modtog ikke udbytte | 9 |
| | 2.5 | Pensionsplanens påståede set-up er uklart og udokumenteret | 10 |
| 3. | BEVISBYRDE | | 11 |
| 4. | DOKUMENTATION FRA ED&F MAN HAR INGEN BEVISMÆSSIG VÆRDI | | 12 |
| | 4.1 | ED&F Man har indrømmet forkerte Tax Vouchers for ca. 184 mio. kr. | 13 |
| | 4.2 | ED&F Man konkret fejl 1: Valutaomregning foretaget forkert | 15 |
| | 4.3 | ED&F Man konkret fejl 2: Aktiebesiddelse | 16 |
| | 4.4 | ED&F Man konkret fejl 3: Uoverensstemmelse mellem aktiekøb og Credit Advices | 17 |
| | 4.5 | Aktiekøb: Vilkår for settlement er ikke markedskonforme | 17 |
| | 4.6 | Flere af de påståede aktiehandler er foretaget via et kaffefirma | 19 |
| 5. | SYSTEMATIKKEN HOS ED&F MAN VISER, AT DET HAR VÆRET EN SKRIVEBORDSØVELSE | | 20 |
| | 5.1 | Chr. Hansen-aktier – 2014 | 21 |
| | | 5.1.1 ED&F Man-dokumentationen for køb er konstrueret og uden bevisværdi | 22 |
| | | 5.1.2 ED&F Man har attesteret ejerskab i strid med de faktiske forhold | 23 |
| | | 5.1.3 Har ED&F Man forsøgt at maskere de faktiske forhold? | 25 |
| | 5.2 | TDC-aktier – 2014 | 26 |

|     | 5.2.1 | ED&F Man-dokumentationen for køb er konstrueret og uden bevisværdi | 27 |
|     | 5.2.2 | ED&F Man-dokumentationen for ejerskab og salg er konstrueret og i strid med de faktiske forhold | 29 |
|     | 5.2.3 | ED&F Man har aldrig købt, ejet eller afhændet de påståede 2.901.000 TDC-aktier | 31 |
| 6.  | MANGLENDE DOKUMENTATION OG USAMMENHÆNGENDE SET-UP | | 32 |
|     | 6.1 | Fremlagte købs- og salgsbekræftelser dokumenterer ikke, at pensionsplanen har købt aktier | 32 |
|     | 6.2 | Pensionsplanen havde ikke nogen penge og har ikke modtaget nettoudbytter | 33 |
|     | 6.3 | Der er ikke dokumentation for finansiering | 34 |
|     | 6.4 | Der er ingen kobling mellem aktier og pensionsplanens økonomi | 35 |
| 7.  | PENSIONSPLANEN HAR KUN DELVIST BESVARET SKATTESTYRELSENS OG SKATTEANKESTYRELSENS OPFORDRINGER | | 37 |

## 1. Indledning

Udover pensionsplanen i denne førersag repræsenterer Lundgrens – i sagskompleksets 1. bølge af klagesager – 9 øvrige amerikanske pensionsplaner og 2 ikke-amerikanske pensionsplaner.

På baggrund af påstået ejerskab til danske aktier har pensionsplanerne hver især fået udbetalt mange millioner kr. i refusion af indeholdt udbytteskat; i denne førersag ca. 21 mio. kr. og i de øvrige sager fra 4,2 mio. kr. til 104 mio. kr.

Pensionsplanen kan ikke dokumentere, at den har ejet de påståede aktier og modtaget (netto-)udbytte herfra.

Pensionsplanens egenkapital var langt fra tilstrækkelig til at foretage de påståede investeringer, og pensionsplanen har fortsat ikke dokumenteret, hvordan den skulle have finansieret de massive aktiekøb, jf. også Skatteankestyrelsens kontorindstilling, side 2, 4. afsnit. Alligevel påstår den at have købt danske aktier for mange millioner kr. (og i et tilfælde endda for mere end 1,1 *milliarder* kr.).

Enhver, der køber aktier, vil naturligvis sikre sig selv dokumentation for at have ejet aktierne, men det har pensionsplanen åbenbart ikke gjort.

Dertil kommer, at pensionsplanen ikke kan dokumentere, hvor de påståede massive gevinster er blevet af.

Pensionsplanen har ikke fremlagt sine egne kontoudtog. Og i det hele taget er sagen kendetegnet ved en total mangel på dokumentation for pengebetalinger og -overførsler.

Bilagsmaterialet er både mangelfuldt og usammenhængende, hvilket – om end naturligt, når der er konstrueret et så omfangsrigt og fiktivt set-up – i sig selv er mistillidsskabende, når der er tale om materiale, som angiveligt skulle dokumentere aktiehandler for flere hundrede millioner kr.

