**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to:

18-cv-07828; 19-cv-01785; 19-cv-01867;
19-cv-01893; 19-cv-01781; 19-cv-01783;
19-cv-01866; 19-cv-01895; 19-cv-01794;
19-cv-01865; 19-cv-01904; 19-cv-01798;
19-cv-01869; 19-cv-01922; 19-cv-01800;
19-cv-01788; 19-cv-01870; 18-cv-07827;
19-cv-01791; 19-cv-01792; 19-cv-01928;
19-cv-01926; 19-cv-01868; 18-cv-07824;
19-cv-01929; 19-cv-01803; 19-cv-01806;
19-cv-01906; 19-cv-01801; 19-cv-01894;
19-cv-01808; 19-cv-01810; 19-cv-01809;
18-cv-04833; 19-cv-01911; 19-cv-01898;
19-cv-01812; 19-cv-01896; 19-cv-01871;
19-cv-01813; 19-cv-01930; 18-cv-07829;
18-cv-04434; 19-cv-01815; 19-cv-01818;
19-cv-01931; 19-cv-01918; 19-cv-01873;
19-cv-01924; 19-cv-10713; 21-cv-05339.

MASTER DOCKET
18-md-2865 (LAK)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW ON ISSUES OF
DISPUTED FOREIGN LAW AND CHOICE OF LAW**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.      NEW YORK LAW'S STANDARD OF PROOF APPLIES TO SKAT'S FRAUD AND AIDING
        AND ABETTING FRAUD CLAIMS ................................................................................... 2

        A.      SKAT Has Not Shown What Standard Of Proof Applies To Fraud And Aiding
                And Abetting Fraud Claims Under Danish Law ................................................... 2

        B.      Even If The Standard Of Proof Were Different In Denmark, New York Law
                Would Still Apply To SKAT's Fraud And Aiding And Abetting Fraud Claims .... 4

II.     JURY INSTRUCTIONS REGARDING THE STATUTE OF LIMITATIONS SHOULD INCLUDE
        INSTRUCTIONS ON THE DANISH LEGAL CONCEPT OF THE INQUISITORIAL PROCEDURE
        AND SKAT'S INVESTIGATIVE OBLIGATION ................................................................. 8

III.    THE JURY SHOULD BE INSTRUCTED THAT, UNDER DANISH TAX LAW, A PURCHASER
        BECOMES THE OWNER OF SECURITIES UPON ENTERING INTO A FINAL AND BINDING
        AGREEMENT AND BECOMES THE BENEFICIAL OWNER OF THE DIVIDENDS WHEN
        THEY BECOME THE OWNER OF THOSE SECURITIES BEFORE THE EX-DIVIDEND DATE ...... 11

IV.     SKAT FAILS TO SHOW THAT IT HAS LEGAL AUTHORITY TO BRING THESE CLAIMS ......... 15

CONCLUSION ........................................................................................................................ 17

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*AHW Inv. P'ship v. Citigroup, Inc.*, 980 F. Supp. 2d 510 (S.D.N.Y. 2013),
    *aff'd*, 661 F. App'x 2 (2d Cir. 2016) ........................................................................ 5

*BT Triple Crown Merger Co. v. Citigroup Glob. Markets Inc.*,
    2008 WL 1970900 (N.Y. Sup. Ct. 2008) .............................................................. 4

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) ................................ 5

*Davis v. Scot. Re Grp. Ltd.*, 88 N.E.3d 892 (N.Y. 2017) ................................................ 4

*Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*,
    661 N.Y.S.2d 948 (Sup. Ct. 1997) ........................................................................ 4

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392 (S.D.N.Y. 2018) ........ 5

*In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196 (S.D.N.Y. 2022) .... 6

*In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*,
    No. 18-md-2865 (LAK), 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) ............... 15

*Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238 (2d Cir. 1984) ........................... 8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45 (2d Cir. 2013) ........ 7

*Lyman Com. Sols., Inc. v. Lung*, No. 12-cv-4398,
    2014 WL 476307 (S.D.N.Y. Feb. 6, 2014) ........................................................ 7, 8

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    89 F. App'x 287 (2d Cir. 2004) ............................................................................ 7

*Oliver Wyman, Inc. v. Eielson*, 15-cv-5305 (RJS),
    2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016) ...................................................... 7

*Pauling v. Sec'y of Dep't of Interior*, 71 F. Supp. 2d 231 (S.D.N.Y. 1999) .................. 8

*Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ................... 7

*RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206 (S.D.N.Y. 2006) ........... 4

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
    612 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................................................ 6, 7

*Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570 (S.D.N.Y. 2022) ................ 6

*Woodling v. Garrett Corp.*, 813 F.2d 543 (2d Cir. 1987) ................................................................ 4