Én ting kan dog udledes af det samlede bilagsmateriale; systematikken i forbindelse med de påståede aktiehandler viser ganske tydeligt, at der er tale om fiktive handler kamufleret ved rene skrivebordsmanøvrer, jf. nedenfor afsnit 4 og 5. Det kan også konstateres, at dokumentation fra ED&F Man – som har erkendt at have udstedt forkerte Tax Vouchers, som har dannet grundlag for uberettigede refusioner, jf. afsnit 4.1 – er konstrueret i strid med de faktiske forhold og uden bevisværdi.

Pensionsplanens historie hænger ganske enkelt ikke sammen og har ikke hold i den virkelige verden.

Pensionsplanens forklaring om, hvad der er sket i pensionsplanens egen sag, er udokumenteret og usammenhængende og efterlader i det hele taget mange løse ender, jf. nedenfor afsnit 6.

## 2. Sagerne i hovedtræk

De administrative klagesager angår spørgsmålet om, hvorvidt pensionsplanerne var berettigede til refusion af indeholdt udbytteskat. Sagerne angår <u>ikke</u> tilbagebetaling af udbetalte beløb. Spørgsmålet om tilbagebetaling af beløbene verserer i flere forskellige jurisdiktioner, herunder i USA, Tyskland og England. Alle pensionsplaner, der er repræsenteret af Lundgrens, er blevet sagsøgt med krav om betaling. Tilbagebetalingsspørgsmålet vil således blive afgjort ved de civile søgsmål.

### 2.1 Sagskompleks med svindel for 12,7 mia. kr.

De 12 pensionsplaner repræsenteret af Lundgrens i sagskompleksets 1. bølge har påklaget SKATs afgørelser om tilbagekaldelse af tidligere afgørelser om refusion af udbytteskatter. De indgår alle i det samlede sagskompleks.

Sagskomplekset omhandler systematisk svindel med refusion af indeholdt udbytteskat fra 2012 til 2015, hvilket har resulteret i, at den danske stat er blevet snydt for samlet ca. 12,7 milliarder kr.

Der er tale om bl.a. 277 amerikanske pensionsplaner, som har anmodet om – og fået udbetalt – refusion af indeholdt udbytteskat. Pensionsplanerne ejede imidlertid ikke de pågældende aktier og har derfor ikke modtaget (netto-)udbytte. De var derfor heller ikke berettiget til de omhandlede refusioner.

Pensionsplanerne m.v. har i flere tilfælde tilsammen tilbagesøgt udbytteskat i en størrelsesorden, der ganske enkelt er umulig.

Hvis alle refusionsanmodningerne lægges til grund, vil de f.eks. omfatte mere end halvdelen af aktierne (A og B) i A.P. Møller – Mærsk A/S. Det kan umuligt være rigtigt, idet kendte, danske fonde i sig selv ejer over halvdelen af de samlede aktier. Dertil kommer aktier ejet af andre professionelle investorer.

Et andet eksempel på, at refusionsanmodningerne ikke kan lægges til grund, er aktiebesiddelser i Tryg A/S. I 2015 foretog Tryg udlodning og indeholdt i den forbindelse (korrekt) cirka 123 millioner kr. i udbytteskat. Efterfølgende er der med henvisning til ejerskab til aktier i Tryg A/S blevet anmodet om refusion af indeholdt udbytteskat på samlet ca. 151 millioner kr. Heraf har pensionsplanerne tilbagesøgt samlet ca. 136 millioner kr. Der er altså ansøgt om – og udbetalt – langt mere i refusion, end der har været indeholdt. Det siger sig selv, at der aldrig kan være krav om refusion af mere, end der har været indeholdt. Det bemærkes, at det jo langt fra er alle aktionærer, der er berettiget til refusion.

Der er med andre ord utvivlsomt svindlet med refusionsanmodningernes oplysninger om ejerskab til danske aktier.

Skattestyrelsen kan henvise til **støttebilaget** for en detaljeret beskrivelse af sagskomplekset og de involverede aktører.

### 2.2 Den konkrete sag: American Investment Group of New York, L.P. Pension Plan

American Investment Group of New York, L.P. Pension Plan ("AIG") blev stiftet i oktober 2002, jf. bilag P.

Som agent for AIG har Goal Taxback Ltd. fra marts 2014 til april 2015 anmodet SKAT om refusion af indeholdt udbytteskat af danske aktier (bilag Q). Det fremgår af anmodningerne, at beløbene skulle indbetales til Goal Taxback Ltd.'s bankkonto i NatWest Bank i England. Anmodningerne var vedlagt originale Credit Advices (Tax Vouchers) udstedt af custodian ED&F Man.