*Wright v. Palmison*, 260 N.Y.S. 812 (2d Dep't 1932) ...................................................................... 4

*Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425 (S.D.N.Y. 2012) ............................................... 8

*Yukos Cap. S.A.R.L. v. Feldman*, No. 15-CV-4964-(LAK),
    2016 WL 183360 (S.D.N.Y. Jan. 11, 2016) .............................................................................. 3

## DOCKETED CASES

Skatteforvaltningen v. Bernina Pension Plan & John van Merkensteijn,
    No. 19-cv-01865-LAK ................................................................................................................. 5

Skatteforvaltningen v. Michael Ben-Jacob,
    No. 21-cv-05339-LAK ................................................................................................................. 6

Skatteforvaltningen v. RJM Cap. Pension Plan & Richard Markowitz,
    No. 19-cv-01898-LAK ............................................................................................................ 5, 6

## OTHER AUTHORITIES

Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with
    Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, T.I.A.S. No. 13056 ........................ 16

Pursuant to Federal Rule of Civil Procedure 44.1, and the Joint Stipulation and Order Permitting the Filing of Oppositions to Rule 44.1 Briefs, ECF No. 1050, Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan, Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust, Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan, and Michael Ben-Jacob (collectively, "Defendants"), by and through the undersigned counsel, submit this opposition to Plaintiff Skatteforvaltningen's ("SKAT") Memorandum of Law on Issues of Disputed Foreign Law and Choice of Law ("SKAT's Rule 44.1 Memorandum" or "SKAT Mem."), ECF No. 1071, in the above-captioned cases (the "Cases").

## PRELIMINARY STATEMENT

SKAT's Rule 44.1 Memorandum suggests that its fraud and aiding and abetting fraud claims—but not its other claims—should be subject to a standard of proof, supposedly found in Danish law, that is more lenient than the standard under New York law. This Court should reject SKAT's conclusory argument because it fails to prove what the Danish standard of proof actually is. SKAT therefore also fails to demonstrate a conflict of law. Furthermore, under New

York law, the burden of proof is a procedural issue to which New York courts apply New York law. In any event, under an "interest analysis," it is clear that New York law should apply to the burden of proof in the Cases.

This Court should also reject SKAT's arguments regarding Defendants' noticed issues of foreign law. SKAT's Rule 44.1 Memorandum underscores why jury instructions regarding the statute of limitations should include, as Defendants will request, instructions on the Danish legal concept of the inquisitorial procedure and SKAT's investigative obligation. SKAT fails to present any arguments sufficient to negate the basic precept about securities ownership stated in SKAT's own Legal Guide: that a purchaser becomes the owner of securities upon entering into a final and binding agreement. Finally, SKAT fails to show that it possesses the legal authority to bring these claims.

## ARGUMENT

### I.    New York Law's Standard Of Proof Applies To SKAT's Fraud And Aiding And Abetting Fraud Claims

#### A.    SKAT Has Not Shown What Standard Of Proof Applies To Fraud And Aiding And Abetting Fraud Claims Under Danish Law

SKAT submitted a foreign law declaration which, without citing any Danish legal authority, states that for all civil claims, "[t]he standard of proof is the greater weight of the evidence or the preponderance of the evidence." Decl. on Certain Aspects of Danish Law by Mads Bryde Andersen dated June 24, 2024 ("June 24, 2024 Andersen Decl."), ECF No. 1072, ¶ 24. That say-so is insufficient, and, in fact, is directly contradicted by authoritative sources on Danish law. As a Danish treatise explains:

> A general statement of the degree of proof which is sufficient in civil cases to establish the existence of a legal fact is not possible, because the standard of proof may be different for different legal facts and in different contexts. A mere preponderance of probability, i.e. that the disputed point seems more likely than the opposite, is sufficient in some situations, while

> in other – and probably in most – situations a fairly high degree of probability is required for the circumstances that must justify the procedural requirement to be present. No one or a few general rules can be laid down in this regard.

Decl. of Foreign Law of Kasper Bech Pilgaard dated July 24, 2024 ("July 24, 2024 Pilgaard Decl.") ¶ 14 (citing Bernhard Gomard and Michael Kistrup, CIVILPROCESSEN ("Civil Procedure"), 8th ed. (2021), at 560). Other Danish legal authorities demonstrate that the standard of proof is more stringent than the "preponderance of the evidence" standard propounded by SKAT. *See id.* ¶¶ 18-35. "[T]o impose liability under the fault rule outside contractual relationships, a fairly high degree of probability that the tortfeasor has acted culpably is generally required." *Id.* ¶ 14. Professors Von Eyben and Isager observe that in many countries, such as Norway, "the standard of proof would be a requirement of overwhelming probability, i.e. a degree of probability of at least 51%[.]" *Id.* ¶ 16 (citing Von Eyben and Isager, Lærebog i erstatningsret, 6th ed., at 257f). But that is <u>not</u> so, they continue, "in Denmark, where the standard of proof is higher than this." *Id.*

SKAT fails to meet its "burden of proving [Danish] law to enable the district court to apply it[.]" *Yukos Cap. S.A.R.L. v. Feldman*, No. 15-cv-4964-LAK, 2016 WL 183360, at *2 (S.D.N.Y. Jan. 11, 2016) (internal citation omitted).[1] In seeking to have the Court apply its purported Danish standard of proof to some, but not all, of its claims, SKAT puts forth nothing more than an unsupported assertion about that standard, which is contradicted by Danish treatises and legal textbooks.