På grundlag af anmodningerne udbetalte SKAT i alt 21.060.000 kr. til AIG via Goal Taxback Ltd.'s konto i NatWest Bank, England, svarende til et samlet (brutto-)udbytte på 78.000.000 kr., jf. bilag 1, s. 6.

I SKATs afgørelse (bilag 1, s. 6-7) er opgjort anskaffelsessummerne for AIGs køb af de aktier, der fremgår af de indsendte Credit Advices:

| SKATs bundt nr. | Aktie | Kursdato | Antal | Kurs | Beregnet anskaffelsessum DKK |
|---|---|---|---|---|---|
| 15614 | Coloplast A/S - B | 05-12-2013 | 500.000 | 358,30 | 179.150.000 |
| 19414 | TDC A/S | 06-03-2014 | 5.000.000 | 52,65 | 263.250.000 |
| 21814 | Danske Bank A/S | 18-03-2014 | 7.750.000 | 145,70 | 1.129.175.000 |
| 21814 | Novo Nordisk A/S B | 20-03-2014 | 3.500.000 | 245,80 | 860.300.000 |
| 27814 | A.P. Møller Mærsk A/S B | 31-03-2014 | 1.000 | 65.000,00 | 65.000.000 |
| 27814 | Tryg A/S | 03-04-2014 | 50.000 | 551,50 | 27.575.000 |
| 72614 | TDC A/S | 07-08-2014 | 3.400.000 | 51,35 | 174.590.000 |
| 106214 | CHR. Hansen Holding A/S | 27-11-2014 | 800.000 | 258,90 | 207.120.000 |
| 109214 | Coloplast A/S - B | 04-12-2014 | 1.500.000 | 527,00 | 790.500.000 |
| 21315 | Novozymes A/S B | 25-02-2015 | 750.000 | 322,50 | 241.875.000 |
| 34815 | A.P. Møller Mærsk A/S B | 30-03-2015 | 4.000 | 16.410,00 | 65.640.000 |

Det er udokumenteret, at AIG faktisk har foretaget disse påståede massive investeringer i danske aktier.

Der er enighed om, at AIG er en "One-Participant plan" (støttebilaget, afsnit 1.3). Det årlige indskud var derfor ifølge IRS' hjemmeside for 2016 begrænset til max $ 53.000, svarende til 286.873 kr. i 2013, 324.434 kr. i 2014 og 361.990 kr. i 2015, jf. bilag 1, s. 10 med note 31 (eller $59.000, hvis deltageren er 55 år gammel eller ældre).

Det fremgår af de Form 5500 (bilag U), som AIG har indsendt til IRS, at AIG havde følgende aktiver ved slutningen af regnskabsårene 2012-2014, jf. også bilag 1, s. 5:

| Kalenderår: | USD iflg FORM 5500 EZ / SF | DKK kurs ultimo året | DKK beregnet | Antal deltagere |
|---|---|---|---|---|
| 2012 | 4.529.723 | 5,6591 | 25.634.155 | 1 |
| 2013 | 4.893.956 | 5,4127 | 26.489.516 | 1 |
| 2014 | 5.309.103 | 6,1214 | 32.499.143 | 1 |

AIG havde således ikke den fornødne kapital til at foretage de investeringer, der fremgår af de indsendte Credit Advices, og som ligger til grund for AIGs anmodninger om refusion af udbytteskat. Derudover kan det af de indsendte Form 5500-SF udledes, at AIG ikke har modtaget de påståede nettoudbytter, jf. bilag 1, s. 5, og afsnit 6.2. nedenfor.

### 2.3   Pensionsplaner repræsenteret af Lundgrens i sagskompleksets 1. bølge

For de 12 pensionsplaner (herunder 10 amerikanske pensionsplaner) repræsenteret af Lundgrens i sagskompleksets 1. bølge er der udvalgt 4 førersager (SANST j.nr. 118-0006637). Nærværende indlæg omhandler en af disse førersager.

Nedenstående **oversigt 1** viser de udbetalte *refusioner* (DKK) til de 4 pensionsplaner, der er udvalgt som førersager.