---

[1] It is worth noting that SKAT has never shown that aiding and abetting fraud is even a recognized cause of action under Danish law. SKAT's summary judgment argument that Denmark recognizes claims for aiding and abetting fraud relied on a declaration that merely suggested Denmark generally recognizes the principle of joint liability, and cited cases involving violations of statutory restrictions on asset-stripping or self-funding, not fraud or aiding and abetting fraud. *Compare* Pl.'s Opp. to Defs.' Mot. for Summary Judgment, ECF No. 831, at 67, *with* Decl. on Certain Aspects of Danish Law by Mads Bryde Andersen dated June 6, 2022 ("June 6, 2022 Andersen Decl."), ECF No. 834, at ¶¶ 72-91.

**B.      Even If The Standard Of Proof Were Different In Denmark, New York Law Would Still Apply To SKAT's Fraud And Aiding And Abetting Fraud Claims**

The Court should not accept SKAT's invitation to undertake an "interest analysis" under New York's choice of law principles for two reasons. *First*, under New York law, the burden of proof is a procedural issue to which New York courts apply New York law. *See Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987) ("The question of burden of proof . . . is regarded by New York law as a question of procedure to which the law of the forum applies."); *Davis v. Scot. Re Grp. Ltd.*, 88 N.E.3d 892, 895 (N.Y. 2017) ("[U]nder New York common-law principles, procedural rules are governed by the law of the forum[.]") (internal citations omitted); *Wright v. Palmison*, 260 N.Y.S. 812, 812 (2d Dep't 1932) ("[T]he rule governing proof of freedom from contributory negligence is a matter of procedure, and the burden of establishing it is to be applied in an action tried in our courts in accordance with the law of this state."); *BT Triple Crown Merger Co. v. Citigroup Glob. Markets Inc.*, 2008 WL 1970900, at *5 n.5 (N.Y. Sup. Ct. 2008) ("It should be noted that the law of New York governs the plaintiffs' burden of proof in connection with the fraud claim, since burdens of proof and other matters which are procedural in nature are governed by the law of the forum."); *Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*, 661 N.Y.S.2d 948, 949 (Sup. Ct. 1997) ("The burden of proof for the grant of summary judgment . . . is procedural and is governed by law of the New York forum."). In this case, New York courts would not perform a choice of law analysis—as they would when dealing with substantive issues—but would instead simply apply New York's burden of proof. *See RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 214-15 (S.D.N.Y. 2006) (explaining that New York courts will only undertake a choice of law analysis regarding issues which are substantive under New York law, and will apply New York law to procedural issues). *Second*, even assuming the burden of proof is substantive under New York law—which it is

not—SKAT fails to show what the Danish standard of proof is, and therefore necessarily fails to show any conflict between that undefined standard and New York's clear and convincing evidence standard.

Finally, even if burden of proof were a substantive issue under New York law and SKAT could show a conflict with Danish law, New York law would nevertheless apply to SKAT's fraud and aiding and abetting fraud claims. SKAT acknowledges that, under New York's interest analysis, the "place of the tort"—here, New York—"will usually have the strongest interest in having its law applied."[2] SKAT Mem. at 5. When the allegedly wrongful conduct and the alleged injury occur in different places, there is a presumption that the law of the place of the allegedly wrongful conduct applies. *See Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399-400 (S.D.N.Y. 2018). SKAT does not show why, in this case, that presumption should be overcome.

The wrongful conduct SKAT alleges all took place outside of Denmark, primarily in New York.[3] SKAT has alleged that the "Trial One" defendants (with the exception of Michael Ben-Jacob):

- Resided in New York "[a]t times relevant to the allegations[.]" *See, e.g.*, Am. Compl., *Skatteforvaltningen v. Bernina Pension Plan & John van Merkensteijn*, No. 19-cv-01865 (S.D.N.Y. Apr. 20, 2020), ECF No. 53, ¶ 18.
- Established pension plans with New York addresses. *Id.* ¶ 17.
- Formed an intent to defraud, set up the mechanisms to achieve that purpose, and caused the transmission of purportedly inaccurate reclaim applications, all in New York. *See, e.g.*, Am. Compl., *Skatteforvaltningen v. RJM Cap.*

---

[2] The parties agree that SKAT's fraud and aiding and abetting fraud claims are "conduct regulating." *See* SKAT Mem. at 5; *AHW Inv. P'ship v. Citigroup, Inc.*, 980 F. Supp. 2d 510, 522 (S.D.N.Y. 2013) (fraud claim is conduct regulating), *aff'd*, 661 F. App'x 2 (2d Cir. 2016); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492-93 (S.D.N.Y. 2001) (aiding and abetting claim is conduct regulating).