Førersagerne American Investment Group Of New York L.P. Pension Group (SANST j.nr. 18-0005426), Del Mar Asset Management Saving & Retirement Plan (SANST j.nr. 18-0005308) og Kamco LP Profit Sharing Pension Plan (SANST j.nr. 18-0005414) har anvendt ED&F Man som custodian, hvorimod Europa LLP Executive Pension Scheme (SANST j.nr. 18-0005431) har anvendt Salgado Capital. Oversigterne er på den baggrund opdelt således:

**Oversigt 1: Udbetalte refusioner (DKK)**

| | | AMERICAN | DEL MAR | KAMCO LP PROFIT | Samlet |
|---|---|---|---|---|---|
| 2013 | A.P. Møller Mærsk A/S - B | | 9 720 000,00 kr. | | 9 720 000,00 kr. |
| | Chr. Hansen Holding A/S | | 1.250.748,00 kr. | | 1.250.748,00 kr. |
| | Coloplast A/S - B | 945 000,00 kr | 945 000,00 kr. | | 1.890.000,00 kr |
| | Tryg A/S | | 10 530 000,00 kr. | | 10.530.000,00 kr. |
| 2014 | A.P. Møller Mærsk A/S - B | 378 000,00 kr | 4 536 000,00 kr | 1 890 000,00 kr | 6.804.000,00 kr. |
| | Chr. Hansen Holding A/S | 814.320,00 kr. | | | 814 320,00 kr. |
| | Coloplast A/S - B | 3 037 500,00 kr | 3 240 000,00 kr | | 6.277.500,00 kr. |
| | Danske Bank A/S | 4 185 000,00 kr | | 3.982.500,00 kr. | 8.167.500,00 kr. |
| | Novo Nordisk A/S - B | 4 252 500,00 kr | 3 159 000,00 kr | 5 346 000,00 kr | 12.757.500,00 kr. |
| | Novozymes A/S - B | | 5.298.750,00 kr. | | 5.298.750,00 kr. |
| | TDC A/S | 4 347 000,00 kr | 14 256 000,00 kr | 4 094 856,72 kr | 22.697.856,72 kr. |
| | Tryg A/S | 364 500,00 kr | 2 551 500,00 kr | | 2.916 000,00 kr. |
| 2015 | A.P. Møller Mærsk A/S - B | 2 128 680,00 kr. | | | 2 128.680,00 kr |
| | Novozymes A/S - B | 607.500,00 kr. | | | 607.500,00 kr. |
| I alt | | 21.060.000,00 kr. | 55.486.998,00 kr. | 15.313.356,72 kr. | 91.860.354,72 kr. |

| | EUROPA | | | |
|---|---|---|---|---|
| | 2012 | 2013 | 2014 | 2015 |
| A.P. Møller Mærsk A/S A | | | 705 600,00 kr | 9 460 800,00 kr |
| A.P. Møller Mærsk A/S - B | 2 160 000,00 kr | 2 505 600,00 kr | 1.461.600,00 kr | 23 652 000,00 kr |
| Carlsberg A/S - B | 660.000,00 kr. | 669.600,00 kr. | 1 056 000,00 kr | 1 404 000,00 kr |
| Chr. Hansen Holding A/S | 348 000,00 kr | 1 059 192,00 kr | 678 600,00 kr | |
| Coloplast A/S - B | 480 000,00 kr | 3 050 400,00 kr | 2.886.000,00 kr. | |
| Danske Bank A/S | | | 1 104 000,00 kr | 5 214 000,00 kr |
| DSV A/S | 216 000,00 kr | 244 500,00 kr | 504 000,00 kr | 307 200,00 kr |
| FLSmidth & Co A/S | 540 000,00 kr | 885 600,00 kr | 168 000,00 kr | 280 800,00 kr |
| GN Store Nord A/S | | 299 880,00 kr | 231 840,00 kr | 194 400,00 kr |
| Lundbeck A/S | 209 400,00 kr | 408 000,00 kr | 299 160,00 kr | |
| NKT Holding A/S | | 364 800,00 kr | 126 000,00 kr | 72 000,00 kr |
| Novo Nordisk A/S - B | 3 696 000,00 kr | 5 097 600,00 kr | 1 080 000,00 kr | 12 000 000,00 kr |
| Novozymes A/S - B | 524 400,00 kr | 633 600,00 kr | 960.000,00 kr. | 972 000,00 kr |
| Pandora A/S | | 409 200,00 kr | 1 014 000,00 kr | 1 620 000,00 kr |
| TDC A/S | 2 252 880,00 kr | 2 092 800,00 kr | 3 386 400,00 kr | 1.404.000,00 kr. |
| Tryg A/S | | 530 400,00 kr | 972 000,00 kr | 522 000,00 kr |
| Vestas Wind Systems A/S | | | | 936 000,00 kr |
| I alt | 104.010.252,00 kr. | | | |

De 4 pensionsplaners påståede *investeringer* (DKK), som ligger til grund for refusionerne, fremgår af nedenstående **oversigt 2**:

**Oversigt 2: Påståede investeringer (DKK)**

| | | AMERICAN | DEL MAR | KAMCO LP PROFIT | Samlet |
|---|---|---|---|---|---|
| 2013 | A.P. Møller Mærsk A/S - B | | 1.312.800.000,00 kr. | | 1 312.800.000,00 kr |
| | Chr. Hansen Holding A/S | | 150.960.000,00 kr. | | 150.960.000,00 kr |
| | Coloplast A/S - B | 179.150.000,00 kr. | 179.150.000,00 kr | | 358.300.000,00 kr |
| | Tryg A/S | | 721.350.000,00 kr. | | 721.350.000,00 kr |
| 2014 | A.P. Møller Mærsk A/S - B | 65.000.000,00 kr | 780.000.000,00 kr. | 325.000.000,00 kr | 1 170.000.000,00 kr |
| | Chr. Hansen Holding A/S | 207.120.000,00 kr. | | | 207.120.000,00 kr. |
| | Coloplast A/S - B | 790.500.000,00 kr. | 1.404.300.000,00 kr. | | 2.194.800.000,00 kr |
| | Danske Bank A/S | 1.129.175.000,00 kr. | | 1.074.537.500,00 kr. | 2.203.712.500,00 kr. |
| | Novo Nordisk A/S - B | 860.300.000,00 kr. | 639.080.000,00 kr. | 1.081.520.000,00 kr | 2.580.900.000,00 kr |
| | Novozymes A/S - B | | 1.993.900.000,00 kr. | | 1 993.900.000,00 kr |
| | TDC A/S | 437.840.000,00 kr. | 1.263.600.000,00 kr. | 405.870.722,40 kr | 2 107.310.722,40 kr |
| | Tryg A/S | 27.575.000,00 kr. | 193.025.000,00 kr. | | 220.600 000,00 kr |
| 2015 | A.P. Møller Mærsk A/S - B | 65.640.000,00 kr. | | | 65.640.000,00 kr |
| | Novozymes A/S - B | 241.875.000,00 kr. | | | 241.875.000,00 kr |
| I alt | | 4.004.175.000,00 kr. | 8.638.165.000,00 kr. | 2.886.928.222,40 kr | 15 529.268.222,40 kr |

| EUROPA | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| A.P. Møller Mærsk A/S - A | | | 262.500.000,00 kr | 632.400.000,00 kr |
| A.P. Møller Mærsk A/S - B | 764.640.000,00 kr. | 761.424.000,00 kr | 565.500.000,00 kr | 1.641.000.000,00 kr |
| Carlsberg A/S - B | 458.700.000,00 kr. | 535.680.000,00 kr. | 574.200.000 00 kr | 742.950.000,00 kr. |
| Chr. Hansen Holding A/S | 188.000.000,00 kr | 287.640.000,00 kr | 388.350.000,00 kr | |
| Coloplast A/S - B | 278.000.000,00 kr | 1.927.492.000,00 kr | 2.007.870.000,00 kr. | |
| Danske Bank A/S | | | 670.220.000,00 kr | 1.384.870.000,00 kr |
| DSV A/S | 232.020.000,00 kr | 234.068.000 00 kr | 468.720.000 00 kr | 3 0.720.000,00 kr |
| FLSmidth & Co A/S | 195.800.000,00 kr. | 284.622.000,00 kr | 191.240.000,00 kr. | 81.640.000,00 kr |
| GN Store Nord A/S | | 535.500.000,00 kr | 293.250.000,00 kr | 277.560.000,00 kr |
| Lundbeck A/S | 56.750.000,00 kr. | 175.610.000,00 kr | 155.340.000,00 kr | |
| NKT Holding A/S | | 86.222.000,00 kr | 93.990.000,00 kr | 66.780.000,00 kr |
| Novo Nordisk A/S - B | 1.789.700.000,00 kr | 2.245.640.000,00 kr | 491.600.000,00 kr. | 6.838.000.000,00 kr |
| Novozymes A/S - B | 381.800.000,00 kr. | 477.840.000,00 kr | 812.800.000,00 kr | 870.750.000,00 kr |
| Pandora A/S | | 96.224.000,00 kr | 462.800.000,00 kr | 921.750.000,00 kr |
| TDC A/S | 352.800.000,00 kr | 448.330.000,00 kr. | 873.145.000,00 kr | 631.800.000,00 kr |
| Tryg A/S | | 81.753.000,00 kr | 165.450.000,00 kr. | 130.275.000,00 kr |
| Vestas Wind Systems A/S | | | | 580.400.000,00 kr |
| I alt | | 86.504.025.000,00 kr. | | |

Som oversigterne viser, påstår pensionsplanerne at have foretaget investeringer for mange *milliarder* kr. Pensionsplanerne har imidlertid ikke fremlagt nogen form for dokumentation for, hvorledes de har finansieret de påståede meget betydelige aktiekøb i danske børsnoterede selskaber, jf. også nedenfor i afsnit 6.3.