[3] The allegedly wrongful conduct by non-party Solo Custodians took place in the United Kingdom. *See, e.g.*, Am. Compl., *Skatteforvaltningen v. Michael Ben-Jacob*, No. 21-cv-05339 (S.D.N.Y. June 16, 2021), ECF No. 1, ¶ 6.

*Pension Plan & Richard Markowitz*, No. 19-cv-01898 (S.D.N.Y. Apr. 21, 2020), ECF No. 60, ¶¶ 5, 17-18, 28(e), 45, 47-49.

As to Michael Ben-Jacob, SKAT has alleged that:

- He is a "New York lawyer" and "a citizen of the State of New York" who, "[a]t times material to the allegations," worked at a New York-based law firm. Am. Compl., *Skatteforvaltningen v. Michael Ben-Jacob*, No. 21-cv-05339 (S.D.N.Y. June 16, 2021), ECF No. 1, ¶¶ 2, 14
- He "played a central role" in the alleged scheme to defraud SKAT from his location in New York. *Id.* ¶¶ 15-19, 40-48.

"[C]ourts in this District have often concluded that New York has the greater interest in adjudicating claims arising from allegedly fraudulent acts that were committed in New York but injured plaintiffs in other jurisdictions." *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 239 (S.D.N.Y. 2022). To the extent the Court reaches the issue, the conclusion in this case should be the same—New York law applies to SKAT's fraud and aiding and abetting fraud claims. *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 589 (S.D.N.Y. 2022) ("Because the alleged tortious conduct occurred in New York, the Court applies New York law to Plaintiffs' negligence claims[.]").

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267 (S.D.N.Y. 2009), is instructive. In that case, the District Court applied New York's interest analysis to determine whether New York or Massachusetts law applied to plaintiff's fraud and negligent misrepresentation claims. 612 F. Supp. 2d at 283. The District Court determined New York possessed the "most significant interest in, or relationship to, the dispute." *Id.* at 284 (internal citation omitted). That was because the alleged fraud originated in New York, and "substantial activities in furtherance of the [alleged] fraud—including the negligent misrepresentations alleged in the Amended Complaint—were committed" in New York. *Id.* The allegation that the loss was suffered in Massachusetts was "unpersuasive where the

complaint, in its entirety, establishe[d] that the overwhelming bulk of events surrounding the alleged negligent misrepresentation and the underlying fraud occurred in New York[.]" *Id.*

SKAT cites inapposite cases in support of its unpersuasive argument that the Danish burden of proof should apply merely because SKAT is located in Denmark and alleges it suffered injury there. In *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019):

> the Court's question [was] not whether the victims' jurisdiction or the perpetrators' jurisdiction ha[d] the greater interest in seeing its law applied. Rather, the Court's comparison [was] between Delaware—a jurisdiction that [was] home to three of the alleged perpetrators—and New York, a jurisdiction that [was] home to none of the alleged perpetrators and none of the victims and in which none of the tortious conduct [was] alleged to have taken place.

380 F. Supp. 3d. at 273. Unsurprisingly, under those circumstances the Court found that Delaware, not New York, had the greater interest in having its law apply. *Id.* In *Oliver Wyman, Inc. v. Eielson*, 15-cv-5305 (RJS), 2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016), the Court found New York law applied not only because the plaintiff alleged its injury occurred there, but also because "several of the alleged misrepresentations and omissions occurred during face-to-face meetings that took place in New York." 2016 WL 5339549, at *4. Finally, *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 F. App'x 287 (2d Cir. 2004), is a nonprecedential opinion that simply states, without further elaboration, that an injury is "usually" deemed to have occurred where the plaintiff is located. 89 F. App'x at 288.

The "overwhelming bulk of events surrounding" SKAT's alleged fraud and aiding and abetting fraud claims took place in New York. *Thomas H. Lee Equity Fund*, 612 F. Supp. 2d at 283. "New York has the greatest interest in regulating conduct within its borders, and consequently its law applies." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 49 (2d Cir. 2013); *see Lyman Com. Sols., Inc. v. Lung*, No. 12-cv-4398, 2014 WL 476307, at *3-

4 (S.D.N.Y. Feb. 6, 2014) ("[W]here the fraud occurred, as opposed to where [plaintiff] was located, is more germane to the court's conclusion that New York law applied to plaintiff's constructive fraudulent conveyance claims."); *Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425, 429 (S.D.N.Y. 2012) ("[T]he location of the injury does not control; instead, it is the location of the defendant's conduct that controls.").  New York law's burden of proof applies to SKAT's fraud and aiding and abetting fraud claims.