### 2.4    Pensionsplanen ejede ikke aktier og modtog ikke udbytte

Pensionsplanen gør i indlæg af 11. juni 2019, s. 6, gældende, at det fremlagte materiale "med al tydelighed" dokumenterer, at pensionsplanen har erhvervet aktierne, har været retmæssig ejer af det udbetalte udbytte og dermed også været berettiget til at tilbagesøge den indeholdte udbytteskat på aktierne.

Faktum er imidlertid, at pensionsplanen ikke kan dokumentere, at den har betalt for aktier. Pensionsplanen kan heller ikke dokumentere, at den har ejet aktier. Eller at den har modtaget nettoudbyttet fra de aktieposter, som den påstår at have ejet. Til gengæld ligger det fast, at pensionsplanen ikke havde penge nok til at foretage de påståede investeringer. Pensionsplanens egenkapital var langt fra tilstrækkelig til at foretage de påståede investeringer, og pensionsplanen har fortsat ikke dokumenteret, hvordan den skulle have finansieret de massive aktiekøb.

I sig selv er det utroværdigt, at pensionsplanen uden væsentlige aktiver køber store aktieposter. Det indtryk forstærkes betydeligt, når der heller ikke er nogen pengestrømme til/fra pensionsplanens egne (bank)konti.

Allerede på den baggrund skal afgørelsen stadfæstes, idet pensionsplanen ikke har bevist, at der er ret til refusion af indeholdt udbytteskat.

### 2.5    Pensionsplanens påståede set-up er uklart og udokumenteret

Det er påfaldende, at pensionsplanen har undladt at fremlægge relevant materiale, som *må* være i dens besiddelse, hvis der – som den påstår – er foregået aktiehandler:

- Pensionsplanen har kun delvist besvaret Skattestyrelsens opfordringer, jf. afsnit 7 nedenfor.
- Der er ikke fremlagt dokumentation for købs- og salgsordrer fra pensionsplanen.
- Der er ikke fremlagt dokumentation for, at købs- og salgsbekræftelser er kommet pensionsplanen til kundskab.
- Der er ikke fremlagt dokumentation for pensionsplanens finansiering.
- Det er ikke dokumenteret, at pensionsplanen har modtaget de påståede nettoudbytter.
- Der er ikke fremlagt dokumentation (i form af bankkontoudtog) for pengestrømme til/fra pensionsplanens bankkonti.

- Der er ikke fremlagt dokumentation for pensionsplanens hedging af kursrisici.
- Der er ikke fremlagt dokumentation for ED&F Mans bemyndigelse til at handle aktier for milliardbeløb på pensionsplanens vegne.

Det fremlagte materiale er usammenhængende, og materialet og pensionsplanens forklaring efterlader en masse løse ender.

Det er i det hele taget uklart, hvad pensionsplanens historie egentlig er; Pensionsplanen ved bemærkelsesværdigt lidt om, hvad der er sket i pensionsplanens egen sag.

Pensionsplanen er i stedet fremkommet med en række usammenhængende forklaringer. Når pensionsplanens forklaringer sammenholdes med det materiale, som pensionsplanen har fremlagt under sagernes forberedelse for Skatteankestyrelsen, fremgår det tydeligt, at pensionsplanen aldrig har ejet danske aktier. De foreliggende oplysninger peger derimod i den modsatte retning, jf. UfR 2003.2313/3 H. "Dokumentationen" er nemlig usammenhængende og mangelfuld.

### 3. Bevisbyrde

Det er pensionsplanen, der har anmodet om refusion af indeholdt udbytteskat, og det er dermed også pensionsplanen, der har bevisbyrden for, at betingelserne for refusion af udbytteskat er opfyldt, jf. f.eks. UfR 2003.2312/3H.

Det er irrelevant, om pensionsplanen på ansøgningstidspunktet har fremlagt dokumenter, som – hvis de havde været korrekte – var tilstrækkelig dokumentation efter SKATs måde at gøre det på i 2013-2015. Det afgørende er, om Landsskatteretten på baggrund af sagens oplysninger finder, at pensionsplanen har bevist, at den opfyldte betingelserne for refusion af udbytteskat.

Pensionsplanens forklaring om transaktionerne, der skulle have givet ret til udbytterefusion, er usandsynlig, jf. nærmere nedenfor, og bevisbyrden er derfor skærpet, jf. f.eks. UfR 1998.898 H.

Pensionsplanen gør omvendt gældende, at bevisbyrden har flyttet sig, således at Skatteforvaltningen er nærmest til at bære risikoen for bevistvivl (indlæg af 11. juni 2019, s. 19).

Skattestyrelsen bestrider, at bevisbyrden på den måde kan vendes, også når der henses til sagernes karakter.