## II.    Jury Instructions Regarding The Statute Of Limitations Should Include Instructions On The Danish Legal Concept Of The Inquisitorial Procedure And SKAT's Investigative Obligation

The jury in this case will be tasked with determining, among other things, whether SKAT's claims are time-barred under the Danish statute of limitations.  *See Pauling v. Sec'y of Dep't of Interior*, 71 F. Supp. 2d 231, 232 (S.D.N.Y. 1999) (quoting *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984)) ("[W]here a statute of limitations operates as an affirmative defense, 'issues of fact as to the application of that defense must be submitted to the jury.'").  SKAT fails to show why the jury should not be instructed on the Danish legal concept of the inquisitorial procedure and SKAT's investigative obligation.  Indeed, SKAT's limitations argument only underscores why such instructions are critical.

Without citing any legal support, SKAT asserts that, "[u]nder Danish law, the 'test for whether the claimant 'should have' become aware of its claim' against a particular defendant is 'whether the claimant had sufficient information for a prudent person acting in the claimant's shoes to assess the basis for its claim' against that defendant."  SKAT Mem. at 6; *see* June 24, 2024 Andersen Decl. ¶ 159.  SKAT's formulation of the applicable law demonstrates the importance of instructing the jury on the inquisitorial procedure and SKAT's investigative obligation.  That is because the jury must understand these concepts to assess when a "prudent person acting in [SKAT's] shoes" should have become aware of its claims.

While SKAT refers to the inquisitorial procedure as a "purported" legal obligation, SKAT Mem. at 7, SKAT does not argue that the inquisitorial procedure does not exist or that it does not apply to SKAT. Nor could SKAT credibly make such an argument. SKAT's own legal guide describes the inquisitorial procedure, which is applicable to a public authority, such as SKAT. *See* Decl. of Foreign Law of Anders Ørgaard dated Nov. 22, 2021 ("Nov. 22, 2021 Ørgaard Decl."), ECF No. 802, ¶ 16 (quoting SKAT Legal Guide, § A.A.7.4.3) ("The official principle is the principle that a public authority is obliged to obtain all relevant information in a case before a decision is taken."). "The duty to investigate . . . is clearly and undeniably the established rule in Denmark." Decl. of Foreign Law Anders Ørgaard dated June 24, 2022, ECF No. 839, ¶ 11.

SKAT resorts to hyperbole in an effort to avoid confronting this "established rule." Defendants do not contend, as SKAT suggests, that the inquisitorial procedure and SKAT's investigative obligation require SKAT to make "police investigations" or "to assume every submission it receives contains false information until it can independently prove otherwise." SKAT Mem. at 8. But SKAT is <u>not</u> "just like any other Danish plaintiff[.]" *Id.* It is a public authority, and under Danish law it is therefore "obliged to obtain all relevant information in a case before a decision is taken." Nov. 22, 2021 Ørgaard Decl. ¶ 16. The jury should be so instructed.

TfS 1988.581 V illustrates how the inquisitorial procedure and SKAT's investigative obligation relate to the Danish statute of limitations. *See* Defs.' Memorandum of Law Regarding Issues of Foreign Law Pursuant to Fed. R. Civ. P. 44.1 ("Defs.' Mem."), ECF No. 1098, at 15; Nov. 22, 2021 Ørgaard Decl. ¶ 22. The tax authority determined that a taxpayer was not entitled to an interest deduction after an investigation, which began in 1983, was completed in 1986. *Id.*

The High Court "held that the tax authority's claim was time-barred," because "[i]n 1979, the tax authority had prepared circulars about loan arrangements *just like the one at issue*." *Id.* (emphasis added). Thus, the tax authority should have known of its claims in 1979, not at the conclusion of its subsequent investigation. Whether, in this case, SKAT should have known of its claims due to a constellation of factors—including internal audit reports and other warnings from its own employees about shortcomings in its administration of dividend withholding tax refunds—is a question for the jury. SKAT's obligation under Danish law "to obtain all relevant information in a case before a decision is taken" is germane to that jury question.