Pensionsplanen har i perioden marts 2014 til april 2015 anmodet om refusion på baggrund af meget store påståede aktiebesiddelser. Pensionsplanen har således efter eget udsagn foretaget investeringer for over 4 milliarder kroner. Sagen blev startet ved udsendelse af forslag til afgørelse den 23. marts 2018 og dermed få år efter udbetalingerne – og på et tidspunkt, hvor bogføring fortsat burde være gemt efter både dansk og amerikansk ret. I øvrigt fremhæves det, at pensionsplanen blot kan indhente den nødvendige dokumentation fra ED&F Man. *Hvis* pensionsplanen faktisk har ejet aktier, vil det jo være nemt at vise.

Der er ikke bevistvivl i sagen; der er nemlig ingen dokumentation for de påståede aktiehandler. Og der er alt for mange udokumenterede forhold i det materiale, som pensionsplanen har fremlagt for at underbygge deres "historie". Hvis der efter Landsskatterettens opfattelse foreligger bevistvivl, skyldes det alene, at pensionsplanen undlader at fremlægge dokumenter, der *må* være i dens besiddelse. Dette kommer pensionsplanen bevismæssigt til skade.

Pensionsplanen anfører følgende i indlæg af 11. juni 2019 (s. 3):

> "Skattestyrelsen anerkender således også på side 17, at statistikken alene viser, at <u>en andel</u> af refusionsanmodningerne har været uretmæssige. Klager kan ikke forholde sig til

> *udsagnets rigtighed men kan konstatere, at Skattestyrelsen omvendt anerkender, at en del af refusionerne er udbetalt retmæssigt, jf. i øvrigt nedenfor under pkt. 2."*

Sidstnævnte er ikke korrekt. Det forhold, at tallene understøtter *"at en stor andel af refusionsanmodningerne nødvendigvis må være uretmæssige."*, jf. Skattestyrelsens 1. indlæg af 27. september 2018, s. 17, 2. sidste afsnit, betyder ikke, at Skattestyrelsen anerkender, at den resterende andel af refusionsanmodningerne nødvendigvis må være *retmæssige*. Dette er en fejlslutning.

**4.   Dokumentation fra ED&F Man har ingen bevismæssig værdi**

Pensionsplanen tillægger det stor vægt, at de påståede aktiekøb er blevet foretaget gennem ED&F Man. Pensionsplanen beskriver i sin klageskrivelse af 3. august 2018 (s. 2) ED&F Man som

> *"et stort og velrenommeret globalt finansielt broker-selskab, autoriseret og reguleret af Financial Conduct Authority ("FCA")".*

I sit indlæg af 11. juni 2019, s. 4, fremhæver pensionsplanen, at den ikke har benyttet nogen af de 4 custodians, der er kontrolleret af Sanjay Shah (Solo Capital, Old Park Lane, Telesto og West Point), og at Skattestyrelsens bemærkninger omkring disse custodians er

> *"ganske irrelevant for nærværende sag og er endnu et eksempel på, at Skattestyrelsen tilsyneladende forsøger at få klagers sag til at være omfattet af nogle forhold, som ikke gør sig gældende for klager og som følgelig er fuldstændig irrelevante for klager."*

Pensionsplanen anfører også i sit indlæg af 11. juni 2019, s. 20, at ED&F Man ikke er sagsøgt som "fraud-defendant" i England, men alene som "non-fraud-defendant"

> *"hvilket betyder, at Skattestyrelsen ikke gør gældende at ED&F har haft viden om eller deltaget i den påståede svindel."*

Pensionsplanens bemærkninger må forstås således, at brugen af ED&F Man som broker og custodian på afgørende vis adskiller denne sag fra sagskomplekset om svindel med refusion af indeholdt udbytteskat. Når ED&F Man har været involveret, er det hele – ifølge pensionsplanen – foregået pænt og ordentligt.

Hvis der var forskel på sagerne, hvor pensionsplaner har benyttet Shah-kontrollede custodians henholdsvis ED&F Man, skulle man tro, at pensionsplanernes dokumentation var fyldestgørende i de tilfælde, hvor ED&F Man var involveret. Når ED&F Man er reguleret af FCA, måtte man forvente, at dokumentation var uden mangler og i det hele taget i top.

Derudover måtte man forvente, at en pensionsplan, der har et beskedent kapitalgrundlag, og som køber aktier for flere milliarder kr., gemmer dokumentation for disse aktiekøb. Ikke af hensyn til skattemyndighederne, men af hensyn til *sig selv* – for at sikre *sig selv* dokumentation for ejerskab til aktierne.

Man måtte også forvente, at en sådan pensionsplan var villig til at oplyse sagen – særligt når både Skattestyrelsen og Skatteankestyrelsen udtrykkeligt anmoder om yderligere oplysninger.