SKAT tries to shoehorn this case—in which the jury has yet to determine the facts—into a group of Danish cases in which the outcome was predicated on factual conclusions that the taxpayer provided SKAT with false or fraudulent information. For example, Professor Andersen states that the "factual circumstances" of TfS 1988.641 V "share many points of similarity with the [withholding tax] case complex." June 24, 2024 Andersen Decl. ¶ 171. But the Danish court in that case, in reaching its conclusion on the limitations issue, relied on the finding that the taxpayer at issue gave SKAT "inaccurate information." *Id.* ¶ 172. And the "court held that nothing in the information provided by the taxpayer at that time could have given SKAT reason to doubt the correctness of the information." *Id.* Here, by contrast, SKAT apparently received in some instances reclaims that in aggregate were larger than the total amounts withheld, which obviously should have led SKAT to understand that something might be amiss. Thus, the Court's analysis in TfS 1988.641 V relied on factual conclusions that, in this matter, have not yet been made and are reserved for the jury's determination. Further, that case involved an affirmative refusal to turn over information to SKAT, which the Court found suspended the

limitations period.  *Id.* ¶ 173.  In contrast, SKAT has not alleged in this case that defendants refused to provide any requested information.

The Danish cases SKAT cites simply show that determining whether the limitations period has run is, under Danish law, a fact-intensive inquiry.  The inquisitorial procedure and SKAT's investigative obligation are relevant to that inquiry.  The jury therefore should receive instructions on those concepts.

III.    **The Jury Should Be Instructed That, Under Danish Tax Law, A Purchaser Becomes The Owner Of Securities Upon Entering Into A Final And Binding Agreement And Becomes The Beneficial Owner Of The Dividends When They Become The Owner Of Those Securities Before The Ex-Dividend Date**

SKAT oversimplifies the arguments regarding the transfer timing of both ownership of securities and beneficial ownership of dividends in an attempt to undermine these arguments. But, as explained below, none of SKAT's four arguments[4] to the contrary is persuasive.  As outlined below, the Court should instruct the jury that, under Danish tax law, a purchaser becomes the beneficial owner of securities upon entering into a final and binding agreement, and that the purchaser becomes the beneficial owner of the associated dividends when they become a beneficial owner of the securities before the ex-dividend date.  Additionally, the Court should *not* instruct the jury on the civil law principle of *nemo dat*, which does not govern questions of beneficial ownership of dividends or shares or the entitlement to apply for refunds for Danish tax withholding during the relevant time period.

---

[4] SKAT's Rule 44.1 Memorandum includes a fifth argument regarding the taxation of derivatives within its section regarding beneficial ownership of shares and dividends.  SKAT Mem. at 12.  Defendants noticed their intent to raise issues of Danish law regarding taxation of derivatives. *See* Defs.' R. 44.1 Notice of Intent to Raise Issues of Foreign Law, ECF No. 1020.  In an anticipatory response to Defendants' Rule 44.1 Memorandum, SKAT argued that "short sale transactions cannot create more ownership interests in shares of a Danish company than the number of shares issued by the company and that *nemo dat* applies to short selling," which SKAT argued means that "a short seller could not convey ownership interests in the underlying shares before that short seller obtained ownership of the shares himself."  SKAT Mem. at 12.  This argument reflects a misunderstanding of the reasons defendants seek an instruction related to derivatives.  See Defs.' Mem. at 17-18.  And it is wrong in any event. *See* Decl. of Foreign Law of Kasper Bech Pilgaard dated June 27, 2022 ("June 27, 2022 Pilgaard Decl."), ECF No. 838, ¶¶ 85-96.

In its first argument, SKAT Mem. at 9-10, SKAT attempts to resist the basic precept stated in SKAT's own Legal Guide that a purchaser of securities owns them upon entering into a final and binding agreement, *see* ECF 1076-7 ¶ 156.  To contradict its prior position, SKAT cites two Danish cases as support.  SKAT first points to the July 16, 2020 decision by the Danish National Tax Tribunal ("DNTT") related to the FWC Capital LLC Pension Plan.  SKAT Mem. at 9 (citing June 24, 2024 Andersen Decl., ¶ 41, Ex. 9 at 230).  But the DNTT decision was years after all the transactions at issue here.  And the DNTT did not purport to overturn core principles establishing that for tax purposes, ownership is obtained at the time a binding agreement was entered into.  Rather, the decision appears to have turned on skepticism that the taxpayer—whom the DNTT found bore the "burden of proof" in that proceeding—had sufficiently shown that there had been real trading.  June 6, 2022 Andersen Decl., Ex. 13 at 227/229.  Here, of course, SKAT bears the burden of proof.  SKAT also cites to a decision of the Danish Eastern High Court involving the law firm Bech-Bruun.  SKAT Mem. at 9-10.  But while SKAT characterizes this decision as holding that the trading at issue was "without any shares," Professor Andersen's declaration reveals that this was not the Court's holding, but was dicta, a mere "observation" not necessary to the decision, which concerned a discovery dispute.  *See* June 24, 2024 Andersen Decl., ¶ 56, Ex. 14.