Det kan imidlertid konstateres, at pensionsplanen ikke kan fremlægge dokumentation for at have ejet de påståede aktier, og at pensionsplanen – trods opfordret hertil – fortsat forsømmer at fremlægge materiale, som den *må* være i besiddelse, herunder sine egne bankkontoudtog og aftalegrundlag for samarbejdet med ED&F Man, jf. også Skatteankestyrelsens kontorindstilling, s. 2, 4. afsnit.

Kernen i sagskomplekset er – uanset om custodian er Shah-kontrolleret eller ED&F Man – at der ikke er dokumentation for, at pensionsplanen har ejet de aktier, der har dannet grundlag for de udbetalte refusioner.

Og det siger sig selv, at det ikke er dokumentation for ejerskab, at ED& Man har fungeret som custodian (og/eller broker).

Hertil kommer, at der er flere forhold, der både samlet og hver for sig viser, at dokumentationen fra ED&F Man ikke kan tillægges nogen som helst bevismæssig betydning, jf. nedenfor afsnit 4.1-4.6 og afsnit 5. Det gælder bl.a. som følge af, at ED&F Man har erkendt, at de har medvirket til uberettiget udbetaling af ca. 184 mio. kr., jf. nedenfor i afsnit 4.1.

### 4.1   ED&F Man har indrømmet forkerte Tax Vouchers for ca. 184 mio. kr.

Først og fremmest har ED&F Man erkendt at have udstedt i alt 89 forkerte Tax Vouchers, som har dannet grundlag for uberettigede refusioner på samlet ca. 184 mio. kr. ud af de i alt ca. 582 mio. kr., hvor ED&F Man har udstedt Tax Vouchers. Det er en meget betydelig del af de af ED&F Man udstedte Tax Vouchers, der nu lang tid efter sagsanlægget i England er erkendt forkerte.

I sit Defence af 13. december 2018 (**bilag AI**, s. 19 (afsnit 38.3)) med "Annex A – incorrect Tax Vouchers" (**bilag AJ**) har ED&F Man således indrømmet, at 9 udstedte Tax Vouchers var ukorrekte, hvilket har ført til uberettigede udbetalinger af refusion på i alt 312.120 kr.

Derudover har ED&F Man i sit Amended Defence af 5. september 2019 med "Annex E – incorrect Tax Vouchers (2)" (**bilag AK**, s. 3 (afsnit 4.2) og s. 33-41) indrømmet, at yderligere 80 udstedte Tax Vouchers var ukorrekte, hvilket har ført til samlede uberettigede udbetalinger på 183.902.399 kr.

Til trods for, at ED&F Man er *"et stort og velrenommeret globalt finansielt broker-selskab, autoriseret og reguleret af Financial Conduct Authority ("FCA")"*, jf. pensionsplanens klageskrivelse af 3. august 2018 (s. 2), har ED&F Man altså medvirket til, at i alt 184.214.519 kr. *uberettiget* er blevet udbetalt i refusion.

De ukorrekte Tax Vouchers fra ED&F Man har bl.a. ført til følgende *erkendt* uberettigede refusioner til amerikanske pensionsplaner repræsenteret af Lundgrens:

| Pensionsplan | SANST j.nr. | Udbetalt refusion (DKK) | Erkendt uberettigede refusioner (DKK) |
|---|---|---:|---:|
| American Investment Group | 18-0005426 (**førersag**) | 21.060.000 | 8.613.000 |
| Del Mar Asset | 18-0005308 (**førersag**) | 55.486.998 | 33.986.250 |
| DW Construction | 18-0005398 | 13.603.950 | 11.011.950 |
| Federated Logistics | 18-0005295 | 32.265.000 | 31.455.000 |
| Kamco Investments | 18-0005423 | 10.496.991 | 6.102.000 |
| Kamco LP | 18-0005414 (**førersag**) | 15.313.357 | 11.313.000 |
| Linden Associates | 18-0005422 | 13.168.508 | 7.416.225 |
| Moira Associates | 18-0005427 | 16.989.750 | 10.813.500 |
| Newsong Fellowship Church | 18-0006919 | 4.245.750 | 4.245.750 |
| Riverside Associates | 18-0005368 | 12.724.425 | 7.416.225 |
| The Goldstein Law Group | 18-0005425 | 9.521.280 | 5.107.050 |

Det ligger altså fast, at ED&F Man har attesteret pensionsplaners ejerskab til danske aktier i ukorrekte Tax Vouchers, som har dannet grundlag for uretmæssige udbetalinger af refusioner til pensionsplanerne på i alt ca. 184 mio. kr. Det indebærer i sig selv, at dokumentation fra ED&F Man ikke