As a <u>second</u> point, SKAT uses a different expert, Aasmul-Olsen, to raise the same point that Andersen already set forth in a previous declaration.  Specifically, Andersen asserted in his June 6, 2022 declaration—and Aasmul-Olsen now asserts in his June 24, 2024 declaration—that Mr. Pilgaard has not identified Danish case law that supports the notion that, under Danish law, ownership can transfer pursuant to a contract when the seller does not own the underlying shares.  *See* Aasmul-Olsen Decl. dated June 24, 2024, ¶ 52 ("none of these cases [cited by Mr. Pilgaard]

demonstrate that parties may create through contract the transfer of an ownership right that the purported transferor never owned and never settled"); June 6, 2022 Andersen Decl., ¶ 27 ("None of the cases thus dealt with 'ownership' of shares that were bought from a purported seller that did not actually possess any actual shares and who never delivered any such shares").

But this is not true. Mr. Pilgaard cites the decision in SKM2010.259.BR. June 27, 2022 Pilgaard Decl., ¶¶ 16, 103. In this case, "[t]he company that was the 'buyer' of shares had the choice to either pay in kind or in cash within a year following the sales agreement," where in kind payment "would be shares in the company of the buyer." *Id.* ¶ 16. The buyer opted to pay in kind, with shares that it created *after the contract was in effect* "through a capital increase shortly before the payment was made." *Id.* Even though the shares did not *exist* at the time of the contract, "the City Court ruled that '…*the shares* [from the buyer] must be considered acquired at the time of the agreement…'" *Id.* In addition to considering the question of how to value the shares correctly, the Court determined "the seller (who received shares as payment) to have acquired and owned for tax purposes shares that did not exist at the time of the agreement." *Id.*

Moreover, SKAT's premise that delivery is required for ownership is flawed in the context of the taxation of securities transactions, where subsequent events or transactions often eliminate the need for delivery. Consider, for example, the day trader who buys shares from a short seller and then sells the acquired shares before the end of the day, bringing his position back to zero. It would make no sense to say for tax purposes that the day trader never owned the shares just because the short seller never delivered them to him. Indeed, taking that position would likely prevent taxing the day trader on the capital gain on the transaction. Whatever sense SKAT's newly discovered "delivery is required" rule might have where there has been a

- 13 -

true failure to deliver – it makes no sense at all where subsequent transactions eliminate the need for delivery.  And SKAT has never identified a step in any transaction at issue where something was required to be delivered and there was a failure to do so that was not eliminated by some additional transaction.  Whatever may be required in other contexts, SKAT offers no reason for ignoring the ordinary rules around ownership where there has been no failure to deliver at any step of the transaction.

Third, SKAT halfheartedly gestures at an argument that Defendants have not demonstrated that "beneficial ownership" is a question of Danish tax law rather than another source of law.  SKAT does not explain why the *source* of the law—civil or tax—matters for purposes of determining what instruction to give the jury.  And SKAT's claim that "beneficial ownership" lacks a "strict particular meaning," SKAT Mem. at 10, is fatal to its case.  The central alleged misrepresentation in this case is that the defendant pension plans were beneficial owners of certain dividends.  If that term lacks a "particular meaning," how can the representations have been false?

SKAT's position is also irreconcilable with SKAT's own guidance, which took the position that investors in the defendants' circumstances—that is, investors who purchased borrowed shares from a short seller—*were* the beneficial owner of dividends, even though the short seller was not the beneficial owner of the stock.  *See* Ministry of Taxation's Reply to Early Warning, ECF No. 823-17.

Fourth, SKAT invokes the concept of *nemo dat*, despite failing to cite even one case applying it to the sale of securities.  But SKAT never addresses all the ways that *nemo dat* is incompatible with the ordinary operations of the securities markets, or explains why its own guidance made clear that beneficial ownership could be obtained from a transaction with a

counterparty who was not the beneficial owner. *See* Defs.' Mem. at 6-9.[5]  *Nemo dat* would, of course, require the opposite outcome.  It therefore must be true that *nemo dat* does not apply to determining beneficial ownership of shares or dividends in this context.

For the reasons set forth above, the jury should be instructed that, under Danish tax law, a purchaser becomes the beneficial owner of securities upon entering into a final and binding agreement, and that the purchaser becomes the beneficial owner of the associated dividends when they become an owner of the securities before the ex-dividend date.  Relatedly, the Court should *not* instruct the jury on the civil law principle of *nemo dat*, which does not govern questions of beneficial ownership of dividends or shares or the entitlement to apply for refunds for Danish tax withholding during the relevant time period.

## IV.    SKAT Fails To Show That It Has Legal Authority To Bring These Claims

Under Danish Law, SKAT and the Kingdom of Denmark are separate legal entities.  *See* Defs.' Mem. at 18.  SKAT does not own the dividend withholding tax that it collects, and lacks standing to assert claims on behalf of the Kingdom of Denmark.  *See id.*[6]  SKAT fails to show that it possesses legal authority to bring these claims.

SKAT is merely an agency of the Danish government with highly circumscribed authorities and no ownership over the funds that it collects from tax assessments.  SKAT acts pursuant to its statutory authority to assess and collect taxes; has a nondiscretionary duty to remit what it collects to the Public Accounts; does not decide how the tax revenues are allocated

---

[5] SKAT cites to the application of *nemo dat* in a case regarding the attempted transfer of repayment interests associated with a debenture.  SKAT Mem. at 11.  But that case did not involve the sale of a security, the matter at issue here.

[6] As noted in Defendants' Memorandum of Law Regarding Issues of Foreign Law Pursuant to Fed. R. Civ. P. 44.1, Defendants seek a ruling from the Court on these issues in light of the Court's indication that these are "issues of foreign law for the Court to decided pursuant to Federal Rule of Civil Procedure 44.1 … ."  *In re Customs & Tax Admin. Of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-2865 (LAK), 2023 WL 8039623, at *13, n.54 (S.D.N.Y. Nov. 20, 2023).

among government agencies, does not distribute the revenues it collects; and is not responsible for the consequences of a deficit in revenue collection.  *See* Decl. of Foreign Law of Kasper Bech Pilgaard dated Apr. 27, 2022 ("Apr. 27, 2022 Pilgaard Decl."), ECF No. 801, ¶¶ 40-41, 47-54.  The authorities and duties demonstrating ownership of the funds at issue all belong to the Kingdom of Denmark, not SKAT, and the Kingdom of Denmark, through the Parliament and the Ministry of Finance, controls the funds, their maintenance, and their expenditure. *See id.*, ¶¶ 33-34, 51; *see also* Joint R. 56.1 Statement of Material Facts, ECF No. 790, ¶¶ 9-11; Defs.' Suppl. R. 56.1 Statement of Material Facts, ECF No. 800, ¶ 1.

SKAT acknowledges that it is a "constituent part of" the Danish government, and that it is "part of the Danish Ministry of Taxation … ."  SKAT Mem. at 12-13.  This aligns with how SKAT held itself out in the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 3, Aug. 19, 1999, T.I.A.S. No. 13056 (defining the Danish Minister of Taxation separately as the "Competent Authority.").  Importantly, that same Convention indicates that a "Competent Authority" is distinct from a sovereign. As the Convention notes, a "Competent Authority" is authorized to obtain information held by financial institutions or apply for assistance in the collection of a revenue claim, *id.*, art. 27, but a "Contracting State" (i.e., a sovereign entity like the Kingdom of Denmark or the United States) "may tax its residents," *id.*, art. 1.

SKAT's conclusory arguments to the contrary each have been systematically rejected by the Defendants' expert declarations.  *See* Apr. 27, 2022 Pilgaard Decl. ¶¶ 62-82; June 27, 2022 Pilgaard Decl. ¶¶ 47-83.  The "Danish administration is divided into *separate* authorities with distinct powers in relation to their subject-matter[.]" Apr. 27, 2022 Pilgaard Decl. ¶ 79.  These ministries and agencies "bring lawsuits in their own names," and "litigation involving different

branches and agencies of the Danish government always involves the relevant branch or agency as a party." *Id.* In short, the Danish government "is not one total legal entity." *Id.*

## CONCLUSION

For the reasons set forth above, the Court should (i) instruct the jury that the standard of proof under New York law applies to SKAT's fraud and aiding and abetting fraud claims; (ii) reject SKAT's interpretation of Danish law on the issues raised in SKAT's Rule 44.1 Memorandum; and (iii) instruct the jury on matters of Danish law set forth in Defendants' Rule 44.1 Memorandum and resolve the open questions of Danish law identified therein in favor of Defendants.

Dated: New York, New York
July 24, 2024

Respectfully submitted,

/s/ *Peter G. Neiman*
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352

- 17 -

Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com

Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
nbahnsen@kostelanetz.com
ddavidson@kostelanetz.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pensión Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

/s/ *David L. Goldberg*

- 18 -

David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert Klugman,
RAK Investment Trust, Aerovane Logistics LLC
Roth 401K Plan, Edgepoint Capital LLC Roth
401K Plan, Headsail Manufacturing LLC Roth
401K Plan, The Random Holdings 401K Plan,
The Stor Capital Consulting LLC 401K Plan*


/s/ *Thomas E.L. Dewey*
Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue
37th Floor
New York, New York 10017
(212) 943-9000
tdewey@dpklaw.com
smullen@dpklaw.com

/s/ *Elliot R. Peters*
Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-Jacob*